## **EXHIBIT A**

## **AMENDED AND RESTATED CREDIT FACILITY**

The following describes the principal terms of the Amended and Restated Credit Facility.

# XERIUM TECHNOLOGIES, INC.

*Summary of Terms and Conditions*

<u>**US$410,000,000 Second Lien Secured Term Loan Facility**</u>

The following is a summary (the "<u>Preliminary Term Sheet</u>") of certain material terms of a proposed restructuring of the loans under the Amended and Restated Credit and Guaranty Agreement of Xerium Technologies, Inc. ("<u>Xerium</u>") and certain of its subsidiaries, dated as of May 30, 2008, as amended (the "<u>Prepetition Credit Agreement</u>"). The restructuring of such loans shall be effectuated through a plan of reorganization (the "<u>Plan of Reorganization</u>") to be filed by Xerium with the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>").

| | | |
|---|---|---|
| 1. | *Administrative and Collateral Agent:* | Citicorp North America, Inc. (the "<u>New Term Loan Agent</u>"). |
| 2. | *Sole Lead Arranger and Sole Bookrunner:* | Citigroup Global Markets, Inc. |
| 3. | *Lenders:* | The banks and financial institutions party to the Prepetition Credit Agreement and the Prepetition Swap Parties (the "<u>New Term Loan Lenders</u>"). |
| 4. | *Prepetition Swap Parties:* | Deutsche Bank AG and Merrill Lynch Capital Services, Inc. |
| 5. | *Borrowers:* | Xerium Technologies, Inc. (the "<u>Company</u>"), XTI LLC ("<u>XTI</u>", and together with the Company, the "<u>U.S. Borrowers</u>"), Xerium Canada, Inc. ("<u>Xerium Canada</u>"), Huyck Wangner Austria GmbH ("<u>Huyck Austria</u>"), Xerium Italia S.p.A. ("<u>Xerium Italia</u>") and Xerium Germany Holding GmbH ("<u>Xerium Germany</u>", and together with Xerium Canada, Huyck Austria and Xerium Italia, the "<u>Non U.S. Borrowers</u>"). |
| 6. | *Guarantors:* | The guarantors under the Prepetition Credit Agreement and Robec Brazil LLC (the "<u>Guarantors</u>"). The Guarantors organized under the laws of the United States or any state thereof are referred to as the "<u>U.S. Guarantors</u>", and the Guarantors organized outside the United States are referred to as the "<u>Non U.S. Guarantors</u>." |
| 7. | *Joint and Several Obligations; Limitation on* | The obligations of the Borrowers under the Term Loan Facility and the related loan documents shall be joint and several, <u>provided</u> that none of the Non |

| | *Obligations:* | U.S. Borrowers shall be liable for any of the obligations of any U.S. Borrower. |
|---|---|---|

The obligations of the Guarantors under the loan documents shall be joint and several, <u>provided</u> that none of the Non U.S. Guarantors shall be liable for any of the obligations of any U.S. Guarantor.

Notwithstanding the foregoing, any payments received by the New Term Loan Agent with respect to the Term Loans or the Collateral shall be applied to the payment of the obligations under the loan documents for the ratable benefit of the New Term Loan Lenders.

8. *Term Loan Facility:* The Borrowers shall issue to the New Term Loan Lenders term loans (the "<u>Term Loans</u>") in an aggregate amount equal to US$410,000,000.[1] The Term Loans shall be issued by the Borrowers in the following amounts and currencies:

| Borrower | Amount[2] | Currency |
|---|---|---|
| Xerium | US$225,145,947.36 | US Dollars |
| XTI | US$43,677,549.37 | Euros |
| Xerium Canada | US$46,532,560.48 | Canadian Dollars |
| Huyck Austria | US$24,267,534.91 | Euros |
| Xerium Italia | US$16,957,549.73 | Euros |
| Xerium Germany | US$53,418,858.16 | Euros |

The Term Loans shall be deemed to have been

---

[1] The $410 million will represent a pro rata reduction of the existing loans under the Prepetition Credit Agreement.

[2] Based on the applicable "New York Closing" exchange rate published online at http://online.wsj.com for Tuesday, February 23, 2010, to be adjusted at closing based on exchange rates two business days prior to closing.

| | | |
|---|---|---|
| | | made to the Borrowers on the Closing Date without any actual funding. Term Loans that are repaid shall not be reborrowed. |
| 9. | *Closing Date:* | The date on which the conditions precedent to the closing of the Term Loan Facility shall have been satisfied or waived. |
| 10. | *Amortization:* | 2% annual amortization, payable on the 15th day of the last month of each calendar quarter, beginning in the first full calendar quarter after the Closing Date. |
| 11. | *Maturity Date:* | Five years following the Closing Date. |
| 12. | *Interest:* | The Term Loans shall bear interest as follows: |

(i) in the case of the Term Loans issued by Xerium Canada, at the BA Rate plus the Applicable Margin;

(ii) in the case of the Term Loans issued by Xerium, at the LIBOR Rate plus the Applicable Margin; and

(iii) in the case of the Term Loans issued by XTI, Xerium Italia, Huyck Austria and Xerium Germany, at the Euribor Rate plus the Applicable Margin.

The terms "BA Rate", "LIBOR Rate" and "Euribor Rate" shall have the same meanings as set forth in the Prepetition Credit Agreement except that the BA Rate, the LIBOR Rate and the Euribor Rate shall not be less than 2.00% per annum.

The term "Applicable Margin" means (i) 625 bps if the Leverage Ratio equals or exceeds 2.75:1.00, and (ii) 575 bps if the Leverage Ratio is less than 2.75:1.00.

Interest periods will be 1, 2, 3 or 6 months.

If any Event of Default occurs and is continuing, then the Borrowers will pay interest on the unpaid balance of the outstanding Term Loans at a per annum rate of two percent (2%) greater than the rate

of interest specified above.

| | | |
|---|---|---|
| 13. | ***Interest Payments:*** | Interest shall be payable in arrears on the last day of each interest period. |
| 14. | ***Mandatory Prepayment:*** | Mandatory prepayment of the Term Loans shall be made from (i) 100% of the net cash proceeds from asset sales in excess of US$100,000 (with the obligation to mandatorily prepay commencing when such asset sales are greater than US$250,000) made outside the ordinary course of business, less any taxes payable by the Borrowers with respect to such asset sales; provided that with respect to the net cash proceeds from the Australia and Vietnam Assets (as defined in Section 20(h)), only 50% of the net cash proceeds shall be subject to mandatory prepayment, (ii) 100% of insurance and condemnation award payments, less any taxes payable by the Borrowers with respect to such award payments, (iii) cash proceeds from debt issuances, other than permitted debt and permitted refinancing debt and (iv) 50% of excess cash flow, which shall exclude non-cash items and shall include certain working capital adjustments, after the end of each fiscal year, beginning at the end of fiscal year 2011 (payable in 2012), with (in the case of clauses (i), (ii) and (iii)) exceptions, baskets and reinvestment rights to be agreed upon. Mandatory prepayments pursuant to clauses (i), (ii) and (iv) will be shared ratably with the lenders under the First Lien Facility pursuant to the terms of the Intercreditor Agreement. Borrowers will bear all costs related to any mandatory prepayment of Term Loans on a day that is not the last day of an interest period. |
| 15. | ***Voluntary Prepayment:*** | The Term Loans may be prepaid without penalty, on 3 business days' notice, in minimum amounts and increments to be agreed upon. Borrowers will bear all costs related to the voluntary prepayment of Term Loans prior to the last day of the interest period thereof. |
| 16. | ***Security and Second Priority:*** | The New Term Loan Agent for and on behalf of the New Term Loan Lenders shall have perfected second priority security interests in and liens upon (i) all existing and after acquired real and personal, |

4

tangible and intangible, property of the U.S. Borrowers and U.S. Guarantors and (ii) the real and personal, tangible and intangible, property of the Non U.S. Borrowers and Non U.S. Guarantors securing the obligations under the Prepetition Credit Agreement (together, the "Collateral").

All amounts owing under the Term Loan Facility and the related loan documents in respect thereof at all times will be subject and subordinate to the liens granted under the Company's US$80,000,000 revolving and term loan credit facility to become effective concurrently with the Term Loan Facility (the "First Lien Facility"), subject to the terms of the Intercreditor Agreement.

| | | |
|---|---|---|
| 17. | ***Conditions to Closing:*** | The closing of the Term Loan Facility shall be subject to the satisfaction of the conditions customary for a transaction of this type, including: |

(a) The Bankruptcy Court shall have entered an order confirming the Company's Plan of Reorganization, which order (i) shall be in form and substance satisfactory to the New Term Loan Agent and (ii) shall be in full force and effect and shall not have been reversed, modified, amended or stayed (or application therefor made).

(b) All fees and other payments required to be made under the Term Loan Agreement or any other written agreement shall have been paid.

(c) No Event of Default and no condition which would constitute an Event of Default with the giving of notice or lapse of time or both shall exist.

(d) Representations and warranties shall be true and correct in all material respects, except where such representation or warranty relates to an earlier date, in which case it shall be true and correct in all material respects as of such earlier date; provided that any representation or warranty that is by its terms qualified by materiality shall be true and correct in all

5