respects.

(e) Execution and delivery of all loan and collateral documents for the Term Loan Facility and the Intercreditor Agreement, including but not limited to mortgages, ALTA mortgage title insurance policies and evidence of flood insurance with respect to any property located in any flood hazard zone.

(f) The New Term Loan Agent shall have a perfected second priority security interest in the Collateral and all filings and recordings and searches necessary or desirable in connection with such liens and security interest shall have been duly made.

(g) Delivery of legal opinion by counsel to the Borrowers and the Guarantors.

(h) Delivery of customary officers' and secretaries' certificates, incumbency/specimen signature certificates, resolutions and good standing certificates.

(i) All required consents shall have been obtained.

(j) The Company's debtor-in-possession credit facility shall have been repaid in full and commitments thereunder terminated, and all liens and security interests related thereto shall have been terminated and released, unless continued or refinanced pursuant to the terms of the First Lien Facility.

(k) The New Term Loan Agent shall have received reasonably satisfactory evidence that the conditions to effectiveness under the First Lien Facility shall have been satisfied or waived in accordance with the terms thereof.

(l) Issuance of common stock of the Company to the lenders under the Prepetition Credit Agreement and to the Prepetition Swap Parties as contemplated by the Company's Plan of Reorganization.

(m) The agent under the Prepetition Credit

6

Agreement (on behalf of the lenders thereunder) and the Prepetition Swap Parties shall have received the cash payment contemplated by the Company's Plan of Reorganization.

(n) The collateral agent for the First Lien Facility, as bailee for the New Term Loan Agent and other parties, shall have received the certificates representing the shares of capital stock pledged pursuant to the security documents, together with undated stock powers (or the equivalent) for each such certificate executed by the applicable Borrower or Guarantor.

(o) The New Term Loan Agent shall have received a detailed consolidated budget and business plan of the Company and its subsidiaries through fiscal year 2015 (including a projected consolidated balance sheet and related statements of projected operations and cash flow as of the end of fiscal year 2015), in form and substance acceptable to the New Term Loan Agent.

(p) The Company's US$80,000,000 First Lien Facility shall have become effective.

| | | |
|---|---|---|
| 18. | *Representations and Warranties:* | The Term Loan Agreement will contain representations and warranties that are customary for a transaction of this type and shall be based on the representations and warranties set forth in the Prepetition Credit Agreement (subject to materiality qualifiers and exceptions in the Prepetition Credit Agreement, as well as matters disclosed in SEC filings and the Disclosure Statement), including: |

(a) Confirmation of corporate status and authority of the Company and its subsidiaries.

(b) Capital stock of each of the Company and its subsidiaries has been duly authorized and validly issued and is fully paid and non-assessable.

(c) Due authorization, execution and delivery of

7

the loan documents.

(d) Execution, delivery, and performance by the Borrowers and Guarantors of the loan documents do not conflict with law, existing agreements or organization documents except where such conflict would not reasonably be expected to result in a Material Adverse Effect.

(e) No governmental or regulatory approvals required.

(f) Legality, validity, binding effect and enforceability of the loan documents.

(g) Accuracy of information and financial statements.

(h) Projections based on good faith estimates.

(i) No occurrence of any event, matter or circumstance since the petition date: (a) which is materially adverse to the: (i) business, assets or financial condition of Company and its subsidiaries taken as a whole; or (ii) ability of any Borrower or any Guarantor to perform any of its obligations in accordance with their terms under any of the loan documents; or (b) which in the reasonable opinion of the Requisite Lenders results in any (i) loan document not being legal, valid and binding on and, subject to reservations contained in the legal opinions provided as conditions precedent thereto, enforceable against any party thereto, from and after the Effective Date of the Plan of Reorganization, and/or (ii) collateral document not being a valid and effective security interest, from and after the Effective Date of the Plan of Reorganization, and in the case of (b), in each case in a manner or to an extent materially prejudicial to the interest of any New Term Loan Lenders under the loan documents ("Material Adverse Effect").

(j) Payment of taxes by the Company and its subsidiaries, except those taxes being contested

8

in good faith by appropriate proceedings promptly instituted and diligently conducted and for which an adequate reserve has been made in accordance with GAAP.

(k) Good, sufficient and legal title to properties owned by the Company or its subsidiaries.

(l) Environmental compliance by the Company and its subsidiaries, except where non-compliance would not reasonably be expected to result in a Material Adverse Effect.

(m) No defaults by the Company or its subsidiaries in any contractual obligations except where such default would not reasonably be expected to result in a Material Adverse Effect and except as contemplated by the Plan of Reorganization.

(n) List of material contracts in effect on the Closing Date is true, correct and complete.

(o) Neither the Company nor any of its subsidiaries is an investment company.

(p) Neither the Company nor any of its subsidiaries is engaged in the business of extending credit for the purpose of purchasing or carrying any margin stock and no part of the proceeds of the Term Loans made will be used to purchase or carry any such margin stock.

(q) No unfair labor practices by the Company or its subsidiaries and other employment law non-compliance matters that could reasonably be expected to result in a Material Adverse Effect.

(r) Compliance by the Company and its subsidiaries with employee benefit plans, except where non-compliance would not reasonably be expected to result in a Material Adverse Effect.

(s) No broker's or finder's fee or commission will be payable in connection with the transactions contemplated by the loan documents.

NY3 - 500281.11

(t) Borrowers and Guarantors are solvent.

(u) Full and accurate disclosure by Borrowers and Guarantors.

(v) Compliance with laws, except where non-compliance would not reasonably be expected to result in a Material Adverse Effect.

19. *Affirmative Covenants:* The Term Loan Agreement will contain affirmative covenants that are customary for a transaction of this type and shall be based on the affirmative covenants set forth in the Prepetition Credit Agreement, including:

(a) The Company to deliver to the New Term Loan Agent the following: (i) audited annual financial statements within 90 days after the end of each fiscal year; (ii) unaudited quarterly financial statements within 45 days after the end of each fiscal quarter; (iii) detailed consolidated budget and business plan of the Company and its subsidiaries through fiscal year 2015 (including a projected consolidated balance sheet and related statements of projected operations and cash flow as of the end of fiscal year 2015) on or before April 1 of each fiscal year; (iv) compliance certificates; (v) notices of default; (vi) notices of litigation; (vii) notices of ERISA events; (viii) annual collateral verification reports; and (ix) other information.

(b) The Company to file all reports and other documents with the Securities and Exchange Commission required under the Securities Exchange Act.

(c) Each Borrower, each Guarantor and their respective subsidiaries to preserve and maintain in full force and effect its corporate existence and all rights and franchises, licenses and permits material to its business, except where its board of directors determines that such preservation is no longer desirable in the conduct of its business and the loss is not disadvantageous in any material respect to it or

10

the New Term Loan Lenders.

(d) Each Borrower, each Guarantor and their respective subsidiaries to pay all material taxes, except those taxes which are being contested in good faith by appropriate proceedings promptly instituted and diligently conducted and for which an adequate reserve has been made in accordance with GAAP.

(e) Each Borrower, each Guarantor and their respective subsidiaries to maintain in good repair, working order and condition, ordinary wear and tear excepted, all material properties used or useful in the business of the Company and its subsidiaries and make all appropriate repairs, renewals and replacements thereof, except where failure to do so would not reasonably be expected to have a Material Adverse Effect.

(f) The Company will maintain or cause to be maintained, with financially sound and reputable insurers, such public liability insurance, third party property damage insurance, business interruption insurance and casualty insurance with respect to liabilities, losses or damage in respect of the assets, properties and businesses of the Company and its subsidiaries as may customarily be carried or maintained under similar circumstances by persons of established reputation engaged in similar businesses, in each case in such amounts, with such deductibles, covering such risks and otherwise on such terms and conditions as shall be customary for such persons.

(g) Each Borrower, each Guarantor and their respective subsidiaries to maintain accurate books and records and, as reasonably requested and with reasonable notice, permit visitation and inspection by the New Term Loan Agent representatives.

(h) Each Borrower, each Guarantor and their respective subsidiaries to comply in all