material respects, with the requirements of all applicable laws, rules, regulations and orders of any governmental authority (including all environmental laws), except where failure to do so would not reasonably be expected to have a Material Adverse Effect.

(i) The Company to deliver to the New Term Loan Agent environmental reports and disclosures.

(j) Each Borrower to cause any person that becomes a material subsidiary to become a Guarantor and a grantor under the applicable collateral documents.

(k) Each Borrower, each Guarantor and their respective subsidiaries, upon acquisition of a material real estate asset, to take all actions to create in favor of New Term Loan Agent a valid and perfected second priority security interest.

(l) Each Borrower and Guarantors to take all actions the New Term Loan Agent may reasonably request in order to effect fully the purposes of the loan and collateral documents.

(m) Each Borrower and each of its subsidiaries will continue to own or possess the right to use, free from any restrictions, all patents, trademarks, copyrights, and domain names that are used in the operation of their respective businesses as presently conducted and as proposed to be conducted, except to the extent the failure to so own or possess would not reasonably be expected to have a Material Adverse Effect.

(n) Each Borrower and each Guarantor to supply to the New Term Loan Agent or any New Term Loan Lender documents and evidence reasonably requested and necessary to comply with "know your customer" or other similar checks.

(o) Each Borrower, each Guarantor and their

12

respective subsidiaries to ensure that its payment obligations under each of the loan and collateral documents rank and will at all times rank junior only to the obligations under the First Lien Facility in accordance with the terms of the Intercreditor Agreement and Permitted Liens (as defined in the Prepetition Credit Agreement) and will at all times rank at least pari passu to the obligations of all other present and future secured and unsubordinated indebtedness, other than obligations under the First Lien Facility.

(p) If the audit opinion delivered with the audited consolidated financial statements of the Company and its subsidiaries for the fiscal year 2009 contains a going concern qualification, the Company will use its commercially reasonable efforts to cause its auditors to deliver a revised opinion withdrawing the going concern qualification.

20. ***Negative Covenants:*** The Term Loan Agreement will contain negative covenants that are customary for a transaction of this type and shall be based on the negative covenants set forth in the Prepetition Credit Agreement, including:

(a) No incurrence of indebtedness by any Borrower or any Guarantor or any of their subsidiaries, other than:

1. the obligations under the Term Loan Agreement and the related loan and collateral documents (the "Obligations");

2. indebtedness of any subsidiary to any Borrower or to any other subsidiary, or of any Borrower to any subsidiary; provided, (i) all such indebtedness shall be evidenced by promissory notes and all such notes shall be subject to a lien pursuant to the collateral documents, (ii) all such indebtedness shall be unsecured and subordinated in right of payment to the payment in full of the Obligations pursuant to the terms of the applicable

13

promissory notes or an intercompany subordination agreement that in any such case, is reasonably satisfactory to the New Term Loan Agent, and (iii) any payment by any such subsidiary under any guaranty of the Obligations shall result in a pro tanto reduction of the amount of any indebtedness owed by such subsidiary to the Company or to any of its subsidiaries for whose benefit such payment is made;

3. senior or subordinated unsecured debt; <u>provided</u>, that (i) no default or event of default is continuing under the Term Loan Agreement or would result from such issuance, (ii) each Borrower is in compliance (and certifies as to such compliance) with the financial covenants on a pro forma basis after giving effect to the such issuance, (iii) the proceeds of such issuance are applied in accordance with the mandatory prepayment provisions of the Term Loan Agreement, (iv) such debt shall have a maturity of not earlier than six months after the Maturity Date, and (v) the documentation relating to such subordinated debt shall not contain any covenant or event of default that is either (x) not substantially provided for in the Term Loan Agreement or (y) more favorable to the holder of such subordinated debt than the comparable covenant or event of default set forth in the Term Loan Agreement, and, in the case of any subordinated debt, shall contain customary subordination provisions pursuant to which such debt is subordinated to the prior payment in full of the obligations under the Term Loan Agreement;

4. indebtedness incurred by the Company or any of its subsidiaries arising from agreements providing for indemnification, adjustment of purchase price or similar obligations, or from guaranties or letters of credit, surety bonds or performance

14

bonds securing the performance of each Borrower or any such subsidiary pursuant to such agreements, in connection with certain permitted acquisitions or permitted dispositions of any business, assets or subsidiary of the Company or any of its subsidiaries;

5. indebtedness which may be deemed to exist pursuant to any guaranties, performance, surety, statutory, appeal or similar obligations incurred in the ordinary course of business;

6. indebtedness in respect of netting services, overdraft protections and otherwise in connection with deposit accounts;

7. guaranties in the ordinary course of business of obligations to suppliers, customers, franchisees and licensees of the Company and its subsidiaries;

8. guaranties or the provision of other credit support by a Borrower of indebtedness of a subsidiary or guaranties or the provision of other credit support by a subsidiary of a Borrower of indebtedness of a Borrower or a subsidiary with respect, in each case, to indebtedness otherwise permitted to be incurred pursuant to the lien covenant section below;

9. existing disclosed indebtedness, but not any extensions, renewals or replacements of such indebtedness except (i) renewals and extensions expressly provided for in the agreements evidencing any such indebtedness as the same are in effect on the Closing Date and (ii) refinancings and extensions of any such indebtedness if the terms and conditions thereof are not materially less favorable to the obligor thereon or to the New Term Loan Lenders than the indebtedness being refinanced or extended, and the average life to maturity

15

thereof is greater than or equal to that of the indebtedness being refinanced or extended; <u>provided</u>, such indebtedness permitted under the immediately preceding clause (i) or (ii) above shall not (A) include indebtedness of an obligor that was not an obligor with respect to the indebtedness being extended, renewed or refinanced, (B) exceed in a principal amount the indebtedness being renewed, extended or refinanced or (C) be incurred, created or assumed if any default or event of default under the Term Loan Agreement has occurred and is continuing or would result therefrom;

10. indebtedness with respect to capital leases or purchase money indebtedness in an amount not to exceed at any time US$25 million in the aggregate (including any indebtedness acquired in connection with certain permitted acquisitions); <u>provided</u>, any such purchase money indebtedness shall be secured only to the asset(s) acquired in connection with the incurrence of such indebtedness;

11. other indebtedness of the Company and its subsidiaries in an aggregate amount not to exceed at any time US$25 million;

12. indebtedness under certain factoring agreements;

13. unsecured working capital facilities of any subsidiary in respect of which a letter of credit in an amount equal to the maximum principal amount of such facilities has been issued under the First Lien Facility;

14. hedging obligations entered into for the purpose of hedging risks associated with the operations of the Company and its subsidiaries;

15. the obligations under the First Lien

Facility;

16. any replacement, renewal or refinancing of and debt described in 3, 10, 11 and 15 ("Permitted Refinancing Indebtedness") that (i) does not exceed the aggregate principal amount of the debt being replaced, renewed or refinanced, (ii) does not have a maturity date earlier than the debt being replaced renewed or refinanced, (iii) does not rank at the time of such replacement, renewal or refinancing senior to the debt being replaced, renewed or refinanced and (iv) the documentation relating to such debt shall not contain any covenant or event of default that is either (x) not substantially provided for in the Term Loan Agreement or (y) more favorable to the holder of such debt than the comparable covenant or event of default set forth in the Term Loan Agreement; and

17. scheduled indebtedness existing on the Closing Date.

(b) No liens on any property or assets of the Company or its subsidiaries, other than:

1. liens in favor of New Term Loan Agent for the benefit of New Term Loan Lenders granted pursuant to any security document;

2. liens for taxes not then due or if due obligations with respect to such taxes that are not at such time required to be paid pursuant to the payment of taxes covenant or which are being contested in good faith by appropriate proceedings promptly instituted and diligently conducted and for which an adequate reserve has been made in accordance with GAAP;

3. statutory liens of landlords, banks (and rights of set off), of carriers, warehousemen, mechanics, repairmen,

17