1. purchases or acquisitions of inventory, materials and equipment and cap-ex in the ordinary course of business;

2. any subsidiary of the Company may be merged with or into a Borrower or any other subsidiary, or be liquidated, wound up or dissolved, or all or any part of its business, property or assets may be conveyed, sold, leased, transferred or otherwise disposed of, to a Borrower or any other subsidiary, <u>provided</u> that in the case of a merger involving a Borrower or a Guarantor merging with a non-Guarantor, such Borrower or Guarantor shall be the surviving entity;

3. sales or dispositions of inventory in the ordinary course of business and sales of other assets for gross consideration of less than US$250,000 with respect to any transaction or series of related transactions;

4. asset sales, the proceeds of which when aggregated with proceeds of all other asset sales in the same fiscal year are less than US$25 million; <u>provided</u> that (x) such amount shall exclude proceeds of the sale of assets of Huyck Wangner Australia Pty Limited and Huyck Wangner Vietnam Co Ltd (the "<u>Australian and Vietnam Assets</u>") and (y) the net cash proceeds will be subject to the mandatory prepayment provisions set forth in Section 14 above; <u>provided further</u> that up to US$3 million of such proceeds may be reinvested within 360 days of receipt;

5. disposals of obsolete, worn out or surplus property;

6. permitted acquisitions so long as the amount does not exceed US$10 million;

7. investments permitted under the Term

24

Loan Agreement.

(i) No sales by any Borrower, any Guarantor or their subsidiaries of interests in the capital stock of any of the subsidiaries, unless permitted by the Term Loan Agreement.

(j) No sales and lease backs by any Borrower, any Guarantor or their subsidiaries, unless permitted by the Term Loan Agreement.

(k) No transactions by any Borrower, any Guarantor or their subsidiaries with shareholders owning more than 5% of any class of stock of the Company or any of its subsidiaries and affiliates on terms less favorable to such Borrower or Guarantor, other than (a) any transaction between the Company or any of its subsidiaries and the Company and its subsidiaries; (b) compensation arrangements for directors, officers and other employees of Company and its subsidiaries entered into in the ordinary course of business, including indemnification arrangements, equity compensation and stock ownership plans; and (c) certain other permitted transactions agreed upon.

(l) No engaging by any Borrower, any Guarantor or their subsidiaries in business other than businesses engaged in by such Borrower and the Guarantors on the Closing Date or other similar or related businesses.

(m) No amendments or modifications by any Borrower, any Guarantor or their subsidiaries of any organizational documents that would be materially adverse to the New Term Loan Lenders.

(n) No amendments or waivers by any Borrower, any Guarantor or their subsidiaries with respect to certain terms of subordinated debt or amendments that would be adverse to the New Term Loan Lenders.

(o) No change by any Borrower, any Guarantor or

25

their subsidiaries in its fiscal year end from December 31.

| | | |
|---|---|---|
| 21. | ***Financial Covenants:*** | (a) Interest Coverage Ratio measured quarterly for a rolling 12 month period at levels to be agreed upon. |
| | | (b) Leverage Ratio measured quarterly for a rolling 12 month period at levels to be agreed upon. |
| | | (c) Maximum Capital Expenditures each year in amounts to be agreed upon. |
| 22. | ***Events of Default:*** | The Term Loan Agreement will contain Events of Default that are customary for a transaction of this type and shall be based on the events of default in the Prepetition Credit Agreement, including: |
| | | (a) Failure by any Borrower to pay principal when due and failure to pay interest, fees and other amounts within 3 business days of when due. |
| | | (b) Cross-default to payment defaults beyond applicable grace periods by any Borrower, any Guarantor or any of their subsidiaries on principal aggregating US$5 million, or to other events if the effect is to accelerate or permit acceleration of such debt. |
| | | (c) Failure by any Borrower or any Guarantor to comply with any negative covenant, any financial covenant or the use of proceeds covenant. |
| | | (d) Any representations or warranty made by any Borrower or any Guarantor shall be false in any material respect as of the date made or deemed made. |
| | | (e) Failure by any Borrower or any Guarantor to comply with other covenants in Term Loan Agreement or other loan or collateral documents and such failure continues unremedied for a period of 20 business days following receipt of notice by an officer of the Company or actual knowledge of such failure |

by any such Borrower or Guarantor.

(f) Involuntary bankruptcy, liquidation, or the appointment of a receiver or similar official or institution of any such proceeding in respect of the Company or any of its subsidiaries if not dismissed within 60 days.

(g) Voluntary bankruptcy, liquidation, or the appointment of a receiver or similar official or institution of any such proceeding in respect of the Company or any of its subsidiaries, other than any Case(s) not closed as of the Closing Date.

(h) Failure to pay by the Company or any of its subsidiaries of a final judgment or court order if not stayed within 60 days in excess of US$5 million.

(i) Any order, judgment or decree shall be entered against any Borrower or any Guarantor decreeing the dissolution or split up of such Borrower or Guarantor and such order shall remain undischarged or unstayed for a period in excess of 30 days.

(j) Occurrence of an ERISA event which would reasonably be expected to result in liability of the Company or any of its subsidiaries in excess of US$5 million.

(k) Occurrence of a change of control of the Company, other than pursuant to the Plan of Reorganization.

(l) Any collateral document ceases to be in full force and effect other than in accordance with its terms or shall be declared null and void or the New Term Loan Agent shall not have or shall cease to have a valid and perfected lien in any Collateral purported to be covered by such collateral document with the priority required by such collateral document.

(m) Occurrence of any Material Adverse Effect.

NY3 - 500281.11

| 23. | *Remedies Upon Event of Default:* | Upon the occurrence of an Event of Default under paragraphs (f), (g) or (k) above, automatically, and upon the occurrence of any other Event of Default, at the request of the Requisite Lenders, the principal of and all accrued interest and fees and all other amounts owed to the New Term Loan Agent and the New Term Loan Lenders under the Term Loan Agreement shall be immediately due and payable, and the New Term Loan Agent and the New Term Loan Lenders shall have the rights and remedies provided in the Term Loan Agreement and the collateral documents, subject to the terms of the Intercreditor Agreement. |
|---|---|---|
| 24. | *CAM Exchange:* | On the date on which an Event of Default under paragraphs (f) and (g) above (bankruptcy) occurs, the New Term Loan Lenders shall automatically be deemed to have exchanged interest in all obligations of the Borrowers under the Term Loan Agreement such that each New Term Loan Lender shall own a pro rata interest in all of the Term Loans. |
| 25. | *Assignments and Participations:* | Each New Term Loan Lender may sell or assign all or any portion of its Term Loans with notice to the New Term Loan Agent and to the Company. Each New Term Loan Lender may grant participations in all or any of its Term Loans without the prior consent of any Borrower. |
| 26. | *Voting:* | Amendments, modifications, terminations and waivers of any provision of the Term Loan Agreement or any related document will require the approval of Requisite Lenders (as defined below), except that in certain circumstances the consent of a greater percentage of the outstanding Term Loans may be required. |
| 27. | *Requisite Lenders:* | New Term Loan Lenders holding at least a majority of the outstanding Term Loans. |
| 28. | *Intercreditor Agreement:* | The New Term Loan Agent and the collateral agent for the First Lien Facility shall enter into an intercreditor agreement setting forth the lien and payment priorities with respect to the obligations under the Term Loan Agreement and the First Lien Facility. |

| 29. | ***Term Loan Agreement and Other Terms:*** | The Term Loan Agreement shall be an amendment and restatement of the Prepetition Credit Agreement effectuated through the Plan of Reorganization and will provide additional terms that are usual and customary for a transaction of this type. |
|---|---|---|
| 30. | ***Expenses:*** | The Borrowers shall reimburse the New Term Loan Agent for all fees, expenses and disbursements, including reasonable fees, expenses and disbursements of counsel to the New Term Loan Agent, incurred in connection with the transaction, including, without limitation, related preparation, negotiation, execution and administration of the definitive documentation and ongoing expenses related to the Term Loan Facility. After the occurrence of a Default or and Event of Default, Borrowers shall reimburse the New Term Loan Agent and the New Term Loan Lenders for all costs and expenses and costs of settlement incurred in enforcing any Obligation or in collecting any payments due or in connection with any refinancing and restructuring of the credit arrangements. |
| 31. | ***Indemnification:*** | The Borrowers and the Guarantors shall indemnify the New Term Loan Agent and New Term Loan Lenders and their respective affiliates, officers, partners, directors trustees, investment advisors, employees and agents for any liability, obligation, loss, damage, claim, costs, expense and disbursement (including reasonable fees and disbursements of counsel to the indemnitees) arising out of (i) the Term Loan Agreement and the related loan documents and the transactions contemplated under the Term Loan Facility, the use or proposed use of proceeds of the term loans or any enforcement of the Term Loan Agreement or any related loan documents or (ii) any environmental claims or hazardous materials activity arising from activity of the Company and its subsidiaries, provided that such indemnification obligation does not extend to any damages or liabilities arising from gross negligence or willful misconduct. |
| 32. | ***Yield Protection and Taxes:*** | The Term Loan Agreement and the related documents will contain yield protection provisions and tax gross-up provisions that are customary and based on the yield protection and tax gross-up |

29