provisions set forth in the Prepetition Credit Agreement.

| | | |
|---|---|---|
| 33. | *Governing Law:* | The Term Loan Facility and all documentation in connection with the Term Loan Facility (other than the applicable security documents) shall be governed by the laws of the State of New York. |

30

NY3 - 500281.11

**EXHIBIT B**

**COMMITMENT LETTER**

CITIGROUP GLOBAL MARKETS INC.
390 GREENWICH STREET
NEW YORK, NEW YORK 10013

February 26, 2010

Xerium Technologies, Inc.
8537 Six Forks Road, Suite 300
Raleigh, NC 27615
Attention:  Mr. Stephen Light
            Chief Executive Officer

US$80,000,000 Senior Secured Superpriority Priming DIP Financing Facility and
US$80,000,000 First Lien Exit Facility
or
US$80,000,000 First Lien Out of Court Restructuring Facility
COMMITMENT LETTER

Ladies and Gentlemen:

You have advised us that Xerium Technologies, Inc. (the "**Company**"), which may become a debtor-in-possession in cases (the "**Cases**") under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Court**"), desires to establish (i) a US$80 million senior secured superpriority priming debtor-in-possession facility (the "**DIP Facility**") comprised of (A) a US$20 million senior secured superpriority priming debtor-in-possession revolving loan facility and (B) a US$60 million senior secured superpriority priming debtor-in-possession term loan facility, which will convert, upon confirmation of the Prepackaged Plan of Reorganization (the "**Plan of Reorganization**") in the Cases into (ii) a US$80 million first lien secured exit facility (the "**Exit Facility**", and together with the DIP Facility, the "**Facilities**") comprised of (A) a US$20 million first lien secured exit revolving loan facility, and (B) a US$60 million first lien secured exit term loan facility.  The proceeds of the DIP Facility will be used by the Company solely to (i) pay related transaction costs, fees and expenses associated with the DIP Facility, (ii) fund working capital and general corporate purposes of the DIP Borrower and its subsidiaries during the pendency of the Cases, (iii) make adequate protection payments and (iv) fund costs, fees and expenses incurred in connection with the administration and prosecution of the Cases.  The proceeds of the Exit Facility will be used by the Company and certain of its subsidiaries solely to (i) pay fees and expenses associated with the Exit Facility, (ii) fund working capital and general corporate purposes of the Company and certain of its subsidiaries, (iii) refinance the DIP Facility in accordance with the terms set forth in Annex I and (iv) fund costs, fees and expenses incurred in connection with the consummation of the Plan of Reorganization in accordance with the attached Annex I.

Subject to the terms and conditions of this commitment letter and the attached Annex I (collectively, and together with the Fee Letter referred to below, this "**Commitment Letter**", as amended and modified from time to time), Citigroup Global Markets Inc. ("**CGMI**"), on behalf of Citi (as defined below), is pleased to inform the Company of Citi's commitment to provide the Company the entire amount of the Facilities and to act as administrative agent and collateral agent for the Facilities. However, if the Company obtains unanimous approval by April 12, 2010 from (i) the lenders under the Prepetition Credit Agreement (as defined in Annex I), (ii) Deutsche Bank AG and Merrill Lynch Capital Services, Inc. as swap counterparties in the interest rate swap agreements with the Company or certain of

its subsidiaries, which agreements were terminated in December 2009 and January 2010, respectively, and (iii) Apax WW Nominees Ltd. and Apax-Xerium APIA LP for an out of court restructuring of its debt and equity (the "**Out of Court Restructuring Approval**"), Citi (as defined below) agrees that it will instead provide (A) a US$20 million first lien secured revolving loan facility and (B) a US$60 million first lien secured term loan facility (the "**Out of Court Restructuring Facility**") on terms set forth in Part II of Annex I, with adjustments to such terms to take into account that the Out of Court Restructuring Facility is not a debtor-in-possession facility and not an exit facility and references to "Facilities" in this Commitment Letter shall mean the Out of Court Restructuring Facility. If the Out of Court Restructuring Facility is provided, the aggregate amount of the upfront fees listed in the attached Annex I that would have been due on the DIP Closing Date and the Exit Closing Date will instead be due and payable on the closing date of the Out of Court Restructuring Facility. The proceeds of the Out of Court Restructuring Facility will be used by the Company and certain of its subsidiaries solely to (i) pay fees and expenses associated with the Out of Court Restructuring Facility, (ii) fund working capital and general corporate purposes of the Company and certain of its subsidiaries and (iii) fund costs, fees and expenses incurred in connection with the consummation of the Company's out of court restructuring. For purposes of this Commitment Letter, "**Citi**" means CGMI, Citibank, N.A., Citicorp USA, Inc., Citicorp North America, Inc. and/or any of their affiliates as may be appropriate to consummate the transactions contemplated hereby.

**Section 1. Conditions Precedent**. Citi's commitment and other obligations hereunder are subject to: (i) the preparation, execution and delivery of mutually acceptable loan documentation, including without limitation, a credit agreement, security agreements, guaranties and other agreements, incorporating substantially the terms and conditions outlined in this Commitment Letter and otherwise satisfactory to Citi (the "**Operative Documents**"); (ii) in the judgment of CGMI, the absence of any material adverse change in the business, condition (financial or otherwise), operations or prospects of the Company and its subsidiaries, taken as a whole, since September 30, 2009 other than (x) the matters described in the Company's quarterly report on Form 10-Q for the quarterly period ended September 30,2009 filed with the Securities and Exchange Commission and any Form 8-K filed with the Securities and Exchange Commission prior to the date hereof, (y) commencement of the Cases and (z) the occurrence or continuation of circumstances that give rise or would reasonably be expected to give rise to the filing of the Cases, so long as Citi has been made aware as of the date hereof of all such circumstances, (iii) the accuracy and completeness of all representations that the Company makes to Citi and all information that the Company furnishes to Citi; (iv) the Company's compliance with the terms of this Commitment Letter, including without limitation, the payment in full of all fees, expenses and other amounts payable under this Commitment Letter; (v) the satisfaction of the other conditions precedent to the closing of the Facilities contained in Annex I, (vi) Citi not discovering or otherwise becoming aware of any information not previously disclosed to it that it believes to be materially inconsistent with its understanding, based on the information provided to it prior to the date hereof, of the business, condition (financial or otherwise), operations or prospects of the Company and its subsidiaries taken as a whole and (vii) Citi shall have been afforded an opportunity to syndicate the Facilities for a period of a minimum of four weeks, commencing from the date of execution of this Commitment Letter by the Company.

**Section 2. Commitment Termination**. Citi's commitment and other obligations set forth in this Commitment Letter will terminate on the earlier of (I) the date the Operative Documents become effective, and (II) April 12, 2010 for the DIP Facility and the Exit Facility commitment, or if the Company obtains the Out of Court Approval, April 30, 2010 for the Out of Court Restructuring Facility commitment (the "**Citi Commitment Termination Date**"). Before such date, Citi may terminate its commitment and other obligations hereunder if any event occurs or information becomes available that, in its judgment, results in, or is likely to result in, the failure to satisfy any condition set forth in Section 1. Notwithstanding the

foregoing, the termination of Citi's commitment and other obligations hereunder will not affect Sections 4 through 12, which provisions will survive any such termination.

**Section 3.** **Syndication**. Citi reserves the right, before the execution of the Operative Documents, to syndicate all or a portion of the Facilities (including all or part of Citi's commitment) to one or more other financial institutions that will become parties to the Operative Documents pursuant to a syndication to be managed by CGMI (the financial institutions becoming parties to the Operative Documents being collectively referred to herein as the "**Lenders**"). Citi intends to commence syndication promptly upon execution of this Commitment Letter by the Company. CGMI will manage all aspects of the syndication in consultation with the Company, including the timing of all offers to potential Lenders, the determination of the amounts offered to potential Lenders, the acceptance of commitments of the Lenders and the compensation to be provided to the Lenders.

The Company will use its commercially reasonable efforts to assist CGMI, as CGMI may reasonably request, in forming a syndicate acceptable to CGMI. The Company's assistance in forming such a syndicate will include, without limitation, commercially reasonable efforts to (i) make senior management, advisors and representatives of the Company available to participate in information meetings with potential Lenders and rating agencies at such times and places as CGMI may reasonably request; (ii) ensure that the syndication efforts benefit from the Company's existing lending relationships; (iii) assist and cause its affiliates and advisors to assist in the preparation of a confidential information memorandum for the Facilities and other marketing and rating agency materials to be used in connection with syndication of the Facilities; (iv) promptly provide CGMI with all information reasonably necessary to successfully complete the syndication of the Facilities and (v) obtain corporate/ corporate family ratings for the Borrower and ratings for the Exit Facility or the Out of Court Restructuring Facility, as applicable, from Standard & Poor's Rating Group ("**S&P**") and Moody's Investors Service, Inc. ("**Moody's**") prior to the DIP Closing Date, or the closing date of the Out of Court Restructuring Facility, as applicable.

The Company acknowledges that (i) Citi may make available any Information and Projections (each as defined in Section 8) (collectively, the "**Company Materials**") to potential Lenders by posting the Company Materials on IntraLinks, the Internet or another similar electronic system (the "**Platform**") and (ii) certain of the potential Lenders may be public side Lenders (i.e., Lenders that do not wish to receive material non-public information with respect to the Company or its securities) (each, a "**Public Lender**"). The Company agrees that (A) at the request of Citi, it will prepare a version of the information package and presentation to be provided to potential Lenders that does not contain material non-public information concerning the Company or its securities for purposes of United States federal and state securities laws; (B) all Company Materials that are to be made available to Public Lenders will be clearly and conspicuously marked "PUBLIC" which, at a minimum, will mean that the word "PUBLIC" will appear prominently on the first page thereof; (C) by marking Company Materials "PUBLIC," the Company will be deemed to have authorized Citi and the proposed Lenders to treat such Company Materials as not containing any material non-public information (although they may be confidential or proprietary) with respect to the Company or its securities for purposes of United States federal and state securities laws; (D) all Company Materials marked "PUBLIC" are permitted to be made available through a portion of the Platform designated "Public Lender," and (E) Citi will be entitled to treat any Company Materials that are not marked "PUBLIC" as being suitable only for posting on a portion of the Platform not designated "Public Lender."

To ensure an effective syndication of the Facilities, the Company agrees that, other than in connection with amendments and waivers to the Company's and certain of its subsidiaries' Amended and Restated Credit and Guaranty Agreement, dated as of May 30, 2008 (as amended, supplemented or otherwise modified), the Plan of Reorganization and the transactions contemplated thereby, until the termination of the syndication (as determined by CGMI), the Company will not, and will not permit any of

its affiliates to, syndicate or issue, attempt to syndicate or issue, announce or authorize the announcement of the syndication or issuance of, or engage in discussions concerning the syndication or issuance of, any debt facility or debt security (including any renewals thereof), without the prior written consent of CGMI.

Citi will act as the sole administrative agent and collateral agent for the Facilities and CGMI will act as sole lead arranger and bookrunner. No additional agents, co-agents or arrangers will be appointed, no other titles awarded and no compensation (except as set forth in this Commitment Letter) will be paid, without the consent of Citi.

**Section 4. Fees**. In addition to the fees described in Annex I, the Company will pay the non-refundable fees set forth in the letter agreement dated the date hereof (the "**Fee Letter**") between the Company and Citi. The terms of the Fee Letter are an integral part of Citi's commitment and other obligations hereunder and constitute part of this Commitment Letter for all purposes hereof.

**Section 5. Indemnification**. The Company will indemnify and hold harmless Citi, each Lender and each of their respective affiliates and each of their respective officers, directors, employees, agents, advisors and representatives (each, an "**Indemnified Party**") from and against any and all claims, damages, losses, liabilities and expenses (including without limitation, fees and disbursements of counsel), that may be incurred by or asserted or awarded against any Indemnified Party (including, without limitation, in connection with any investigation, litigation or proceeding or the preparation of a defense in connection therewith), in each case, arising out of or in connection with or by reason of this Commitment Letter or the Operative Documents or the transactions contemplated hereby or thereby or any actual or proposed use of the proceeds of the Facilities, except to the extent such claim, damage, loss, liability or expense is found in a final, non-appealable judgment by a court of competent jurisdiction to have resulted primarily from such Indemnified Party's gross negligence or willful misconduct. In the case of an investigation, litigation or other proceeding to which the indemnity in this paragraph applies, such indemnity will be effective whether or not such investigation, litigation or proceeding is brought by the Company, any of its directors, security holders or creditors, an Indemnified Party or any other person or an Indemnified Party is otherwise a party thereto and whether or not the transactions contemplated hereby are consummated.

No Indemnified Party will have any liability (whether in contract, tort or otherwise) to the Company or any of its affiliates or any of their respective security holders or creditors for or in connection with the transactions contemplated hereby, except to the extent such liability is determined in a final non-appealable judgment by a court of competent jurisdiction to have resulted primarily from such Indemnified Party's gross negligence or willful misconduct. In no event, however, will any Indemnified Party be liable on any theory of liability for any special, indirect, consequential or punitive damages (including without limitation, any loss of profits, business or anticipated savings).

The Company acknowledges that information and other materials relative to the Facilities and the transactions contemplated hereby may be transmitted through the Platform. No Indemnified Person will be liable to the Company or any of its affiliates or any of their respective security holders or creditors for any damages arising from the use by unauthorized persons of information or other materials sent through the Platform that are intercepted by such persons.

**Section 6. Costs and Expenses**. The Company will pay, or reimburse Citi on demand for, all reasonable transaction related costs and expenses incurred by Citi (whether incurred before or after the date hereof) in connection with the Facilities and the preparation, negotiation, execution and delivery of this Commitment Letter, including without limitation, the reasonable fees and expenses of counsel, regardless of whether any of the transactions contemplated hereby are consummated. The Company will also pay all