IN WITNESS WHEREOF, the undersigned has executed this Sole Stockholder's Consent as of December 3 , 1999.

WEAVEXX CORPORATION

By: _____
Name:
Title:

933412.02

# STOWE WOODWARD LICENSCO LLC

# AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT

USActive 18780359.2

**TABLE OF CONTENTS**

**PAGE**

ARTICLE 1   DEFINITIONS                                                    1

ARTICLE 2   FORMATION OF THE COMPANY                                       1

    2.1   CONVERSION AND FORMATION                                      1

    2.2   PRINCIPAL PLACE OF BUSINESS                                   2

    2.3   REGISTERED OFFICE AND REGISTERED AGENT                        2

    2.4   TERM                                                          2

ARTICLE 3   BUSINESS OF COMPANY                                            2

ARTICLE 4   UNITS AND CONTRIBUTIONS TO CAPITAL                             2

    4.1   UNITS; CERTIFICATES                                           2

    4.2   CAPITAL CONTRIBUTIONS                                         2

ARTICLE 5   RIGHTS AND OBLIGATIONS OF MEMBER                               3

    5.1   MANNER OF ACTING                                             3

    5.2   LIMITATION OF LIABILITY                                       3

    5.3   COMPANY BOOKS                                                 3

ARTICLE 6   MANAGEMENT - BOARD OF DIRECTORS AND OFFICERS                   3

    6.1   MANAGEMENT BY DIRECTORS                                       3

    6.2   NUMBER, ELECTION, TENURE AND QUALIFICATIONS                   3

    6.3   MANNER OF ACTING                                             4

    6.4   DIRECTORS HAVE NO EXCLUSIVE DUTY TO COMPANY                   4

    6.5   RESIGNATION                                                  4

    6.6   REMOVAL                                                      4

    6.7   OFFICERS OF COMPANY                                          4

    6.8   ELECTION AND TERM OF OFFICE                                   4

    6.9   REMOVAL                                                      5

    6.10  DUTIES OF OFFICERS                                           5

ARTICLE 7   STANDARD OF CARE AND INDEMNIFICATION                           5

    7.1   STANDARD OF CARE                                             5

    7.2   INDEMNIFICATION OF MEMBER, OFFICERS AND ORGANIZER            5

ARTICLE 8   ALLOCATIONS AND DISTRIBUTIONS                                  5

    8.1   ALLOCATIONS OF NET PROFITS AND NET LOSSES                     5

    8.2   DISTRIBUTIONS                                                5

ARTICLE 9   DISSOLUTION AND TERMINATION                                    6

USActive 18780359.2

## TABLE OF CONTENTS
### (Continued)

|  |  |  |
|---|---|---|
| 9.1 | DISSOLUTION | 6 |
| 9.2 | WINDING UP, LIQUIDATION AND DISTRIBUTION OF ASSETS | 6 |
| 9.3 | CERTIFICATE OF CANCELLATION | 6 |
| ARTICLE 10 | MISCELLANEOUS PROVISIONS | 7 |
| 10.1 | NOTICES | 7 |
| 10.2 | AMENDMENTS | 7 |
| 10.3 | SEVERABILITY | 7 |
| 10.4 | CREDITORS | 7 |
| 10.5 | CONSTRUCTION | 7 |
| 10.6 | GOVERNING LAW | 7 |
| SCHEDULE 6.1 |  | 9 |
| SCHEDULE 6.7 |  | 11 |

# STOWE WOODWARD LICENSCO LLC

# AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT

This Amended and Restated  Limited Liability Company Agreement ("Agreement") of Stowe Woodward Licensco LLC (the "Company") is made as of _____, ____, as required by that certain amended joint prepackaged plan of reorganization under chapter 11 of the Bankruptcy Code of Stowe Woodward Licensco LLC and certain of its debtor affiliates, as filed with the United States Bankruptcy Court for the District of Delaware (the "Court") on March 30, 2010 (Case No. 10-_____ (___)) and confirmed by the Court on _____, ____ (the "Plan").

The undersigned hereby declares as follows:

## ARTICLE 1

## DEFINITIONS

For purposes of this Agreement, the following terms have the meanings indicated (unless otherwise expressly provided herein):

"<u>Certificate of Conversion</u>" means the Certificate converting the Company from a corporation to a limited liability company as filed with the Delaware Secretary of State.

"<u>Certificate of Formation</u>" means the Certificate of Formation of the Company as filed with the Delaware Secretary of State, as the same may be amended from time to time.

"<u>Conversion</u>" means the conversion of Stowe Woodward Licensco Inc. into a limited liability company pursuant to Section 18-214 of the Delaware Act and Section 266 of the Delaware General Corporation Law and the Certificate of Conversion.

"<u>Delaware Act</u>" means the Delaware Limited Liability Company Act at Title 6 of the Delaware Code, §§ 18-101 *et seq*.

"<u>Director</u>" means a member of the Board of Directors of the Company.

"<u>Member</u>" means the undersigned and any other person who becomes a member of the Company in accordance with this Agreement.

"<u>Unit</u>" means a measure of ownership interest in the Company.

## ARTICLE 2

## FORMATION OF THE COMPANY

**2.1     CONVERSION AND FORMATION**

The Company has been converted from a Delaware corporation to a Delaware limited liability company by executing and delivering the Certificate of Conversion, together with the Certificate of Formation, to the Delaware Secretary of State in accordance with and pursuant to the Delaware Act.

**2.2   PRINCIPAL PLACE OF BUSINESS**

The principal place of business of the Company will be One Technology Drive, Westborough Technology Park, Westborough, Massachusetts 01581. The Company may locate its places of business and registered office at any other place or places as the Member may deem advisable.

**2.3   REGISTERED OFFICE AND REGISTERED AGENT**

The Company's initial registered office will be at the office of its registered agent at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, County of New Castle, and the name of its initial registered agent is The Corporation Trust Company.

**2.4   TERM**

The term of the Company will be perpetual.

**ARTICLE 3**

**BUSINESS OF COMPANY**

The Company will continue the business conducted by Stowe Woodward Licensco Inc. prior to the Conversion and will carry on any other lawful business or activity in connection with the foregoing or otherwise, and will have and exercise all of the powers, rights and privileges which a limited liability company organized pursuant to the Delaware Act may have and exercise.

**ARTICLE 4**

**UNITS AND CONTRIBUTIONS TO CAPITAL**

**4.1   UNITS; CERTIFICATES**

The capital of the Company will be represented by Units.  Notwithstanding anything to the contrary contained herein, the Company may not issue Units that would be deemed to be non-voting securities as contemplated by section 1123(a)(6) of the Title 11 of the United States Code, and any provision contained herein that would render the Units non-voting equity units as contemplated by section 1123(a)(6) of Title 11 of the United States Code shall be deemed null and void.  The Board of Directors may make such rules and regulations as it may deem appropriate concerning the issuance and registration of Units, including the issuance of certificates representing Units. The Board of Directors may authorize the issuance of any Units without certificates. The Units are expressly deemed to be securities governed by Article 8 of the Uniform Commercial Code of the State of Delaware.

**4.2     CAPITAL CONTRIBUTIONS**

In connection with the Conversion, each of the 100 shares of capital stock the Member owned in Stowe Woodward Licensco Inc. has been automatically converted into a Unit. The amount designated as the capital contribution of the Member for the Units issued in the Conversion will be the same amount as was designated as capital on the books and records of Stowe Woodward Licensco Inc. immediately prior to the Conversion. The Member will not be required to make additional capital contributions.

## ARTICLE 5

## RIGHTS AND OBLIGATIONS OF MEMBER

**5.1     MANNER OF ACTING**

The Member may act to appoint the Board of Directors or otherwise through written or unwritten resolutions or certifications of any nature.

**5.2     LIMITATION OF LIABILITY**

The Member will not be personally liable to creditors of the Company for any debts, obligations, liabilities or losses of the Company, whether arising in contract, tort or otherwise, beyond the Member's capital contribution set forth in Section 4.2 and any additional capital contribution.

**5.3     COMPANY BOOKS**

The Company will maintain and preserve, during the term of the Company, all accounts, books and other relevant Company documents.

## ARTICLE 6

## MANAGEMENT - BOARD OF DIRECTORS AND OFFICERS

**6.1     MANAGEMENT BY DIRECTORS**

The business and affairs of the Company will be managed by its Board of Directors. The Board of Directors will have full and complete authority, power and discretion to manage and control the business, affairs and properties of the Company, including the powers set forth in Schedule 6.1, to make all decisions regarding those matters and to perform any and all other acts or activities customary or incident to the management of the Company's business and objectives. No one Director may take or effect any action on behalf of the Company or otherwise bind the Company in the absence of a formal delegation of authority by the Board of Directors to such Director.

**6.2     NUMBER, ELECTION, TENURE AND QUALIFICATIONS**

The number of directors constituting the first Board of Directors will be three. Thereafter, the number of Directors of the Company may be fixed from time to time by the Member. Directors will be appointed by the Member. Each Director will hold office until his successor has been duly appointed and qualified or until his earlier death, resignation or removal. Directors need not be Members of the Company.

### 6.3    MANNER OF ACTING

The Board of Directors may designate any place, either within or outside the State of Delaware, as the place of meeting of the Board of Directors. A majority of the Board of Directors will constitute a quorum at meetings of the Board of Directors. If a quorum is present, the affirmative vote of a majority of all Directors will constitute the act of the Board of Directors. Any Director may participate in a meeting by means of conference telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other, and participation in the meeting by means of such equipment will constitute presence in a person at such meeting. Action may be taken without a meeting if the action is evidenced by one or more written consents signed by a majority of the directors.

### 6.4    DIRECTORS HAVE NO EXCLUSIVE DUTY TO COMPANY

A Director will not be required to manage the Company as his sole and exclusive function, and he may have other business interests and engage in activities in addition to those relating to the Company. Neither the Company, the Member, nor any other Director will have any right, by virtue of this Agreement, to share or participate in such other investments or activities of the Director or in the income or proceeds derived therefrom.

### 6.5    RESIGNATION

Any Director of the Company may resign at any time by giving written notice to the Member and the other Directors of the Company. The resignation of any Director will take effect upon receipt of notice thereof or at such later date specified in such notice; and, unless otherwise specified therein, the acceptance of such resignation will not be necessary to make it effective.

### 6.6    REMOVAL

All or any lesser number of Directors may be removed at any time, with or without cause, by the Member.

### 6.7    OFFICERS OF COMPANY

The officers of the Company will consist of the officers listed in Schedule 6.7 and such other officers or agents as may be elected and appointed by the Board of Directors. Any two or more offices may be held by the same person. The officers will act in the name of the Company and will supervise its operation under the direction and management of the Board of Directors, as further described below.

**6.8    ELECTION AND TERM OF OFFICE**

The officers of the Company will be elected by the Board of Directors. Each officer will hold office until his successor is duly elected and has qualified, or until his earlier death, resignation, or removal. Election or appointment of an officer will not of itself create contract rights.

**6.9    REMOVAL**

Any officer may be removed by the Board of Directors at any time.

**6.10    DUTIES OF OFFICERS**

The officers will have such duties and powers as described in Schedule 6.7.

## ARTICLE 7

## STANDARD OF CARE AND INDEMNIFICATION

**7.1    STANDARD OF CARE**

No Member, Director or officer of the Company will be liable to the Company by reason of the actions of such person in the conduct of the business of the Company except for fraud, gross negligence or willful misconduct.

**7.2    INDEMNIFICATION OF MEMBER, OFFICERS AND ORGANIZER**

The Company will, to the fullest extent to which it is empowered to do so by the Delaware Act or any other applicable law, indemnify and make advances for expenses to any person who was or is a party, or is threatened to be made a party, to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that he is or was a Member, Director, officer or employee of the Company, against losses, damages, expenses (including attorney's fees), judgments, fines and amounts reasonably incurred by him in connection with such action, suit or proceeding.

## ARTICLE 8

## ALLOCATIONS AND DISTRIBUTIONS

**8.1 ALLOCATIONS OF NET PROFITS AND NET LOSSES**

The profits, losses, and other items of the Company will be allocated to the Member. There will be no "special allocations."

**8.2    DISTRIBUTIONS**

Distributions will be made as follows:

(a)    Subject to Section 18-607 of the Delaware Act, the Company will make interim distributions as the Member will determine.

(b)    Upon liquidation of the Company, liquidating distributions will be made in accordance with Section 9.2.

## ARTICLE 9

### DISSOLUTION AND TERMINATION

**9.1    DISSOLUTION**

(a)    The Company will be dissolved only upon the occurrence of any of the following events:

(i)    by written decision of the Member; or

(ii)    upon the entry of a decree of judicial dissolution under Section 18-802 of the Delaware Act.

(b)    Dissolution of the Company will be effective on the day on which an event described in Section 9.1(a) occurs, but the Company will not terminate until a certificate of cancellation is filed with the Secretary of State of the State of Delaware and the assets of the Company are distributed as provided in Section 9.2. Notwithstanding the dissolution of the Company, prior to the termination of the Company, the business of the Company and the affairs of the Member will continue to be governed by this Agreement.

**9.2    WINDING UP, LIQUIDATION AND DISTRIBUTION OF ASSETS**

Upon dissolution, an accounting will be made of the Company's assets, liabilities and operations, from the date of the last previous accounting until the date of dissolution. The Member will:

(a)    sell or otherwise liquidate all of the Company's assets as promptly as practicable;

(b)    discharge all liabilities of the Company, including liabilities to the Member as a creditor of the Company to the extent permitted by law, excluding liabilities for distributions to Members; and

(c)    distribute all remaining assets to the Member.

**9.3    CERTIFICATE OF CANCELLATION**

When all debts, liabilities and obligations of the Company have been paid and discharged, or adequate provisions have been made for their payment and discharge, and all of the remaining property and assets of the Company have been distributed, a certificate of

cancellation setting forth the information required by the Delaware Act will be executed by one or more authorized persons and filed with the Delaware Secretary of State.

Upon such filing, the existence of the Company will cease, except for the purpose of suits, other proceedings and appropriate action as provided in the Delaware Act. The Member will have authority to distribute any Company property discovered after dissolution, convey real estate and take such other action as may be necessary on behalf of and in the name of the Company.

## ARTICLE 10

## MISCELLANEOUS PROVISIONS

### 10.1   NOTICES

All notices, demands, waivers and other communications required or permitted by this Agreement will be in writing and will be deemed given to a party or the Company when (a) delivered to the appropriate address by hand or by nationally recognized overnight courier service (costs prepaid); (b) sent by facsimile or e-mail with confirmation of transmission by the transmitting equipment; or (c) received or rejected by the addressee, if sent by certified mail, return receipt requested. Any such communication will be addressed to a Member as shown on the records of the Company, to the Company at its principal office, or in either case to such other address as the Member or the Company may from time to time designate by written notice to all parties.

### 10.2   AMENDMENTS

This Agreement may be amended at any time by a writing executed by the Member.

### 10.3   SEVERABILITY

If any provision of this Agreement is held invalid or unenforceable by any court of competent jurisdiction, the other provisions of this Agreement will remain in full force and effect. Any provision of this Agreement held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable.

### 10.4   CREDITORS

None of the provisions of this Agreement are for the benefit of or enforceable by any creditors of the Company.

### 10.5   CONSTRUCTION

All references in this Agreement to "Articles" and "Sections" refer to the corresponding Articles and Sections of this Agreement unless the context indicates otherwise. The headings of Articles and Sections in this Agreement are provided for convenience only and will not affect its construction or interpretation. All words used in this Agreement will be construed to be of such gender or number as the circumstances require. The terms "include" or "including" indicate

examples of a foregoing general statement and not a limitation on that general statement. Any reference to a statute refers to the statute, any amendments or successor legislation, and all regulations promulgated under or implementing the statute, as in effect at the relevant time.

**10.6    GOVERNING LAW**

This Agreement will be governed by and interpreted in accordance with the laws of the State of Delaware, without regard to conflicts of laws principles that would require the application of any other law, and the Certificate of Formation.

The Member has caused its duly authorized representative to execute this Agreement as of the date indicated in the first sentence of this Agreement.

MEMBER:

Xerium Inc.

By: _____

Its: _____

## SCHEDULE 6.1

## POWERS AND AUTHORITY OF BOARD OF DIRECTORS

**Powers**

The Board of Directors will have the following powers and authority:

(a)    to acquire property from any person as the Board of Directors may determine, whether or not such person is directly or indirectly affiliated or connected with any Director or Member;

(b)    to open bank accounts in the name and on behalf of the Company, and to determine who will have the signatory power over such accounts;

(c)    to borrow money for the Company on such terms as the Board of Directors deem appropriate, and in connection therewith, to hypothecate, encumber and grant security interests in the assets of the Company to secure repayment of the borrowed sums;

(d)    to purchase liability and other insurance to protect the Company's property and business;

(e)    to hold and own Company real and personal property in the name of the Company;

(f)    to invest Company funds;

(g)    to authorize the execution of all instruments and documents, including checks; drafts; notes and other negotiable instruments; mortgages or deeds of trust; security agreements; financing statements; documents providing for the acquisition, mortgage or disposition of the Company's property; assignments, bills of sale; leases; and any other instruments or documents necessary to the business of the Company;

(h)    to employ accountants, legal counsel, agents or other experts to perform services for the Company;

(i)    to appoint such agents, officers and delegees as may be necessary or appropriate to the conduct of the business;

(j)    to take actions by or on behalf of the Company in respect of any equity interests held by the Company in another entity;

(k)    to authorize any and all other agreements on behalf of the Company, in such forms as the Board of Directors may approve; and

(1)    to do and perform all other acts as may be necessary or appropriate to the conduct of the Company's business.

**Limitations**

The Board of Directors will not have the power or authority to take any of the following actions without the advance approval of the Member:

Amend the limited liability company agreement Amend the certificate of formation

Admit members

Sell, transfer or dispose of (or contract to sell, transfer or dispose of) all or substantially all of the assets of the Company

Dissolve the Company

Merge or consolidate the Company or convert the Company to a different type of entity Initiating a bankruptcy or similar proceeding.

## SCHEDULE 6.7

## DUTIES OF OFFICERS

**President**.

The president will be the chief executive officer of the Company in charge of the entire business and all the affairs of the Company and will have the powers and perform the duties incident to that position, including the power to bind the Company in accordance with this Schedule. The president will, when present, preside at all meetings of the Board of Directors. He will have such other powers and perform such duties as are specified in this Agreement and as may from time to time be assigned to him by the Board of Directors.

The president will have general and active management of the business of the Company and will see that all orders and resolutions of the Board of Directors are carried into effect. The president may execute bonds, mortgages and other contracts (whenever requiring a seal, under the seal of the Company), except where required or permitted by law to be otherwise signed and executed and except where the signing and execution thereof is expressly delegated by the Board of Directors to some other officer or agent of the Company. The president will have general powers of supervision and will be the final arbiter of all differences between officers of the Company, and such decision as to any matter affecting the Company will be final and binding as between the officers of the Company subject only to review by the Board of Directors.

**Vice Presidents**.

At the request of or in the absence of the president or in the event of his inability or refusal to act, a vice president (or in the event there be more than one vice president, the vice presidents in the order designated, or in the absence of any designation, then in the order of their election) will perform the duties of the president, and when so acting, will have all the powers of and be subject to all the restrictions upon the president. Any vice president will perform such other duties as from time to time may be assigned to him by the chairman, the president or the Board of Directors of the Company. Vice presidents may be assigned primary responsibility for certain operations of the Company.

**Chief Financial Officer**.

The chief financial officer will: (i) have primary responsibility for the financial affairs of the Company and be responsible for its financial books and records; (ii) render to the president or the board of directors, upon request, an account of the financial condition of the corporation and assist with financial projections for the Company's operations; (iii) plan for adequate financing and liquidity for the Company's operations; and (iv) in general perform all the duties incident to the office of chief financial officer and such other duties as from time to time may be assigned to him by the president or by the Board of Directors of the Company. He will not be required to give a bond for the faithful discharge of his duties.

**Treasurer**.

The treasurer will: (i) be responsible for all funds and securities of the Company; (ii) disburse the funds of the Company as ordered by the board of directors, the president or the chief financial officer or as otherwise required in the conduct of the business of the corporation; (iii) receive and give receipts for moneys due and payable to the Company from any source whatsoever, and deposit all such moneys in the name of the Company in such banks, trust companies or other depositaries as will be selected by the Board of Directors of the Company; and (iv) in general, perform all duties incident to the office of treasurer and such other duties as from time to time may be assigned to him by the president, the chief financial officer or by the Board of Directors of the Company. He will not be required to give a bond for the faithful discharge of his duties.

**Secretary**.

The secretary will: (a) keep the minutes of the Board of Directors' meetings in one or more books provided for that purpose; (b) see that all notices are duly given in accordance with the provisions of this Agreement or as required by law; (c) be custodian of Company records; (d) sign with the president, any certificates representing Units; (e) certify the resolutions of the Board of Directors and other documents of the Company as true and correct; and (f) in general perform all duties incident to the office of secretary and such other duties as from time to time may be assigned to him by the president or the Board of Directors.

**Assistant Treasurers and Assistant Secretaries**.

The assistant treasurers and assistant secretaries, if any, shall perform all functions and duties which the secretary or treasurer, as the case may be, may assign or delegate; but such assignment or delegation shall not relieve the principal officer from the responsibilities of his or her office.

# STOWE WOODWARD LLC

# AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT

USActive 18780358.2

**TABLE OF CONTENTS**

**PAGE**

| | | |
|---|---|---|
| ARTICLE 1 | DEFINITIONS | 1 |
| ARTICLE 2 | FORMATION OF THE COMPANY | 1 |
| | 2.1 CONVERSION AND FORMATION | 1 |
| | 2.2 PRINCIPAL PLACE OF BUSINESS | 2 |
| | 2.3 REGISTERED OFFICE AND REGISTERED AGENT | 2 |
| | 2.4 TERM | 2 |
| ARTICLE 3 | BUSINESS OF COMPANY | 2 |
| ARTICLE 4 | UNITS AND CONTRIBUTIONS TO CAPITAL | 2 |
| | 4.1 UNITS; CERTIFICATES | 2 |
| | 4.2 CAPITAL CONTRIBUTIONS | 2 |
| ARTICLE 5 | RIGHTS AND OBLIGATIONS OF MEMBER | 3 |
| | 5.1 MANNER OF ACTING | 3 |
| | 5.2 LIMITATION OF LIABILITY | 3 |
| | 5.3 COMPANY BOOKS | 3 |
| ARTICLE 6 | MANAGEMENT - BOARD OF DIRECTORS AND OFFICERS | 3 |
| | 6.1 MANAGEMENT BY DIRECTORS | 3 |
| | 6.2 NUMBER, ELECTION, TENURE AND QUALIFICATIONS | 3 |
| | 6.3 MANNER OF ACTING | 3 |
| | 6.4 DIRECTORS HAVE NO EXCLUSIVE DUTY TO COMPANY | 4 |
| | 6.5 RESIGNATION | 4 |
| | 6.6 REMOVAL | 4 |
| | 6.7 OFFICERS OF COMPANY | 4 |
| | 6.8 ELECTION AND TERM OF OFFICE | 4 |
| | 6.9 REMOVAL | 4 |
| | 6.10 DUTIES OF OFFICERS | 5 |
| ARTICLE 7 | STANDARD OF CARE AND INDEMNIFICATION | 5 |
| | 7.1 STANDARD OF CARE | 5 |
| | 7.2 INDEMNIFICATION OF MEMBER, OFFICERS AND ORGANIZER | 5 |
| ARTICLE 8 | ALLOCATIONS AND DISTRIBUTIONS | 5 |
| | 8.1 ALLOCATIONS OF NET PROFITS AND NET LOSSES | 5 |
| | 8.2 DISTRIBUTIONS | 5 |
| ARTICLE 9 | DISSOLUTION AND TERMINATION | 6 |

USActive 18780358.2

**TABLE OF CONTENTS**
**(Continued)**

| | | | |
|---|---|---|---|
| | 9.1 | DISSOLUTION | 6 |
| | 9.2 | WINDING UP, LIQUIDATION AND DISTRIBUTION OF ASSETS | 6 |
| | 9.3 | CERTIFICATE OF CANCELLATION | 6 |
| ARTICLE 10 MISCELLANEOUS PROVISIONS | | | 7 |
| | 10.1 | NOTICES | 7 |
| | 10.2 | AMENDMENTS | 7 |
| | 10.3 | SEVERABILITY | 7 |
| | 10.4 | CREDITORS | 7 |
| | 10.5 | CONSTRUCTION | 7 |
| | 10.6 | GOVERNING LAW | 7 |
| SCHEDULE 6.1 | | | 9 |
| SCHEDULE 6.7 | | | 11 |

# STOWE WOODWARD LLC

# AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT

This Amended and Restated  Limited Liability Company Agreement ("Agreement") of Stowe Woodward LLC (the "Company") is made as of _____, ____, as required by that certain amended joint prepackaged plan of reorganization under chapter 11 of the Bankruptcy Code of Stowe Woodward LLC and certain of its debtor affiliates, as filed with the United States Bankruptcy Court for the District of Delaware (the "Court") on March 30, 2010 (Case No. 10-_____ (___)) and confirmed by the Court on _____, ____ (the "Plan").

The undersigned hereby declares as follows:

## ARTICLE 1

## DEFINITIONS

For purposes of this Agreement, the following terms have the meanings indicated (unless otherwise expressly provided herein):

"Certificate of Conversion" means the Certificate converting the Company from a corporation to a limited liability company as filed with the Delaware Secretary of State.

"Certificate of Formation" means the Certificate of Formation of the Company as filed with the Delaware Secretary of State, as the same may be amended from time to time.

"Conversion" means the conversion of Stowe Woodward Inc. into a limited liability company pursuant to Section 18-214 of the Delaware Act and Section 266 of the Delaware General Corporation Law and the Certificate of Conversion.

"Delaware Act" means the Delaware Limited Liability Company Act at Title 6 of the Delaware Code, §§ 18-101 *et seq*.

"Director" means a member of the Board of Directors of the Company.

"Member" means the undersigned and any other person who becomes a member of the Company in accordance with this Agreement.

"Unit" means a measure of ownership interest in the Company.

USActive 18780358.2

## ARTICLE 2

## FORMATION OF THE COMPANY

**2.1 CONVERSION AND FORMATION**

The Company has been converted from a Delaware corporation to a Delaware limited liability company by executing and delivering the Certificate of Conversion, together with the Certificate of Formation, to the Delaware Secretary of State in accordance with and pursuant to the Delaware Act.

**2.2 PRINCIPAL PLACE OF BUSINESS**

The principal place of business of the Company will be One Technology Drive, Westborough Technology Park, Westborough, Massachusetts 01581. The Company may locate its places of business and registered office at any other place or places as the Member may deem advisable.

**2.3 REGISTERED OFFICE AND REGISTERED AGENT**

The Company's initial registered office will be at the office of its registered agent at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, County of New Castle, and the name of its initial registered agent is The Corporation Trust Company.

**2.4 TERM**

The term of the Company will be perpetual.

## ARTICLE 3

## BUSINESS OF COMPANY

The Company will continue the business conducted by Stowe Woodward Inc. prior to the Conversion and will carry on any other lawful business or activity in connection with the foregoing or otherwise, and will have and exercise all of the powers, rights and privileges which a limited liability company organized pursuant to the Delaware Act may have and exercise.

## ARTICLE 4

## UNITS AND CONTRIBUTIONS TO CAPITAL

**4.1 UNITS; CERTIFICATES**

The capital of the Company will be represented by Units. Notwithstanding anything to the contrary contained herein, the Company may not issue Units that would be deemed to be non-voting securities as contemplated by section 1123(a)(6) of the Title 11 of the United States Code, and any provision contained herein that would render the Units non-voting equity units as contemplated by section 1123(a)(6) of Title 11 of the United States Code shall be deemed null and void. The Board of Directors may make such rules and regulations as it may deem

appropriate concerning the issuance and registration of Units, including the issuance of certificates representing Units. The Board of Directors may authorize the issuance of any Units without certificates. The Units are expressly deemed to be securities governed by Article 8 of the Uniform Commercial Code of the State of Delaware.

**4.2    CAPITAL CONTRIBUTIONS**

In connection with the Conversion, each of the 100 shares of capital stock the former Member, Stowe Woodward Licensco Inc., owned in Stowe Woodward Inc. has been automatically converted into a Unit. The amount designated as the capital contribution of the Member for the Units issued in the Conversion will be the same amount as was designated as capital on the books and records of Stowe Woodward Inc. immediately prior to the Conversion. The Member will not be required to make additional capital contributions.

## ARTICLE 5

## RIGHTS AND OBLIGATIONS OF MEMBER

**5.1    MANNER OF ACTING**

The Member may act to appoint the Board of Directors or otherwise through written or unwritten resolutions or certifications of any nature.

**5.2    LIMITATION OF LIABILITY**

The Member will not be personally liable to creditors of the Company for any debts, obligations, liabilities or losses of the Company, whether arising in contract, tort or otherwise, beyond the Member's capital contribution set forth in Section 4.2 and any additional capital contribution.

**5.3    COMPANY BOOKS**

The Company will maintain and preserve, during the term of the Company, all accounts, books and other relevant Company documents.

## ARTICLE 6

## MANAGEMENT - BOARD OF DIRECTORS AND OFFICERS

**6.1    MANAGEMENT BY DIRECTORS**

The business and affairs of the Company will be managed by its Board of Directors. The Board of Directors will have full and complete authority, power and discretion to manage and control the business, affairs and properties of the Company, including the powers set forth in Schedule 6.1, to make all decisions regarding those matters and to perform any and all other acts or activities customary or incident to the management of the Company's business and objectives. No one Director may take or effect any action on behalf of the Company or otherwise bind the

Company in the absence of a formal delegation of authority by the Board of Directors to such Director.

### 6.2    NUMBER, ELECTION, TENURE AND QUALIFICATIONS

The number of directors constituting the first Board of Directors will be three. Thereafter, the number of Directors of the Company may be fixed from time to time by the Member. Directors will be appointed by the Member. Each Director will hold office until his successor has been duly appointed and qualified or until his earlier death, resignation or removal. Directors need not be Members of the Company.

### 6.3    MANNER OF ACTING

The Board of Directors may designate any place, either within or outside the State of Delaware, as the place of meeting of the Board of Directors. A majority of the Board of Directors will constitute a quorum at meetings of the Board of Directors. If a quorum is present, the affirmative vote of a majority of all Directors will constitute the act of the Board of Directors. Any Director may participate in a meeting by means of conference telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other, and participation in the meeting by means of such equipment will constitute presence in a person at such meeting. Action may be taken without a meeting if the action is evidenced by one or more written consents signed by a majority of the directors.

### 6.4    DIRECTORS HAVE NO EXCLUSIVE DUTY TO COMPANY

A Director will not be required to manage the Company as his sole and exclusive function, and he may have other business interests and engage in activities in addition to those relating to the Company. Neither the Company, the Member, nor any other Director will have any right, by virtue of this Agreement, to share or participate in such other investments or activities of the Director or in the income or proceeds derived therefrom.

### 6.5    RESIGNATION

Any Director of the Company may resign at any time by giving written notice to the Member and the other Directors of the Company. The resignation of any Director will take effect upon receipt of notice thereof or at such later date specified in such notice; and, unless otherwise specified therein, the acceptance of such resignation will not be necessary to make it effective.

### 6.6    REMOVAL

All or any lesser number of Directors may be removed at any time, with or without cause, by the Member.

### 6.7    OFFICERS OF COMPANY

The officers of the Company will consist of the officers listed in Schedule 6.7 and such other officers or agents as may be elected and appointed by the Board of Directors. Any two or more offices may be held by the same person. The officers will act in the name of the Company

and will supervise its operation under the direction and management of the Board of Directors, as further described below.

**6.8    ELECTION AND TERM OF OFFICE**

The officers of the Company will be elected by the Board of Directors. Each officer will hold office until his successor is duly elected and has qualified, or until his earlier death, resignation, or removal. Election or appointment of an officer will not of itself create contract rights.

**6.9    REMOVAL**

Any officer may be removed by the Board of Directors at any time.

**6.10    DUTIES OF OFFICERS**

The officers will have such duties and powers as described in Schedule 6.7.

## ARTICLE 7

### STANDARD OF CARE AND INDEMNIFICATION

**7.1    STANDARD OF CARE**

No Member, Director or officer of the Company will be liable to the Company by reason of the actions of such person in the conduct of the business of the Company except for fraud, gross negligence or willful misconduct.

**7.2    INDEMNIFICATION OF MEMBER, OFFICERS AND ORGANIZER**

The Company will, to the fullest extent to which it is empowered to do so by the Delaware Act or any other applicable law, indemnify and make advances for expenses to any person who was or is a party, or is threatened to be made a party, to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that he is or was a Member, Director, officer or employee of the Company, against losses, damages, expenses (including attorney's fees), judgments, fines and amounts reasonably incurred by him in connection with such action, suit or proceeding.

## ARTICLE 8

### ALLOCATIONS AND DISTRIBUTIONS

**8.1 ALLOCATIONS OF NET PROFITS AND NET LOSSES**

The profits, losses, and other items of the Company will be allocated to the Member. There will be no "special allocations."

**8.2     DISTRIBUTIONS**

Distributions will be made as follows:

(a)     Subject to Section 18-607 of the Delaware Act, the Company will make interim distributions as the Member will determine.

(b)     Upon liquidation of the Company, liquidating distributions will be made in accordance with Section 9.2.

## ARTICLE 9

### DISSOLUTION AND TERMINATION

**9.1     DISSOLUTION**

(a)     The Company will be dissolved only upon the occurrence of any of the following events:

(i)     by written decision of the Member; or

(ii)     upon the entry of a decree of judicial dissolution under Section 18-802 of the Delaware Act.

(b)     Dissolution of the Company will be effective on the day on which an event described in Section 9.1(a) occurs, but the Company will not terminate until a certificate of cancellation is filed with the Secretary of State of the State of Delaware and the assets of the Company are distributed as provided in Section 9.2. Notwithstanding the dissolution of the Company, prior to the termination of the Company, the business of the Company and the affairs of the Member will continue to be governed by this Agreement.

**9.2     WINDING UP, LIQUIDATION AND DISTRIBUTION OF ASSETS**

Upon dissolution, an accounting will be made of the Company's assets, liabilities and operations, from the date of the last previous accounting until the date of dissolution. The Member will:

(a)     sell or otherwise liquidate all of the Company's assets as promptly as practicable;

(b)     discharge all liabilities of the Company, including liabilities to the Member as a creditor of the Company to the extent permitted by law, excluding liabilities for distributions to Members; and

(c)      distribute all remaining assets to the Member.

## 9.3    CERTIFICATE OF CANCELLATION

When all debts, liabilities and obligations of the Company have been paid and discharged, or adequate provisions have been made for their payment and discharge, and all of the remaining property and assets of the Company have been distributed, a certificate of cancellation setting forth the information required by the Delaware Act will be executed by one or more authorized persons and filed with the Delaware Secretary of State.

Upon such filing, the existence of the Company will cease, except for the purpose of suits, other proceedings and appropriate action as provided in the Delaware Act. The Member will have authority to distribute any Company property discovered after dissolution, convey real estate and take such other action as may be necessary on behalf of and in the name of the Company.

## ARTICLE 10

## MISCELLANEOUS PROVISIONS

## 10.1    NOTICES

All notices, demands, waivers and other communications required or permitted by this Agreement will be in writing and will be deemed given to a party or the Company when (a) delivered to the appropriate address by hand or by nationally recognized overnight courier service (costs prepaid); (b) sent by facsimile or e-mail with confirmation of transmission by the transmitting equipment; or (c) received or rejected by the addressee, if sent by certified mail, return receipt requested. Any such communication will be addressed to a Member as shown on the records of the Company, to the Company at its principal office, or in either case to such other address as the Member or the Company may from time to time designate by written notice to all parties.

## 10.2    AMENDMENTS

This Agreement may be amended at any time by a writing executed by the Member.

## 10.3    SEVERABILITY

If any provision of this Agreement is held invalid or unenforceable by any court of competent jurisdiction, the other provisions of this Agreement will remain in full force and effect. Any provision of this Agreement held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable.

## 10.4    CREDITORS

None of the provisions of this Agreement are for the benefit of or enforceable by any creditors of the Company.

**10.5    CONSTRUCTION**

All references in this Agreement to "Articles" and "Sections" refer to the corresponding Articles and Sections of this Agreement unless the context indicates otherwise. The headings of Articles and Sections in this Agreement are provided for convenience only and will not affect its construction or interpretation. All words used in this Agreement will be construed to be of such gender or number as the circumstances require. The terms "include" or "including" indicate examples of a foregoing general statement and not a limitation on that general statement. Any reference to a statute refers to the statute, any amendments or successor legislation, and all regulations promulgated under or implementing the statute, as in effect at the relevant time.

**10.6    GOVERNING LAW**

This Agreement will be governed by and interpreted in accordance with the laws of the State of Delaware, without regard to conflicts of laws principles that would require the application of any other law, and the Certificate of Formation.

The Member has caused its duly authorized representative to execute this Agreement as of the date indicated in the first sentence of this Agreement.

MEMBER:

Xerium Inc.

By: _____

Its: _____

USActive 18780358.2                                    -8-

## SCHEDULE 6.1

## POWERS AND AUTHORITY OF BOARD OF DIRECTORS

**Powers**

The Board of Directors will have the following powers and authority:

(a)    to acquire property from any person as the Board of Directors may determine, whether or not such person is directly or indirectly affiliated or connected with any Director or Member;

(b)    to open bank accounts in the name and on behalf of the Company, and to determine who will have the signatory power over such accounts;

(c)    to borrow money for the Company on such terms as the Board of Directors deem appropriate, and in connection therewith, to hypothecate, encumber and grant security interests in the assets of the Company to secure repayment of the borrowed sums;

(d)    to purchase liability and other insurance to protect the Company's property and business;

(e)    to hold and own Company real and personal property in the name of the Company;

(f)    to invest Company funds;

(g)    to authorize the execution of all instruments and documents, including checks; drafts; notes and other negotiable instruments; mortgages or deeds of trust; security agreements; financing statements; documents providing for the acquisition, mortgage or disposition of the Company's property; assignments, bills of sale; leases; and any other instruments or documents necessary to the business of the Company;

(h)    to employ accountants, legal counsel, agents or other experts to perform services for the Company;

(i)    to appoint such agents, officers and delegees as may be necessary or appropriate to the conduct of the business;

(j)    to take actions by or on behalf of the Company in respect of any equity interests held by the Company in another entity;

(k)    to authorize any and all other agreements on behalf of the Company, in such forms as the Board of Directors may approve; and

(1)    to do and perform all other acts as may be necessary or appropriate to the conduct of the Company's business.

**Limitations**

The Board of Directors will not have the power or authority to take any of the following actions without the advance approval of the Member:

Amend the limited liability company agreement

Amend the certificate of formation

Admit members

Sell, transfer or dispose of (or contract to sell, transfer or dispose of) all or substantially all of the assets of the Company

Dissolve the Company

Merge or consolidate the Company or convert the Company to a different type of entity Initiating a bankruptcy or similar proceeding

USActive 18780358.2                              -10-

**SCHEDULE 6.7**

**DUTIES OF OFFICERS**

**President**.

The president will be the chief executive officer of the Company in charge of the entire business and all the affairs of the Company and will have the powers and perform the duties incident to that position, including the power to bind the Company in accordance with this Schedule. The president will, when present, preside at all meetings of the Board of Directors. He will have such other powers and perform such duties as are specified in this Agreement and as may from time to time be assigned to him by the Board of Directors.

The president will have general and active management of the business of the Company and will see that all orders and resolutions of the Board of Directors are carried into effect. The president may execute bonds, mortgages and other contracts (whenever requiring a seal, under the seal of the Company), except where required or permitted by law to be otherwise signed and executed and except where the signing and execution thereof is expressly delegated by the Board of Directors to some other officer or agent of the Company. The president will have general powers of supervision and will be the final arbiter of all differences between officers of the Company, and such decision as to any matter affecting the Company will be final and binding as between the officers of the Company subject only to review by the Board of Directors.

**Vice Presidents**.

At the request of or in the absence of the president or in the event of his inability or refusal to act, a vice president (or in the event there be more than one vice president, the vice presidents in the order designated, or in the absence of any designation, then in the order of their election) will perform the duties of the president, and when so acting, will have all the powers of and be subject to all the restrictions upon the president. Any vice president will perform such other duties as from time to time may be assigned to him by the chairman, the president or the Board of Directors of the Company. Vice presidents may be assigned primary responsibility for certain operations of the Company.

**Chief Financial Officer**.

The chief financial officer will: (i) have primary responsibility for the financial affairs of the Company and be responsible for its financial books and records; (ii) render to the president or the board of directors, upon request, an account of the financial condition of the corporation and assist with financial projections for the Company's operations; (iii) plan for adequate financing and liquidity for the Company's operations; and (iv) in general perform all the duties incident to the office of chief financial officer and such other duties as from time to time may be assigned to him by the president or by the Board of Directors of the Company. He will not be required to give a bond for the faithful discharge of his duties.

**Treasurer**.

The treasurer will: (i) be responsible for all funds and securities of the Company; (ii) disburse the funds of the Company as ordered by the board of directors, the president or the chief financial officer or as otherwise required in the conduct of the business of the corporation; (iii) receive and give receipts for moneys due and payable to the Company from any source whatsoever, and deposit all such moneys in the name of the Company in such banks, trust companies or other depositaries as will be selected by the Board of Directors of the Company; and (iv) in general, perform all duties incident to the office of treasurer and such other duties as from time to time may be assigned to him by the president, the chief financial officer or by the Board of Directors of the Company. He will not be required to give a bond for the faithful discharge of his duties.

**Secretary**.

The secretary will: (a) keep the minutes of the Board of Directors' meetings in one or more books provided for that purpose; (b) see that all notices are duly given in accordance with the provisions of this Agreement or as required by law; (c) be custodian of Company records; (d) sign with the president, any certificates representing Units; (e) certify the resolutions of the Board of Directors and other documents of the Company as true and correct; and (f) in general perform all duties incident to the office of secretary and such other duties as from time to time may be assigned to him by the president or the Board of Directors.

**Assistant Treasurers and Assistant Secretaries**.

The assistant treasurers and assistant secretaries, if any, shall perform all functions and duties which the secretary or treasurer, as the case may be, may assign or delegate; but such assignment or delegation shall not relieve the principal officer from the responsibilities of his or her office.

WANGNER ITELPA I LLC

AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT

Dated as of _____, 2010

WANGNER ITELPA I LLC
AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT

This Amended and Restated  Limited Liability Company Agreement ("Agreement") of Wangner Itelpa I LLC (the "Company") is made as of _____, ____, as required by that certain amended joint prepackaged plan of reorganization under chapter 11 of the Bankruptcy Code of Wangner Itelpa I LLC and certain of its debtor affiliates, as filed with the United States Bankruptcy Court for the District of Delaware (the "Court") on March 30, 2010 (Case No. 10-_____ (___)) and confirmed by the Court on _____, ____ (the "Plan").

WHEREAS, Xerium Technologies, Inc, (the "Original Member") wishes to form a limited liability company pursuant to and in accordance with the Delaware Limited Liability Company Act in order to conduct the business described herein.

NOW, THEREFORE, the Original Member agrees with the Company as follows:

ARTICLE 1
DEFINITIONS

For purposes of this Agreement the following terms have the following meanings:

"Act" means the Delaware Limited Liability Company Act (6 Del. C. § 18-101, et seq.) as amended and in effect from time to time.

"Affiliate" means, with respect to any specified Person, any Person that directly or through one or more intermediaries controls or is controlled by or is under common control with the specified Person. As used in this definition, the term "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through ownership of voting securities, by contract or otherwise.

"Agreement" means this Amended and Restated Limited Liability Company Agreement of the Company dated as of _____, 2010 as amended from time to time.

"Capital Contribution" means the amount of cash and the fair market value of any other property contributed to the Company with respect to any Interest held by a Member.

"Certificate" means the Certificate of Formation of the Company filed on December 1, 2004 and any and all amendments thereto and restatements thereof filed on behalf of the Company as permitted hereunder with the office of the Secretary of State of the State of Delaware.

"Code" means the Internal Revenue Code of 1986, as amended from time to time, and the corresponding provisions of any future federal tax law.

"Company" means the limited liability company formed by virtue of this Agreement and the filing of the Certificate in accordance with the Act.

"Distribution" means the amount of cash and the fair market value of any other property distributed in respect of a Member's Interest in the Company.

"Fiscal Year" means the fiscal year of the Company which shall end on December 31 in each year or on such other date in each year as determined by the Board of Managers.

"Indemnified Party" is defined in Section 10.1.

"Interest" means the interest of a Member in the capital and profits of the Company, including the right of such Member to any and all benefits to which such Member may be entitled as provided in this Agreement, together with the obligations of such Member to comply with all the terms and provisions of this Agreement.

"Member" means the Original Member and any other Person that both acquires an Interest in the Company and is admitted to the Company as a Member pursuant to this Agreement, from time to time.

"Original Member" is defined in Section 3.1.

"Person" means an individual, partnership, joint venture, association, corporation, trust, estate, limited liability company, limited liability partnership, or any other legal entity.

"Unit Certificate" is defined in Section 3.6.

"Units" are a measure of a Member's Interest in the Company.

ARTICLE 2
FORMATION AND PURPOSE

2.1     Formation, etc. The Company was formed as a limited liability company in accordance with the Act by the filing of the Certificate with the Secretary of State of Delaware on December 1, 2004. The rights, duties and liabilities of each Member and the Board of Managers shall be determined pursuant to the Act and this Agreement. To the extent that such rights, duties or obligations are different by reason of any provision of this Agreement than they would be in the absence of such provision, this Agreement shall, to the extent permitted by the Act, control.

2.2     Name. The name of the Company is WANGNER ITELPA I LLC. The business of the Company may be conducted under that name or, upon compliance with applicable laws, any other name that the Board of Managers deems appropriate or advisable. The Board of Managers shall file, or shall cause to be filed, any fictitious name certificates and similar filings, and any amendments thereto, that the Board of Managers considers appropriate or advisable.

2

2.3 <u>Registered Office/Agent</u>. The registered office required to be maintained by the Company in the State of Delaware pursuant to the Act shall initially be c/o Corporation Service

Company, 2711 Centerville Road, Suite 400, County of New Castle, Wilmington, Delaware 19808. The name and address of the registered agent of the Company pursuant to the Act shall initially be Corporation Service Company, 2711 Centerville Road, Suite 400, County of New Castle, Wilmington, Delaware 19808. The Company may, upon compliance with the applicable provisions of the Act, change its registered office or registered agent from time to time in the discretion of the Board of Managers.

2.4 <u>Term</u>. The term of the Company shall continue indefinitely unless sooner terminated as provided herein. The existence of the Company as a separate legal entity shall continue until the cancellation of the Certificate as provided in the Act.

2.5 <u>Purpose</u>. The Company is formed for the purpose of, and the nature of the business to be conducted by the Company is, engaging in any lawful act or activity for which limited liability companies may be formed under the Act and engaging in any activities necessary, advisable, convenient or incidental thereto.

2.6 <u>Specific Powers</u>. Without limiting the generality of Section 2.5, the Company shall have the power and authority to take any and all actions necessary, appropriate, proper, advisable, incidental or convenient to or for the furtherance of the purpose set forth in Section 2.5, including, but not limited to, the power:

2.6.1 to conduct its business, carry on its operations and have and exercise the powers granted to a limited liability company by the Act in any country, state, territory, district or other jurisdiction, whether domestic or foreign;

2.6.2 to acquire by purchase, lease, contribution of property or otherwise, own, hold, operate, maintain, finance, improve, lease, sell, convey, mortgage, transfer, demolish or dispose of any real or personal property;

2.6.3 to negotiate, enter into, renegotiate, extend, renew, terminate, modify, amend, waive, execute, perform and carry out and take any other action with respect to contracts or agreements of any kind, including without limitation leases, licenses, guarantees and other contracts for the benefit of or with any Member or any Affiliate of any Member, without regard to whether such contracts may be deemed necessary, convenient to, or incidental to the accomplishment of the purposes of the Company;

2.6.4 to purchase, take, receive, subscribe for or otherwise acquire, own, hold, vote, use, employ, sell, mortgage, lend, pledge, or otherwise dispose of, and otherwise use and deal in and with, shares or other interests in or obligations of domestic or foreign corporations, associations, general or limited partnerships, trusts, limited liability companies, or individuals or other persons or direct or indirect obligations of the United States or of any government, state, territory, governmental district or municipality or of any instrumentality of any of them;

3

2.6.5   to lend money, to invest and reinvest its funds, and to accept real and personal property for the payment of funds so loaned or invested;

2.6.6   to borrow money and issue evidence of indebtedness, and to secure the same by a mortgage, pledge, security interest or other lien on the assets of the Company;

2.6.7   to pay, collect, compromise, litigate, arbitrate or otherwise adjust or settle any and all other claims or demands of or against the Company or to hold such proceeds against the payment of contingent liabilities;

2.6.8   to sue and be sued, complain and defend, and participate in administrative or other proceedings, in its name;

2.6.9   to appoint employees, officers, agents and representatives of the Company, and define their duties and fix their compensation;

2.6.10  to indemnify any Person in accordance with the Act and this Agreement;

2.6.11  to cease its activities and cancel its Certificate; and

2.6.12  to make, execute, acknowledge and file any and all documents or instruments necessary, convenient or incidental to the accomplishment of the purpose of the Company.

2.7     Certificate. The filing of the Certificate by Michael J. Stick is hereby ratified and confirmed and said Person is hereby designated as an "authorized person" within the meaning of the Act to execute, deliver and file the Certificate and Stephen R. Light, David Maffucci, Ted Orban and Elizabeth Leete and such other Persons as may be designated from time to time by the Board of Managers are designated as authorized persons, within the meaning of the Act, to execute, deliver and file any amendments or restatements of the Certificate or any certificate of cancellation of the Certificate and any other certificates necessary for the Company to qualify to do business in a jurisdiction in which the Company may wish to conduct business.

2.8.    Principal Office. The principal executive office of the Company shall be located at such place within or without the State of Delaware as the Board of Managers shall establish, and the Board of Managers may from time to time change the location of the principal executive office of the Company to any place within or without the State of Delaware. The Board of Managers may establish and maintain such additional offices and places of business of the Company, either within or without the State of Delaware, as it deems appropriate.

ARTICLE 3
ORIGINAL MEMBER; CAPITAL CONTRIBUTIONS; AND UNITS

3.1     Initial Capital Contribution. Upon the making of the initial Capital Contribution to the Company, which shall be in the amount of $100 and the Person making such Capital Contribution agreeing in writing to be bound by this Agreement as a Member, such Person shall

4

be admitted as the first Member (the "Original Member") and acquire a limited liability company interest in the Company. The initial Capital Contribution shall be allocated to a stated capital account of the Company.

3.2     Additional Capital Contributions. The Members shall make additional Capital Contributions to the Company for such purposes, at such times and in such amounts as shall be agreed by the Members holding not less than 75.0% of the then outstanding Units at a meeting of the Members held pursuant to Section 4.4 and Exhibit 4.4.

3.3     Return of Capital Contributions. No Member shall have the right to demand a return of all or any part of its Capital Contributions, and any return of the Capital Contributions of a Member shall be made solely from the assets of the Company and only in accordance with the terms of this Agreement. No interest shall be paid to any Member with respect to its Capital Contributions.

3.4     Registration of Interests. Each Interest constitutes a "security," as such term is defined in 6 Del. C. § 8-102(15), governed by Article 8 of the Uniform Commercial Code as in effect in the State of Delaware (6 Del. C. 8-101, et seq.). The Company shall maintain a record of the ownership of the Interests which shall be in the form set forth on Schedule A and which shall be amended from time to time to reflect transfers of the ownership of the Interests. An Interest shall be transferred by delivery to the Company of an instruction by the registered owner of the Interest requesting registration of transfer of such Interest (accompanied by a duly indorsed security certificate representing such Interest or affidavit of loss therefore) and the recording of such transfer in the records of the Company.

3.5     Units. Upon the admission of the Original Member as a Member, the Interest of the Original Member shall be divided into 100 Units.  Notwithstanding anything to the contrary contained herein, the Company may not issue Units that would be deemed to be non-voting securities as contemplated by section 1123(a)(6) of the Title 11 of the United States Code, and any provision contained herein that would render the Units non-voting equity units as contemplated by section 1123(a)(6) of Title 11 of the United States Code shall be deemed null and void.  The Board of Managers may issue additional Units to any Member in respect of additional Capital Contributions.

3.6     Unit Certificate. Each Member shall be entitled to a certificate stating the number of Units held by the Member in such form as shall, in conformity with law and this Agreement, be prescribed from time to time by the Board of Managers (a "Unit Certificate"). Such Unit Certificate shall be signed by the Chair of the Board of Managers or the President or any Vice President and by the Treasurer or an Assistant Treasurer or by the Secretary or an Assistant Secretary.

3.7     Loss of Certificate. In the case of the alleged theft, loss, destruction or mutilation of a Unit Certificate, a duplicate certificate may be issued in place thereof, upon such terms, including receipt of a bond sufficient to indemnify the Company against any claim on account thereof, as the Board of Managers may prescribe.

ARTICLE 4
STATUS AND RIGHTS OF MEMBERS

4.1     Limited Liability. Except as otherwise provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and no Member, no member of the Board of Managers and no other Indemnified Party shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member, a member of the

Board of Managers or an Indemnified Party. All Persons dealing with the Company shall look solely to the assets of the Company for the payment of the debts, obligations or liabilities of the Company.

4.2     Return of Distributions of Capital. Except as otherwise expressly required by law, no Member, in its capacity as such, shall have any liability either to the Company or any of its creditors in excess of (a) any assets and undistributed profits of the Company and (b) to the extent required by law, the amount of any Distributions wrongfully distributed to it. Except as required by law or a court of competent jurisdiction, no Member or investor in or partner of a Member shall be obligated by this Agreement to return any Distribution to the Company or pay the amount of any Distribution for the account of the Company or to any creditor of the Company. The amount of any Distribution returned to the Company by or on behalf of a Member or paid by or on behalf of a Member for the account of the Company or to a creditor of the Company shall be added to the account or accounts from which it was subtracted when it was distributed to such Member.

4.3     No Management or Control. No Member shall take any part in or interfere in any manner with the management of the business and affairs of the Company or have any right or authority to act for or bind the Company.

4.4     Meetings of Members. Meetings of Members shall be held and conducted, and the voting rights of Members shall be, as set forth on Exhibit 4.4 hereto.

ARTICLE 5
DISTRIBUTIONS

5.1     Distributions. Subject to the requirements of the Act, the amount and timing of all Distributions shall be determined by the Member or Members at a meeting called for such purpose. All Distributions shall be made ratably to each Member in accordance with the number of Units then held by such Member. Distributions may be made in cash, securities or other property.

5.2     Withholding. The Company is hereby authorized to withhold and pay over any withholding or other taxes payable by the Company as a result of a Member's status as a Member hereunder.

6

ARTICLE 6
MANAGEMENT

6.1     Management. The business of the Company shall be managed by a Board of Managers, and the Persons constituting the Board of Managers shall be the "managers" of the Company for all purposes under the Act. The Board of Managers as of the date hereof shall be the Persons set forth in Exhibit 6.1. Thereafter, the Persons constituting the Board of Managers shall be elected by the Members in accordance with Exhibit 4.4 hereto. Decisions of the Board of Managers shall be embodied in a vote or resolution adopted in accordance with the procedures set forth in Exhibit 6.1. Such decisions shall be decisions of the "manager" for all purposes of

the Act and shall be carried out by any member of the Board of Managers or by officers or agents of the Company designated by the Board of Managers in the vote or resolution in question or in one or more standing votes or resolutions or with the power and authority to do so under Section 6.3. A decision of the Board of Managers may be amended, modified or repealed in the same manner in which it was adopted or in accordance with the procedures set forth in Exhibit 6.1 as then in effect, but no such amendment, modification or repeal shall affect any Person who has been furnished a copy of the original vote or resolution, certified by a duly authorized agent of the Company, until such Person has been notified in writing of such amendment, modification or repeal.

6.2     Authority of Board of Managers. The Board of Managers shall have the exclusive power and authority to manage the business and affairs of the Company and to make all decisions with respect thereto. Except as otherwise expressly provided in this Agreement, the Board of Managers or Persons designated by the Board of Managers, including officers and agents appointed by the Board of Managers, shall be the only Persons authorized to execute documents which shall be binding on the Company. To the fullest extent permitted by Delaware law, the Board of Managers shall have the power to do any and all acts, statutory or otherwise, with respect to the Company of this Agreement, which would otherwise be possessed by the Member or Members under the laws of the State of Delaware, and the Member or Members shall have no power whatsoever with respect to the management of the business and affairs of the Company. The owner and authority granted to the Board of Managers hereunder shall include all those necessary or convenient for the furtherance of the purposes of the Company and shall include the power to make all decisions with regard to the management, operations, assets, financing and capitalization of the Company, including without limitation, the power and authority to undertake and make decisions concerning: (a) hiring and firing of employees, attorneys, accountants, brokers, investment bankers and other advisors and consultants, (b) entering into of leases for real or personal property, (c) opening of bank and other deposit accounts and operations thereunder, (d) purchasing, constructing, improving, developing and maintaining of real property, (e) purchasing of insurance, goods, supplies, equipment, materials and other personal property, (f) borrowing of money, obtaining of credit, issuance of notes, debentures, securities, equity or other interests of or in the Company and securing of the obligations undertaken in connection therewith with mortgages on and security interests in all or any portion of the real or personal property of the Company, (g) making of investments in or the acquisition of securities of any Person, (h) giving of guarantees and indemnities, (i) entering into of contracts or agreements whether in the ordinary course of business or otherwise, (j) mergers with or acquisitions of other Persons, (k) the sale or lease of all or any portion of the assets of the

7

Company, (1) forming subsidiaries or joint ventures, (m) compromising, arbitrating, adjusting and litigating claims in favor of or against the Company and (n) all other acts or activities necessary or desirable for the carrying out of the purposes of the Company including those referred to in Section 2.6.

6.3     Officers; Agents. The Board of Managers by vote or resolution shall have the power to appoint officers and agents to act for the Company with such titles, if any, as the Board of Managers deems appropriate and to delegate to such officers or agents such of the powers as are granted to the Board of Managers hereunder, including the power to execute documents on behalf of the Company, as the Board of Managers may in its sole discretion determine; provided, however, that no such delegation by the Board of Managers shall cause the Persons constituting the Board of Managers to cease to be the "managers" of the Company within the meaning of the Act. The officers or agents so appointed may include persons holding titles such as Chairman, Chief Executive Officer, Chief Operating Officer, President, Chief Financial Officer, Executive Vice President, Vice President, Treasurer, Controller, Secretary or Assistant Secretary. An officer may be removed at any time with or without cause. The officers of the Company as of the date hereof are set forth on Exhibit 6.3. Unless the authority of the agent designated as the officer in question is limited in the document appointing such officer or is otherwise specified by the Board of Managers, any officer so appointed shall have the same authority to act for the Company as a corresponding officer of a Delaware corporation would have to act for a corporation in the absence of a specific delegation of authority and all deeds, leases, transfers, contracts, bonds, notes, checks, drafts or other obligations made, accepted or endorsed by the corporation may be signed by the Chairman, if any, the President, a Vice President or the Treasurer, Controller, Secretary or Assistant Secretary at the time in office. The Board of Managers, in its sole discretion, may by vote or resolution of the Board of Managers ratify any act previously taken by an officer or agent acting on behalf of the Company.

6.4     Reliance by Third Parties. Any person or entity dealing with the Company or any Member may rely upon a certificate signed by a member of the Board of Managers as to: (a) the identity of the Member or the members of the Board of Managers, (b) the existence or nonexistence of any fact or facts which constitute a condition precedent to acts by the Member or the Board of Managers or are in any other manner germane to the affairs of the Company, (c) the Persons which are authorized to execute and deliver any instrument or document of or on behalf of the Company, (d) the authorization of any action taken by or on behalf of the Company, the Board of Managers or any officer or agent acting on behalf of the Company or (e) any act or failure to act by the Company or as to any other matter whatsoever involving the Company or the Member.

ARTICLE 7<br>TRANSFER OF INTERESTS

Any Member may sell, assign, pledge, encumber, dispose of or otherwise transfer all or any part of the economic or other rights that comprise its Interest. If so determined by such Member, the transferee shall have the right to be substituted for the Member under this Agreement for the transferor or as an additional Member if the Member transfers less than all of its Interest. No Member may withdraw or resign as Member except as a result of a transfer pursuant to this Article 7 in which the transferee is substituted for the Member. None of the

8

events described in Section 18-304 of the Act shall cause a Member to cease to be a Member of the Company.

## ARTICLE 8
## AMENDMENTS TO AGREEMENT

This Agreement may be amended or modified as shall be agreed by the Members holding not less than 75.0% of the then outstanding Units at a meeting of the Members held pursuant to Section 4.4 and Exhibit 4.4. The Board of Managers shall cause to be prepared and filed any amendment to the Certificate that may be required to be filed under the Act as a consequence of any such amendment or modification.

## ARTICLE 9
## DISSOLUTION OF COMPANY

9.1     Events of Dissolution or Liquidation. The Company shall be dissolved and its affairs wound up upon the happening of either of the following events: (a) the written determination of each of the Members or (b) the entry of a decree of judicial dissolution under Section 18-802 of the Act.

9.2     Liquidation. After termination of the business of the Company, the assets of the Company shall be distributed in the following order of priority:

(a)     to creditors of the Company, including any Member if a creditor to the extent permitted by law, in satisfaction of liabilities of the Company (whether by payment thereof or the making of reasonable provision for payment thereof) other than liabilities for Distributions to the Member; and then

(b)     ratably to each Member in accordance with the number of Units then held by such Member.

## ARTICLE 10
## INDEMNIFICATION

9

10.1     General. The Company shall indemnify, defend, and hold harmless any Member, any director, officer, partner, stockholder, controlling Person or employee of any Member, each member of the Board of Managers, any officer, employee or agent of the Company and any Person serving at the request of the Company as a director, officer, employee, partner, trustee or independent contractor of another corporation, partnership, limited liability company, joint venture, trust or other enterprise (all of the foregoing Persons being referred to collectively as "Indemnified Parties" and individually as an "Indemnified Party") from any liability, loss or damage incurred by the Indemnified Party by reason of any act performed or omitted to be performed by the Indemnified Party pursuant to the authority granted by this Agreement or otherwise in connection with the business or affairs of the Company and from liabilities or obligations of the Company imposed on such Indemnified Party by virtue of such Indemnified Party's position with the Company, including reasonable attorneys' fees and costs and any amounts expended in the settlement of any such claims of liability, loss or damage, except for liabilities, losses, damages or obligations resulting from the Indemnified Party's gross negligence or willful misconduct; provided, however, that the indemnification under this Section 10.1 shall be recoverable only from the assets of the Company and not from any assets of any Member. Unless the Board of Managers determines in good faith that the Indemnified Party is unlikely to be entitled to indemnification under this Article 10, the Company shall pay or reimburse reasonable attorneys' fees of an Indemnified Party as incurred, provided that such Indemnified Party executes an undertaking, with appropriate security if requested by the Board of Managers, to repay the amount so paid or reimbursed in the event that a final non-appealable determination by a court of competent jurisdiction that such Indemnified Party is not entitled to indemnification under this Article 10. The Company may pay for insurance covering liability of the Indemnified Party for negligence in operation of the Company's affairs.

10.2     Exculpation. No Indemnified Party shall be liable, in damages or otherwise, to the Company or to any Member for any liability, loss or damage that arises out of any act performed or omitted to be performed by the Indemnified Party pursuant to the authority granted by this Agreement or otherwise in connection with the business or affairs of the Company. except for liabilities, losses or damages resulting from the Indemnified Party's gross negligence or willful misconduct.

10.3     Persons Entitled to Indemnity. Any Person who is within the definition of "Indemnified Party" at the time of any action or inaction in connection with the business of the Company shall be entitled to the benefits of this Article 10 as an "Indemnified Party" with respect thereto, regardless whether such Person continues to be within the definition of "Indemnified Party" at the time of such Indemnified Party's claim for indemnification or exculpation hereunder.

10.4     Procedure Agreements. The Company may enter into an agreement with any of its officers, employees, consultants, counsel and agents, any member of the Board of Managers or any Member, setting forth procedures consistent with applicable law for implementing the indemnities provided in this Article 10.

ARTICLE 11
MISCELLANEOUS

10

11.1    General. This Agreement: (a) shall be binding upon the legal successors of any Member; (b) shall be governed by and construed in accordance with the laws of the State of Delaware; and (c) contains the entire agreement as to the subject matter hereof. The waiver of any of the provisions, terms, or conditions contained in this Agreement shall not be considered as a waiver of any of the other provisions, terms, or conditions hereof.

11.2    Notices, Etc. All notices and other communications required or permitted hereunder shall be in writing and shall be deemed effectively given upon personal delivery or receipt (which may be evidenced by a return receipt if sent by registered mail or by signature if delivered by courier or delivery service), addressed to any Member at its address in the records of the Company or otherwise specified by the Member.

11.3    Gender and Number. Whenever required by the context, as used in this Agreement the singular number shall include the plural, the plural shall include the singular, and all words herein in any gender shall be deemed to include the masculine, feminine and neuter genders.

11.4    Severability. If any provision of this Agreement is determined by a court to be invalid or unenforceable, that determination shall not affect the other provisions hereof, each of which shall be construed and enforced as if the invalid or unenforceable portion were not contained herein. That invalidity or unenforceability shall not affect any valid and enforceable application thereof, and each said provision shall be deemed to be effective, operative, made, entered into or taken in the manner and to the full extent permitted by law.

11.5    Headings. The headings used in this Agreement are used for administrative convenience only and do not constitute substantive matter to be considered in construing the terms of this Agreement.

11.6    No Third Party Rights. Except for the provisions of Section 6.4, the provisions of this Agreement are for the benefit of the Company, each Member and permitted assignees and no other Person, including creditors of the Company, shall have any right or claim against the Company or any Member by reason of this Agreement or any provision hereof or be entitled to enforce any provision of this Agreement.

IN WITNESS WHEREOF, the Company has executed this Agreement as of the day and year first set forth above.

WANGNER ITELPA I LLC

By:_____

Name:
Title:

Schedule A

## REGISTER OF INTEREST

Holder of Interest                Unit Certificate Number                Units

Exhibit 4.4

MEETINGS OF MEMBERS, ETC.

1.      Annual Meeting.  There shall be an annual meeting of the Members which shall be (a) held at Westborough, Massachusetts on the second Thursday in June in each year, unless that day be a legal holiday at the place where the meeting is to be held, in which case the meeting shall be held at the same hour on the next succeeding day not a legal holiday, or (b) at such other place, date and time as shall be designated from time to time by the Board of Managers and stated in the notice of the meeting, at which meeting they shall elect a Board of Managers, determine Distributions, if any, and transact such other business as may be required by law or this Agreement or as may properly come before the meeting.

2.      Special Meetings.  A special meeting of the Members may be called at any time by the Chairman of the Board, if any, the President, the Board of Managers, or by the Members holding at least 50.0% of the Units then outstanding. A special meeting of the Members shall be called by the Secretary, or in the case of the death, absence, incapacity or refusal of the Secretary, by an Assistant Secretary or some other officer, upon application of a majority of the Board of Managers. Any such application shall state the purpose or purposes of the proposed meeting. Any such call shall state the place, date, hour and purposes of the meeting.

3.      Notice of Meetings.  Except as otherwise provided by law, a written notice of each meeting of the Members stating the place, day and hour thereof and, in the case of a special meeting, the purposes for which the meeting is called, shall be given not less then ten nor more than sixty days before the meeting, to each Member entitled to vote thereat, and to each Member who, by law or by this Agreement, is entitled to notice, by leaving such notice with such Member or at such Member's residence or usual place of business, or by depositing it in the United States mail, postage prepaid, and addressed to such Member at such Member's address as it appears in the records of the Company. Such notice shall be given by the Secretary, or by an officer or person designated by the Board of Managers, or in the case of a special meeting by the officer calling the meeting. As to any adjourned session of any meeting of the Members, notice of the adjourned meeting need not be given if the time and place thereof are announced at the meeting at which the adjournment was taken, except that if the adjournment is for more than thirty days or if after the adjournment a new record date is set for the adjourned session, notice of any such adjourned session of the meeting shall be given in the manner heretofore described. No notice of any meeting of the Members or any adjourned session thereof need be given to a Member if a written waiver of notice, executed before or after the meeting or such adjourned session by such Member, is filed with the records of the meeting or if such Member attends such meeting without objecting at the beginning of the meeting to the transaction of any business because the meeting is not lawfully called or convened. Neither the business to be transacted at, nor the purpose of, any meeting of the Members or any adjourned session thereof need be specified in any written waiver of notice.

4.      Quorum of Members.  At any meeting of the Members a quorum as to any matter shall consist of a majority of the votes entitled to be cast on the matter, except where a larger quorum is required by law or by this Agreement. Any meeting may be adjourned from time to time by a

majority of the votes properly cast upon the question, whether or not a quorum is present. If a quorum is present at an original meeting, a quorum need not be present at an adjourned session of that meeting.

5.       Action by Vote.  Each Member shall be entitled to one vote for each Unit held by such Member on all matters on which Members are entitled to vote at a meeting of Members or otherwise when a quorum is present at any meeting, a plurality of the votes properly cast for election to any office shall elect to such office and a majority of the votes properly cast upon any question other than an election to an office shall decide the question, except when a larger vote is required by law or by this Agreement. No ballot shall be required for any election unless requested by a Member present or represented at the meeting and entitled to vote in the election.

6.       Action without Meetings.  Any action required or permitted to be taken by Members for or in connection with any action of the Company may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holders of outstanding Units having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all Units entitled to vote thereon were present and voted and shall be delivered to the Company by delivery to its registered office in Delaware by hand or certified or registered mail, return receipt requested, to its principal place of business or to an officer or agent of the Company having custody of the book in which proceedings of meetings of Members are recorded. Each such written consent shall bear the date of signature of each Member who signs the consent. No written consent shall be effective to take the action referred to therein unless written consents signed by a number of Members sufficient to take such action are delivered to the Company in the manner specified in this paragraph within sixty days of the earliest dated consent so delivered.

If action is taken by consent of Members and in accordance with the foregoing, there shall be filed with the records of the meetings of Members the writing or writings comprising such consent.

If action is taken by less than unanimous consent of Members, prompt notice of the taking of such action without a meeting shall be given to those who have not consented in writing and a certificate signed and attested to by the Secretary that such notice was given shall be filed with the records of the meetings of Members.

7.       Proxy Representation. Every Member may authorize another person or persons to act for such Member by proxy in all matters in which a Member is entitled to participate, whether by waiving notice of any meeting, objecting to or voting or participating at a meeting, or expressing consent or dissent without a meeting. Every proxy must be signed by the Member or by such Member's attorney-in-fact. No proxy shall be voted or acted upon after three years from its date unless such proxy provides for a longer period. A duly executed proxy shall be irrevocable if it states that it is irrevocable and, if, and only as long as, it is coupled with an interest sufficient in law to support an irrevocable power. A proxy may be made irrevocable where the interest with which it is coupled is an interest in the Interest of such Member. The authorization of a proxy may but need not be limited to specified action; provided, however, that if a proxy limits its authorization to a meeting or meetings of Members, unless otherwise specifically provided such

proxy shall entitle the holder thereof to vote at any adjourned session but shall not be valid after the final adjournment thereof.

8.        Resolution of Issues.  To the extent that any dispute shall arise with respect thereto, the Board of Managers shall be entitled to decide all issues such as the existence of a quorum, the validity of proxies, the number of votes, the Members entitled to vote or consent and other similar procedural questions that are raised at any meeting of Members.

Exhibit 6.1

BOARD OF MANAGERS

1.      Number: Appointment.  The Board of Managers initially shall consist of three members (each such member, along with any other members appointed from time to time, the "Board Members"). Thereafter, the Board of Managers shall be elected either at the Annual Meeting of Members or at a special meeting called for such purposes. The Board of Managers may increase or decrease the number of Board Members from time to time upon a vote of the Board of Managers.

2.      Initial Board of Managers.  The following individuals will be the initial Board Members:

Stephen R. Light

David Maffucci

Ted Orban

3.      Tenure.  Each Board Member shall, unless otherwise provided by law, hold office until the next Annual Meeting of Members and until such Board Member's successor is elected and qualified, or until such Board Member sooner dies, resigns, is removed or becomes disqualified. Any Board Member may be removed by the Members, at any time without giving any reason for such removal. A Board Member may resign by written notice to the Company which resignation shall not require acceptance and, unless otherwise specified in the resignation notice, shall be effective upon receipt by the Company. Vacancies and any newly created positions on the Board of Managers resulting from any increase in the number of the Board of Managers may be filled by vote of the Members or by a majority of the Board Members then in office, although less than a quorum, or by a sole remaining Board member.

4.      Meetings.  Meetings of the Board of Managers may be held at any time at such places within or without the State of Delaware designated in the notice of the meeting, when called by the Chair of the Board of Managers, if any, the President or any two Board Members acting together, reasonable notice thereof being given to each Board Member.

5.      Notice.  It shall be reasonable and sufficient notice to a Board Member to send notice by overnight delivery at least forty-eight hours or by facsimile at least twenty-four hours before the meeting addressed to such Board Member at such Board Member's usual or last known business or residence address or to give notice to such Board Member in person or by telephone at least twenty-four hours before the meeting. Notice of a meeting need not be given to any Board Member if a written waiver of notice, executed by such Board Member before or after the meeting, is filed with the records of the meeting, or to any Board Member who attends the meeting without protesting prior thereto or at its commencement the lack of notice to such Board Member. Neither notice of a meeting nor a waiver of a notice need specify the purposes of the meeting.

6.      Quorum.  Except as may be otherwise provided by law, at any meeting of the Board of Managers a majority of the Board Members then in office shall constitute a quorum. Any meeting may be adjourned from time to time by a majority of the votes cast upon the question, whether or not a quorum is present, and the meeting may be held as adjourned without further notice.

7.      Action by Vote.  Except as may be otherwise provided by law, when a quorum is present at any meeting the vote of a majority of the Board Members present shall be the act of the Board of Managers.

8.      Action Without a Meeting.  Any action required or permitted to be taken at any meeting of the Board of Managers may be taken without a meeting if all the Board Members consent thereto in writing, and such writing or writings are filed with the records of the meetings of the Board of Managers. Such consent shall be treated for all purposes as the act of the Board of Managers.

9.      Participation in Meetings by Conference Telephone.  Board Members may participate in a meeting of the Board of Managers by means of conference telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other or by any other means permitted by law. Such participation shall constitute presence in person at such meeting.

10.     Interested Transactions.

(a)     No contract or transaction between the Company and one or more of the Board Members or officers, or between the Company and any other company, partnership, association, or other organization in which one or more of the Board Members or officers are directors or officers, or have a financial interest, shall be void or voidable solely for this reason, or solely because the Board Member or officer is present at or participates in the meeting of the Board of Managers which authorizes the contract or transaction, or solely because his or their votes are counted for such purpose, if:

(i)      The material facts as to such Board Member's relationship or interest and as to the contract or transaction are disclosed or are known to the Board of Managers, and the Board of Managers in good faith authorizes the contract or transaction by the affirmative votes of a majority of the disinterested Board Members, even though the disinterested Board Members be less than a quorum; or

(ii)     The contract or transaction is fair as to the Company as of the time it is authorized, approved or ratified, by the Board of Managers.

(b)     Common or interested Board Members may be counted in determining the presence of a quorum at a meeting of the Board of Managers which authorizes the contract or transaction.

Exhibit 6.3

## OFFICERS

| |
|---|
| Stephen R. Light -- President and Assistant Secretary |
| David Maffucci -- Executive Vice President, Chief Financial Officer and Asst. Secretary |
| Ted Orban -- Secretary |
| Elizabeth Leete -- Assistant Secretary |

WANGNER ITELPA II LLC

AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT

Dated as of _____, 2010

WANGNER ITELPA II LLC
AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT

This Amended and Restated Limited Liability Company Agreement ("Agreement") of Wangner Itelpa II LLC (the "Company") is made as of _____, ____, as required by that certain amended joint prepackaged plan of reorganization under chapter 11 of the Bankruptcy Code of Wangner Itelpa II LLC and certain of its debtor affiliates, as filed with the United States Bankruptcy Court for the District of Delaware (the "Court") on March 30, 2010 (Case No. 10-_____ (___)) and confirmed by the Court on _____, ____ (the "Plan").

WHEREAS, Xerium Technologies, Inc, (the "Original Member") wishes to form a limited liability company pursuant to and in accordance with the Delaware Limited Liability Company Act in order to conduct the business described herein.

NOW, THEREFORE, the Original Member agrees with the Company as follows:

ARTICLE 1
DEFINITIONS

For purposes of this Agreement the following terms have the following meanings:

"Act" means the Delaware Limited Liability Company Act (6 Del. C. § 18-101, et seq.) as amended and in effect from time to time.

"Affiliate" means, with respect to any specified Person, any Person that directly or through one or more intermediaries controls or is controlled by or is under common control with the specified Person. As used in this definition, the term "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through ownership of voting securities, by contract or otherwise.

"Agreement" means this Amended and Restated Limited Liability Company Agreement of the Company dated as of _____, 2010 as amended from time to time.

"Capital Contribution" means the amount of cash and the fair market value of any other property contributed to the Company with respect to any Interest held by a Member.

"Certificate" means the Certificate of Formation of the Company filed on December 1, 2004 and any and all amendments thereto and restatements thereof filed on behalf of the Company as permitted hereunder with the office of the Secretary of State of the State of Delaware.

"Code" means the Internal Revenue Code of 1986, as amended from time to time, and the corresponding provisions of any future federal tax law.

"Company" means the limited liability company formed by virtue of this Agreement and the filing of the Certificate in accordance with the Act.

"Distribution" means the amount of cash and the fair market value of any other property distributed in respect of a Member's Interest in the Company.

"Fiscal Year" means the fiscal year of the Company which shall end on December 31 in each year or on such other date in each year as determined by the Board of Managers.

"Indemnified Party" is defined in Section 10.1.

"Interest" means the interest of a Member in the capital and profits of the Company, including the right of such Member to any and all benefits to which such Member may be entitled as provided in this Agreement, together with the obligations of such Member to comply with all the terms and provisions of this Agreement.

"Member" means the Original Member and any other Person that both acquires an Interest in the Company and is admitted to the Company as a Member pursuant to this Agreement, from time to time.

"Original Member" is defined in Section 3.1.

"Person" means an individual, partnership, joint venture, association, corporation, trust, estate, limited liability company, limited liability partnership, or any other legal entity.

"Unit Certificate" is defined in Section 3.6.

"Units" are a measure of a Member's Interest in the Company.


ARTICLE 2
FORMATION AND PURPOSE

2.1    Formation, etc. The Company was formed as a limited liability company in accordance with the Act by the filing of the Certificate with the Secretary of State of Delaware on December 1, 2004. The rights, duties and liabilities of each Member and the Board of Managers shall be determined pursuant to the Act and this Agreement. To the extent that such rights, duties or obligations are different by reason of any provision of this Agreement than they would be in the absence of such provision, this Agreement shall, to the extent permitted by the Act, control.

2.2    Name. The name of the Company is WANGNER ITELPA II LLC. The business of the Company may be conducted under that name or, upon compliance with applicable laws, any other name that the Board of Managers deems appropriate or advisable. The Board of Managers shall file, or shall cause to be filed, any fictitious name certificates and similar filings, and any amendments thereto, that the Board of Managers considers appropriate or advisable.

2.3     Registered Office/Agent. The registered office required to be maintained by the Company in the State of Delaware pursuant to the Act shall initially be c/o Corporation Service

Company, 2711 Centerville Road, Suite 400, County of New Castle, Wilmington, Delaware 19808. The name and address of the registered agent of the Company pursuant to the Act shall initially be Corporation Service Company, 2711 Centerville Road, Suite 400, County of New Castle, Wilmington, Delaware 19808. The Company may, upon compliance with the applicable provisions of the Act, change its registered office or registered agent from time to time in the discretion of the Board of Managers.

2.4     Term. The term of the Company shall continue indefinitely unless sooner terminated as provided herein. The existence of the Company as a separate legal entity shall continue until the cancellation of the Certificate as provided in the Act.

2.5     Purpose. The Company is formed for the purpose of, and the nature of the business to be conducted by the Company is, engaging in any lawful act or activity for which limited liability companies may be formed under the Act and engaging in any activities necessary, advisable, convenient or incidental thereto.

2.6     Specific Powers. Without limiting the generality of Section 2.5, the Company shall have the power and authority to take any and all actions necessary, appropriate, proper, advisable, incidental or convenient to or for the furtherance of the purpose set forth in Section 2.5, including, but not limited to, the power:

2.6.1    to conduct its business, carry on its operations and have and exercise the powers granted to a limited liability company by the Act in any country, state, territory, district or other jurisdiction, whether domestic or foreign;

2.6.2    to acquire by purchase, lease, contribution of property or otherwise, own, hold, operate, maintain, finance, improve, lease, sell, convey, mortgage, transfer, demolish or dispose of any real or personal property;

2.6.3    to negotiate, enter into, renegotiate, extend, renew, terminate, modify, amend, waive, execute, perform and carry out and take any other action with respect to contracts or agreements of any kind, including without limitation leases, licenses, guarantees and other contracts for the benefit of or with any Member or any Affiliate of any Member, without regard to whether such contracts may be deemed necessary, convenient to, or incidental to the accomplishment of the purposes of the Company;

2.6.4    to purchase, take, receive, subscribe for or otherwise acquire, own, hold, vote, use, employ, sell, mortgage, lend, pledge, or otherwise dispose of, and otherwise use and deal in and with, shares or other interests in or obligations of domestic or foreign corporations, associations, general or limited partnerships, trusts, limited liability companies, or individuals or other persons or direct or indirect obligations of the United States or of any government, state, territory, governmental district or municipality or of any instrumentality of any of them;

2.6.5    to lend money, to invest and reinvest its funds, and to accept real and personal property for the payment of funds so loaned or invested;

2.6.6    to borrow money and issue evidence of indebtedness, and to secure the same by a mortgage, pledge, security interest or other lien on the assets of the Company;

2.6.7    to pay, collect, compromise, litigate, arbitrate or otherwise adjust or settle any and all other claims or demands of or against the Company or to hold such proceeds against the payment of contingent liabilities;

2.6.8    to sue and be sued, complain and defend, and participate in administrative or other proceedings, in its name;

2.6.9    to appoint employees, officers, agents and representatives of the Company, and define their duties and fix their compensation;

2.6.10  to indemnify any Person in accordance with the Act and this Agreement;

2.6.11  to cease its activities and cancel its Certificate; and

2.6.12  to make, execute, acknowledge and file any and all documents or instruments necessary, convenient or incidental to the accomplishment of the purpose of the Company.

2.7    Certificate. The filing of the Certificate by Michael J. Stick is hereby ratified and confirmed and said Person is hereby designated as an "authorized person" within the meaning of the Act to execute, deliver and file the Certificate and Stephen R. Light, David Maffucci, Ted Orban and Elizabeth Leete and such other Persons as may be designated from time to time by the Board of Managers are designated as authorized persons, within the meaning of the Act, to execute, deliver and file any amendments or restatements of the Certificate or any certificate of cancellation of the Certificate and any other certificates necessary for the Company to qualify to do business in a jurisdiction in which the Company may wish to conduct business.

2.8.    Principal Office. The principal executive office of the Company shall be located at such place within or without the State of Delaware as the Board of Managers shall establish, and the Board of Managers may from time to time change the location of the principal executive office of the Company to any place within or without the State of Delaware. The Board of Managers may establish and maintain such additional offices and places of business of the Company, either within or without the State of Delaware, as it deems appropriate.

ARTICLE 3
ORIGINAL MEMBER; CAPITAL CONTRIBUTIONS; AND UNITS

3.1    Initial Capital Contribution. Upon the making of the initial Capital Contribution to the Company, which shall be in the amount of $100 and the Person making such Capital Contribution agreeing in writing to be bound by this Agreement as a Member, such Person shall

be admitted as the first Member (the "Original Member") and acquire a limited liability company interest in the Company. The initial Capital Contribution shall be allocated to a stated capital account of the Company.

3.2     Additional Capital Contributions. The Members shall make additional Capital Contributions to the Company for such purposes, at such times and in such amounts as shall be agreed by the Members holding not less than 75.0% of the then outstanding Units at a meeting of the Members held pursuant to Section 4.4 and Exhibit 4.4.

3.3     Return of Capital Contributions. No Member shall have the right to demand a return of all or any part of its Capital Contributions, and any return of the Capital Contributions of a Member shall be made solely from the assets of the Company and only in accordance with the terms of this Agreement. No interest shall be paid to any Member with respect to its Capital Contributions.

3.4     Registration of Interests. Each Interest constitutes a "security," as such term is defined in 6 Del. C. § 8-102(15), governed by Article 8 of the Uniform Commercial Code as in effect in the State of Delaware (6 Del. C. 8-101, et seq.). The Company shall maintain a record of the ownership of the Interests which shall be in the form set forth on Schedule A and which shall be amended from time to time to reflect transfers of the ownership of the Interests. An Interest shall be transferred by delivery to the Company of an instruction by the registered owner of the Interest requesting registration of transfer of such Interest (accompanied by a duly indorsed security certificate representing such Interest or affidavit of loss therefore) and the recording of such transfer in the records of the Company.

3.5     Units. Upon the admission of the Original Member as a Member, the Interest of the Original Member shall be divided into 100 Units.  Notwithstanding anything to the contrary contained herein, the Company may not issue Units that would be deemed to be non-voting securities as contemplated by section 1123(a)(6) of the Title 11 of the United States Code, and any provision contained herein that would render the Units non-voting equity units  as contemplated by section 1123(a)(6) of Title 11 of the United States Code shall be deemed null and void.  The Board of Managers may issue additional Units to any Member in respect of additional Capital Contributions.

3.6     Unit Certificate. Each Member shall be entitled to a certificate stating the number of Units held by the Member in such form as shall, in conformity with law and this Agreement, be prescribed from time to time by the Board of Managers (a "Unit Certificate"). Such Unit Certificate shall be signed by the Chair of the Board of Managers or the President or any Vice President and by the Treasurer or an Assistant Treasurer or by the Secretary or an Assistant Secretary.

3.7     Loss of Certificate. In the case of the alleged theft, loss, destruction or mutilation of a Unit Certificate, a duplicate certificate may be issued in place thereof, upon such terms, including receipt of a bond sufficient to indemnify the Company against any claim on account thereof, as the Board of Managers may prescribe.

ARTICLE 4
STATUS AND RIGHTS OF MEMBERS

4.1     Limited Liability. Except as otherwise provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and no Member, no member of the Board of Managers and no other Indemnified Party shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member, a member of the Board of Managers or an Indemnified Party. All Persons dealing with the Company shall look solely to the assets of the Company for the payment of the debts, obligations or liabilities of the Company.

4.2     Return of Distributions of Capital. Except as otherwise expressly required by law, no Member, in its capacity as such, shall have any liability either to the Company or any of its creditors in excess of (a) any assets and undistributed profits of the Company and (b) to the extent required by law, the amount of any Distributions wrongfully distributed to it. Except as required by law or a court of competent jurisdiction, no Member or investor in or partner of a Member shall be obligated by this Agreement to return any Distribution to the Company or pay the amount of any Distribution for the account of the Company or to any creditor of the Company. The amount of any Distribution returned to the Company by or on behalf of a Member or paid by or on behalf of a Member for the account of the Company or to a creditor of the Company shall be added to the account or accounts from which it was subtracted when it was distributed to such Member.

4.3     No Management or Control. No Member shall take any part in or interfere in any manner with the management of the business and affairs of the Company or have any right or authority to act for or bind the Company.

4.4     Meetings of Members. Meetings of Members shall be held and conducted, and the voting rights of Members shall be, as set forth on Exhibit 4.4 hereto.

ARTICLE 5
DISTRIBUTIONS

5.1     Distributions. Subject to the requirements of the Act, the amount and timing of all Distributions shall be determined by the Member or Members at a meeting called for such purpose. All Distributions shall be made ratably to each Member in accordance with the number of Units then held by such Member. Distributions may be made in cash, securities or other property.

5.2     Withholding. The Company is hereby authorized to withhold and pay over any withholding or other taxes payable by the Company as a result of a Member's status as a Member hereunder.

ARTICLE 6
MANAGEMENT

6.1    <u>Management</u>. The business of the Company shall be managed by a Board of Managers, and the Persons constituting the Board of Managers shall be the "managers" of the Company for all purposes under the Act. The Board of Managers as of the date hereof shall be the Persons set forth in Exhibit 6.1. Thereafter, the Persons constituting the Board of Managers shall be elected by the Members in accordance with Exhibit 4.4 hereto. Decisions of the Board of Managers shall be embodied in a vote or resolution adopted in accordance with the procedures set forth in Exhibit 6.1. Such decisions shall be decisions of the "manager" for all purposes of the Act and shall be carried out by any member of the Board of Managers or by officers or agents of the Company designated by the Board of Managers in the vote or resolution in question or in one or more standing votes or resolutions or with the power and authority to do so under Section 6.3. A decision of the Board of Managers may be amended, modified or repealed in the same manner in which it was adopted or in accordance with the procedures set forth in Exhibit 6.1 as then in effect, but no such amendment, modification or repeal shall affect any Person who has been furnished a copy of the original vote or resolution, certified by a duly authorized agent of the Company, until such Person has been notified in writing of such amendment, modification or repeal.

6.2    <u>Authority of Board of Managers</u>. The Board of Managers shall have the exclusive power and authority to manage the business and affairs of the Company and to make all decisions with respect thereto. Except as otherwise expressly provided in this Agreement, the Board of Managers or Persons designated by the Board of Managers, including officers and agents appointed by the Board of Managers, shall be the only Persons authorized to execute documents which shall be binding on the Company. To the fullest extent permitted by Delaware law, the Board of Managers shall have the power to do any and all acts, statutory or otherwise, with respect to the Company of this Agreement, which would otherwise be possessed by the Member or Members under the laws of the State of Delaware, and the Member or Members shall have no power whatsoever with respect to the management of the business and affairs of the Company. The owner and authority granted to the Board of Managers hereunder shall include all those necessary or convenient for the furtherance of the purposes of the Company and shall include the power to make all decisions with regard to the management, operations, assets, financing and capitalization of the Company, including without limitation, the power and authority to undertake and make decisions concerning: (a) hiring and firing of employees, attorneys, accountants, brokers, investment bankers and other advisors and consultants, (b) entering into of leases for real or personal property, (c) opening of bank and other deposit accounts and operations thereunder, (d) purchasing, constructing, improving, developing and maintaining of real property, (e) purchasing of insurance, goods, supplies, equipment, materials and other personal property, (f) borrowing of money, obtaining of credit, issuance of notes, debentures, securities, equity or other interests of or in the Company and securing of the obligations undertaken in connection therewith with mortgages on and security interests in all or any portion of the real or personal property of the Company, (g) making of investments in or the acquisition of securities of any Person, (h) giving of guarantees and indemnities, (i) entering into of contracts or agreements whether in the ordinary course of business or otherwise, (j) mergers with or acquisitions of other Persons, (k) the sale or lease of all or any portion of the assets of the Company, (1) forming subsidiaries or joint ventures, (m) compromising, arbitrating, adjusting and litigating claims in favor of or against the Company and (n) all other acts or activities necessary or desirable for the carrying out of the purposes of the Company including those referred to in Section 2.6.

6.3    <u>Officers; Agents</u>. The Board of Managers by vote or resolution shall have the power to appoint officers and agents to act for the Company with such titles, if any, as the Board of Managers deems appropriate and to delegate to such officers or agents such of the powers as are granted to the Board of Managers hereunder, including the power to execute documents on behalf of the Company, as the Board of Managers may in its sole discretion determine; provided, however, that no such delegation by the Board of Managers shall cause the Persons constituting the Board of Managers to cease to be the "managers" of the Company within the meaning of the Act. The officers or agents so appointed may include persons holding titles such as Chairman, Chief Executive Officer, Chief Operating Officer, President, Chief Financial Officer, Executive Vice President, Vice President, Treasurer, Controller, Secretary or Assistant Secretary. An officer may be removed at any time with or without cause. The officers of the Company as of the date hereof are set forth on Exhibit 6.3. Unless the authority of the agent designated as the officer in question is limited in the document appointing such officer or is otherwise specified by the Board of Managers, any officer so appointed shall have the same authority to act for the Company as a corresponding officer of a Delaware corporation would have to act for a corporation in the absence of a specific delegation of authority and all deeds, leases, transfers, contracts, bonds, notes, checks, drafts or other obligations made, accepted or endorsed by the corporation may be signed by the Chairman, if any, the President, a Vice President or the Treasurer, Controller, Secretary or Assistant Secretary at the time in office. The Board of Managers, in its sole discretion, may by vote or resolution of the Board of Managers ratify any act previously taken by an officer or agent acting on behalf of the Company.

6.4    <u>Reliance by Third Parties</u>. Any person or entity dealing with the Company or any Member may rely upon a certificate signed by a member of the Board of Managers as to: (a) the identity of the Member or the members of the Board of Managers, (b) the existence or nonexistence of any fact or facts which constitute a condition precedent to acts by the Member or the Board of Managers or are in any other manner germane to the affairs of the Company, (c) the Persons which are authorized to execute and deliver any instrument or document of or on behalf of the Company, (d) the authorization of any action taken by or on behalf of the Company, the Board of Managers or any officer or agent acting on behalf of the Company or (e) any act or failure to act by the Company or as to any other matter whatsoever involving the Company or the Member.

ARTICLE 7<br><u>TRANSFER OF INTERESTS</u>

Any Member may sell, assign, pledge, encumber, dispose of or otherwise transfer all or any part of the economic or other rights that comprise its Interest. If so determined by such Member, the transferee shall have the right to be substituted for the Member under this Agreement for the transferor or as an additional Member if the Member transfers less than all of its Interest. No Member may withdraw or resign as Member except as a result of a transfer pursuant to this Article 7 in which the transferee is substituted for the Member. None of the events described in Section 18-304 of the Act shall cause a Member to cease to be a Member of the Company.

ARTICLE 8
AMENDMENTS TO AGREEMENT

This Agreement may be amended or modified as shall be agreed by the Members holding not less than 75.0% of the then outstanding Units at a meeting of the Members held pursuant to Section 4.4 and Exhibit 4.4. The Board of Managers shall cause to be prepared and filed any amendment to the Certificate that may be required to be filed under the Act as a consequence of any such amendment or modification.

ARTICLE 9
DISSOLUTION OF COMPANY

9.1     Events of Dissolution or Liquidation. The Company shall be dissolved and its affairs wound up upon the happening of either of the following events: (a) the written determination of each of the Members or (b) the entry of a decree of judicial dissolution under Section 18-802 of the Act.

9.2     Liquidation. After termination of the business of the Company, the assets of the Company shall be distributed in the following order of priority:

(a)     to creditors of the Company, including any Member if a creditor to the extent permitted by law, in satisfaction of liabilities of the Company (whether by payment thereof or the making of reasonable provision for payment thereof) other than liabilities for Distributions to the Member; and then

(b)     ratably to each Member in accordance with the number of Units then held by such Member.

ARTICLE 10
INDEMNIFICATION

10.1    General. The Company shall indemnify, defend, and hold harmless any Member, any director, officer, partner, stockholder, controlling Person or employee of any Member, each member of the Board of Managers, any officer, employee or agent of the Company and any Person serving at the request of the Company as a director, officer, employee, partner, trustee or independent contractor of another corporation, partnership, limited liability company, joint venture, trust or other enterprise (all of the foregoing Persons being referred to collectively as

"Indemnified Parties" and individually as an "Indemnified Party") from any liability, loss or damage incurred by the Indemnified Party by reason of any act performed or omitted to be performed by the Indemnified Party pursuant to the authority granted by this Agreement or otherwise in connection with the business or affairs of the Company and from liabilities or obligations of the Company imposed on such Indemnified Party by virtue of such Indemnified Party's position with the Company, including reasonable attorneys' fees and costs and any amounts expended in the settlement of any such claims of liability, loss or damage, except for liabilities, losses, damages or obligations resulting from the Indemnified Party's gross negligence or willful misconduct; provided, however, that the indemnification under this Section 10.1 shall be recoverable only from the assets of the Company and not from any assets of any Member. Unless the Board of Managers determines in good faith that the Indemnified Party is unlikely to be entitled to indemnification under this Article 10, the Company shall pay or reimburse reasonable attorneys' fees of an Indemnified Party as incurred, provided that such Indemnified Party executes an undertaking, with appropriate security if requested by the Board of Managers, to repay the amount so paid or reimbursed in the event that a final non-appealable determination by a court of competent jurisdiction that such Indemnified Party is not entitled to indemnification under this Article 10. The Company may pay for insurance covering liability of the Indemnified Party for negligence in operation of the Company's affairs.

10.2    Exculpation. No Indemnified Party shall be liable, in damages or otherwise, to the Company or to any Member for any liability, loss or damage that arises out of any act performed or omitted to be performed by the Indemnified Party pursuant to the authority granted by this Agreement or otherwise in connection with the business or affairs of the Company. except for liabilities, losses or damages resulting from the Indemnified Party's gross negligence or willful misconduct.

10.3    Persons Entitled to Indemnity. Any Person who is within the definition of "Indemnified Party" at the time of any action or inaction in connection with the business of the Company shall be entitled to the benefits of this Article 10 as an "Indemnified Party" with respect thereto, regardless whether such Person continues to be within the definition of "Indemnified Party" at the time of such Indemnified Party's claim for indemnification or exculpation hereunder.

10.4    Procedure Agreements. The Company may enter into an agreement with any of its officers, employees, consultants, counsel and agents, any member of the Board of Managers or any Member, setting forth procedures consistent with applicable law for implementing the indemnities provided in this Article 10.

ARTICLE 11
MISCELLANEOUS

11.1    General. This Agreement: (a) shall be binding upon the legal successors of any Member; (b) shall be governed by and construed in accordance with the laws of the State of Delaware; and (c) contains the entire agreement as to the subject matter hereof. The waiver of any of the provisions, terms, or conditions contained in this Agreement shall not be considered as a waiver of any of the other provisions, terms, or conditions hereof.

11.2     Notices, Etc. All notices and other communications required or permitted hereunder shall be in writing and shall be deemed effectively given upon personal delivery or receipt (which may be evidenced by a return receipt if sent by registered mail or by signature if delivered by courier or delivery service), addressed to any Member at its address in the records of the Company or otherwise specified by the Member.

11.3     Gender and Number. Whenever required by the context, as used in this Agreement the singular number shall include the plural, the plural shall include the singular, and all words herein in any gender shall be deemed to include the masculine, feminine and neuter genders.

11.4     Severability. If any provision of this Agreement is determined by a court to be invalid or unenforceable, that determination shall not affect the other provisions hereof, each of which shall be construed and enforced as if the invalid or unenforceable portion were not contained herein. That invalidity or unenforceability shall not affect any valid and enforceable application thereof, and each said provision shall be deemed to be effective, operative, made, entered into or taken in the manner and to the full extent permitted by law.

11.5     Headings. The headings used in this Agreement are used for administrative convenience only and do not constitute substantive matter to be considered in construing the terms of this Agreement.

11.6     No Third Party Rights. Except for the provisions of Section 6.4, the provisions of this Agreement are for the benefit of the Company, each Member and permitted assignees and no other Person, including creditors of the Company, shall have any right or claim against the Company or any Member by reason of this Agreement or any provision hereof or be entitled to enforce any provision of this Agreement.

IN WITNESS WHEREOF, the Company has executed this Agreement as of the day and year first set forth above.

WANGNER ITELPA II LLC

By:_____

Name:
Title:

Schedule A

REGISTER OF INTEREST

Holder of Interest                Unit Certificate Number            Units

Exhibit 4.4

MEETINGS OF MEMBERS, ETC.

1.      Annual Meeting.  There shall be an annual meeting of the Members which shall be (a) held at Westborough, Massachusetts on the second Thursday in June in each year, unless that day be a legal holiday at the place where the meeting is to be held, in which case the meeting shall be held at the same hour on the next succeeding day not a legal holiday, or (b) at such other place, date and time as shall be designated from time to time by the Board of Managers and stated in the notice of the meeting, at which meeting they shall elect a Board of Managers, determine Distributions, if any, and transact such other business as may be required by law or this Agreement or as may properly come before the meeting.

2.      Special Meetings.  A special meeting of the Members may be called at any time by the Chairman of the Board, if any, the President, the Board of Managers, or by the Members holding at least 50.0% of the Units then outstanding. A special meeting of the Members shall be called by the Secretary, or in the case of the death, absence, incapacity or refusal of the Secretary, by an Assistant Secretary or some other officer, upon application of a majority of the Board of Managers. Any such application shall state the purpose or purposes of the proposed meeting. Any such call shall state the place, date, hour and purposes of the meeting.

3.      Notice of Meetings.  Except as otherwise provided by law, a written notice of each meeting of the Members stating the place, day and hour thereof and, in the case of a special meeting, the purposes for which the meeting is called, shall be given not less then ten nor more than sixty days before the meeting, to each Member entitled to vote thereat, and to each Member who, by law or by this Agreement, is entitled to notice, by leaving such notice with such Member or at such Member's residence or usual place of business, or by depositing it in the United States mail, postage prepaid, and addressed to such Member at such Member's address as it appears in the records of the Company. Such notice shall be given by the Secretary, or by an officer or person designated by the Board of Managers, or in the case of a special meeting by the officer calling the meeting. As to any adjourned session of any meeting of the Members, notice of the adjourned meeting need not be given if the time and place thereof are announced at the meeting at which the adjournment was taken, except that if the adjournment is for more than thirty days or if after the adjournment a new record date is set for the adjourned session, notice of any such adjourned session of the meeting shall be given in the manner heretofore described. No notice of any meeting of the Members or any adjourned session thereof need be given to a Member if a written waiver of notice, executed before or after the meeting or such adjourned session by such Member, is filed with the records of the meeting or if such Member attends such meeting without objecting at the beginning of the meeting to the transaction of any business because the meeting is not lawfully called or convened. Neither the business to be transacted at, nor the purpose of, any meeting of the Members or any adjourned session thereof need be specified in any written waiver of notice.

4.      Quorum of Members.  At any meeting of the Members a quorum as to any matter shall consist of a majority of the votes entitled to be cast on the matter, except where a larger quorum is required by law or by this Agreement. Any meeting may be adjourned from time to time by a

majority of the votes properly cast upon the question, whether or not a quorum is present. If a quorum is present at an original meeting, a quorum need not be present at an adjourned session of that meeting.

5.      Action by Vote.  Each Member shall be entitled to one vote for each Unit held by such Member on all matters on which Members are entitled to vote at a meeting of Members or otherwise when a quorum is present at any meeting, a plurality of the votes properly cast for election to any office shall elect to such office and a majority of the votes properly cast upon any question other than an election to an office shall decide the question, except when a larger vote is required by law or by this Agreement. No ballot shall be required for any election unless requested by a Member present or represented at the meeting and entitled to vote in the election.

6.      Action without Meetings.  Any action required or permitted to be taken by Members for or in connection with any action of the Company may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holders of outstanding Units having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all Units entitled to vote thereon were present and voted and shall be delivered to the Company by delivery to its registered office in Delaware by hand or certified or registered mail, return receipt requested, to its principal place of business or to an officer or agent of the Company having custody of the book in which proceedings of meetings of Members are recorded. Each such written consent shall bear the date of signature of each Member who signs the consent. No written consent shall be effective to take the action referred to therein unless written consents signed by a number of Members sufficient to take such action are delivered to the Company in the manner specified in this paragraph within sixty days of the earliest dated consent so delivered.

        If action is taken by consent of Members and in accordance with the foregoing, there shall be filed with the records of the meetings of Members the writing or writings comprising such consent.

        If action is taken by less than unanimous consent of Members, prompt notice of the taking of such action without a meeting shall be given to those who have not consented in writing and a certificate signed and attested to by the Secretary that such notice was given shall be filed with the records of the meetings of Members.

7.      Proxy Representation. Every Member may authorize another person or persons to act for such Member by proxy in all matters in which a Member is entitled to participate, whether by waiving notice of any meeting, objecting to or voting or participating at a meeting, or expressing consent or dissent without a meeting. Every proxy must be signed by the Member or by such Member's attorney-in-fact. No proxy shall be voted or acted upon after three years from its date unless such proxy provides for a longer period. A duly executed proxy shall be irrevocable if it states that it is irrevocable and, if, and only as long as, it is coupled with an interest sufficient in law to support an irrevocable power. A proxy may be made irrevocable where the interest with which it is coupled is an interest in the Interest of such Member. The authorization of a proxy may but need not be limited to specified action; provided, however, that if a proxy limits its authorization to a meeting or meetings of Members, unless otherwise specifically provided such

proxy shall entitle the holder thereof to vote at any adjourned session but shall not be valid after the final adjournment thereof.

8.      Resolution of Issues.  To the extent that any dispute shall arise with respect thereto, the Board of Managers shall be entitled to decide all issues such as the existence of a quorum, the validity of proxies, the number of votes, the Members entitled to vote or consent and other similar procedural questions that are raised at any meeting of Members.

<u>Exhibit 6.1</u>

## BOARD OF MANAGERS

1.    <u>Number: Appointment</u>.  The Board of Managers initially shall consist of three members (each such member, along with any other members appointed from time to time, the "Board Members"). Thereafter, the Board of Managers shall be elected either at the Annual Meeting of Members or at a special meeting called for such purposes. The Board of Managers may increase or decrease the number of Board Members from time to time upon a vote of the Board of Managers.

2.    <u>Initial Board of Managers</u>.  The following individuals will be the initial Board Members:

Stephen R. Light

David Maffucci

Ted Orban

3.    <u>Tenure</u>.  Each Board Member shall, unless otherwise provided by law, hold office until the next Annual Meeting of Members and until such Board Member's successor is elected and qualified, or until such Board Member sooner dies, resigns, is removed or becomes disqualified. Any Board Member may be removed by the Members, at any time without giving any reason for such removal. A Board Member may resign by written notice to the Company which resignation shall not require acceptance and, unless otherwise specified in the resignation notice, shall be effective upon receipt by the Company. Vacancies and any newly created positions on the Board of Managers resulting from any increase in the number of the Board of Managers may be filled by vote of the Members or by a majority of the Board Members then in office, although less than a quorum, or by a sole remaining Board member.

4.    <u>Meetings</u>.  Meetings of the Board of Managers may be held at any time at such places within or without the State of Delaware designated in the notice of the meeting, when called by the Chair of the Board of Managers, if any, the President or any two Board Members acting together, reasonable notice thereof being given to each Board Member.

5.    <u>Notice</u>.  It shall be reasonable and sufficient notice to a Board Member to send notice by overnight delivery at least forty-eight hours or by facsimile at least twenty-four hours before the meeting addressed to such Board Member at such Board Member's usual or last known business or residence address or to give notice to such Board Member in person or by telephone at least twenty-four hours before the meeting. Notice of a meeting need not be given to any Board Member if a written waiver of notice, executed by such Board Member before or after the meeting, is filed with the records of the meeting, or to any Board Member who attends the meeting without protesting prior thereto or at its commencement the lack of notice to such Board Member. Neither notice of a meeting nor a waiver of a notice need specify the purposes of the meeting.

6.      Quorum.  Except as may be otherwise provided by law, at any meeting of the Board of Managers a majority of the Board Members then in office shall constitute a quorum. Any meeting may be adjourned from time to time by a majority of the votes cast upon the question, whether or not a quorum is present, and the meeting may be held as adjourned without further notice.

7.      Action by Vote.  Except as may be otherwise provided by law, when a quorum is present at any meeting the vote of a majority of the Board Members present shall be the act of the Board of Managers.

8.      Action Without a Meeting.  Any action required or permitted to be taken at any meeting of the Board of Managers may be taken without a meeting if all the Board Members consent thereto in writing, and such writing or writings are filed with the records of the meetings of the Board of Managers. Such consent shall be treated for all purposes as the act of the Board of Managers.

9.      Participation in Meetings by Conference Telephone.  Board Members may participate in a meeting of the Board of Managers by means of conference telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other or by any other means permitted by law. Such participation shall constitute presence in person at such meeting.

10.     Interested Transactions.

(a)      No contract or transaction between the Company and one or more of the Board Members or officers, or between the Company and any other company, partnership, association, or other organization in which one or more of the Board Members or officers are directors or officers, or have a financial interest, shall be void or voidable solely for this reason, or solely because the Board Member or officer is present at or participates in the meeting of the Board of Managers which authorizes the contract or transaction, or solely because his or their votes are counted for such purpose, if:

(i)      The material facts as to such Board Member's relationship or interest and as to the contract or transaction are disclosed or are known to the Board of Managers, and the Board of Managers in good faith authorizes the contract or transaction by the affirmative votes of a majority of the disinterested Board Members, even though the disinterested Board Members be less than a quorum; or

(ii)      The contract or transaction is fair as to the Company as of the time it is authorized, approved or ratified, by the Board of Managers.

(b) Common or interested Board Members may be counted in determining the presence of a quorum at a meeting of the Board of Managers which authorizes the contract or transaction.

Exhibit 6.3

## OFFICERS

| |
|---|
| Stephen R. Light -- President and Assistant Secretary |
| David Maffucci -- Executive Vice President, Chief Financial Officer and Asst. Secretary |
| Ted Orban -- Secretary |
| Elizabeth Leete -- Assistant Secretary |

**WEAVEXX, LLC**

**AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT**

This Amended and Restated  Limited Liability Company Agreement ("Agreement") of Weavexx, LLC (the "Company") is made as of _____, ____, as required by that certain amended joint prepackaged plan of reorganization under chapter 11 of the Bankruptcy Code of Weavexx, LLC and certain of its debtor affiliates, as filed with the United States Bankruptcy Court for the District of Delaware (the "Court") on March 30, 2010 (Case No. 10-_____ (___)) and confirmed by the Court on _____, ____ (the "Plan").

**SECTION 1. Formation.** The LLC was formed upon the filing of its certificate of formation (the "Certificate of Formation") with the Secretary of State of the State of Delaware. The LLC was formed upon the conversion of Weavexx Corporation, a Delaware corporation.

**SECTION 2. Purpose and Powers.** The purpose of the LLC is to engage in any activity for which limited liability companies may be organized in the State of Delaware. The LLC shall possess and may exercise all of the powers and privileges granted by the Delaware Limited Liability Company Act, 6 Del. C. §§ 18-101, et seq. (the "Act") or by any other law or by this Agreement, together with any powers incidental thereto, so far as such powers and privileges are necessary or convenient to the conduct, promotion or attainment of the business purposes or activities of the LLC.

**SECTION 3. Registered Office.** The initial registered office of the LLC in the State of Delaware shall be located at the address for such office as set forth in the certificate of formation for the LLC filed with the Office of the Secretary of State of the State of Delaware. The registered office of the LLC may changed from time to time with the approval of the Board of Managers (as defined in Section 9).

**SECTION 4. Registered Agent.** The name of the initial registered agent of the LLC for service of process on the LLC in the State of Delaware shall be as set forth in the Certificate of Formation. The registered agent of the LLC may be changed from time to time with the approval of the Board of Managers (as defined in Section 9).

**SECTION 5. Admission of Member.** Simultaneously with the filing of the Certificate of Formation with the Office of the Secretary of State of the State of Delaware, Xerium Technologies, Inc. is admitted as the sole member of the LLC in respect of the Interest (as hereinafter defined).

**SECTION 6. Interest and LLC Unit.** The LLC shall be authorized to issue a single class of limited liability company interest (as defined in the Act). The entire limited liability company interest of the LLC, together with the rights of the sole member of the LLC under this

Agreement and the Act (the "Interest"), shall be represented by a certificate in the form attached hereto as Exhibit A. The Interest shall be represented by one (1) unit of interest (the "LLC Unit").  Notwithstanding anything to the contrary contained herein, the Company may not issue LLC Units that would be deemed to be non-voting securities as contemplated by section 1123(a)(6) of the Title 11 of the United States Code, and any provision contained herein that would render the Units non-voting equity units  as contemplated by section 1123(a)(6) of Title 11 of the United States Code shall be deemed null and void.

**SECTION 7. Capital Contributions.** The Member may contribute cash or other property to the LLC as it shall decide, from time to time.

**SECTION 8. Tax Characterization and Returns.** So long as the LLC has only one member, it is the intention of the Member that the LLC be disregarded for federal and state income tax purposes and that the activities of the LLC be deemed to be the activities of the Member for such purposes. All provisions of the LLC's Certificate of Formation and this Agreement are to be construed so as to preserve that tax status under those circumstances. Prior to any transaction that would result in the LLC having more than one member (including, without limitation, the admission of another member by the LLC or the transfer by the Member of less than all of the Interest), appropriate amendments shall be made to this Agreement to reflect the change in the Company's classification for federal and state income tax purposes that would result from such transfer or admission.

**SECTION 9. Management.**

**(a)     Board of Managers.** The management of the LLC shall be vested in a Board of Managers (the "Board of Managers") elected by the Member. The total number of members on the Board of Managers (the "Managers") shall be three unless otherwise fixed at a different number by an amendment hereto. The Member hereby elects Stephen Light, Michael O'Donnell and Marshall Woodworth as the initial Managers of the LLC, to serve until their successors are elected and qualified. A Manager shall remain in office until removed by a written instrument signed by the Member or until such Manager resigns in a written instrument delivered to the Member or such Manager dies or is unable to serve. In the event of any vacancy on the Board of Managers, the Member may fill the vacancy by written instrument. Each Manager shall have one (1) vote. Except as otherwise provided in this Agreement, the Board of Managers shall act by the affirmative vote of a majority of the total number of Managers and no single Manager shall have the right, power or authority to bind the LLC. Each Manager shall perform his or her duties as such in good faith, in a manner he reasonably believes to be in the best interests of the LLC, and with such care as an ordinarily prudent person in a like position would use under similar circumstances. A person who so performs his duties shall not have any liability by reason of serving or having served as a Manager. A Manager shall not be liable under a judgment, decree or order of court, or in any other manner, for a debt, obligation or liability of the LLC.

**(b)     Meetings and Powers of Board of Managers.** The Board of Managers shall establish meeting times, dates and places and requisite notice requirements and adopt rules or procedures consistent with the terms of this Agreement. Any action required to be taken at a meeting of the Board of Managers, or any action that may be taken at a meeting of the Board of Managers, may be taken at a meeting held by means of conference telephone or other

communications equipment by means of which all persons participating in the meeting can hear each other. Participation in such a meeting shall constitute presence in person at such meeting.

Notwithstanding anything to the contrary in this Section 9, the Board of Managers may take any action that may be taken by the Board of Managers under this Agreement without a meeting if such action is approved by the unanimous written consent of the Managers. Except as otherwise provided in this Agreement, all powers to control and manage the business and affairs of the LLC shall be exclusively vested in the Board of Managers, and the Board of Managers may exercise all powers of the LLC and do all such lawful acts as are not by statute, the Certificate of Formation or this Agreement directed or required to be exercised or done by the Member and in so doing shall have the right and authority to take all actions which the Board of Managers deems necessary, useful or appropriate for the management and conduct of the business of the LLC; provided, however, that the Member may amend this Agreement at any time and thereby broaden or limit the Board of Managers' power and authority.

**(c)** **Officers.** The LLC shall have officers who are appointed by the Board of Managers (the "Officers" and each an "Officer"). The Officers of the LLC shall consist of a President, one or more Vice Presidents, a Secretary and a Treasurer and such other positions as the Board of Managers deems appropriate from time to time. The initial Officers of the LLC shall be:

| |
|---|
| Stephen R. Light -- Chief Executive Officer and President |
| David Maffucci -- Vice President, Chief Financial Officer and Assistant Secretary |
| David Pretty -- Vice President and Assistant Secretary |
| Ted Orban -- Secretary and Treasurer |
| Elizabeth Leete -- Assistant Secretary |

The powers and duties of each Officer shall be as follows:

**The President.** The President shall have, subject to the supervision, direction and control of the Board of Managers, the general powers and duties of supervision, direction and management of the affairs and business of the LLC usually vested in the president of a corporation, including, without limitation, all powers necessary to direct and control the organizational and reporting relationships within the LLC and the power to execute any agreements, deeds, certificates, notes or other documents on behalf of the LLC, provided that the approval of the Board of Managers or the Member is first obtained if such approval is required under the other provisions of this Agreement or the Act.

**The Chief Executive Officer.** The Chief Executive Officer shall have such powers and perform such duties as may from time to time be assigned to him or her by the Board of Managers.

USActive 18780362.2                    -3-

**The Chief Financial Officer**.  The Chief Executive Officer shall have such powers and perform such duties as may from time to time be assigned to him or her by the Board of Managers, President or Chief Executive Officer.

**The Vice Presidents.** Each Vice President shall have such powers and perform such duties as may from time to time be assigned to him or her by the Board of Managers or the President.

**The Secretary.** The Secretary shall attend meetings of the Board of Managers and meetings of the Member and record all votes and minutes of all such proceedings in a book kept for such purpose. He or she shall have all such further powers and duties as generally are incident to the position of a secretary of a corporation or as may from time to time be assigned to him or her by the Board of Managers or the President.

**Assistant Secretary.**  Each Assistant Secretary shall have such powers and perform such duties as may from time to time be assigned to him or her by the Board of Managers, President or Secretary.

**The Treasurer.** The Treasurer shall have custody of the LLC's funds and securities and shall keep full and accurate accounts of receipts and disbursements in books belonging to the LLC and shall deposit or cause to be deposited moneys or other valuable effects in the name and to the credit of the LLC in such depositories as may be designated by the Board of Managers. The Treasurer shall also maintain adequate records of all assets, liabilities, and transactions of the LLC and shall see that adequate audits thereof are currently and regularly made. The Treasurer shall have such other powers and perform such other duties that generally are incident to the position of a treasurer of a corporation or as may from time to time be assigned to him or her by the Board of Managers or the President.

The powers and duties of each Officer set forth herein shall be deemed to be delegated by the Board of Managers to such Officer pursuant to Section 18-407 of the Act.

Each of the Officers of the LLC shall be an "authorized person" within the meaning of the Act for purposes of executing certificates and other documents to be filed by the LLC.

**(d)      Indemnification of the Managers and Officers.** Unless otherwise provided in this Section 9, the LLC shall indemnify, save harmless, and pay all judgments and claims against any Manager or Officer relating to any liability or damage incurred by reason of any act performed or omitted to be performed by any Manager or Officer in connection with the business of the LLC, including reasonable attorneys' fees incurred by the Manager or Officer in connection with the defense of any action based on any such act or omission, which attorneys' fees may be paid as incurred. Unless otherwise provided in this Section 9, in the event of any action by the Member against any Manager or Officer, including a derivative suit, the LLC shall indemnify, save harmless, and pay all expenses of such Manager or Officer, including reasonable attorneys' fees incurred in the defense of such action. Notwithstanding the provisions of this Section 9, this Section shall be enforced only to the maximum extent permitted by law, and no Manager or Officer shall be indemnified from any liability for the fraud, intentional misconduct, gross negligence or a knowing violation of the law which was material to the cause of action.

**(e)**    **Rights and Powers of the Member.** The Member shall not have any right or power to take part in the management or control of the LLC or its business and affairs or to act for or bind the LLC in any way. Notwithstanding the foregoing, the Member has all the rights and powers specifically set forth in this Agreement and, to the extent not inconsistent with this Agreement, in the Act. The Member has no voting rights except with respect to those matters specifically set forth in this Agreement and, to the extent not inconsistent herewith, as required in the Act. Notwithstanding any other provision of this Agreement, no action may be taken by the LLC (whether by the Board of Managers or otherwise) in connection with any of the following matters without the prior written consent of the Member:

    **i.**    the dissolution or liquidation, in whole or in part, of the LLC, or the institution of proceedings to have the LLC adjudicated bankrupt or insolvent;

    **ii.**    the filing of a petition seeking or consenting to reorganization or relief under any applicable federal or state bankruptcy law;

    **iii.**    consenting to the appointment of a receiver, liquidator, assignee, trustee, sequestrator (or other similar official) of the LLC or a substantial part of its property;

    **iv.**    the merger of the LLC with any other entity or the conversion of the LLC into another type of legal entity;

    **v.**    the sale of all or substantially all of the LLC's assets;

    **vi.**    any change in the classification of the LLC for federal or state income tax purposes; or

    **vii.**    the amendment of this Agreement.

**SECTION 10.**    **Distributions.** Subject to section 18-607 and 19-804 of the Delaware Limited Liability Company Act, the Board of Managers may cause the LLC to distribute any cash held by it which is not reasonably necessary for the operation of the LLC.

**SECTION 11.**    **Assignments.** The Member may assign all or any part of the Interest, subject to Section 8.

**SECTION 12.**    **Dissolution.** The LLC shall dissolve, and its affairs shall be wound up, upon the earlier to occur of (a) the decision of the Member to dissolve the LLC, or (b) an event of dissolution of the LLC under the Act; provided, however, that ninety (90) days following any event terminating the continued membership of the Member, if the Personal Representative (as defined in the Act) of the Member agrees in writing to continue the LLC and to admit itself or some other Person as a member of the LLC effective as of the date of the occurrence of the event that terminated the continued membership the Member, then the LLC shall not be dissolved and its affairs shall not be wound up.

**SECTION 13.**    **Distributions Upon Dissolution.** Upon the occurrence of an event set forth in Section 12 hereof, the Member shall be entitled to receive, after paying or making

reasonable provision for all of the LLC's creditors to the extent required by Section 18-804 of the Act, the remaining funds of the LLC.

**SECTION 14.**      **Limited Liability.** No Member or Manager shall have any liability for the obligations of the LLC except to the extent required by the Act.

**SECTION 15.**      **Amendment.** This Agreement may be amended only in a writing signed by the Member.

**SECTION 16.**      **Governing Law.** THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED UNDER THE LAWS OF THE STATE OF DELAWARE, WITHOUT REGARD TO ITS CONFLICTS OF LAWS PRINCIPLES.

**SECTION 17.**      **Severability.** Every term and provision of this Agreement is intended to be severable, and if any term or provision of this Agreement is illegal or invalid for any reason whatsoever, such illegality or invalidity shall not affect the legality or validity of the remainder of this Agreement.

[*signature page follows*]

[*signature page to Limited Liability Company Agreement of Weavexx, LLC*]

IN WITNESS WHEREOF, the undersigned has caused this Agreement of Limited Liability Company to be executed as of the ___day of _____, 2010.

XERIUM TECHNOLOGIES, INC.

By:_____

Name:
Title:

USActive 18780362.2

EXHIBIT A
Form of Certificate

*See attached [Certificate of Membership Interest.]*

THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), OR ANY STATE SECURITIES LAW. ACCORDINGLY, THE SECURITIES REPRESENTED BY THIS CERTIFICATE MAY NOT BE SOLD, OFFERED FOR SALE, TRANSFERRED, PLEDGED OR HYPOTHECATED WITHOUT AN EFFECTIVE REGISTRATION STATEMENT FOR SUCH SECURITIES UNDER THE ACT OR APPLICABLE STATE SECURITIES LAW OR ANY OPINION OF COUNSEL SATISFACTORY TO THE LIMITED LIABILITY COMPANY THAT REGISTRATION IS NOT REQUIRED UNDER THE ACT OR ANY APPLICABLE STATE SECURITIES LAW.

THE SECURITIES REPRESENTED BY THIS CERTIFICATE, AND THE TRANSFER THEREOF, ARE SUBJECT TO THE PROVISIONS OF THE OPERATING AGREEMENT OF THE COMPANY, A COPY OF WHICH IS ON FILE AND MAY BE EXAMINED AT THE PRINCIPAL OFFICE OF THE COMPANY.

FOR VALUE RECEIVED, _____ HEREBY SELLS, ASSIGNS, AND TRANSFERS

PLEASE INSERT SOCIAL SECURITY OR OTHER INDENTIFYING NUMBER OF ASSIGNEE

_____

UNTO _____ THE LIMITED LIABILITY COMPANY MEMBERSHIP INTEREST REPRESENTED BY THE CERTIFICATE of MEMBERSHIP INTEREST, AND DOES HEREBY IRREVOCABLY CONSTITUTE AND APPOINT _____ ATTORNEY TO TRANSFER THE SAID CERTIFICATE OF MEMBERSHIP INTEREST REPRESENTING LIMITED LIABILITY COMPANY MEMBERSHIP INTERESTS ON THE BOOKS OF THE WITHIN-NAMED LIMITED LIABILITY COMPANY WITH FULL POWER OF SUBSTITUTION IN THE PREMISES.

DATED,

MEMBER

IN THE PRESENCE OF

**XERIUM ASIA, LLC**

**AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT**

This Amended and Restated  Limited Liability Company Agreement ("Agreement") of Xerium, Asia, LLC (the "Company") is made as of _____, ____, as required by that certain amended joint prepackaged plan of reorganization under chapter 11 of the Bankruptcy Code of Xerium Asia, LLC and certain of its debtor affiliates, as filed with the United States Bankruptcy Court for the District of Delaware (the "Court") on March 30, 2010 (Case No. 10-_____ (___)) and confirmed by the Court on _____, ____ (the "Plan").

**SECTION 1. Formation.** The LLC was formed upon the filing of its certificate of formation (the "Certificate of Formation") with the Secretary of State of the State of Delaware. The LLC was formed upon the conversion of Xerium Asia, Inc., a Delaware corporation.

**SECTION 2. Purpose and Powers.** The purpose of the LLC is to engage in any activity for which limited liability companies may be organized in the State of Delaware. The LLC shall possess and may exercise all of the powers and privileges granted by the Delaware Limited Liability Company Act, 6 Del. C. §§ 18-101, et seq. (the "Act") or by any other law or by this Agreement, together with any powers incidental thereto, so far as such powers and privileges are necessary or convenient to the conduct, promotion or attainment of the business purposes or activities of the LLC.

**SECTION 3. Registered Office.** The initial registered office of the LLC in the State of Delaware shall be located at the address for such office as set forth in the certificate of formation for the LLC filed with the Office of the Secretary of State of the State of Delaware. The registered office of the LLC may changed from time to time with the approval of the Board of Managers (as defined in Section 9).

**SECTION 4. Registered Agent.** The name of the initial registered agent of the LLC for service of process on the LLC in the State of Delaware shall be as set forth in the Certificate of Formation. The registered agent of the LLC may be changed from time to time with the approval of the Board of Managers (as defined in Section 9).

**SECTION 5. Admission of Member.** Simultaneously with the filing of the Certificate of Formation with the Office of the Secretary of State of the State of Delaware, Xerium Technologies, Inc. is admitted as the sole member of the LLC in respect of the Interest (as hereinafter defined).

**SECTION 6. Interest and LLC Unit.** efined in the Act). The entire limited liability company interest of the LLC, together with the rights of the sole member of the LLC under this Agreement and the Act (the "Interest"), shall be represented by a certificate in the form attached hereto as Exhibit A. The Interest shall be represented by one (1) unit of interest (the "LLC

USActive 18780363.2

Unit"). Notwithstanding anything to the contrary contained herein, the Company may not issue LLC Units that would be deemed to be non-voting securities as contemplated by section 1123(a)(6) of the Title 11 of the United States Code, and any provision contained herein that would render the Units non-voting equity units as contemplated by section 1123(a)(6) of Title 11 of the United States Code shall be deemed null and void.

**SECTION 7. Capital Contributions.** The Member may contribute cash or other property to the LLC as it shall decide, from time to time.

**SECTION 8. Tax Characterization and Returns.** So long as the LLC has only one member, it is the intention of the Member that the LLC be disregarded for federal and state income tax purposes and that the activities of the LLC be deemed to be the activities of the Member for such purposes. All provisions of the LLC's Certificate of Formation and this Agreement are to be construed so as to preserve that tax status under those circumstances. Prior to any transaction that would result in the LLC having more than one member (including, without limitation, the admission of another member by the LLC or the transfer by the Member of less than all of the Interest), appropriate amendments shall be made to this Agreement to reflect the change in the Company's classification for federal and state income tax purposes that would result from such transfer or admission.

**SECTION 9. Management.**

(a) **Board of Managers.** The management of the LLC shall be vested in a Board of Managers (the "Board of Managers") elected by the Member. The total number of members on the Board of Managers (the "Managers") shall be three unless otherwise fixed at a different number by an amendment hereto. The Member hereby elects Stephen Light, Michael O'Donnell and Marshall Woodworth as the initial Managers of the LLC, to serve until their successors are elected and qualified. A Manager shall remain in office until removed by a written instrument signed by the Member or until such Manager resigns in a written instrument delivered to the Member or such Manager dies or is unable to serve. In the event of any vacancy on the Board of Managers, the Member may fill the vacancy by written instrument. Each Manager shall have one (1) vote. Except as otherwise provided in this Agreement, the Board of Managers shall act by the affirmative vote of a majority of the total number of Managers and no single Manager shall have the right, power or authority to bind the LLC. Each Manager shall perform his or her duties as such in good faith, in a manner he reasonably believes to be in the best interests of the LLC, and with such care as an ordinarily prudent person in a like position would use under similar circumstances. A person who so performs his duties shall not have any liability by reason of serving or having served as a Manager. A Manager shall not be liable under a judgment, decree or order of court, or in any other manner, for a debt, obligation or liability of the LLC.

(b) **Meetings and Powers of Board of Managers.** The Board of Managers shall establish meeting times, dates and places and requisite notice requirements and adopt rules or procedures consistent with the terms of this Agreement. Any action required to be taken at a meeting of the Board of Managers, or any action that may be taken at a meeting of the Board of Managers, may be taken at a meeting held by means of conference telephone or other communications equipment by means of which all persons participating in the meeting can hear each other. Participation in such a meeting shall constitute presence in person at such meeting.

Notwithstanding anything to the contrary in this Section 9, the Board of Managers may take any action that may be taken by the Board of Managers under this Agreement without a meeting if such action is approved by the unanimous written consent of the Managers. Except as otherwise provided in this Agreement, all powers to control and manage the business and affairs of the LLC shall be exclusively vested in the Board of Managers, and the Board of Managers may exercise all powers of the LLC and do all such lawful acts as are not by statute, the Certificate of Formation or this Agreement directed or required to be exercised or done by the Member and in so doing shall have the right and authority to take all actions which the Board of Managers deems necessary, useful or appropriate for the management and conduct of the business of the LLC; provided, however, that the Member may amend this Agreement at any time and thereby broaden or limit the Board of Managers' power and authority.

   **(c)**  **Officers.** The LLC shall have officers who are appointed by the Board of Managers (the "Officers" and each an "Officer"). The Officers of the LLC shall consist of a President, one or more Vice Presidents, a Secretary and a Treasurer and such other positions as the Board of Managers deems appropriate from time to time. The initial Officers of the LLC shall be:

| |
|---|
| Stephen R. Light -- Chief Executive Officer and President |
| David Maffucci -- Vice President, Chief Financial Officer and Assistant Secretary |
| David Pretty -- Vice President and Assistant Secretary |
| Ted Orban -- Secretary and Treasurer |
| Elizabeth Leete -- Assistant Secretary |

The powers and duties of each Officer shall be as follows:

  **The President.** The President shall have, subject to the supervision, direction and control of the Board of Managers, the general powers and duties of supervision, direction and management of the affairs and business of the LLC usually vested in the president of a corporation, including, without limitation, all powers necessary to direct and control the organizational and reporting relationships within the LLC and the power to execute any agreements, deeds, certificates, notes or other documents on behalf of the LLC, provided that the approval of the Board of Managers or the Member is first obtained if such approval is required under the other provisions of this Agreement or the Act.

  **The Chief Executive Officer.** The Chief Executive Officer shall have such powers and perform such duties as may from time to time be assigned to him or her by the Board of Managers.

  **The Chief Financial Officer**. The Chief Executive Officer shall have such powers and perform such duties as may from time to time be assigned to him or her by the Board of Managers, President or Chief Executive Officer.

  **The Vice Presidents.** Each Vice President shall have such powers and perform such duties as may from time to time be assigned to him or her by the Board of Managers or the President.

USActive 18780363.2       -3-

**The Secretary.** The Secretary shall attend meetings of the Board of Managers and meetings of the Member and record all votes and minutes of all such proceedings in a book kept for such purpose. He or she shall have all such further powers and duties as generally are incident to the position of a secretary of a corporation or as may from time to time be assigned to him or her by the Board of Managers or the President.

**Assistant Secretary.**  Each Assistant Secretary shall have such powers and perform such duties as may from time to time be assigned to him or her by the Board of Managers, President or Secretary.

**The Treasurer.** The Treasurer shall have custody of the LLC's funds and securities and shall keep full and accurate accounts of receipts and disbursements in books belonging to the LLC and shall deposit or cause to be deposited moneys or other valuable effects in the name and to the credit of the LLC in such depositories as may be designated by the Board of Managers. The Treasurer shall also maintain adequate records of all assets, liabilities, and transactions of the LLC and shall see that adequate audits thereof are currently and regularly made. The Treasurer shall have such other powers and perform such other duties that generally are incident to the position of a treasurer of a corporation or as may from time to time be assigned to him or her by the Board of Managers or the President.

The powers and duties of each Officer set forth herein shall be deemed to be delegated by the Board of Managers to such Officer pursuant to Section 18-407 of the Act.

Each of the Officers of the LLC shall be an "authorized person" within the meaning of the Act for purposes of executing certificates and other documents to be filed by the LLC.

(d)     **Indemnification of the Managers and Officers.** Unless otherwise provided in this Section 9, the LLC shall indemnify, save harmless, and pay all judgments and claims against any Manager or Officer relating to any liability or damage incurred by reason of any act performed or omitted to be performed by any Manager or Officer in connection with the business of the LLC, including reasonable attorneys' fees incurred by the Manager or Officer in connection with the defense of any action based on any such act or omission, which attorneys' fees may be paid as incurred. Unless otherwise provided in this Section 9, in the event of any action by the Member against any Manager or Officer, including a derivative suit, the LLC shall indemnify, save harmless, and pay all expenses of such Manager or Officer, including reasonable attorneys' fees incurred in the defense of such action. Notwithstanding the provisions of this Section 9, this Section shall be enforced only to the maximum extent permitted by law, and no Manager or Officer shall be indemnified from any liability for the fraud, intentional misconduct, gross negligence or a knowing violation of the law which was material to the cause of action.

(e)     **Rights and Powers of the Member.** The Member shall not have any right or power to take part in the management or control of the LLC or its business and affairs or to act for or bind the LLC in any way. Notwithstanding the foregoing, the Member has all the rights and powers specifically set forth in this Agreement and, to the extent not inconsistent with this Agreement, in the Act. The Member has no voting rights except with respect to those matters specifically set forth in this Agreement and, to the extent not inconsistent herewith, as required in the Act. Notwithstanding any other provision of this Agreement, no action may be taken by the

LLC (whether by the Board of Managers or otherwise) in connection with any of the following matters without the prior written consent of the Member:

> **i.** the dissolution or liquidation, in whole or in part, of the LLC, or the institution of proceedings to have the LLC adjudicated bankrupt or insolvent;

> **ii.** the filing of a petition seeking or consenting to reorganization or relief under any applicable federal or state bankruptcy law;

> **iii.** consenting to the appointment of a receiver, liquidator, assignee, trustee, sequestrator (or other similar official) of the LLC or a substantial part of its property;

> **iv.** the merger of the LLC with any other entity or the conversion of the LLC into another type of legal entity;

> **v.** the sale of all or substantially all of the LLC's assets;

> **vi.** any change in the classification of the LLC for federal or state income tax purposes; or

> **vii.** the amendment of this Agreement.

**SECTION 10.** **Distributions.** Subject to section 18-607 and 19-804 of the Delaware Limited Liability Company Act, the Board of Managers may cause the LLC to distribute any cash held by it which is not reasonably necessary for the operation of the LLC.

**SECTION 11.** **Assignments.** The Member may assign all or any part of the Interest, subject to Section 8.

**SECTION 12.** **Dissolution.** The LLC shall dissolve, and its affairs shall be wound up, upon the earlier to occur of (a) the decision of the Member to dissolve the LLC, or (b) an event of dissolution of the LLC under the Act; provided, however, that ninety (90) days following any event terminating the continued membership of the Member, if the Personal Representative (as defined in the Act) of the Member agrees in writing to continue the LLC and to admit itself or some other Person as a member of the LLC effective as of the date of the occurrence of the event that terminated the continued membership the Member, then the LLC shall not be dissolved and its affairs shall not be wound up.

**SECTION 13.** **Distributions Upon Dissolution.** Upon the occurrence of an event set forth in Section 12 hereof, the Member shall be entitled to receive, after paying or making reasonable provision for all of the LLC's creditors to the extent required by Section 18-804 of the Act, the remaining funds of the LLC.

**SECTION 14.** **Limited Liability.** No Member or Manager shall have any liability for the obligations of the LLC except to the extent required by the Act.

**SECTION 15.** **Amendment.** This Agreement may be amended only in a writing signed by the Member.

**SECTION 16.**        **Governing Law.** THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED UNDER THE LAWS OF THE STATE OF DELAWARE, WITHOUT REGARD TO ITS CONFLICTS OF LAWS PRINCIPLES.

**SECTION 17.**        **Severability.** Every term and provision of this Agreement is intended to be severable, and if any term or provision of this Agreement is illegal or invalid for any reason whatsoever, such illegality or invalidity shall not affect the legality or validity of the remainder of this Agreement.

[*signature page follows*]

-7-

[*signature page to Limited Liability Company Agreement of Xerium Asia, LLC*]

IN WITNESS WHEREOF, the undersigned has caused this Agreement of Limited Liability Company to be executed as of the ___day of _____, 2010.

XERIUM TECHNOLOGIES, INC.


By:_____


Name:
Title:

BY-LAWS

OF

XERIUM III (US) LIMITED

a Delaware corporation

ARTICLE I

OFFICES

SECTION 1.1.          Registered Office.  The registered office of the corporation in the State of Delaware shall be located at 1209 Orange Street, Wilmington, Delaware.  The name of the corporation's registered agent at such address shall be The Corporation Trust Company.  The registered office and registered agent of the corporation may be changed from time to time by action of the registered agent or the board of directors in accordance with the laws of the State of Delaware.

SECTION 1.2.          Other Offices.  The corporation may also have offices at such other places both within or without the State of Delaware as the board of directors may from time to time determine or the business of the corporation may require.

ARTICLE II

MEETINGS OF STOCKHOLDERS

SECTION 2.1.          Annual Meeting.  The annual meeting of the stockholders shall be held each year on such day or days as may be determined by the board of directors or the president of the corporation.  The annual meeting may be held at the corporation's principal place of business or at such other place as may be determined by the board of directors or the president, for the purposes of electing directors and for the transaction of such other business as may come before the meeting.  If such day should fall on a legal holiday, the meeting shall be held on the next succeeding business day that is not a legal holiday.

If the election of directors shall not be held on the day hereinbefore designated for the annual meeting, or at any adjournment thereof, the board of directors shall cause such election to be held at a special meeting of stockholders as soon thereafter as convenient.

SECTION 2.2.          Special Meetings. Except as otherwise prescribed by statute, special meetings of the stockholders for any purpose or purposes may be called and the location thereof designated by the board of directors or the president.  Special meetings shall be called and the location thereof designated by the secretary at the request in writing of the stockholders owning capital stock of the corporation having not less than a majority of the total voting power.  Such request shall state the purposes of the proposed meeting.

SECTION 2.3.    Place of Meetings. Each meeting of the stockholders shall be held at the principal executive office of the corporation, unless the board of directors by resolution, or the president, designate any other place, within or without the State of Delaware, as the place of such meeting.

SECTION 2.4.    Notice. Written or printed notice stating the place, date and time of each annual or special meeting of the stockholders and, in the case of a special meeting, the purpose or purposes for which the meeting is called, shall be given to each stockholder entitled to vote thereat not less than 10 days nor more than 60 days, unless otherwise provided by statute, before the date of the meeting. Whenever under the provisions of the statute, the certificate of incorporation or these by-laws notice is required to be given to any stockholder, director or member of any committee designated by the board of directors, it shall not be construed to require personal delivery and such notice may be given in writing by depositing it in the United States mails, air mail or first class, postage prepaid, by telefax, or by express overnight courier addressed to such stockholder, director or member either at the address of such stockholder, director or member as it appears on the books of the corporation or, in the case of such a director or member, at his or her business address; and such notice shall be deemed to be given at the time when it is thus deposited in the United States mails delivered by telefax over the telephone lines, or delivered to the overnight courier service, as the case may be. Such requirement for notice shall be deemed satisfied, except in the case of a stockholder meeting with respect to which written notice is mandatorily required by law, if actual notice is received orally or in writing by the person entitled thereto as far in advance of the event with respect to which notice is given as the minimum notice period required by law or these by-laws.

SECTION 2.5.    Waiver of Notice. Whenever any notice is required to be given under the provisions of the statute, the certificate of incorporation, or these by-laws, a waiver thereof in writing signed by the person or persons entitled to such notice, whether before, at or after the time stated therein, shall be deemed equivalent thereto. Attendance by a person at a meeting shall constitute a waiver of notice of such meeting, except when the person attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened. Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the stockholders, directors or committee of directors need be specified in any written waiver of notice unless so required by statute, the certificate of incorporation or these by-laws.

SECTION 2.6.    Stockholders List. At least 10 days before every meeting of stockholders, a complete list of the stockholders entitled to vote at such meeting, arranged in alphabetical order, and showing the address of each such stockholder and the number of shares registered in the name of each such stockholder, shall be prepared by the officer having charge of the stock ledger. Such list shall be open to examination of any stockholder of the corporation during ordinary business hours, for any purpose germane to the meeting, for a period of at least 10 days prior to the meeting, either at a place within the city where the meeting is to be held, which shall be specified in the notice of the meeting or, if not so specified, at the place where the meeting is to be held. The list shall also be produced and kept at the time and place of meeting during the whole time thereof, and may be inspected by any stockholder who is present. The stock ledger shall be the only evidence as to who are the stockholders entitled to examine the

- 3 -

stock ledger, the list required by this section or the books of the corporation, or to vote in person or by proxy at any meeting of stockholders.

SECTION 2.7.        Quorum. The holders of a majority of the outstanding shares of capital stock entitled to vote, present in person or represented by proxy, shall be requisite for, and shall constitute, a quorum at all meetings of the stockholders of the corporation for the transaction of business, except as otherwise provided by statute, the certificate of incorporation or these by-laws. If, however, such quorum shall not be present or represented at any meeting of the stockholders, the stockholders entitled to vote thereat present in person or represented by proxy shall have power to adjourn the meeting from time to time until a quorum shall be present or represented. At such adjourned meeting at which a quorum shall be present or represented, any business may be transacted which might have been transacted at the meeting as originally notified.

SECTION 2.8.        Adjourned Meetings. When a meeting is adjourned to another time and place, notice need not be given of the adjourned meeting if the time and place thereof are announced at the meeting at which the adjournment is taken. At the adjourned meeting the corporation may transact any business which might have been transacted at the original meeting. If the adjournment is for more than 30 days, or if after the adjournment a new record date is fixed for the adjourned meeting, a notice of the adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting.

SECTION 2.9.        Vote Required. When a quorum is present, the affirmative vote of a majority of the shares present in person or represented by proxy at the meeting and entitled to vote on the subject matter shall be the act of the stockholders, unless the question is one upon which by express provisions of an applicable law or of the certificate of incorporation a different vote is required, in which case such express provision shall govern and control the decision of such question.

SECTION 2.10.        Voting Rights. Except as otherwise provided by these by-laws, or by the General Corporation Law of the State of Delaware or by the certificate of incorporation of the corporation or any amendments thereto and subject to Section 7.7 of ARTICLE VII hereof, every stockholder shall be entitled to one vote for each share of common stock held by such stockholder.

SECTION 2.11.        Proxies. Each stockholder entitled to vote at a meeting of stockholders or to express consent or dissent to corporate action in writing without a meeting may authorize another person or persons to act for him or her by proxy, but no such proxy shall be voted or acted upon after three years from its date, unless the proxy provides for a longer period. At each meeting of the stockholders, and before any voting commences, all proxies filed at or before the meeting shall be submitted to and examined by the secretary or a person designated by the secretary, and no shares may be represented or voted under a proxy that has been found to be invalid or irregular.

SECTION 2.12.        Voting of Certain Shares. Shares standing in the name of another corporation, domestic or foreign, and entitled to vote may be voted by such officer, agent, or proxy as the by-laws of such corporation may prescribe or, in the absence of such provision, as

- 4 -

the board of directors of such corporation may determine. Shares standing in the name of a deceased person, a minor or an incompetent and entitled to vote may be voted by his or her administrator, executor, guardian or conservator, as the case may be, either in person or by proxy. Shares standing in the name of a trustee, receiver or pledgee and entitled to vote may be voted by such trustee, receiver or pledgee either in person or by proxy as provided by Delaware law.

SECTION 2.13.    <u>Action by Written Consent</u>. Any action required to be taken at any annual or special meeting of stockholders of the corporation, or any action which may be taken at any annual or special meeting of such stockholders, may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken and bearing the dates of signature of the stockholders who signed the consent or consents, shall be signed by the holders of outstanding capital stock of the corporation having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted and shall be delivered to the corporation by delivery to its registered office in the state of Delaware, the principal place of business of the corporation, or an officer or agent of the corporation having custody of the book or books in which proceedings of meetings of the stockholders are recorded. Delivery made to the registered office of the corporation shall be by hand or by certified or registered mail, return receipt requested; provided, however, that no consent or consents delivered by certified or registered mail shall be deemed delivered until such consent or consents are actually received at the registered office. All consents properly delivered in accordance with this section shall be deemed to be recorded when so delivered. No written consent shall be effective to take the corporate action referred to therein unless, within 60 days of the earliest dated consent delivered to the corporation as required by this section, written consents signed by the holders of a sufficient number of shares to take such corporate action are so recorded. Prompt notice of the taking of the corporate action without a meeting by less than unanimous written consent shall be given to those stockholders who have not consented in writing, and who, if the action had been taken at a meeting, would have been entitled to notice of the meeting if the record date for such meeting had been the date that written consents signed by a sufficient number of holders or members to take the action were delivered to the corporation as provided in the General Corporation Law of the State of Delaware. Any action taken pursuant to such written consent or consents of the stockholders shall have the same force and effect as if taken by the stockholders at a meeting thereof.

SECTION 2.14.    <u>Treasury Stock</u>. Shares of its own stock belonging to the corporation or to another corporation, if a majority of the shares entitled to vote in the election of directors of such other corporation is held, directly or indirectly, by such corporation, shall not be entitled to vote nor counted for quorum purposes. Nothing in this section shall be construed to limit the right of this corporation to vote shares of its own stock held by it in a fiduciary capacity.

<u>ARTICLE III</u>

DIRECTORS

SECTION 3.1.    <u>Number, Election and Term of Office</u>. The board of directors of the corporation shall consist of not less than one nor more than five members, which number

shall be fixed from time to time by resolution adopted by either the stockholders or a majority of the board of directors; however, the initial board shall consist of two members.  The number of directors may be changed from time to time by amendment to these by-laws.  A decrease in the number of directors does not shorten an incumbent director's term.

The initial directors shall have been elected by the incorporators.  Thereafter, unless otherwise provided herein, directors shall be elected by the stockholders at each annual meeting. Each director shall hold office until a successor is duly elected and qualified, or until his or her earlier death, resignation or removal as hereinafter provided.

SECTION 3.2.      Management of Affairs of Corporation.  The property and business of the corporation shall be managed by or under the direction of its board of directors, which may exercise all such powers of the corporation and do all such lawful acts and things as are not by statute or by the certificate of incorporation or by these by-laws directed or required to be exercised or done by stockholders.  In case the corporation shall transact any business or enter into any contract with a director, or with any firm of which one or more of its directors are members, or with any trust, firm, corporation or association in which any director is a stockholder, director or officer or otherwise interested, the officers of the corporation and directors in question shall be severally under the duty of disclosing all material facts as to their interest to the remaining directors promptly if and when such interested officers or such interested directors in question shall become advised of the circumstances.  In the case of continuing relationships in the normal course of business such disclosure shall be deemed effective, when once given, as to all transactions and contracts subsequently entered into.

SECTION 3.3.      Resignations and Vacancies.  Any director may resign at any time by giving written notice to the board of directors or to the president.  Any such resignation shall take effect at the date of the receipt of such notice or at any later time specified therein; and, unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.  If, at any other time than the annual meeting of the stockholders, any vacancy occurs in the board of directors caused by resignation, death, retirement, disqualification or removal from office of any director or otherwise, or any new directorship is created by an increase in the authorized number of directors, a majority of the directors then in office, may choose a successor, or fill the newly created directorship, and the director so chosen shall hold office until the next annual election of directors by the stockholders and until his or her successor shall be duly elected and qualified, unless sooner displaced.

SECTION 3.4.      Removal.  A director or the entire board of directors may be removed, with or without cause, by the affirmative vote of the holders of a majority of the shares then entitled to vote at an election of directors.

SECTION 3.5.      Annual Meetings.  The annual meeting of the board of directors shall be held, without other notice than this by-law, immediately after, and at the same place as, the annual meeting of the stockholders.

SECTION 3.6.      Special Meetings.  Special meetings of the board of directors may be called by the president and shall be called by the secretary or any other officer at the request of any two directors, to be held at such time and place, either within or without the State of

Delaware, as shall be designated by the call and specified in the notice of such meeting. Notice thereof shall be given as provided in Section 3.7 of these by-laws.

SECTION 3.7.        Notice of Meetings. Regular meetings, other than the annual meeting, of the board of directors may be held without notice at such time and at such place as shall from time to time be determined by resolution of the board. Special meetings of the board of directors may be called on notice to each director, either orally, personally, by telephone, by mail or by telefax not less than forty-eight (48) hours' before the date of the meeting. Any director may waive notice of any meeting. Except as otherwise provided by law or by these by-laws, a director's attendance at a regular or special meeting shall constitute a waiver of notice of such meeting.

SECTION 3.8.        Quorum Required, Vote and Adjournment. At each meeting of the board of directors, the presence of not less than a majority of the whole board shall be necessary and sufficient to constitute a quorum for the transaction of business, and the act of a majority of the directors present at any meeting at which there is a quorum shall be the act of the board of directors, except as may be otherwise specifically provided by statute or these by-laws. If a quorum shall not be present at any meeting of directors, the directors present thereat may adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum shall be present.

SECTION 3.9.        Communications Equipment. Unless otherwise restricted by the certificate of incorporation, any member of the board of directors or of any committee designated by the board may participate in a meeting of the directors or committee by means of conference telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other, and participation in a meeting by means of such equipment shall constitute presence in person at such meeting.

SECTION 3.10.        Presumption of Assent. Unless otherwise provided by statute, a director of the corporation who is present at a meeting of the board of directors at which action is taken on any corporate matter shall be presumed to have assented to the action taken unless his or her dissent shall be entered in the minutes of the meeting or unless he or she shall file his or her written dissent to such action with the person acting as secretary of the meeting before the adjournment thereof or shall forward such dissent by registered mail to the secretary of the corporation immediately after the adjournment of the meeting. Such right to dissent shall not apply to a director who voted in favor of such action.

SECTION 3.11.        Action By Written Consent. Any action required or permitted to be taken at any meeting of the board of directors, or of any committee thereof, may be taken without a meeting, if a written consent thereto is signed by all members of the board or of such committee, as the case may be, and such written consent is filed with the minutes of proceedings of the board or committee.

SECTION 3.12.        Presiding Officer. The presiding officer at any meeting of the board of directors shall be the chairman of the board or, in his or her absence, the president or any director elected chairman by vote of a majority of the directors present at the meeting.

SECTION 3.13.        Executive Committee. The board of directors may, by resolution passed by a majority of the whole board, designate two or more directors of the corporation to constitute an executive committee, which, to the extent provided in the resolution and by Delaware law, shall have and may exercise all the powers and authority of the board of directors in the management of the business and affairs of the corporation and may authorize the seal of the corporation to be affixed to all papers which may require it.

SECTION 3.14.        Other Committees. The board of directors may designate one or more other committees, each committee to consist of one or more of the directors of the corporation. Each member of such committee shall serve for such term and the committee shall have and may exercise, during intervals between meetings of the board of directors, such duties, functions and powers as the board of directors may from time to time prescribe, subject to the limitations of Delaware law.

SECTION 3.15.        Alternates. The board of directors may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee. In the absence or disqualification of a member of a committee, the member or members present at any meeting and not disqualified from voting, whether or not such member or members constitute a quorum, may unanimously appoint another member of the board of directors to act at the meeting in place of any such absent or disqualified member.

SECTION 3.16.        Quorum and Manner of Acting - Committees. The presence of a majority of the members of any committee shall constitute a quorum for the transaction of business at any meeting of such committee, and the act of a majority of those present shall be necessary for the taking of any action thereat.

SECTION 3.17.        Committee Chairman, Books and Records, Etc. The chairman of each committee shall be selected from among the members of the committee by the board of directors.

Each committee shall keep a record of its acts and proceedings, and all actions of each committee shall be reported to the board of directors at its next meeting.

Each committee shall fix its own rules of procedure not inconsistent with these by-laws or the resolution of the board of directors designating such committee and shall meet at such times and places and upon such call or notice as shall be provided by such rules.

SECTION 3.18.        Fees and Compensation of Directors. Directors shall not receive any stated salary or other fees for their services as such; but, by resolution of the board of directors, a fixed fee, with or without expenses of attendance, may be allowed for attendance at each regular or special meeting of the board. Members of the board shall be allowed their reasonable traveling expenses when actually engaged in the business of the corporation. Members of any committee may be allowed like fees and expenses for attending committee meetings. Nothing herein contained shall be construed to preclude any director from serving the corporation in any other capacity and receiving compensation therefor.

- 8 -

SECTION 3.19.    Reliance Upon Records. Every director of the corporation, or member of any committee designated by the board of directors, shall, in the performance of his or her duties, be fully protected in relying in good faith upon the records of the corporation and upon such information, opinions, reports or statements presented to the corporation by any of the corporation's officers or employees, or committees of the board of directors, or by any other person as to matters the director reasonably believes are within such other person's professional or expert competence and who has been selected with reasonable care by or on behalf of the corporation.

SECTION 3.20.    Dividends and Reserves. Dividends upon stock of the corporation may be declared by the board of directors at any regular or special meeting.  Dividends may be paid in cash, in property, in shares of stock or otherwise in the form, and to the extent, permitted by law.  The board of directors may set apart, out of any funds of the corporation available for dividends, a reserve or reserves for working capital or for any other lawful purpose, and also may abolish any such reserve in the manner in which it was created.

## ARTICLE IV

### OFFICERS

SECTION 4.1.    Offices and Official Positions. The officers of the corporation shall consist of a president and a secretary.  The president shall be the chief executive officer.  In addition to the foregoing, the officers may consist of a chairman of the board, one or more vice presidents, assistant secretaries, assistant treasurers, and other officers as the board of directors shall determine.  Any two or more offices may be held by the same person.  The board of directors may choose not to fill any office for any period as it may deem advisable, except that the offices of president and secretary shall be filled as expeditiously as possible.  None of the officers need be a director, a stockholder of the corporation or a resident of the State of Delaware.  The board of directors may from time to time establish, and abolish, official positions within the divisions into which the business and operations of the corporation are divided, pursuant to ARTICLE V of these by-laws, and assign titles and duties to such positions.  Those appointed to official positions within divisions may, but need not, be officers of the corporation.  The board of directors shall appoint individuals to official positions within a division and may with or without cause remove from such a position any person appointed to it.  In any event, the authority incident to an official position within a division shall be limited to acts and transactions within the scope of the business and operations of such division.

SECTION 4.2.    Election and Term of Office. The officers of the corporation shall be elected at the organizational meeting of the board of directors, and thereafter, annually by the board of directors at their first meeting held after each regular annual meeting of the stockholders.  If the election of officers shall not be held at such meeting of the board, such election shall be held at a regular or special meeting of the board of directors as soon thereafter as may be convenient.  Each officer shall hold office until his or her successor is elected and qualified or until his or her death, resignation or removal as hereinafter provided.

SECTION 4.3.    Removal and Resignation. Any officer may be removed, either with or without cause, by a majority of the directors then in office at any regular or special

meeting of the board; but such removal shall be without prejudice to the contract rights, if any, of such person so removed.  Any officer may resign at any time by giving written notice to the board of directors, to the president or to the secretary of the corporation.  Any such resignation shall take effect at the date of the receipt of such notice or at any later time specified therein; and, unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

SECTION 4.4.        Vacancies.  A vacancy in any office because of death, resignation, removal, or any other cause may be filled for the unexpired portion of the term by the board of directors.

SECTION 4.5.        Chairman of the Board.  The chairman of the board, if there shall be such chairman, shall preside, in lieu of the president, at all meetings of the stockholders and board of directors of the corporation.  The chairman of the board shall have such other duties as may be prescribed by the board of directors from time to time.

SECTION 4.6.        President.  The president shall be the chief executive officer of the corporation, and may be referred to as president, chief executive officer, or both.  He or she shall have the overall supervision of the business of the corporation and shall direct the affairs and policies of the corporation, subject to such policies and directions as may be provided by the board of directors.  He or she shall have authority to designate the duties and powers of other officers and delegate special powers and duties to specified officers, so long as such designation shall not be inconsistent with the statutes, these by-laws or action of the board of directors.  He or she shall also have power to execute, and shall execute, deeds, mortgages, bonds, contracts or other instruments of the corporation except where required or permitted by law to be otherwise signed and executed and except where the signing and execution thereof shall be expressly delegated by the board of directors to some other officer or agent of the corporation.  The president in general shall have all other powers and shall perform all other duties which are incident to the chief executive office of a corporation or as may be prescribed by the board of directors from time to time.

SECTION 4.7.        Vice Presidents.  In the absence of the president, at his or her request or in the event of his or her inability or refusal to act, the vice presidents in order of their rank as fixed by the board of directors or, if not ranked, the vice president designated by the board of directors or the president, shall perform all duties of the president and, when so acting, shall have all the powers of, and be subject to all the restrictions upon, the president.  The vice presidents shall have such other powers and perform such other duties, not inconsistent with the statutes, these by-laws, or action of the board of directors, as from time to time may be prescribed for them, respectively, by the board of directors or the president.  Any vice president may sign, with the secretary or an assistant secretary, or the treasurer or an assistant treasurer, certificates for shares of stock of the corporation the issuance of which shall have been duly authorized by the board of directors.

SECTION 4.8.        Secretary.  The secretary shall: (a) keep the minutes of the meetings of the stockholders, the board of directors and committees of directors, in one or more books provided for that purpose; (b) see that all notices are duly given in accordance with the provisions of these by-laws or as required by law; (c) have charge of the corporate records and of

the seal of the corporation; (d) affix the seal of the corporation, if any, or a facsimile thereof, or cause it to be affixed, to all certificates for shares prior to the issue thereof and to all documents the execution of which on behalf of the corporation under its seal is duly authorized by the board of directors or otherwise in accordance with the provisions of these by-laws; (e) keep a register of the post office address of each stockholder, director and committee member which shall from time to time be furnished to the secretary by such stockholder, director or member; (f) sign with the president or any vice president, certificates for shares of stock of the corporation, the issuance of which shall have been duly authorized by resolution of the board of directors; (g) have general charge of the stock transfer books of the corporation; and (h) in general, perform all duties incident to the office of secretary and such other duties as from time to time may be assigned to him or her by the president or by the board of directors. He or she may delegate such details of the performance of duties of his or her office as may be appropriate in the exercise of reasonable care to one or more persons in his or her stead, but shall not thereby be relieved of responsibility for the performance of such duties.

SECTION 4.9. Treasurer. The treasurer shall: (a) be responsible to the board of directors for the receipt, custody and disbursement of all funds and securities of the corporation; (b) receive and give receipts for monies due and payable to the corporation from any source whatsoever and deposit all such monies in the name of the corporation in such banks, trust companies or other depositories as shall from time to time be selected in accordance with the provisions of Section 6.4. of these by-laws; (c) disburse the funds of the corporation as ordered by the board of directors or the president or as otherwise required in the conduct of the business of the corporation; (d) render to the president or the board of directors, upon request, an account of all his or her transactions as treasurer and on the financial condition of the corporation; and (e) in general, perform all the duties incident to the office of treasurer and such other duties as from time to time may be assigned to him or her by the president, the board of directors or these by-laws. He or she may sign, with the president, or a vice president, certificates for shares of stock of the corporation, the issuance of which shall have been duly authorized by resolution of the board of directors. He or she may delegate such details of the performance of duties of his or her office as may be appropriate in the exercise of reasonable care to one or more persons in his or her stead, but shall not thereby be relieved of responsibility for the performance of such duties. If required by the board of directors, the treasurer shall give a bond for the faithful discharge of his or her duties in such sum, and with such surety or sureties, as the board of directors shall determine.

SECTION 4.10. Assistant Treasurers and Assistant Secretaries. The assistant treasurers and assistant secretaries shall perform all functions and duties which the secretary or treasurer, as the case may be, may assign or delegate; but such assignment or delegation shall not relieve the principal officer from the responsibilities and liabilities of his or her office. In addition, an assistant secretary or an assistant treasurer, as thereto authorized by the board of directors, may sign with the president, or a vice president, certificates for shares of the corporation, the issuance of which shall have been duly authorized by resolution of the board of directors; and the assistant secretaries and assistant treasurers shall, in general, perform such duties as shall be assigned to them by the secretary or the treasurer, respectively, or by the president or by the board of directors. The assistant treasurers shall, if required by the board of directors, give bonds for the faithful discharge of their duties in such sums, and with such surety or sureties, as the board of directors shall determine.

SECTION 4.11.     <u>Salaries</u>.  The salaries of the officers may be fixed from time to time by the board of directors or by such officer as it shall designate for such purpose or as it shall otherwise direct.   No officer shall be prevented from receiving a salary or other compensation by reason of the fact that he or she is also a director of the corporation.

## ARTICLE V

## DIVISIONS

SECTION 5.1.     <u>Divisions of the Corporation</u>.  The board of directors shall have the power to create and establish such operating divisions of the corporation as it may from time to time deem advisable.

SECTION 5.2.     <u>Official Positions Within a Division</u>.  If the board of directors does not appoint individuals to official positions within a division, then the president may so appoint such individuals, whether or not they are officers of the corporation, to, and may, with or without cause, remove them from, official positions established within a division.  The president may not remove any individual appointed by the board of directors. (See also Section 4.1 of these by-laws.)

## ARTICLE VI

## CONTRACTS, LOANS, CHECKS AND DEPOSITS

SECTION 6.1.     <u>Contracts and Other Instruments</u>.   The board of directors may authorize any officer(s), agent(s) or employee(s) to enter into any contract or execute and deliver any instrument in the name of and on behalf of the corporation, or of any division thereof, and such authority may be general or confined to specific instances.

SECTION 6.2.     <u>Loans</u>.  No loans shall be contracted on behalf of the corporation, or any division thereof, and no evidence of indebtedness shall be issued in the name of the corporation, or any division thereof, unless authorized by a resolution of the board of directors.  Such authority may be general or confined to specific instances.

SECTION 6.3.     <u>Checks, Drafts, etc</u>.  All checks, demands, drafts or other orders for the payment of money, notes or other evidences of indebtedness issued in the name of the corporation, or any division thereof, shall be signed by such officer or officers, agent or agents of the corporation, and in such manner, as shall from time to time be authorized by the board of directors.

SECTION 6.4.     <u>Deposits</u>.  All funds of the corporation, or any division thereof, not otherwise employed shall be deposited from time to time to the credit of the corporation in such banks, trust companies or other depositories as the board of directors may select.

# ARTICLE VII

## CERTIFICATES OF STOCK AND THEIR TRANSFER

SECTION 7.1.    Certificates of Stock. The certificates of stock of the corporation shall be in such form as may be determined by the board of directors, shall be numbered and shall be entered in the books of the corporation as they are issued. They shall exhibit the holder's name and number of shares and shall be signed by the president or vice president and by the treasurer or an assistant treasurer or the secretary or an assistant secretary. If any stock certificate is signed (a) by a transfer agent or an assistant transfer agent or (b) by a transfer clerk acting on behalf of the corporation and a registrar, the signature of any officer of the corporation may be facsimile. In case any such officer whose facsimile signature has thus been used on any such certificate shall cease to be such officer, whether because of death, resignation or otherwise, before such certificate has been issued, such certificate may nevertheless be issued with the same effect as if he or she were such officer at the date of issue. All certificates properly surrendered to the corporation for transfer shall be cancelled and no new certificate shall be issued to evidence transferred shares until the former certificate for at least a like number of shares shall have been surrendered and cancelled and the corporation reimbursed for any applicable taxes on the transfer, except that in the case of a lost, destroyed or mutilated certificate a new one may be issued therefor upon such terms, and with such indemnity (if any) to the corporation, as the board of directors may prescribe specifically or in general terms or by delegation to a transfer agent for the corporation. (See Section 7.2.)

SECTION 7.2.    Lost, Stolen or Destroyed Certificates. The board of directors in individual cases, or by general resolution or by delegation to the transfer agent, may direct a new certificate or certificates or uncertificated shares to be issued in place of any certificate or certificates theretofore issued by the corporation alleged to have been lost, stolen or destroyed, upon the making of an affidavit of that fact by the person claiming the certificate of stock to be lost, stolen or destroyed. When authorizing such issue of a new certificate or certificates, the board of directors may, in its discretion and as a condition precedent to the issuance thereof, require the owner of such lost, stolen or destroyed certificates, or his or her legal representative, to advertise the same in such manner as it shall require and/or to give the corporation a bond sufficient to indemnify it against any claim that may be made against the corporation on account of the alleged loss, theft or destruction of such certificate or the issuance of a new certificate or uncertificated shares.

SECTION 7.3.    No Fractional Share Certificates. Certificates shall not be issued representing fractional shares of stock.

SECTION 7.4.    Transfers of Stock. Upon surrender to the corporation or the transfer agent of the corporation of a certificate for shares duly endorsed or accompanied by proper evidence of succession, assignment or authority to transfer, and upon payment of applicable taxes with respect to such transfer, and in compliance with any restrictions on transfer applicable to the certificate or shares represented thereby of which the corporation shall have notice and subject to such rules and regulations as the board of directors may from time to time deem advisable concerning the transfer and registration of certificates for shares of capital stock of the corporation, the corporation shall issue a new certificate to the person entitled thereto,

cancel the old certificate and record the transaction upon its books. Transfers of shares shall be made only on the books of the corporation by the registered holder thereof or by his or her attorney or successor duly authorized as evidenced by documents filed with the secretary or transfer agent of the corporation.

SECTION 7.5.     Restrictions on Transfer. Any stockholder may enter into an agreement with other stockholders or with the corporation providing for reasonable limitation or restriction on the right of such stockholder to transfer shares of capital stock of the corporation held by him, including, without limiting the generality of the foregoing, agreements granting to such other stockholders or to the corporation the right to purchase for a given period of time any of such shares on terms equal to terms offered such stockholders by any third party. Any such limitation or restriction on the transfer of shares of this corporation must be set forth conspicuously on certificates representing shares of capital stock or, in the case of uncertificated shares, contained in a notice sent pursuant to Section 151(f) of the General Corporation Law of Delaware, in which case the corporation or the transfer agent shall not be required to transfer such shares upon the books of the corporation without receipt of satisfactory evidence of compliance with the terms of such limitation or restriction.

SECTION 7.6.     Fixing Record Date. In order that the corporation may determine the stockholders entitled to notice of or to vote at any meeting of stockholders or any adjournment thereof, the board of directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the board of directors, and which record date shall not be more than 60 nor less than 10 days before the date of such meeting. If no record date is fixed by the board of directors, the record date for determining stockholders entitled to notice of or to vote at a meeting of stockholders shall be at the close of business on the day next preceding the day on which notice is given, or, if notice is waived, at the close of business on the day next preceding the day on which the meeting is held. A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the meeting; provided, however, that the board of directors may fix a new record date for the adjourned meeting.

In order that the corporation may determine the stockholders entitled to consent to corporate action in writing without a meeting, the board of directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the board of directors, and which date shall not be more than ten days after the date upon which the resolution fixing the record date is adopted by the board of directors. If no record date has been fixed by the board of directors, the record date for determining stockholders entitled to consent to corporate action in writing without a meeting, when no prior action by the board of directors is required, shall be the first date on which a signed written consent setting forth the action taken or proposed to be taken is delivered to the corporation by delivery to its registered office, its principal place of business, or an officer or agent of the corporation having custody of the book in which proceedings of meetings of stockholders are recorded.

In order that the corporation may determine the stockholders entitled to receive payment of any dividend or other distribution or allotment of any rights or the stockholders entitled to exercise any rights in respect of any change, conversion or exchange of stock, or for the purpose of any other lawful action, the board of directors may fix a record date, which record date shall

- 14 -

not precede the date upon which the resolution fixing the record date is adopted, and which record date shall be not more than 60 days prior to such action. If no record date is fixed, the record date for determining stockholders for any such purpose shall be at the close of business on the day on which the board of directors adopts the resolution relating thereto.

SECTION 7.7.    Stockholders of Record. The corporation shall be entitled to treat the holder of record of any share or shares of stock as the holder in fact thereof and accordingly, shall not be bound to recognize any equitable or other claim to or interest in such share or shares on the part of any other person, whether or not it shall have express or other notice thereof, except as otherwise provided by the laws of Delaware.

## ARTICLE VIII

## INDEMNIFICATION

SECTION 8.1.    In General. Each person who at any time is or shall have been a director, officer, employee or agent of the corporation, or is or shall have been serving at the request of the corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, and his or her heirs, executors and administrators, shall be indemnified by this corporation in accordance with and to the full extent permitted by the Delaware General Corporation Law as in effect at the time of adoption of this by-law or as amended from time to time. The foregoing right of indemnification shall not be deemed exclusive of any other rights to which a person seeking indemnification may be entitled under any by-law, agreement, vote of stockholders or disinterested directors or otherwise.

The corporation shall, in its discretion, pay the expenses (including attorneys' fees) incurred in defending any proceeding in advance of its final disposition, provided, however, that the payment of expenses incurred by a director or officer in advance of the final disposition of the proceeding shall be made only upon receipt of an undertaking by the director or officer to repay all amounts advanced if it should be ultimately determined that the director or officer is not entitled to be indemnified under this Article or otherwise. Such expenses (including attorneys' fees) incurred by former directors and officers or other employees and agents may be so paid upon such terms and conditions, if any, as the corporation deems appropriate.

SECTION 8.2.    Insurance. If authorized by the board of directors, the corporation may purchase and maintain insurance on behalf of any person to the full extent permitted by the General Corporation Law of Delaware as in effect at the time of the adoption of this by-law or as amended from time to time.

## ARTICLE IX

## GENERAL PROVISIONS

SECTION 9.1.    Fiscal Year. The fiscal year of the corporation shall be fixed by resolution of the board of directors.

SECTION 9.2 .    Corporate Seal. The board of directors may adopt a corporate seal which shall have inscribed thereon the name of the corporation, and the words "CORPORATE

CHIDOCS02:276949.1