## **EXHIBIT A**

## **AMENDED AND RESTATED CREDIT FACILITY**

The following describes the principal terms of the Amended and Restated Credit Facility.

# XERIUM TECHNOLOGIES, INC.

## Summary of Terms and Conditions

### US$410,000,000 Second Lien Secured Term Loan Facility

The following is a summary (the "Preliminary Term Sheet") of certain material terms of a proposed restructuring of the loans under the Amended and Restated Credit and Guaranty Agreement of Xerium Technologies, Inc. ("Xerium") and certain of its subsidiaries, dated as of May 30, 2008, as amended (the "Prepetition Credit Agreement"). The restructuring of such loans shall be effectuated through a plan of reorganization (the "Plan of Reorganization") to be filed by Xerium with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

| | | |
|---|---|---|
| 1. | *Administrative and Collateral Agent:* | Citicorp North America, Inc. (the "New Term Loan Agent"). |
| 2. | *Sole Lead Arranger and Sole Bookrunner:* | Citigroup Global Markets, Inc. |
| 3. | *Lenders:* | The banks and financial institutions party to the Prepetition Credit Agreement and the Prepetition Swap Parties (the "New Term Loan Lenders"). |
| 4. | *Prepetition Swap Parties:* | Deutsche Bank AG and Merrill Lynch Capital Services, Inc. |
| 5. | *Borrowers:* | Xerium Technologies, Inc. (the "Company"), XTI LLC ("XTI", and together with the Company, the "U.S. Borrowers"), Xerium Canada, Inc. ("Xerium Canada"), Huyck Wangner Austria GmbH ("Huyck Austria"), Xerium Italia S.p.A. ("Xerium Italia") and Xerium Germany Holding GmbH ("Xerium Germany", and together with Xerium Canada, Huyck Austria and Xerium Italia, the "Non U.S. Borrowers"). |
| 6. | *Guarantors:* | The guarantors under the Prepetition Credit Agreement and Robec Brazil LLC (the "Guarantors"). The Guarantors organized under the laws of the United States or any state thereof are referred to as the "U.S. Guarantors", and the Guarantors organized outside the United States are referred to as the "Non U.S. Guarantors." |
| 7. | *Joint and Several Obligations; Limitation on* | The obligations of the Borrowers under the Term Loan Facility and the related loan documents shall be joint and several, provided that none of the Non |

|   | *Obligations:* | U.S. Borrowers shall be liable for any of the obligations of any U.S. Borrower. |
|---|---|---|

U.S. Borrowers shall be liable for any of the obligations of any U.S. Borrower.

The obligations of the Guarantors under the loan documents shall be joint and several, <u>provided</u> that none of the Non U.S. Guarantors shall be liable for any of the obligations of any U.S. Guarantor.

Notwithstanding the foregoing, any payments received by the New Term Loan Agent with respect to the Term Loans or the Collateral shall be applied to the payment of the obligations under the loan documents for the ratable benefit of the New Term Loan Lenders.

8. *Term Loan Facility:* The Borrowers shall issue to the New Term Loan Lenders term loans (the "<u>Term Loans</u>") in an aggregate amount equal to US$410,000,000.[1] The Term Loans shall be issued by the Borrowers in the following amounts and currencies:

| <u>Borrower</u> | <u>Amount</u>[2] | <u>Currency</u> |
|---|---|---|
| Xerium | US$225,145,947.36 | US Dollars |
| XTI | US$43,677,549.37 | Euros |
| Xerium Canada | US$46,532,560.48 | Canadian Dollars |
| Huyck Austria | US$24,267,534.91 | Euros |
| Xerium Italia | US$16,957,549.73 | Euros |
| Xerium Germany | US$53,418,858.16 | Euros |

The Term Loans shall be deemed to have been

---

[1] The $410 million will represent a pro rata reduction of the existing loans under the Prepetition Credit Agreement.

[2] Based on the applicable "New York Closing" exchange rate published online at http://online.wsj.com for Tuesday, February 23, 2010, to be adjusted at closing based on exchange rates two business days prior to closing.

2

made to the Borrowers on the Closing Date without any actual funding. Term Loans that are repaid shall not be reborrowed.

| | | |
|---|---|---|
| 9. | *Closing Date:* | The date on which the conditions precedent to the closing of the Term Loan Facility shall have been satisfied or waived. |
| 10. | *Amortization:* | 2% annual amortization, payable on the 15th day of the last month of each calendar quarter, beginning in the first full calendar quarter after the Closing Date. |
| 11. | *Maturity Date:* | Five years following the Closing Date. |
| 12. | *Interest:* | The Term Loans shall bear interest as follows: |

    (i) in the case of the Term Loans issued by Xerium Canada, at the BA Rate plus the Applicable Margin;

    (ii) in the case of the Term Loans issued by Xerium, at the LIBOR Rate plus the Applicable Margin; and

    (iii) in the case of the Term Loans issued by XTI, Xerium Italia, Huyck Austria and Xerium Germany, at the Euribor Rate plus the Applicable Margin.

The terms "BA Rate", "LIBOR Rate" and "Euribor Rate" shall have the same meanings as set forth in the Prepetition Credit Agreement except that the BA Rate, the LIBOR Rate and the Euribor Rate shall not be less than 2.00% per annum.

The term "Applicable Margin" means (i) 625 bps if the Leverage Ratio equals or exceeds 2.75:1.00, and (ii) 575 bps if the Leverage Ratio is less than 2.75:1.00.

Interest periods will be 1, 2, 3 or 6 months.

If any Event of Default occurs and is continuing, then the Borrowers will pay interest on the unpaid balance of the outstanding Term Loans at a per annum rate of two percent (2%) greater than the rate

3

| | | |
|---|---|---|
| 13. | ***Interest Payments:*** | Interest shall be payable in arrears on the last day of each interest period. |
| 14. | ***Mandatory Prepayment:*** | Mandatory prepayment of the Term Loans shall be made from (i) 100% of the net cash proceeds from asset sales in excess of US$100,000 (with the obligation to mandatorily prepay commencing when such asset sales are greater than US$250,000) made outside the ordinary course of business, less any taxes payable by the Borrowers with respect to such asset sales; <u>provided</u> that with respect to the net cash proceeds from the Australia and Vietnam Assets (as defined in Section 20(h)), only 50% of the net cash proceeds shall be subject to mandatory prepayment, (ii) 100% of insurance and condemnation award payments, less any taxes payable by the Borrowers with respect to such award payments, (iii) cash proceeds from debt issuances, other than permitted debt and permitted refinancing debt and (iv) 50% of excess cash flow, which shall exclude non-cash items and shall include certain working capital adjustments, after the end of each fiscal year, beginning at the end of fiscal year 2011 (payable in 2012), with (in the case of clauses (i), (ii) and (iii)) exceptions, baskets and reinvestment rights to be agreed upon. Mandatory prepayments pursuant to clauses (i), (ii) and (iv) will be shared ratably with the lenders under the First Lien Facility pursuant to the terms of the Intercreditor Agreement. Borrowers will bear all costs related to any mandatory prepayment of Term Loans on a day that is not the last day of an interest period. |
| 15. | ***Voluntary Prepayment:*** | The Term Loans may be prepaid without penalty, on 3 business days' notice, in minimum amounts and increments to be agreed upon. Borrowers will bear all costs related to the voluntary prepayment of Term Loans prior to the last day of the interest period thereof. |
| 16. | ***Security and Second Priority:*** | The New Term Loan Agent for and on behalf of the New Term Loan Lenders shall have perfected second priority security interests in and liens upon (i) all existing and after acquired real and personal, |

4

tangible and intangible, property of the U.S. Borrowers and U.S. Guarantors and (ii) the real and personal, tangible and intangible, property of the Non U.S. Borrowers and Non U.S. Guarantors securing the obligations under the Prepetition Credit Agreement (together, the "Collateral").

All amounts owing under the Term Loan Facility and the related loan documents in respect thereof at all times will be subject and subordinate to the liens granted under the Company's US$80,000,000 revolving and term loan credit facility to become effective concurrently with the Term Loan Facility (the "First Lien Facility"), subject to the terms of the Intercreditor Agreement.

17. **Conditions to Closing:** The closing of the Term Loan Facility shall be subject to the satisfaction of the conditions customary for a transaction of this type, including:

(a) The Bankruptcy Court shall have entered an order confirming the Company's Plan of Reorganization, which order (i) shall be in form and substance satisfactory to the New Term Loan Agent and (ii) shall be in full force and effect and shall not have been reversed, modified, amended or stayed (or application therefor made).

(b) All fees and other payments required to be made under the Term Loan Agreement or any other written agreement shall have been paid.

(c) No Event of Default and no condition which would constitute an Event of Default with the giving of notice or lapse of time or both shall exist.

(d) Representations and warranties shall be true and correct in all material respects, except where such representation or warranty relates to an earlier date, in which case it shall be true and correct in all material respects as of such earlier date; provided that any representation or warranty that is by its terms qualified by materiality shall be true and correct in all

5

respects.

(e) Execution and delivery of all loan and collateral documents for the Term Loan Facility and the Intercreditor Agreement, including but not limited to mortgages, ALTA mortgage title insurance policies and evidence of flood insurance with respect to any property located in any flood hazard zone.

(f) The New Term Loan Agent shall have a perfected second priority security interest in the Collateral and all filings and recordings and searches necessary or desirable in connection with such liens and security interest shall have been duly made.

(g) Delivery of legal opinion by counsel to the Borrowers and the Guarantors.

(h) Delivery of customary officers' and secretaries' certificates, incumbency/specimen signature certificates, resolutions and good standing certificates.

(i) All required consents shall have been obtained.

(j) The Company's debtor-in-possession credit facility shall have been repaid in full and commitments thereunder terminated, and all liens and security interests related thereto shall have been terminated and released, unless continued or refinanced pursuant to the terms of the First Lien Facility.

(k) The New Term Loan Agent shall have received reasonably satisfactory evidence that the conditions to effectiveness under the First Lien Facility shall have been satisfied or waived in accordance with the terms thereof.

(l) Issuance of common stock of the Company to the lenders under the Prepetition Credit Agreement and to the Prepetition Swap Parties as contemplated by the Company's Plan of Reorganization.

(m) The agent under the Prepetition Credit

Agreement (on behalf of the lenders thereunder) and the Prepetition Swap Parties shall have received the cash payment contemplated by the Company's Plan of Reorganization.

(n) The collateral agent for the First Lien Facility, as bailee for the New Term Loan Agent and other parties, shall have received the certificates representing the shares of capital stock pledged pursuant to the security documents, together with undated stock powers (or the equivalent) for each such certificate executed by the applicable Borrower or Guarantor.

(o) The New Term Loan Agent shall have received a detailed consolidated budget and business plan of the Company and its subsidiaries through fiscal year 2015 (including a projected consolidated balance sheet and related statements of projected operations and cash flow as of the end of fiscal year 2015), in form and substance acceptable to the New Term Loan Agent.

(p) The Company's US$80,000,000 First Lien Facility shall have become effective.

| | | |
|---|---|---|
| 18. | *Representations and Warranties:* | The Term Loan Agreement will contain representations and warranties that are customary for a transaction of this type and shall be based on the representations and warranties set forth in the Prepetition Credit Agreement (subject to materiality qualifiers and exceptions in the Prepetition Credit Agreement, as well as matters disclosed in SEC filings and the Disclosure Statement), including: |

(a) Confirmation of corporate status and authority of the Company and its subsidiaries.

(b) Capital stock of each of the Company and its subsidiaries has been duly authorized and validly issued and is fully paid and non-assessable.

(c) Due authorization, execution and delivery of

7

the loan documents.

(d) Execution, delivery, and performance by the Borrowers and Guarantors of the loan documents do not conflict with law, existing agreements or organization documents except where such conflict would not reasonably be expected to result in a Material Adverse Effect.

(e) No governmental or regulatory approvals required.

(f) Legality, validity, binding effect and enforceability of the loan documents.

(g) Accuracy of information and financial statements.

(h) Projections based on good faith estimates.

(i) No occurrence of any event, matter or circumstance since the petition date: (a) which is materially adverse to the: (i) business, assets or financial condition of Company and its subsidiaries taken as a whole; or (ii) ability of any Borrower or any Guarantor to perform any of its obligations in accordance with their terms under any of the loan documents; or (b) which in the reasonable opinion of the Requisite Lenders results in any (i) loan document not being legal, valid and binding on and, subject to reservations contained in the legal opinions provided as conditions precedent thereto, enforceable against any party thereto, from and after the Effective Date of the Plan of Reorganization, and/or (ii) collateral document not being a valid and effective security interest, from and after the Effective Date of the Plan of Reorganization, and in the case of (b), in each case in a manner or to an extent materially prejudicial to the interest of any New Term Loan Lenders under the loan documents ("Material Adverse Effect").

(j) Payment of taxes by the Company and its subsidiaries, except those taxes being contested

8

in good faith by appropriate proceedings promptly instituted and diligently conducted and for which an adequate reserve has been made in accordance with GAAP.

(k) Good, sufficient and legal title to properties owned by the Company or its subsidiaries.

(l) Environmental compliance by the Company and its subsidiaries, except where non-compliance would not reasonably be expected to result in a Material Adverse Effect.

(m) No defaults by the Company or its subsidiaries in any contractual obligations except where such default would not reasonably be expected to result in a Material Adverse Effect and except as contemplated by the Plan of Reorganization.

(n) List of material contracts in effect on the Closing Date is true, correct and complete.

(o) Neither the Company nor any of its subsidiaries is an investment company.

(p) Neither the Company nor any of its subsidiaries is engaged in the business of extending credit for the purpose of purchasing or carrying any margin stock and no part of the proceeds of the Term Loans made will be used to purchase or carry any such margin stock.

(q) No unfair labor practices by the Company or its subsidiaries and other employment law non-compliance matters that could reasonably be expected to result in a Material Adverse Effect.

(r) Compliance by the Company and its subsidiaries with employee benefit plans, except where non-compliance would not reasonably be expected to result in a Material Adverse Effect.

(s) No broker's or finder's fee or commission will be payable in connection with the transactions contemplated by the loan documents.

(t) Borrowers and Guarantors are solvent.

(u) Full and accurate disclosure by Borrowers and Guarantors.

(v) Compliance with laws, except where non-compliance would not reasonably be expected to result in a Material Adverse Effect.

19. *Affirmative Covenants:* The Term Loan Agreement will contain affirmative covenants that are customary for a transaction of this type and shall be based on the affirmative covenants set forth in the Prepetition Credit Agreement, including:

(a) The Company to deliver to the New Term Loan Agent the following: (i) audited annual financial statements within 90 days after the end of each fiscal year; (ii) unaudited quarterly financial statements within 45 days after the end of each fiscal quarter; (iii) detailed consolidated budget and business plan of the Company and its subsidiaries through fiscal year 2015 (including a projected consolidated balance sheet and related statements of projected operations and cash flow as of the end of fiscal year 2015) on or before April 1 of each fiscal year; (iv) compliance certificates; (v) notices of default; (vi) notices of litigation; (vii) notices of ERISA events; (viii) annual collateral verification reports; and (ix) other information.

(b) The Company to file all reports and other documents with the Securities and Exchange Commission required under the Securities Exchange Act.

(c) Each Borrower, each Guarantor and their respective subsidiaries to preserve and maintain in full force and effect its corporate existence and all rights and franchises, licenses and permits material to its business, except where its board of directors determines that such preservation is no longer desirable in the conduct of its business and the loss is not disadvantageous in any material respect to it or

10

the New Term Loan Lenders.

(d) Each Borrower, each Guarantor and their respective subsidiaries to pay all material taxes, except those taxes which are being contested in good faith by appropriate proceedings promptly instituted and diligently conducted and for which an adequate reserve has been made in accordance with GAAP.

(e) Each Borrower, each Guarantor and their respective subsidiaries to maintain in good repair, working order and condition, ordinary wear and tear excepted, all material properties used or useful in the business of the Company and its subsidiaries and make all appropriate repairs, renewals and replacements thereof, except where failure to do so would not reasonably be expected to have a Material Adverse Effect.

(f) The Company will maintain or cause to be maintained, with financially sound and reputable insurers, such public liability insurance, third party property damage insurance, business interruption insurance and casualty insurance with respect to liabilities, losses or damage in respect of the assets, properties and businesses of the Company and its subsidiaries as may customarily be carried or maintained under similar circumstances by persons of established reputation engaged in similar businesses, in each case in such amounts, with such deductibles, covering such risks and otherwise on such terms and conditions as shall be customary for such persons.

(g) Each Borrower, each Guarantor and their respective subsidiaries to maintain accurate books and records and, as reasonably requested and with reasonable notice, permit visitation and inspection by the New Term Loan Agent representatives.

(h) Each Borrower, each Guarantor and their respective subsidiaries to comply in all

11

material respects, with the requirements of all applicable laws, rules, regulations and orders of any governmental authority (including all environmental laws), except where failure to do so would not reasonably be expected to have a Material Adverse Effect.

(i) The Company to deliver to the New Term Loan Agent environmental reports and disclosures.

(j) Each Borrower to cause any person that becomes a material subsidiary to become a Guarantor and a grantor under the applicable collateral documents.

(k) Each Borrower, each Guarantor and their respective subsidiaries, upon acquisition of a material real estate asset, to take all actions to create in favor of New Term Loan Agent a valid and perfected second priority security interest.

(l) Each Borrower and Guarantors to take all actions the New Term Loan Agent may reasonably request in order to effect fully the purposes of the loan and collateral documents.

(m) Each Borrower and each of its subsidiaries will continue to own or possess the right to use, free from any restrictions, all patents, trademarks, copyrights, and domain names that are used in the operation of their respective businesses as presently conducted and as proposed to be conducted, except to the extent the failure to so own or possess would not reasonably be expected to have a Material Adverse Effect.

(n) Each Borrower and each Guarantor to supply to the New Term Loan Agent or any New Term Loan Lender documents and evidence reasonably requested and necessary to comply with "know your customer" or other similar checks.

(o) Each Borrower, each Guarantor and their

12

respective subsidiaries to ensure that its payment obligations under each of the loan and collateral documents rank and will at all times rank junior only to the obligations under the First Lien Facility in accordance with the terms of the Intercreditor Agreement and Permitted Liens (as defined in the Prepetition Credit Agreement) and will at all times rank at least pari passu to the obligations of all other present and future secured and unsubordinated indebtedness, other than obligations under the First Lien Facility.

(p) If the audit opinion delivered with the audited consolidated financial statements of the Company and its subsidiaries for the fiscal year 2009 contains a going concern qualification, the Company will use its commercially reasonable efforts to cause its auditors to deliver a revised opinion withdrawing the going concern qualification.

20. ***Negative Covenants:*** The Term Loan Agreement will contain negative covenants that are customary for a transaction of this type and shall be based on the negative covenants set forth in the Prepetition Credit Agreement, including:

(a) No incurrence of indebtedness by any Borrower or any Guarantor or any of their subsidiaries, other than:

1. the obligations under the Term Loan Agreement and the related loan and collateral documents (the "Obligations");

2. indebtedness of any subsidiary to any Borrower or to any other subsidiary, or of any Borrower to any subsidiary; provided, (i) all such indebtedness shall be evidenced by promissory notes and all such notes shall be subject to a lien pursuant to the collateral documents, (ii) all such indebtedness shall be unsecured and subordinated in right of payment to the payment in full of the Obligations pursuant to the terms of the applicable

13

promissory notes or an intercompany subordination agreement that in any such case, is reasonably satisfactory to the New Term Loan Agent, and (iii) any payment by any such subsidiary under any guaranty of the Obligations shall result in a pro tanto reduction of the amount of any indebtedness owed by such subsidiary to the Company or to any of its subsidiaries for whose benefit such payment is made;

3. senior or subordinated unsecured debt; <u>provided</u>, that (i) no default or event of default is continuing under the Term Loan Agreement or would result from such issuance, (ii) each Borrower is in compliance (and certifies as to such compliance) with the financial covenants on a pro forma basis after giving effect to the such issuance, (iii) the proceeds of such issuance are applied in accordance with the mandatory prepayment provisions of the Term Loan Agreement, (iv) such debt shall have a maturity of not earlier than six months after the Maturity Date, and (v) the documentation relating to such subordinated debt shall not contain any covenant or event of default that is either (x) not substantially provided for in the Term Loan Agreement or (y) more favorable to the holder of such subordinated debt than the comparable covenant or event of default set forth in the Term Loan Agreement, and, in the case of any subordinated debt, shall contain customary subordination provisions pursuant to which such debt is subordinated to the prior payment in full of the obligations under the Term Loan Agreement;

4. indebtedness incurred by the Company or any of its subsidiaries arising from agreements providing for indemnification, adjustment of purchase price or similar obligations, or from guaranties or letters of credit, surety bonds or performance

14