# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------------------x

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| XERIUM TECHNOLOGIES, INC., et al.,[1] | : | Case No. 10-_____ (   ) |
|  | : |  |
| Debtors. | : | Joint Administration Requested |

-------------------------------------------------------------------------x

**APPLICATION OF DEBTORS FOR ENTRY OF AN ORDER PURSUANT
TO 11 U.S.C. §§ 327(a) AND 328(a), FED. R. BANKR. P. 2014, AND DEL.
BANKR. L.R. 2014-1 AUTHORIZING THE RETENTION AND EMPLOYMENT
OF ALIXPARTNERS, LLP AS FINANCIAL ADVISOR AND CONSULTANT
FOR THE DEBTORS, NUNC PRO TUNC TO THE COMMENCEMENT DATE**

        Xerium Technologies, Inc. ("Xerium") and certain of its direct and indirect subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), respectfully represent:

## Background

        1.      On the date hereof (the "Commencement Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[1] The Debtors in these chapter 11 cases (along with the last four digits of each Debtor's federal tax identification number or its foreign equivalent) are: Xerium Technologies, Inc. (8674), Huyck Licensco Inc. (0434), Stowe Woodward Licensco LLC (4459), Stowe Woodward LLC (4102), Wangner Itelpa I LLC (3561), Wangner Itelpa II LLC (3562), Weavexx, LLC (7969), Xerium Asia, LLC (3367), Xerium III (US) Limited (4460), Xerium IV (US) Limited (4461), Xerium V (US) Limited (4462), XTI LLC (6754), Xerium Canada Inc. (0003), Huyck.Wangner Austria GmbH (0323), Xerium Germany Holding GmbH (3219), and Xerium Italia S.p.A. (0150). The location of the Debtors' corporate headquarters and the service address for all Debtors is: 8537 Six Forks Road, Suite 300, Raleigh, North Carolina 27615.

2. Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of their chapter 11 cases for procedural purposes only pursuant to Fed. R. Bankr. P. 1015(b).

**The Debtors' Businesses**

3. The Debtors, together with their non-Debtor subsidiaries and affiliates (collectively, the "Company"), are a leading global manufacturer and supplier of two categories of consumable products used in the production of paper products (the "Clothing Segment") and roll technology products (the "Roll Covers Segment") installed in paper-making machines. The Clothing Segment consists of engineered synthetic textile belts, which range in size from 15 feet in width to more than 460 feet in length, that allow for the extraction of water while transporting paper through a paper-making machine. The Roll Covers Segment encompasses the covering and servicing of large metal rolls (up to 50 feet in length, six feet in diameter, and 140,000 pounds) upon which paper machine clothing products are often mounted and between which paper travels as it is processed from a "wet slurry" to a finished paper product.

4. The Company operates 38 facilities in 13 countries, 32 of which are manufacturing facilities. The Company's facilities are strategically located in the major paper-producing regions of North America, Europe, South America, and Asia-Pacific. Eleven of these facilities manufacture clothing, twenty facilities manufacture and service roll covers, and one facility manufactures both clothing and roll covers. The Company owns substantially all of its manufacturing facilities.

5. As of January 1, 2010, the Company employs approximately 3,290 people worldwide, of which approximately 2,500 are manufacturing employees, 400 are sales and

marketing employees, 100 employees are in research and development, and 300 are administrative and other employees.

6.      For the fiscal year ended December 31, 2009, the Company generated, on a consolidated basis, $500.1 million in net sales. As of December 31, 2009, the Company reported, on a consolidated basis, total assets of $693.5 million and total liabilities of $813.2 million, including approximately $640.1 million of debt.

## The Debtors' Prepackaged Plan

7.      Prior to the Commencement Date, the Debtors solicited votes on their proposed joint prepackaged plan of reorganization under chapter 11 of the Bankruptcy Code pursuant to a disclosure statement, dated March 2, 2010 and supplement thereto, dated March 8, 2010 (together, the "Disclosure Statement"). On the Commencement Date, the Debtors filed the proposed plan, as amended (the "Plan") and the Disclosure Statement with the Court. As set forth in the Certification of The Garden City Group, Inc. with Respect to Solicitation and Tabulation of Votes on Debtors' Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, filed on the Commencement Date, the Plan has been overwhelmingly accepted by all classes entitled to vote.

8.      As described in the Disclosure Statement and the Declaration of Stephen Light in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings, filed with the Court on the Commencement Date, the Plan contemplates a comprehensive financial restructuring of the Debtors' capital structure that will reduce the Debtors' leverage and enhance their long-term growth and competitive position. The Plan also provides for an improvement in the Debtors' liquidity by extending the maturity dates of their prepetition indebtedness. Under the Plan, general unsecured claims will be rendered unimpaired and holders of equity interests in Xerium

will receive shares of new common stock to be issued on the effective date of the Plan and warrants to purchase additional shares of new common stock.

**Jurisdiction**

9.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Relief Requested**

10.     By this application and for the reasons set forth below, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Fed. R. Bankr. P. 2014(a), and Del. Bankr. L.R. 2014-1, the Debtors respectfully request entry of an order, substantially in the form attached hereto as Exhibit A, authorizing and approving the retention and employment of AlixPartners, LLP ("AlixPartners") as the Debtors' financial advisor and consultant, nunc pro tunc to the Commencement Date, in accordance with the terms set forth herein and in the retention agreement, dated February 19, 2010, a copy of which is attached hereto as Exhibit B (the "Retention Agreement").

**AlixPartners' Qualifications**

11.     The Debtors are familiar with the professional standing and reputation of AlixPartners.  The Debtors understand that AlixPartners has a wealth of experience in providing financial and restructuring advisory services, and enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.

12.     AlixPartners' professionals have assisted and advised, and provided strategic advice to, debtors, creditors, bondholders, investors, and other entities in numerous

chapter 11 cases of similar size and complexity to the Debtors' chapter 11 cases. Since its inception in 1981, AlixPartners, its predecessor entities, and its affiliate, AP Services, LLC, have provided restructuring or crisis management services in numerous large cases, including most recently, In re Lyondell Chemical Co., Case No. 09-10023 (REG) (Bankr. S.D.N.Y. 2009); In re General Motors, Case No. 09-50026 (REG) (Bankr. S.D.N.Y); In re Hayes Lemmerz, Case No. 09-11655 (MFW) (Bankr. D. Del. 2009); In re Bearing Point, Case No. 09-10693 (REG) (Bankr. S.D.N.Y. 2009); In re Charter Communications, Case No. 09-11435 (JMP) (Bankr. S.D.N.Y. 2009); In re General Growth Properties, Case No. 09-11977 (ALG) (Bankr. S.D.N.Y. 2009); In re ACG Holdings, Inc., Case No. 08-11467 (CSS) (Bankr. D. Del. 2008); In re Bally Total Fitness of Greater New York, Case No. 08-14818 (BRF) (Bankr. S.D.N.Y. 2008) and Case No. 07-12395 (BRL) (Bankr. S.D.N.Y. 2007); In re SemGroup, L.P., Case No. 08-11525 (BLS) (Bankr. D. Del 2008); In re Tropicana Casinos & Resorts, Case No. 08-10856 (DJC) (Bankr. D. Del. 2008); In re VeraSun Energy Corporation, Case No. 08-12606 (BLS) (Bankr. D. Del. 2008); In re New Century TRS Holdings, Inc., Case No. 07-10416 (KJC) (Bankr. D. Del. 2007); In re Remy Worldwide Holdings, Inc., Case No. 07-11481 (KJC) (Bankr. D. Del. 2007); In re Dana Corp., Case No. 06-10354 (BRL) (Bankr. S.D.N.Y. 2006); In re Dura Auto. Sys., Inc., Case No. 06-11202 (KJC) (Bankr. D. Del. 2006); In re Sea Containers Ltd., Case No. 06-11156 (KJC) (Bankr. D. Del. 2006); In re Calpine Corp., Case No. 05-60200 (BRL) (Bankr. S.D.N.Y. 2005).

13.     The Debtors have selected AlixPartners as their financial advisor and consultant because of AlixPartners' experience and reputation for providing financial and restructuring advisory services in large, complex chapter 11 cases such as those listed above. Prior to the Commencement Date, the Debtors engaged AlixPartners to assist the Debtors in their restructuring efforts. In that regard, AlixPartners assisted the Debtors in the development of their

business plan, financial forecasts, liquidation analysis, and with the evaluation of strategic alternatives and implementation of restructuring initiatives, including the negotiation of the proposed Plan and the financing arrangements contemplated thereunder, as well as the proposed debtor in possession financing facility. In addition, AlixPartners assisted the Debtors in coordinating the efforts of the Debtors' various professionals and in managing the prepetition chapter 11 preparation process and the Debtors' public relations efforts in that regard. Consequently, the Debtors believe that AlixPartners acquired significant knowledge of the Debtors and their businesses and is now familiar with the Debtors' financial affairs, debt structure, operations, and related matters. Likewise, in providing prepetition services to the Debtors, AlixPartners' professionals have worked closely with the Debtors' management and other advisors. Accordingly, AlixPartners has developed relevant experience and expertise regarding the Debtors that will assist it in providing effective and efficient services in these chapter 11 cases. Indeed, if the Debtors were required to retain a financial advisor and consultant other than AlixPartners in connection with these chapter 11 cases, the Debtors, their estates, and all parties in interest would be unduly prejudiced by the time and expense necessary to familiarize the other financial advisor and consultant with the intricacies of the Debtors and their business operations.

**Terms of the Engagement**

**I.    Scope of Services**

14.    Subject to approval of the Court and consistent with the terms set forth in the Retention Agreement, AlixPartners will continue to assist the Debtors in their operations and restructuring efforts. Brian J. Fox will be the managing director responsible for the overall engagement and will be assisted by a staff of consultants at various levels, who have a wide range of skills and abilities related to this type of assignment.

15.     The following services rendered, and subject to approval of the Court, proposed by the Debtors to be rendered, by AlixPartners at the request of the Debtors, are fully described in the Retention Agreement:

(a)     provide assistance to management in connection with the Debtors' development of their revised business plan, and such other related forecasts as may be required by the bank lenders in connection with negotiations or by the Debtors for other corporate purposes;

(b)     assist the Debtors' management and their professionals specifically assigned to sourcing, negotiating, and implementing any financing, exit financing facilities, in conjunction with the Plan and the overall restructuring;

(c)     advise senior management in the negotiation and implementation of restructuring initiatives and evaluation of strategic alternatives;

(d)     assist in preparing for and filing bankruptcy petitions, coordinating and providing administrative support for the proceeding;

(e)     assist with the preparation of the statement of affairs, schedules, and other regular reports required by the Court;

(f)     assist as requested in analyzing preferences and other avoidance actions, if requested;

(g)     manage the claims and claims reconciliation processes;

(h)     assist the Debtors in the development of its communications strategy for the various stakeholder constituents;

(i)     render an opinion on the viability of the restructuring concept ("Sanierungsgutachten") of Xerium Germany Holding GmbH. The approach to this opinion is based on the standard for restructuring concepts ("Anforderungen an Sanierungskonzepte") "FAR 1/1991" of the German Auditors Association ("Institut der Wirtchaftsprüfer", IDW), but does not cover all aspects as prescribed in FAR 1/1991, specifically excluding aspects of FAR 1/1991 relating to legal and tax issues.;

(j)     assist in managing the "working group" professionals who are assisting the Debtors in the reorganization process or who are working for the Debtors' various stakeholders to improve coordination of their effort and individual work product to be consistent with the Debtors' overall restructuring goals;

(k)     assist in obtaining and presenting information required by parties in interest in the Debtors' bankruptcy process including official committees appointed by the Court and the Court itself;

(l)     assist the Debtors in other business and financial aspects of the chapter 11 proceeding, including, but not limited to, development of the Disclosure Statement and Plan;

(m)     provide assistance in such areas as litigation support and testimony before the Court on matters that are within the scope of this engagement and within AlixPartners' area of testimonial competencies; and

(n)     assist with such other matters as may be requested that fall within AlixPartners' expertise and that are mutually agreeable.

16.     If AlixPartners determines that it is desirable to augment its professional staff with independent contractors in these chapter 11 cases, (a) AlixPartners will file, and require each independent contractor to file, an affidavit pursuant to Fed. R. Bankr. P. 2014 and Del. Bankr. L.R. 2014-1 indicating that the independent contractor has reviewed the parties in interest list in these cases, disclosing the independent contractor's relationships, if any, with the parties in interest and indicating that the independent contractor is "disinterested," (b) the independent contractor must remain disinterested during the time that AlixPartners is involved in providing services on behalf of the Debtors, and (c) the independent contractor must represent that he/she will not work for the Debtors or other parties in interest in these chapter 11 cases during the time AlixPartners is involved in providing services to the Debtors. AlixPartners' standard practice is to charge for an independent contractor's services at the rate equal to the compensation provided by AlixPartners to such independent contractor.

17.     As set forth in the declaration of Brian J. Fox in support of this application (the "Fox Declaration"), attached hereto as Exhibit C, AlixPartners has stated its desire and willingness to act in the Debtors' cases and render the necessary professional services as

financial advisor and consultant for the Debtors on the terms set forth in the Retention Agreement and described herein, and to subject itself to the jurisdiction of the Court.

## II.    Professional Compensation

18.    Contemporaneously herewith, the Debtors have filed with the Court a motion seeking entry of an order (the "Interim Compensation Order") establishing procedures for interim compensation and reimbursement of expenses of professionals retained in these chapter 11 cases.

19.    AlixPartners will apply for compensation and reimbursement of expenses in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, the applicable Federal Rules of Bankruptcy Procedure, the applicable Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the guidelines established by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), any applicable orders of this Court, including, the Interim Compensation Order, and consistent with the proposed terms of compensation set forth in the Retention Agreement (all such proposed terms, the "Fee Structure") to which the Debtors respectfully refer this Court for a full recitation.

20.    As more specifically set forth in the Retention Agreement and subject to approval of the Court, the Debtors propose to compensate AlixPartners as set forth below. Subject to periodic adjustments, the Debtors will compensate AlixPartners on a monthly basis for fees based on the hours worked by the AlixPartners professionals anticipated to be assigned to these cases at the following hourly rates:

| | |
|---|---|
| Managing Directors | $710-995 |
| Directors | $530-685 |
| Vice Presidents | $395-520 |
| Associates | $280-380 |

| | |
|---|---|
| Analysts | $245-270 |
| Paraprofessionals | $190-210 |

21.     Work performed by AlixPartners consultants outside of North America will be charged at the standard AlixPartners non-North American local rates for such consultants, converted to USD using fixed conversion rates established on the invoice date.

22.     AlixPartners will maintain records (in $1/10^{\text{th}}$ of an hour increments) in support of any actual and necessary costs and expenses incurred in connection with the rendering of its services in these chapter 11 cases by category and nature of the services rendered and reasonably detailed descriptions of those services provided on behalf of the Debtors, the approximate time expended in providing those services and the individuals who provided professional services on behalf of the Debtors and will present such records to the Court.

23.     AlixPartners typically works for compensation that includes hourly-based fees and performance-based contingent incentive compensation earned upon achieving meaningful results.  In these chapter 11 cases, the Debtors and AlixPartners have agreed on contingent incentive compensation in the form of a $250,000 restructuring fee (the "Restructuring Fee") based upon several specific metrics.  The Restructuring Agreement provides that AlixPartners will receive the Restructuring Fee if the Debtors (a) amend their existing credit agreement or (b) complete one or more transactions that substantially transfer a significant portion (i.e., more than two-thirds (2/3) of the pro forma revenues or operating assets) of the business as a going concern to another entity ((a) and (b) together, a "Restructuring").  The Restructuring Fee is due and payable at the closing of the Restructuring.  In the event of a Change in Control (as defined in Schedule 1 to the Retention Agreement) of the Debtors, the Restructuring Fee will be due and payable immediately prior to the Change in Control whether or not such success objectives have been achieved at the closing of the Restructuring.

24.     In addition to compensation for professional services rendered by AlixPartners' personnel, the Debtors will pay directly or reimburse AlixPartners, upon receipt of periodic billings, for all reasonable out-of-pocket expenses incurred in connection with the Debtors' chapter 11 cases, including travel, lodging and meals, postage, courier, routine black and white copying, telephone, messenger, and facsimile charges.

25.     AlixPartners' comprehensive strategic, financial, accounting, analytical, and operational expertise as well as its capital markets knowledge, financing skills, restructuring capabilities, mergers and acquisitions expertise, and its state-of-the-art bankruptcy advisory services, some or all of which may be required by the Debtors during the term of AlixPartners' engagement, were all important factors in determining the Fee Structure. The Fee Structure is consistent with and typical of compensation arrangements entered into by AlixPartners and other comparable firms in connection with the rendering of similar services under similar circumstances. The Debtors believe that the Fee Structure is in fact reasonable, market-based, and designed to fairly compensate AlixPartners for its work and to cover fixed and routine overhead expenses.

26.     AlixPartners received an initial advance retainer of $250,000 (the "Retainer") on May 8, 2009 from the Debtors. Pursuant to the Retention Agreement, invoiced amounts have been recouped against the Retainer, and payments on the invoices have been used to replenish the Retainer. As set forth in the Fox Declaration, during the ninety days prior to commencement of these cases, the Debtors paid AlixPartners a total of $1,225,266.15, incurred in providing services to the Debtors in contemplation of, and in connection with, prepetition restructuring activities.

27.     Due to the ordinary course and unavoidable reconciliation of fees and submission of expenses immediately prior to, and subsequent to, the Commencement Date, AlixPartners has incurred but not billed fees and reimbursable expenses that relate to the prepetition period.  AlixPartners hereby seeks this Court's approval to apply the Retainer to these amounts.    Upon the proposed application of the Retainer, the Debtors would not owe AlixPartners any sums for prepetition services.

28.     As set forth in the Fox Declaration, AlixPartners has not shared or agreed to share any of its compensation from the Debtors with any other persons, other than employees of AlixPartners, as permitted by section 504 of the Bankruptcy Code.

## III.     Indemnification Provisions

29.     As part of AlixPartners' proposed engagement, the Debtors have agreed to certain indemnification obligations as more fully described in section 7 of the "General Terms and Conditions" of the Retention Agreement (the "Indemnification Provisions").  Pursuant to the Indemnification Provisions, the Debtors will indemnify, hold harmless, and defend AlixPartners and its affiliates and its and their partners, directors, officers, employees, and agents (each an "Indemnified Party") from and against all claims, liabilities, losses, expenses, and damages arising out of or in connection with the engagement of AlixPartners that is the subject of the Retention Agreement, except to the extent that such claims, liabilities, or losses, expenses, and damages result from gross negligence, bad faith, self dealing or misconduct of the Indemnified Party.

30.     The Debtors and AlixPartners believe the Indemnification Provisions are customary and reasonable for comparable financial advisory and consulting engagements of firms of similar nature to AlixPartners, both out-of-court and in chapter 11 cases.  See, e.g., United Artists Theater Co. v. Walton, 315 F.3d 217 (3d Cir. 2003) (affirming order authorizing

indemnification of financial advisor by debtors); In re Joan & David Halpern, Inc., 248 B.R. 43 (Bankr. S.D.N.Y. 2000), aff'd, 2000 WL 1800690 (S.D.N.Y. Dec. 6, 2000) (same); In re Comdisco, Inc., No. 02-C-1174 (N.D. Ill. Sept. 23, 2002) (same).

31.    The terms of the Indemnification Provisions are similar to terms that have been approved by bankruptcy courts in this District and other districts.  See, e.g., In re Affiliated Media, Inc., Case No. 10-10202 (KJC) (Bankr. D. Del. Mar. 2, 2010) (D.I. 136); In re Haights Cross Communications, Inc., Case No. 10-10062 (BLS) (Bankr. D. Del. Feb. 5, 2010); In re Trident Resources Corp., Case No. 09-13150 (MFW) (Bankr. D. Del. Jan. 28, 2010) (D.I. 187); In re FairPoint Commc'ns, Inc., Case No. 09-16335 (BRL) (Bankr. S.D.N.Y. Jan 11, 2010) (D.I. 328); In re Simmons Bedding Company, Case No. 09-14037 (MFW) (Bankr. D. Del. Dec. 10, 2009) (D.I. 140); In re Premier International Holdings Inc., Case No. 09-12019 (CSS) (Bankr. D. Del. Oct. 8, 2009) (D.I. 772); In re Sun-Times Media Group, Inc., Case No. 09-11092 (CSS) (Bankr. D. Del. May 11, 2009) (D.I. 173); In re Charter Commc'ns, Inc., Case No. 09-11435 (JMP) (Bankr. S.D.N.Y. Apr. 15, 2009) (D.I. 183); In re Nortel Networks Inc., Case No. 09-10138 (KG) (Bankr. D. Del. Mar. 20, 2009) (D.I. 507); In re Recycled Paper Greetings Inc., Case No. 09-10002 (KG) (Bankr. D. Del. Jan. 23, 2009) (D.I. 147); In re VeraSun Energy Corporation, Case No. 08-12606 (Bankr. D. Del. Jan. 2, 2009) (D.I. 441); In re Motor Coach Industries International, Inc., Case No. 08-12136 (Bankr. D. Del. Oct. 16, 2008) (D.I. 213); In re Movie Gallery, Inc., Case No. 07-33849 (DOT) (Bankr. E.D. Va. Oct. 18, 2007) (D.I. 114); In re New Century TRS Holdings, Inc., Case No. 07-10416 (KJC) (Bankr. D. Del. Apr. 26, 2007) (D.I. 405); In re Calpine Corp., Case No. 05-60200 (BRL) (Bankr. S.D.N.Y. Apr. 26, 2006) (D.I. 1370); In re FLYi, Inc., Case No. 05-20011 (MFW) (Bankr. D. Del. Dec. 2, 2005) (D.I. 280); In re Delphi Corp., Case No. 05-44481 (Bankr. S.D.N.Y. Nov. 30, 2005) (D.I. 1363); In re Foamex

Int'l, Inc., Case No. 05-12685 (PJW) (Bankr. D. Del. Oct. 17, 2005) (D.I. 203); In re Collins & Aikman Corp., Case No. 05-55927 (SWR) (Bankr. E.D. Mich. July 18, 2005) (D.I. 731); In re Oakwood Homes Corp., Case No. 02-13396 (PJW) (Bankr. D. Del. July 21, 2003) (D.I. 1620); In re United Artists Theatre Co., Case No. 00-3514 (SLR) (Bankr. D. Del. Nov. 14, 2000) (D.I. 508).

32.     The terms and conditions of the Retention Agreement, including the Indemnification Provisions and other aspects of the Fee Structure, were negotiated by the Debtors and AlixPartners at arm's length and in good faith.  The Debtors and AlixPartners respectfully submit that such terms and conditions are customary and reasonable for financial advisory and consulting engagements, both out-of-court and within chapter 11 cases. Specifically, the Indemnification Provisions in the Retention Agreement (and as reflected in the proposed order) contain the qualifications and limitations that are customary in this District and other jurisdictions.   Furthermore, when viewed in conjunction with the other terms of AlixPartners' proposed retention, the Indemnification Provisions are reasonable and are in the best interests of the Debtors, their estates and creditors, and all other parties in interest. Accordingly, as part of this application, the Debtors request that the Court approve the terms of the Retention Agreement, including the Indemnification Provisions as set forth therein and reflected in the proposed order.

### No Duplication of Services

33.     The Debtors intend and believe that the services of AlixPartners will complement, and not duplicate, the services rendered by any other professional retained in these chapter 11 cases.  The Debtors and AlixPartners intend that all of the services that AlixPartners will provide to the Debtors will be appropriately directed by the Debtors so as to avoid

duplicative efforts among the other professionals retained in these chapter 11 cases.  AlixPartners understands that the Debtors have retained and may retain additional professionals during the term of AlixPartners' engagement and AlixPartners agrees to work cooperatively with such professionals to integrate any respective work conducted.

### AlixPartners' Disinterestedness

34.     To the best of the Debtors' knowledge, information, and belief, other than as set forth in the Fox Declaration, neither AlixPartners nor any AlixPartners professional working on or connected to AlixPartners' engagement on the Debtors' behalf has any connection with the Debtors, their creditors, or any other party in interest in the Debtors' cases, or their respective attorneys or accountants, the U.S. Trustee, or any person employed in the office of the U.S. Trustee.

35.     To the best of the Debtors' knowledge, information, and belief, other than as set forth in the Fox Declaration, AlixPartners does not hold or represent any interest adverse to the Debtors or their estates.  AlixPartners is not a creditor of the Debtors.  The Debtors believe that AlixPartners is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and that the employment of AlixPartners is necessary and in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

36.     AlixPartners will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise.  Pursuant to Del. Bankr. L.R. 2014-1, to the extent that AlixPartners learns of any additional material information relating to its employment (such as potential or actual conflicts of interest), AlixPartners will file and serve a supplemental declaration with the Court setting forth the additional information.

## Basis for Relief

37.      Pursuant to section 327(a) of the Bankruptcy Code, a debtor in possession is authorized to employ professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor in possession] in carrying out [its] duties under [the Bankruptcy Code]." 11 U.S.C. § 327(a). Section 1107(b) of the Bankruptcy Code further provides, "[n]otwithstanding section 327(a) of the [Bankruptcy Code], a person is not disqualified for employment under section 327 of the Bankruptcy Code by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b). As discussed above and set forth in the Fox Declaration, AlixPartners does not represent or hold any interest adverse to the Debtors or their estates and satisfies the disinterestedness standard of section 327(a) of the Bankruptcy Code.

38.      In addition, pursuant to section 328(a) of the Bankruptcy Code, the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Section 328 of the Bankruptcy Code permits the compensation of professionals, including financial advisors and consultants, on more flexible terms that reflect the nature of their services and market conditions.

39.      The Debtors believe the Retention Agreement and the Indemnification Provisions contain reasonable terms and conditions of employment and should be approved pursuant to sections 327(a) and 328(a) of the Bankruptcy Code. The Retention Agreement and the Indemnification Provisions adequately reflect: (a) the nature and scope of services to be provided by AlixPartners, (b) AlixPartners' substantial experience with respect to financial

advisory and consulting services, and (c) fee structures and indemnification obligations typically utilized by AlixPartners and other leading financial advisors and consultants. In particular, the Debtors believe the proposed Fee Structure creates a proper balance between monthly and contingency fees based on the success of the Debtors' chapter 11 cases. Moreover, AlixPartners' substantial experience with respect to financial advisory and consulting services, coupled with the nature and scope of work already performed by AlixPartners prior to the Commencement Date, further suggest the reasonableness of the Retention Agreement and the Indemnification Provisions.

40.     Denial of the Debtors' continued employment of AlixPartners, under the terms of the Retention Agreement, would disadvantage the Debtors by depriving them of the assistance of qualified restructuring consultants who already have substantial experience working with the Debtors. If the Court were to deny the retention of AlixPartners, the Debtors would be forced to interview and engage new financial advisors and consultants who lack a thorough understanding of the Debtors' businesses and the restructuring initiatives that have been implemented to date. Given the size and complexity of the Debtors' businesses, denying AlixPartners' retention would require the Debtors to commit significant resources to researching and vetting a new advisor, negotiating terms, and then bringing that advisor up to speed. Due to the time restraints and daily pressures of the chapter 11 process, it is unlikely that any substitute restructuring consulting firm would be positioned, in a short time frame, to duplicate AlixPartners' overall expertise and, specifically, its knowledge of the Debtors' businesses and operations.

41.     As discussed above and set forth in the Fox Declaration the Debtors submit that they have satisfied the statutory requirements of sections 327(a) and 328(a) of the

Bankruptcy Code, Fed. R. Bankr. P. 2014(a),[2] and Del. Bankr. L.R. 2014-1, and that the retention of AlixPartners is in the best interests of the Debtors, their estates and creditors, and all other parties in interest. Accordingly, the Debtors respectfully request the entry of an order authorizing the Debtors to retain and employ AlixPartners as financial advisor and consultant on the terms set forth herein and in the Retention Agreement.

## Notice

42. No trustee, examiner or statutory creditors' committee has been appointed in these chapter 11 cases. Notice of this application is being provided to (i) the U.S. Trustee, (ii) the holders of the fifty largest unsecured claims against the Debtors on a consolidated basis, (iii) counsel to Citicorp North America, Inc., as administrative agent for the Debtors' prepetition secured lenders, (iv) the Securities and Exchange Commission, (v) the Internal Revenue Service, (vi) AlixPartners, (vii) the United States Department of Justice, and (viii) all parties having filed requests for notices in these chapter 11 cases. Due to the nature of the relief requested herein, the Debtors submit that no other or further notice need be given.

---

[2] Fed. R. Bank. P. 2014(a) requires that an application for employment of a professional pursuant to section 327 of the Bankruptcy Code include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bank. P. 2014(a).

## No Prior Application

43.     No prior application for the relief requested herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: **March 30**, 2010

Respectfully submitted,

Xerium Technologies, Inc.

By: _____
    Stephen R. Light
    Chairman and Chief Executive Officer

Xerium III (US) Limited
Xerium IV (US) Limited
Xerium V (US) Limited
Huyck Licensco Inc.
Stowe Woodward Licensco LLC
Wangner Itelpa I LLC
Wangner Itelpa II LLC
Xerium Asia, LLC

By: _____
    Stephen R. Light
    President

Stowe Woodward LLC
Weavexx, LLC
Xerium Canada Inc.

By: _____
    Stephen R. Light
    President and Chief Executive Officer

Xerium Italia S.p.A.

By: _____
    Stephen R. Light
    Chairman

XTI LLC

By: _____
David Maffucci
Executive Vice President

Xerium Germany Holding GmbH

By: _____
David Maffucci
Managing Director

Huyck.Wangner Austria GmbH

By:  _____

David Pretty
Managing Director

# EXHIBIT A

## Proposed Order

-----------------------------------------------------------------------------x

In re                            :     Chapter 11

                               :

XERIUM TECHNOLOGIES, INC., et al.,[1]  :     Case No. 10-_____ (  )

                               :

                Debtors.        :     Jointly Administered

-----------------------------------------------------------------------------x

**ORDER PURSUANT TO 11 U.S.C. §§ 327(a) AND 328(a),
FED. R. BANKR. P. 2014, AND DEL. BANKR. L.R. 2014-1
AUTHORIZING THE RETENTION AND EMPLOYMENT OF
ALIXPARTNERS, LLP AS FINANCIAL ADVISOR AND CONSULTANT
FOR THE DEBTORS, NUNC PRO TUNC TO THE COMMENCEMENT DATE**

Upon the application, dated March 30, 2010 (the "Application"),[2] of Xerium

Technologies, Inc. ("Xerium") and certain of its direct and indirect subsidiaries, as debtors and

debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"),

pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy

Code"), Fed. R. Bankr. P. 2014(a), and Del. Bankr. L.R. 2014-1, for entry of an order

authorizing and approving the retention and employment of AlixPartners, LLP ("AlixPartners")

as the Debtors' financial advisor and consultant, nunc pro tunc to the Commencement Date, in

accordance with the terms set forth in the Application and the retention agreement, dated

---

[1] The Debtors in these chapter 11 cases (along with the last four digits of each Debtor's federal tax
identification number or its foreign equivalent) are: Xerium Technologies, Inc. (8674), Huyck Licensco
Inc. (0434), Stowe Woodward Licensco LLC (4459), Stowe Woodward LLC (4102), Wangner Itelpa I
LLC (3561), Wangner Itelpa II LLC (3562), Weavexx, LLC (7969), Xerium Asia, LLC (3367), Xerium
III (US) Limited (4460), Xerium IV (US) Limited (4461), Xerium V (US) Limited (4462), XTI LLC
(6754), Xerium Canada Inc. (0003), Huyck.Wangner Austria GmbH (0323), Xerium Germany Holding
GmbH (3219), and Xerium Italia S.p.A. (0150). The location of the Debtors' corporate headquarters and
the service address for all Debtors is: 8537 Six Forks Road, Suite 300, Raleigh, North Carolina 27615.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the
Application.

February 19, 2010, attached hereto as <u>Exhibit 1</u> (the "<u>Retention Agreement</u>"), all as more fully described in the Application; and upon the declaration of Brian J. Fox in support of the Application, attached to the Application as Exhibit C; and the Court having jurisdiction to consider the Application and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been provided to (i) the U.S. Trustee, (ii) the holders of the fifty largest unsecured claims against the Debtors on a consolidated basis, (iii) counsel to Citicorp North America, Inc., as administrative agent for the Debtors' prepetition secured lenders, (iv) the Securities and Exchange Commission, (v) the Internal Revenue Service, (vi) AlixPartners, (vii) the United States Department of Justice, and (viii) all parties having filed requests for notices in these chapter 11 cases, and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Application (the "<u>Hearing</u>"); and upon the record of the Hearing, and all of the proceedings had before the Court; and the Court having found and determined that AlixPartners holds no interest adverse to the Debtors or their estates and is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, that its employment is necessary and in the best interests of the Debtors, their estates and creditors, and all other parties in interest, and that the terms of the Retention Agreement, including the Indemnification Provisions and the Fee Structure, are reasonable terms for the purposes of section 328(a) of the Bankruptcy Code, and that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby

ORDERED that the Application is granted to the extent provided herein; and it is further

ORDERED that, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Fed. R. Bankr. P. 2014, and Del. Bankr. L.R. 2014-1, the Debtors are authorized to retain and employ AlixPartners as their financial advisor and consultant, <u>nunc</u> <u>pro</u> <u>tunc</u> to the Commencement Date, in accordance with the terms set forth in the Application and the Retention Agreement; and it is further

ORDERED that AlixPartners shall apply for compensation and reimbursement of expenses pursuant to the procedures set forth in sections 330 and 331 of the Bankruptcy Code; <u>provided</u>, <u>however</u>, that AlixPartners shall be compensated in accordance with the terms of the Retention Agreement, and subject to the procedures set forth in the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the guidelines established by the U.S. Trustee and any applicable orders of this Court, including the Interim Compensation Order; and it is further

ORDERED that the Indemnification Provisions are approved, subject during the pendency of the Debtors' chapter 11 cases, to the following:

    (a)    AlixPartners shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Indemnification Provisions for services, unless such services and the indemnification, contribution, or reimbursement are approved by the Court;

    (b)    the Debtors shall have no obligation to indemnify AlixPartners, or provide contribution or reimbursement to AlixPartners for any claim or expense that is either (i) judicially determined (the determination having become final) to have arisen from AlixPartners' gross negligence, fraud, willful misconduct, breach of fiduciary duty, if any, bad faith or self-dealing; (ii) for a contractual dispute in which the Debtors allege the breach of AlixPartners' contractual obligations unless the Court determines that

indemnification, contribution, or reimbursement would be permissible pursuant to In re United Artists Theatre Co., 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by the Court, after notice and a hearing to be a claim or expense for which AlixPartners should not receive indemnity, contribution, or reimbursement under the terms of the Retention agreement as modified by this Order; and

(c)     if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, AlixPartners believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Retention Agreement, including, without limitation, the advancement of defense costs, AlixPartners must file an application in this Court, and the Debtors may not pay any such amounts to AlixPartners before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expense by AlixPartners for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify AlixPartners. All parties shall retain the right to object to any demand by AlixPartners for indemnification, contribution, or reimbursement; and it is further

ORDERED that the Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.


Dated:     _____, 2010
           Wilmington, Delaware



           _____
           United States Bankruptcy Judge

## EXHIBIT 1

## Retention Agreement


When it really matters.*

February 19, 2010

Mr. Stephen Light
Chairman and Chief Executive Officer
Xerium Technologies, Inc.
8537 Six Forks Road, Suite 300
Raleigh NC 27615
United States

Re:     Agreement for Financial Advisory and Consulting Services

Dear Stephen:

This letter, together with the attached Schedule(s) and General Terms and Conditions, sets forth the
agreement ("Agreement") between AlixPartners, LLP, a Delaware limited liability partnership
("AlixPartners") and Xerium Technologies, Inc. ("Xerium" or the "Company") for the engagement of
AlixPartners to provide financial advisory and consulting services to the Company. We understand that the
Company has formed a steering committee of the Board of Directors (the "Steering Committee") to lead
negotiations with parties-in-interest. Pursuant to this engagement, we will report to the Steering Committee.

AlixPartners understands that the Company may file for protection under Chapter 11 of the United States
Bankruptcy Code.. In the event of a filing, the Company will promptly apply to the Bankruptcy Court to
obtain approval of AlixPartners' retention and Retainer, nunc pro tunc to the date of filing. AlixPartners
acknowledges that its retention and the terms thereof are subject to Court approval.

All defined terms shall have the meanings ascribed to them in this letter and in the attached Schedule(s) and
General Terms and Conditions.

| OBJECTIVES AND TASKS |
| --- |

The responsibilities of AlixPartners will be as follows:

- Provide assistance to management in connection with the Company's development of its revised business
  plan, and such other related forecasts as may be required by the bank lenders in connection with
  negotiations or by the Company for other corporate purposes.

- Assist Company's management and its professionals specifically assigned to sourcing, negotiating
  and implementing any financing, exit financing facilities, in conjunction with the Plan of
  Reorganization and the overall restructuring.

- Advise senior management in the negotiation and implementation of restructuring initiatives and
  evaluation of strategic alternatives.

- Assist in preparing for and filing a Bankruptcy Petition, coordinating and providing administrative
  support for the proceeding.

40 West 57th Street | 29th Floor | New York, NY | 10019 | 212.490.2500 | 212.490-1344 fax | www.alixpartners.com



- Assist with the preparation of the statement of affairs, schedules and other regular reports required by the Bankruptcy Court.

- Assist as requested in analyzing preferences and other avoidance actions, if requested.

- Manage the claims and claims reconciliation processes.

- Assist the company in the development of its communications strategy for the various stakeholder constituents.

- Render an opinion on the viability of the restructuring concept („Sanierungsgutachten") of Xerium Germany Holding GmbH. The approach to this opinion is based on the standard for restructuring concepts („Anforderungen an Sanierungskonzepte") „FAR 1/1991" of the German Auditors Association („Institut der Wirtschaftsprüfer", IDW), but does not cover all aspects as prescribed in FAR 1/1991, specifically excluding aspects of FAR 1/1991 relating to legal and tax issues.

- Assist in managing the "working group" professionals who are assisting the Company in the reorganization process or who are working for the Company's various stakeholders to improve coordination of their effort and individual work product to be consistent with the Company's overall restructuring goals.

- Assist in obtaining and presenting information required by parties in interest in the Company's bankruptcy process including official committees appointed by the United States Bankruptcy Court (the "Court") and the Court itself.

- Assist the Company in other business and financial aspects of a Chapter 11 proceeding, including, but not limited to, development of a Disclosure Statement and Plan of Reorganization.

- Provide assistance in such areas as litigation support and testimony before the Bankruptcy Court on matters that are within the scope of this engagement and within AlixPartners' area of testimonial competencies.

- Assist with such other matters as may be requested that fall within AlixPartners' expertise and that are mutually agreeable.

---

**STAFFING**

---

Brian J. Fox will be the managing director responsible for the overall engagement. He will be assisted by a staff of consultants at various levels who have a wide range of skills and abilities related to this type of assignment. In addition, AlixPartners has relationships with, and may periodically use, independent contractors with specialized skills and abilities to assist in this engagement.

If AlixPartners finds it desirable to augment its professional staff with independent contractors (an "I/C") in this case, (i) AlixPartners will file, and require the I/C to file, 2014 affidavits indicating that the I/C has reviewed the list of the interested parties in this case, disclosing the I/C's relationships, if any, with the interested parties and indicating that the I/C is disinterested; (ii) the I/C must remain disinterested during the time that AlixPartners is involved in providing services on behalf of the Company; and (iii) the I/C



must represent that he/she will not work for the Company or other parties in interest in this case during the time AlixPartners is involved in providing services to the Company.

AlixPartners' standard practice is to charge for an I/C's services at the rate equal to the compensation provided by AlixPartners to such Independent Contractor.

| TIMING AND FEES |
| --- |

AlixPartners will commence this engagement upon receipt of a copy of this Agreement executed by the Company. This Agreement supersedes the engagement letter between the parties dated April 24, 2009, as amended.

The Company shall compensate AlixPartners for its services, and reimburse AlixPartners for expenses, as set forth on Schedule 1.

*   *   *

*Remainder of page intentionally left blank*


*When it really matters.*

If these terms meet with your approval, please sign and return the enclosed copy of the Agreement.

We look forward to working with you.

Sincerely yours,

ALIXPARTNERS, LLP

Brian J. Fox
Managing Director

Acknowledged and Agreed to:

Xerium Technologies, Inc.


By: _____

Its: _____

Dated: _____

The Steering Committee of the Board of Directors of

Xerium Technologies, Inc.


By: _____

Its: _____

Dated: _____


**AlixPartners** LLP
*When it really matters.*

If these terms meet with your approval, please sign and return the enclosed copy of the Agreement.

We look forward to working with you.

Sincerely yours,

ALIXPARTNERS, LLP


Brian J. Fox
Managing Director

Acknowledged and Agreed to:

Xerium Technologies, Inc.

By: *Stephen Light*

Its: *Chairman, CEO & President*

Dated: *March 5, 2010*

The Steering Committee of the Board of Directors of

Xerium Technologies, Inc.

By: _____

Its: _____ *Director, Chairman Steering Committee*

Dated: *March 8, 2010*



When it really matters.

**SCHEDULE 1**

**FEES AND EXPENSES**

1.  **Fees:** AlixPartners' fees will be based on the hours worked by AlixPartners personnel at AlixPartners' hourly rates, which are:

    | | |
    |---|---|
    | Managing Directors | $ 710-995 |
    | Directors | $ 530-685 |
    | Vice Presidents | $ 395-520 |
    | Associates | $ 280-380 |
    | Analysts | $ 245-270 |
    | Paraprofessionals | $ 190-210 |

    AlixPartners reviews and revises its billing rates on January 1 of each year.

    Work performed by AlixPartners consultants outside of North America will be charged at the standard AlixPartners non-North American local rates for such consultants, converted to USD using fixed conversion rates established on the invoice date. Fee schedules for jurisdictions outside of North America can be provided to the Company upon request.

2.  **Restructuring Fee:** The Company agrees that it will pay a Restructuring Fee of $250,000 if the Company (i) amends its existing credit agreement; or (ii) completes one or more transactions that substantially transfer a significant portion (i.e., more than two-thirds (2/3) of the pro forma revenues or operating assets) of the business as a going concern to another entity (collectively, a "Restructuring").

    The Restructuring Fee shall be due and payable when the success objective or objectives described above have been achieved at the closing of the Restructuring. In the event of a Change of Control of the Company, the Restructuring Fee shall be due and payable immediately prior to the Change of Control whether or not such success objectives have been achieved. As used herein, "Change of Control" shall mean the occurrence of any of the following: (a) any merger, consolidation or similar transaction involving the Company after which the owners of the Company immediately before the transaction do not own at least a majority in interest of the continuing or surviving or resulting Company; (b) any sale, lease, exchange or other transfer (in one transaction or a series of transactions) of all, or substantially all, the assets of the Company, or the liquidation or dissolution of the Company; or (c) the individuals who constitute the Board of Directors of the Company on the date of this Agreement cease for any reason to constitute at least a majority of the Board of the Company (or any continuing or surviving or resulting company following a transaction described in (b)).

Page 5 of 9

3.  **Expenses:** In addition to the fees set forth in this Schedule, the Company shall pay directly, or reimburse AlixPartners upon receipt of periodic billings, for all reasonable out-of-pocket expenses incurred in connection with this assignment, such as travel, lodging and meals, and an administrative fee of 2% of the fees to cover all other indirect administrative costs such as postage, courier, routine black and white copying, telephone, messenger and facsimile charges. The administrative fee will not be applicable in the event that the Company files for protection under Chapter 11 of the United States Bankruptcy Code. Rather, actual expenses shall be charged to the Company.

4.  **Break Fee:** AlixPartners does not seek a Break Fee in connection with this engagement.

5.  Retainer: AlixPartners acknowledges that it has received a retainer in the amount of $250,000 to be applied against Fees and Expenses as set forth in this Schedule and in accordance with Section 2 of the attached General Terms and Conditions.

These General Terms and Conditions ("Terms") are incorporated into the Agreement between the Company and AlixPartners to which these Terms are attached. In case of conflict between the wording in the letter and/or schedule(s) and these Terms, the wording of the letter and/or schedule(s) shall prevail.

## Section 1. Company Responsibilities.

The Company will undertake responsibilities as set forth below:

1.  Provide reliable and accurate detailed information, materials, documentation and

2.  Make decisions and take future actions, as the Company determines in its sole discretion, on any recommendations made by AlixPartners in connection with this Agreement.

AlixPartners' delivery of the services and the fees charged are dependent on (i) the Company's timely and effective completion of its responsibilities; and (ii) timely decisions and approvals made by the Company's management. The Company shall be responsible for any delays, additional costs or other deficiencies caused by not completing its responsibilities.

## Section 2. Retainer, Billing and Payments.

**Retainer and Billing.** AlixPartners will submit monthly invoices for services rendered and expenses incurred and will offset such invoices against the Retainer. Unless explicitly stated in the invoice, all amounts invoiced are not contingent upon or in any way tied to the delivery of any reports or other work product in the future. Payment will be due upon receipt of the invoices to replenish the Retainer to the agreed-upon amount. Any unearned portion of the Retainer will be returned to the Company at the termination of the engagement.

**Payments.** All payments to be made by the Company to AlixPartners shall be payable upon receipt of invoice via wire transfer to AlixPartners' bank account, as follows:

| | |
|---|---|
| Receiving Bank: | Deutsche Bank |
| | ABA #021-001-033 |
| Receiving Account: | AlixPartners, LLP |
| | A/C #003-58897 |
| Currency: | USD |

## Section 3. Relationship of the Parties.

The parties intend that an independent contractor relationship will be created by the Agreement. As an independent contractor, AlixPartners will have complete and exclusive charge of the management and operation of its business, including hiring and paying the wages and other compensation of all its employees and agents, and paying all bills, expenses and other charges incurred or payable with respect to the operation of its business. Of course, employees of AlixPartners will not be entitled to receive from the Company any vacation pay, sick leave, retirement, pension or social security benefits, workers' compensation, disability, unemployment insurance benefits or any other employee benefits. AlixPartners will be responsible for all employment, withholding, income and other taxes incurred in connection with the operation and conduct of its business.

Nothing in this agreement is intended to create, nor shall be deemed or construed to create a fiduciary or agency relationship between AlixPartners and the Company or its Board of Directors.

## Section 4. Confidentiality.

AlixPartners shall keep confidential all non-public confidential or proprietary information obtained from the Company during the performance of its services hereunder (the "Information"), and neither AlixPartners nor its personnel will disclose any Information to any other person or entity. "Information" includes non-public confidential and proprietary data, plans, reports, schedules, drawings, accounts, records, calculations, specifications, flow sheets, computer programs, source or object codes, results, models or any work product relating to the business of the Company, its subsidiaries, distributors, affiliates, vendors, customers, employees, contractors and consultants.

The foregoing is not intended to prohibit, nor shall it be construed as prohibiting, AlixPartners from making such disclosures of Information that AlixPartners reasonably believes is required by law or any regulatory requirement or authority, or to clear client conflicts. Upon approval of the Company, AlixPartners may make reasonable disclosures of Information to third parties in connection with the performance of AlixPartners' obligations and assignments hereunder. In addition, AlixPartners will have the right to disclose to any person that it provided services to the Company or its affiliates and a general description of such services, but shall not provide any other information about its involvement with the Company. The obligations of AlixPartners under this Section 4 shall survive the end of any engagement between the parties for a period of two (2) years.

The Company acknowledges that all information (written or oral), including advice and Work Product (as defined in Section 5), generated by AlixPartners in connection with this engagement is intended solely for the benefit and use of the Company (limited to its management and its Board of Directors) in connection with the transactions to which it relates. The Company agrees that no such information shall be used for any other purpose or reproduced, disseminated, quoted or referred to with attribution to AlixPartners at any time in any manner or for any purpose without AlixPartners' prior approval except as required by law.

AlixPartners agrees that the Company's remedies at law for a breach or threatened breach of this Section 4 would be inadequate, and therefore agrees that, without posting a bond, the Company shall be entitled to equitable relief in the form of a temporary or permanent restraining order, injunction or otherwise.

## Section 5. Intellectual Property.

All methodologies, processes, techniques, ideas, concepts, know-how, procedures, software, tools, writings and other intellectual property that AlixPartners has created, acquired or developed prior to the date of this Agreement are, and shall remain, the sole and exclusive property of

AlixPartners, and the Company shall not acquire any interest therein. AlixPartners shall be free to use all methodologies, processes, techniques, ideas, concepts, know-how, procedures, software, tools, writings and other intellectual property that AlixPartners may create or develop in connection with this engagement, subject to its duty of confidentiality to the extent that the same contain information or materials furnished to AlixPartners by the Company that constitute Information referred to in Section 4 above. Except as provided above, all information, reports, materials, software and other work product that AlixPartners creates or develops specifically for the Company as part of this engagement (collectively known as "Work Product") shall be owned by the Company and shall constitute Information referred to in Section 4 above. AlixPartners may retain copies of the Work Product subject to its obligations under Section 4 above.

### Section 6. Framework of the Engagement.

The Company acknowledges that it is retaining AlixPartners solely to assist and advise the Company as described in the Agreement. This engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting engagement.

### Section 7. Indemnification and Other Matters.

The Company shall indemnify, hold harmless and defend AlixPartners and its affiliates and its and their partners, directors, officers, employees and agents (collectively, the "indemnitees") from and against all claims, liabilities, losses, expenses and damages arising out of or in connection with the engagement of AlixPartners that is the subject of the Agreement, except to the extent that such claims, liabilities or losses, expenses and damages result from the gross negligence, bad faith, self dealing or misconduct of the indemnitee. The Company shall pay damages and expenses as incurred, including reasonable legal fees and disbursements of counsel. In addition, the Company shall pay the costs of AlixPartners' professional time (AlixPartners' professional time will be reimbursed at AlixPartners' rates in effect when such future time is required), relating to or arising out of the engagement, including any legal proceeding in which an indemnitee may be required or agree to participate but in which it is not a party. The indemnitees may, but are not required to, engage a single firm of separate counsel of their choice in connection with any of the matters to which this indemnification agreement relates.

AlixPartners is not responsible for any third-party products or services. The Company's sole and exclusive rights and remedies with respect to any third party products or services are against the third-party vendor and not against AlixPartners, whether or not AlixPartners is instrumental in procuring the third-party product or service.

Neither AlixPartners nor the Company shall be liable to the other party hereto except for actual damages resulting from breach of this agreement, gross negligence bad faith, self-dealing or intentional misconduct. This paragraph limiting libability shall have no force or effect during a chapter 11 bankruptcy proceeding.

### Section 8. Governing Law and Arbitration.

The Agreement is governed by and shall be construed in accordance with the laws of the State of New York with respect to contracts made and to be performed entirely therein and without regard to choice of law or principles thereof.

Any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled by arbitration. Each party shall appoint one non-neutral arbitrator. The two party arbitrators shall select a third arbitrator. If within 30 days after their appointment the two party arbitrators do not select a third arbitrator, the third arbitrator shall be selected by the American Arbitration Association (AAA). The arbitration shall be conducted in Raleigh, North Carolina under the AAA's Commercial Arbitration Rules, and the arbitrators shall issue a reasoned award. The arbitrators may award costs and attorneys' fees to the prevailing party. Judgment on the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. In the event the Company files under Chapter 11, the Company and AlixPartners agree that the Bankruptcy Court shall have jurisdiction over any and all matters arising under or in connection with this Agreement, including the indemnification provisions outlined in Section 7, above.

Notwithstanding the foregoing, for any claim relating to the non-payment of fees or expenses due to AlixPartners under this Agreement AlixPartners may in its sole discretion proceed directly to a court of competent jurisdiction to enforce the terms of this Agreement.

In any court proceeding arising out of this Agreement, the parties hereby waive any right to trial by jury.

### Section 9. Termination and Survival.

The Agreement may be terminated at any time by written notice by one party to the other; provided, however, that notwithstanding such termination AlixPartners will be entitled to any fees and expenses due under the provisions of the Agreement, including Success Fee and Break Fee in accordance with Schedule 1. Such payment obligation shall inure to the benefit of any successor or assignee of AlixPartners.

Additionally, unless the Agreement is terminated by the Company for Cause (as defined below) or due to circumstances described in the Success Fee provision in the Agreement, AlixPartners shall remain entitled to the Success Fee(s) that otherwise would be payable for the greater of 12 months from the date of termination or the period of time that that has elapsed from the date of the Agreement to the date of termination. Cause shall mean:

(a) an AlixPartners employee acting on behalf of the Company is convicted of a felony, or

(b) it is determined in good faith by the Board of Directors of the Company after 30 days notice and opportunity to cure, that either (i) an AlixPartners employee is engaging in misconduct injurious to the Company, or (ii) an AlixPartners employee is breaching any of his or her material obligations under this Agreement, or (iii) an AlixPartners employee is willfully disobeying a

lawful direction of the Board of Directors or senior management of the Company.

Sections 2, 4, 5, 7, 8, 9, 10 and 11 of these Terms, the provisions of Schedule 1 and the obligation to pay accrued fees and expenses shall survive the expiration or termination of the Agreement.

### Section 10. Non-Solicitation of Employees

The Company acknowledges and agrees that AlixPartners has made a significant monetary investment recruiting, hiring and training its personnel. During the term of this Agreement and for a period of two years after the final invoice is rendered by AlixPartners with respect to this engagement (the "Restrictive Period"), the Company and its affiliates agree not to directly or indirectly hire, contract with, or solicit the employment of any of AlixPartners' Managing Directors, Directors, or other employees/contractors.

If during the Restrictive Period the Company or its affiliates directly or indirectly hires or contracts with any of AlixPartners' Managing Directors, Directors, or other employees/contractors, the Company agrees to pay to AlixPartners as liquidated damages and not as a penalty the sum total of: (i) for a Managing Director, one million U.S. dollars ($1,000,000 USD); (ii) for a Director, five hundred thousand U.S. dollars ($500,000 USD); and (iii) for any other employee/contractor, two hundred fifty thousand U.S. dollars ($250,000 USD). The Company acknowledges and agrees that liquidated damages in such amounts are (x) fair, reasonable and necessary under the circumstances to reimburse AlixPartners for the costs of recruiting, hiring and training its employees as well as the lost profits and opportunity costs related to such personnel, and to protect the significant investment that AlixPartners has made in its Managing Directors, Directors, and other employees/consultants; and (y) appropriate due to the difficulty of calculating the exact amount and value of that investment. This liquidated damages provision shall have no force or effect during the course of a chapter 11 bankruptcy proceeding.

The Company also acknowledges and agrees that money damages alone may not be an adequate remedy for a breach of this provision, and the Company agrees that AlixPartners shall have the right to seek a restraining order and/or an injunction for any breach of this non-solicitation provision. If any provision of this section is found to be invalid or unenforceable, then it shall be deemed modified or restricted to the extent and in the manner necessary to render the same valid and enforceable.

### Section 11. General.

**Severability.** If any portion of the Agreement shall be determined to be invalid or unenforceable, the remainder shall be valid and enforceable to the maximum extent possible.

**Entire Agreement.** These Terms, the letter agreement into which they are incorporated and the Schedule(s) to such letter agreement contain the entire understanding of the parties relating to the services to be rendered by AlixPartners and may not be amended or modified in any

respect except in a writing signed by the parties. AlixPartners is not responsible for performing any services not specifically described herein or in a subsequent writing signed by the parties.

**Joint and Several.** If more than one party signs this Agreement, the liability of each party shall be joint and several.

**Limit of Liability.** Neither AlixPartners nor the Company shall be liable for incidental or consequential damages under any circumstances, even if it has been advised of the possibility of such damages. This Limit of Liability shall have no force or effect during the course of a chapter 11 bankruptcy proceeding.

**Notices.** All notices required or permitted to be delivered under the Agreement shall be sent, if to AlixPartners, to:

> AlixPartners, LLP
> 2000 Town Center, Suite 2400
> Southfield, MI 48075
> Attention: General Counsel

and if to the Company, to the address set forth in the Agreement, to the attention of the Company's General Counsel, or to such other name or address as may be given in writing to the other party. All notices under the Agreement shall be sufficient if delivered by facsimile or overnight mail. Any notice shall be deemed to be given only upon actual receipt.

## EXHIBIT B

## Retention Agreement



February 19, 2010

Mr. Stephen Light
Chairman and Chief Executive Officer
Xerium Technologies, Inc.
8537 Six Forks Road, Suite 300
Raleigh NC 27615
United States

Re:    Agreement for Financial Advisory and Consulting Services

Dear Stephen:

This letter, together with the attached Schedule(s) and General Terms and Conditions, sets forth the agreement ("Agreement") between AlixPartners, LLP, a Delaware limited liability partnership ("AlixPartners") and Xerium Technologies, Inc. ("Xerium" or the "Company") for the engagement of AlixPartners to provide financial advisory and consulting services to the Company. We understand that the Company has formed a steering committee of the Board of Directors (the "Steering Committee") to lead negotiations with parties-in-interest. Pursuant to this engagement, we will report to the Steering Committee.

AlixPartners understands that the Company may file for protection under Chapter 11 of the United States Bankruptcy Code.. In the event of a filing, the Company will promptly apply to the Bankruptcy Court to obtain approval of AlixPartners' retention and Retainer, nunc pro tunc to the date of filing. AlixPartners acknowledges that its retention and the terms thereof are subject to Court approval.

All defined terms shall have the meanings ascribed to them in this letter and in the attached Schedule(s) and General Terms and Conditions.

---

**OBJECTIVES AND TASKS**

---

The responsibilities of AlixPartners will be as follows:

- Provide assistance to management in connection with the Company's development of its revised business plan, and such other related forecasts as may be required by the bank lenders in connection with negotiations or by the Company for other corporate purposes.

- Assist Company's management and its professionals specifically assigned to sourcing, negotiating and implementing any financing, exit financing facilities, in conjunction with the Plan of Reorganization and the overall restructuring.

- Advise senior management in the negotiation and implementation of restructuring initiatives and evaluation of strategic alternatives.

- Assist in preparing for and filing a Bankruptcy Petition, coordinating and providing administrative support for the proceeding.



- Assist with the preparation of the statement of affairs, schedules and other regular reports required by the Bankruptcy Court.

- Assist as requested in analyzing preferences and other avoidance actions, if requested.

- Manage the claims and claims reconciliation processes.

- Assist the company in the development of its communications strategy for the various stakeholder constituents.

- Render an opinion on the viability of the restructuring concept ("Sanierungsgutachten") of Xerium Germany Holding GmbH. The approach to this opinion is based on the standard for restructuring concepts ("Anforderungen an Sanierungskonzepte") „FAR 1/1991" of the German Auditors Association ("Institut der Wirtschaftsprüfer", IDW), but does not cover all aspects as prescribed in FAR 1/1991, specifically excluding aspects of FAR 1/1991 relating to legal and tax issues.

- Assist in managing the "working group" professionals who are assisting the Company in the reorganization process or who are working for the Company's various stakeholders to improve coordination of their effort and individual work product to be consistent with the Company's overall restructuring goals.

- Assist in obtaining and presenting information required by parties in interest in the Company's bankruptcy process including official committees appointed by the United States Bankruptcy Court (the "Court") and the Court itself.

- Assist the Company in other business and financial aspects of a Chapter 11 proceeding, including, but not limited to, development of a Disclosure Statement and Plan of Reorganization.

- Provide assistance in such areas as litigation support and testimony before the Bankruptcy Court on matters that are within the scope of this engagement and within AlixPartners' area of testimonial competencies.

- Assist with such other matters as may be requested that fall within AlixPartners' expertise and that are mutually agreeable.

---

## STAFFING

Brian J. Fox will be the managing director responsible for the overall engagement. He will be assisted by a staff of consultants at various levels who have a wide range of skills and abilities related to this type of assignment. In addition, AlixPartners has relationships with, and may periodically use, independent contractors with specialized skills and abilities to assist in this engagement.

If AlixPartners finds it desirable to augment its professional staff with independent contractors (an "I/C") in this case, (i) AlixPartners will file, and require the I/C to file, 2014 affidavits indicating that the I/C has reviewed the list of the interested parties in this case, disclosing the I/C's relationships, if any, with the interested parties and indicating that the I/C is disinterested; (ii) the I/C must remain disinterested during the time that AlixPartners is involved in providing services on behalf of the Company; and (iii) the I/C


**AlixPartners** LLP
*When it really matters.*

must represent that he/she will not work for the Company or other parties in interest in this case during the time AlixPartners is involved in providing services to the Company.

AlixPartners' standard practice is to charge for an I/C's services at the rate equal to the compensation provided by AlixPartners to such Independent Contractor.

| TIMING AND FEES |
|---|

AlixPartners will commence this engagement upon receipt of a copy of this Agreement executed by the Company. This Agreement supersedes the engagement letter between the parties dated April 24, 2009, as amended.

The Company shall compensate AlixPartners for its services, and reimburse AlixPartners for expenses, as set forth on Schedule 1.

\* \* \*

*Remainder of page intentionally left blank*



If these terms meet with your approval, please sign and return the enclosed copy of the Agreement.

We look forward to working with you.

Sincerely yours,

ALIXPARTNERS, LLP

Brian J. Fox
Managing Director

Acknowledged and Agreed to:

Xerium Technologies, Inc.

By: _____

Its: _____

Dated: _____

The Steering Committee of the Board of Directors of

Xerium Technologies, Inc.

By: _____

Its: _____

Dated: _____



If these terms meet with your approval, please sign and return the enclosed copy of the Agreement.

We look forward to working with you.

Sincerely yours,

ALIXPARTNERS, LLP


Brian J. Fox
Managing Director

Acknowledged and Agreed to:

Xerium Technologies, Inc.

By: _Stephen Light_

Its: _Chairman, CEO & President_

Dated: _March 5, 2010_

The Steering Committee of the Board of Directors of

Xerium Technologies, Inc.

By: _____

Its: _Director, Chairman Steering Committee_

Dated: _March 8, 2010_



## SCHEDULE 1

### FEES AND EXPENSES

1.  **Fees:** AlixPartners' fees will be based on the hours worked by AlixPartners personnel at AlixPartners' hourly rates, which are:

    | | |
    |---|---|
    | Managing Directors | $ 710-995 |
    | Directors | $ 530-685 |
    | Vice Presidents | $ 395-520 |
    | Associates | $ 280-380 |
    | Analysts | $ 245-270 |
    | Paraprofessionals | $ 190-210 |

    AlixPartners reviews and revises its billing rates on January 1 of each year.

    Work performed by AlixPartners consultants outside of North America will be charged at the standard AlixPartners non-North American local rates for such consultants, converted to USD using fixed conversion rates established on the invoice date. Fee schedules for jurisdictions outside of North America can be provided to the Company upon request.

2.  **Restructuring Fee:** The Company agrees that it will pay a Restructuring Fee of $250,000 if the Company (i) amends its existing credit agreement; or (ii) completes one or more transactions that substantially transfer a significant portion (i.e., more than two-thirds (2/3) of the pro forma revenues or operating assets) of the business as a going concern to another entity (collectively, a "Restructuring").

    The Restructuring Fee shall be due and payable when the success objective or objectives described above have been achieved at the closing of the Restructuring. In the event of a Change of Control of the Company, the Restructuring Fee shall be due and payable immediately prior to the Change of Control whether or not such success objectives have been achieved. As used herein, "Change of Control" shall mean the occurrence of any of the following: (a) any merger, consolidation or similar transaction involving the Company after which the owners of the Company immediately before the transaction do not own at least a majority in interest of the continuing or surviving or resulting Company; (b) any sale, lease, exchange or other transfer (in one transaction or a series of transactions) of all, or substantially all, the assets of the Company, or the liquidation or dissolution of the Company; or (c) the individuals who constitute the Board of Directors of the Company on the date of this Agreement cease for any reason to constitute at least a majority of the Board of the Company (or any continuing or surviving or resulting company following a transaction described in (b)).



3.  **Expenses:** In addition to the fees set forth in this Schedule, the Company shall pay directly, or reimburse AlixPartners upon receipt of periodic billings, for all reasonable out-of-pocket expenses incurred in connection with this assignment, such as travel, lodging and meals, and an administrative fee of 2% of the fees to cover all other indirect administrative costs such as postage, courier, routine black and white copying, telephone, messenger and facsimile charges. The administrative fee will not be applicable in the event that the Company files for protection under Chapter 11 of the United States Bankruptcy Code. Rather, actual expenses shall be charged to the Company.

4.  **Break Fee:** AlixPartners does not seek a Break Fee in connection with this engagement.

5.  Retainer: AlixPartners acknowledges that it has received a retainer in the amount of $250,000 to be applied against Fees and Expenses as set forth in this Schedule and in accordance with Section 2 of the attached General Terms and Conditions.

These General Terms and Conditions ("Terms") are incorporated into the Agreement between the Company and AlixPartners to which these Terms are attached. In case of conflict between the wording in the letter and/or schedule(s) and these Terms, the wording of the letter and/or schedule(s) shall prevail.

## Section 1. Company Responsibilities.

The Company will undertake responsibilities as set forth below:

1. Provide reliable and accurate detailed information, materials, documentation and

2. Make decisions and take future actions, as the Company determines in its sole discretion, on any recommendations made by AlixPartners in connection with this Agreement.

AlixPartners' delivery of the services and the fees charged are dependent on (i) the Company's timely and effective completion of its responsibilities; and (ii) timely decisions and approvals made by the Company's management. The Company shall be responsible for any delays, additional costs or other deficiencies caused by not completing its responsibilities.

## Section 2. Retainer, Billing and Payments.

**Retainer and Billing.** AlixPartners will submit monthly invoices for services rendered and expenses incurred and will offset such invoices against the Retainer. Unless explicitly stated in the invoice, all amounts invoiced are not contingent upon or in any way tied to the delivery of any reports or other work product in the future. Payment will be due upon receipt of the invoices to replenish the Retainer to the agreed-upon amount. Any unearned portion of the Retainer will be returned to the Company at the termination of the engagement.

**Payments.** All payments to be made by the Company to AlixPartners shall be payable upon receipt of invoice via wire transfer to AlixPartners' bank account, as follows:

| | |
|---|---|
| Receiving Bank: | Deutsche Bank |
| | ABA #021-001-033 |
| Receiving Account: | AlixPartners, LLP |
| | A/C #003-58897 |
| Currency: | USD |

## Section 3. Relationship of the Parties.

The parties intend that an independent contractor relationship will be created by the Agreement. As an independent contractor, AlixPartners will have complete and exclusive charge of the management and operation of its business, including hiring and paying the wages and other compensation of all its employees and agents, and paying all bills, expenses and other charges incurred or payable with respect to the operation of its business. Of course, employees of AlixPartners will not be entitled to receive from the Company any vacation pay, sick leave, retirement, pension or social security benefits, workers' compensation, disability, unemployment insurance benefits or any other employee benefits. AlixPartners will be responsible for all employment, withholding, income and other taxes incurred in connection with the operation and conduct of its business.

Nothing in this agreement is intended to create, nor shall be deemed or construed to create a fiduciary or agency relationship between AlixPartners and the Company or its Board of Directors.

## Section 4. Confidentiality.

AlixPartners shall keep confidential all non-public confidential or proprietary information obtained from the Company during the performance of its services hereunder (the "Information"), and neither AlixPartners nor its personnel will disclose any Information to any other person or entity. "Information" includes non-public confidential and proprietary data, plans, reports, schedules, drawings, accounts, records, calculations, specifications, flow sheets, computer programs, source or object codes, results, models or any work product relating to the business of the Company, its subsidiaries, distributors, affiliates, vendors, customers, employees, contractors and consultants.

The foregoing is not intended to prohibit, nor shall it be construed as prohibiting, AlixPartners from making such disclosures of Information that AlixPartners reasonably believes is required by law or any regulatory requirement or authority, or to clear client conflicts. Upon approval of the Company, AlixPartners may make reasonable disclosures of Information to third parties in connection with the performance of AlixPartners' obligations and assignments hereunder. In addition, AlixPartners will have the right to disclose to any person that it provided services to the Company or its affiliates and a general description of such services, but shall not provide any other information about its involvement with the Company. The obligations of AlixPartners under this Section 4 shall survive the end of any engagement between the parties for a period of two (2) years.

The Company acknowledges that all information (written or oral), including advice and Work Product (as defined in Section 5), generated by AlixPartners in connection with this engagement is intended solely for the benefit and use of the Company (limited to its management and its Board of Directors) in connection with the transactions to which it relates. The Company agrees that no such information shall be used for any other purpose or reproduced, disseminated, quoted or referred to with attribution to AlixPartners at any time in any manner or for any purpose without AlixPartners' prior approval except as required by law.

AlixPartners agrees that the Company's remedies at law for a breach or threatened breach of this Section 4 would be inadequate, and therefore agrees that, without posting a bond, the Company shall be entitled to equitable relief in the form of a temporary or permanent restraining order, injunction or otherwise.

## Section 5. Intellectual Property.

All methodologies, processes, techniques, ideas, concepts, know-how, procedures, software, tools, writings and other intellectual property that AlixPartners has created, acquired or developed prior to the date of this Agreement are, and shall remain, the sole and exclusive property of

AlixPartners, and the Company shall not acquire any interest therein. AlixPartners shall be free to use all methodologies, processes, techniques, ideas, concepts, know-how, procedures, software, tools, writings and other intellectual property that AlixPartners may create or develop in connection with this engagement, subject to its duty of confidentiality to the extent that the same contain information or materials furnished to AlixPartners by the Company that constitute Information referred to in Section 4 above. Except as provided above, all information, reports, materials, software and other work product that AlixPartners creates or develops specifically for the Company as part of this engagement (collectively known as "Work Product") shall be owned by the Company and shall constitute Information referred to in Section 4 above. AlixPartners may retain copies of the Work Product subject to its obligations under Section 4 above.

### Section 6. Framework of the Engagement.

The Company acknowledges that it is retaining AlixPartners solely to assist and advise the Company as described in the Agreement. This engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting engagement.

### Section 7. Indemnification and Other Matters.

The Company shall indemnify, hold harmless and defend AlixPartners and its affiliates and its and their partners, directors, officers, employees and agents (collectively, the "indemnitees") from and against all claims, liabilities, losses, expenses and damages arising out of or in connection with the engagement of AlixPartners that is the subject of the Agreement, except to the extent that such claims, liabilities or losses, expenses and damages result from the gross negligence, bad faith, self dealing or misconduct of the indemnitee. The Company shall pay damages and expenses as incurred, including reasonable legal fees and disbursements of counsel. In addition, the Company shall pay the costs of AlixPartners' professional time (AlixPartners' professional time will be reimbursed at AlixPartners' rates in effect when such future time is required), relating to or arising out of the engagement, including any legal proceeding in which an indemnitee may be required or agree to participate but in which it is not a party. The indemnitees may, but are not required to, engage a single firm of separate counsel of their choice in connection with any of the matters to which this indemnification agreement relates.

AlixPartners is not responsible for any third-party products or services. The Company's sole and exclusive rights and remedies with respect to any third party products or services are against the third-party vendor and not against AlixPartners, whether or not AlixPartners is instrumental in procuring the third-party product or service.

Neither AlixPartners nor the Company shall be liable to the other party hereto except for actual damages resulting from breach of this agreement, gross negligence bad faith, self-dealing or intentional misconduct. This paragraph limiting libability shall have no force or effect during a chapter 11 bankruptcy proceeding.

### Section 8. Governing Law and Arbitration.

The Agreement is governed by and shall be construed in accordance with the laws of the State of New York with respect to contracts made and to be performed entirely therein and without regard to choice of law or principles thereof.

Any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled by arbitration. Each party shall appoint one non-neutral arbitrator. The two party arbitrators shall select a third arbitrator. If within 30 days after their appointment the two party arbitrators do not select a third arbitrator, the third arbitrator shall be selected by the American Arbitration Association (AAA). The arbitration shall be conducted in Raleigh, North Carolina under the AAA's Commercial Arbitration Rules, and the arbitrators shall issue a reasoned award. The arbitrators may award costs and attorneys' fees to the prevailing party. Judgment on the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. In the event the Company files under Chapter 11, the Company and AlixPartners agree that the Bankruptcy Court shall have jurisdiction over any and all matters arising under or in connection with this Agreement, including the indemnification provisions outlined in Section 7, above.

Notwithstanding the foregoing, for any claim relating to the non-payment of fees or expenses due to AlixPartners under this Agreement AlixPartners may in its sole discretion proceed directly to a court of competent jurisdiction to enforce the terms of this Agreement.

In any court proceeding arising out of this Agreement, the parties hereby waive any right to trial by jury.

### Section 9. Termination and Survival.

The Agreement may be terminated at any time by written notice by one party to the other; provided, however, that notwithstanding such termination AlixPartners will be entitled to any fees and expenses due under the provisions of the Agreement, including Success Fee and Break Fee in accordance with Schedule 1. Such payment obligation shall inure to the benefit of any successor or assignee of AlixPartners.

Additionally, unless the Agreement is terminated by the Company for Cause (as defined below) or due to circumstances described in the Success Fee provision in the Agreement, AlixPartners shall remain entitled to the Success Fee(s) that otherwise would be payable for the greater of 12 months from the date of termination or the period of time that that has elapsed from the date of the Agreement to the date of termination. Cause shall mean:

(a) an AlixPartners employee acting on behalf of the Company is convicted of a felony, or

(b) it is determined in good faith by the Board of Directors of the Company after 30 days notice and opportunity to cure, that either (i) an AlixPartners employee is engaging in misconduct injurious to the Company, or (ii) an AlixPartners employee is breaching any of his or her material obligations under this Agreement, or (iii) an AlixPartners employee is willfully disobeying a

lawful direction of the Board of Directors or senior management of the Company.

Sections 2, 4, 5, 7, 8, 9, 10 and 11 of these Terms, the provisions of Schedule 1 and the obligation to pay accrued fees and expenses shall survive the expiration or termination of the Agreement.

#### Section 10. Non-Solicitation of Employees

The Company acknowledges and agrees that AlixPartners has made a significant monetary investment recruiting, hiring and training its personnel. During the term of this Agreement and for a period of two years after the final invoice is rendered by AlixPartners with respect to this engagement (the "Restrictive Period"), the Company and its affiliates agree not to directly or indirectly hire, contract with, or solicit the employment of any of AlixPartners' Managing Directors, Directors, or other employees/contractors.

If during the Restrictive Period the Company or its affiliates directly or indirectly hires or contracts with any of AlixPartners' Managing Directors, Directors, or other employees/contractors, the Company agrees to pay to AlixPartners as liquidated damages and not as a penalty the sum total of: (i) for a Managing Director, one million U.S. dollars ($1,000,000 USD); (ii) for a Director, five hundred thousand U.S. dollars ($500,000 USD); and (iii) for any other employee/contractor, two hundred fifty thousand U.S. dollars ($250,000 USD). The Company acknowledges and agrees that liquidated damages in such amounts are (x) fair, reasonable and necessary under the circumstances to reimburse AlixPartners for the costs of recruiting, hiring and training its employees as well as the lost profits and opportunity costs related to such personnel, and to protect the significant investment that AlixPartners has made in its Managing Directors, Directors, and other employees/consultants; and (y) appropriate due to the difficulty of calculating the exact amount and value of that investment. This liquidated damages provision shall have no force or effect during the course of a chapter 11 bankruptcy proceeding.

The Company also acknowledges and agrees that money damages alone may not be an adequate remedy for a breach of this provision, and the Company agrees that AlixPartners shall have the right to seek a restraining order and/or an injunction for any breach of this non-solicitation provision. If any provision of this section is found to be invalid or unenforceable, then it shall be deemed modified or restricted to the extent and in the manner necessary to render the same valid and enforceable.

#### Section 11. General.

**Severability.** If any portion of the Agreement shall be determined to be invalid or unenforceable, the remainder shall be valid and enforceable to the maximum extent possible.

**Entire Agreement.** These Terms, the letter agreement into which they are incorporated and the Schedule(s) to such letter agreement contain the entire understanding of the parties relating to the services to be rendered by AlixPartners and may not be amended or modified in any

respect except in a writing signed by the parties. AlixPartners is not responsible for performing any services not specifically described herein or in a subsequent writing signed by the parties.

**Joint and Several.** If more than one party signs this Agreement, the liability of each party shall be joint and several.

**Limit of Liability.** Neither AlixPartners nor the Company shall be liable for incidental or consequential damages under any circumstances, even if it has been advised of the possibility of such damages. This Limit of Liability shall have no force or effect during the course of a chapter 11 bankruptcy proceeding.

**Notices.** All notices required or permitted to be delivered under the Agreement shall be sent, if to AlixPartners, to:

> AlixPartners, LLP
> 2000 Town Center, Suite 2400
> Southfield, MI 48075
> Attention: General Counsel

and if to the Company, to the address set forth in the Agreement, to the attention of the Company's General Counsel, or to such other name or address as may be given in writing to the other party. All notices under the Agreement shall be sufficient if delivered by facsimile or overnight mail. Any notice shall be deemed to be given only upon actual receipt.

**EXHIBIT C**

**Fox Declaration**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------------------x

In re                   :     Chapter 11

                            :

XERIUM TECHNOLOGIES, INC., et al.,[1]    :     Case No. 10-_____ (   )

                            :

              Debtors.    :     Joint Administration Requested

-------------------------------------------------------------------x

**DECLARATION OF BRIAN J. FOX IN SUPPORT OF APPLICATION OF DEBTORS
FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 327(a) AND 328(a),
FED. R. BANKR. P. 2014, AND DEL. BANKR. L.R. 2014-1 AUTHORIZING
THE RETENTION AND EMPLOYMENT OF ALIXPARTNERS, LLP AS
FINANCIAL ADVISOR AND CONSULTANT FOR THE DEBTORS,
<u>NUNC PRO TUNC TO THE COMMENCEMENT DATE</u>**

I, Brian J. Fox, hereby declare the following under penalty of perjury.

1.       I am a managing director of AlixPartners, LLP ("<u>AlixPartners</u>"), which has as its principal place of business 2000 Town Center, Suite 2400, Southfield, Michigan 48075.

2.       I submit this declaration (the "<u>Declaration</u>") to provide the disclosure required under sections 327(a) and 328(a) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Fed. R. Bankr. P 2014(a), and Del. Bankr. L.R. 2014-1(a).

3.       I submit this Declaration in support of the application (the "<u>Application</u>") of Xerium Technologies, Inc. ("<u>Xerium</u>") and certain of its direct and indirect subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases

---

[1] The Debtors in these chapter 11 cases (along with the last four digits of each Debtor's federal tax identification number or its foreign equivalent) are: Xerium Technologies, Inc. (8674), Huyck Licensco Inc. (0434), Stowe Woodward Licensco LLC (4459), Stowe Woodward LLC (4102), Wangner Itelpa I LLC (3561), Wangner Itelpa II LLC (3562), Weavexx, LLC (7969), Xerium Asia, LLC (3367), Xerium III (US) Limited (4460), Xerium IV (US) Limited (4461), Xerium V (US) Limited (4462), XTI LLC (6754), Xerium Canada Inc. (0003), Huyck.Wangner Austria GmbH (0323), Xerium Germany Holding GmbH (3219), and Xerium Italia S.p.A. (0150). The location of the Debtors' corporate headquarters and the service address for all Debtors is: 8537 Six Forks Road, Suite 300, Raleigh, North Carolina 27615.

(collectively, the "Debtors"), pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Fed. R. Bankr. P. 2014(a), and Del. Bankr. L.R. 2014-1, for entry of an order, authorizing and approving the retention and employment of AlixPartners as the Debtors' financial advisor and consultant, nunc pro tunc to the Commencement Date,[2] in accordance with the terms set forth in the Application and the retention agreement, dated February 19, 2010, attached to the Application as Exhibit B (the "Retention Agreement"). Except as otherwise noted, I have personal knowledge of the matters set forth herein and, if called as a witness, would testify competently thereto.

### Disinterestedness And Eligibility

4.       In connection with the preparation of this Declaration, AlixPartners conducted an analysis to determine whether it holds or represents any interests adverse to the Debtors or their estates. Such analysis included a search of AlixPartners' client database to determine the existence of any relationships with the entities identified by the Debtors and/or their representatives as potential parties in interest in these chapter 11 cases (collectively, the "Potential Parties in Interest"). Such parties include the Debtors, their non-Debtor affiliates, and certain entities holding large claims against, or interests in, the Debtors, and are specifically listed in Schedule 1 attached hereto.

5.       In addition, subsequent to the Commencement Date, AlixPartners will send a firm-wide e-mail to all of its professionals requesting information on potential relationships with the Potential Parties in Interest. AlixPartners will file a supplemental declaration as necessary to disclose any potentially relevant relationships.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

6.      Based on that review, AlixPartners represents that to the best of its knowledge, AlixPartners knows of no fact or situation that would represent a conflict of interest for AlixPartners with regard to the Debtors.  AlixPartners, however, wishes to disclose the connections to the Potential Parties in Interest as set forth herein and in Schedule 2 attached hereto (collectively, the "Disclosed Matters").  In the interest of brevity, the term "AlixPartners" as used within the disclosures in this Declaration shall mean AlixPartners, LLP together with each of its subsidiaries.

7.      Further, to the best of my knowledge, information, and belief, insofar as I have been able to ascertain after these reasonable inquiries and except as otherwise set forth in the Disclosed Matters, neither I nor AlixPartners:  (i) have any connection (other than in respect of these chapter 11 cases) with the Debtors, the Potential Parties in Interest, their respective attorneys or accountants, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), or any person employed in the office of the U.S. Trustee or (ii) are related or connected to any United States Bankruptcy Judge for the District of Delaware, any of the District Judges for the District of Delaware who handle bankruptcy cases, the U.S. Trustee, or any employee in the office of the U.S. Trustee.

### Additional Relevant Information

8.      In respect of these chapter 11 cases and matters related thereto, AlixPartners is not employed by, and has not been employed by, any entity other than the Debtors.

9.      From time to time, AlixPartners has been, and will likely continue to be, engaged to provide services to certain creditors of the Debtors and various other parties that are adverse to the Debtors in these chapter 11 cases; however, such engagements relate to matters that are unrelated to these chapter 11 cases.  As described above, however, AlixPartners has undertaken a

detailed search to determine and to disclose whether it is providing or has provided services (in such unrelated matters) to any of the Potential Parties in Interest. The relationships check of the AlixPartners client database has shown that AlixPartners has been engaged by entities in matters unrelated to the Debtors, as set forth in the Disclosed Matters.

10.     AlixPartners provides services in connection with numerous cases, proceedings, and transactions unrelated to these chapter 11 cases. These unrelated matters involve numerous attorneys, financial advisors, and creditors, some of which may be claimants or parties with actual or potential interests in these cases, or may represent such parties.

11.     AlixPartners' personnel may have (or have had) personal, business, or professional relationships with certain of the Debtors' creditors or other parties in interest (or with their employees), which relationships are unrelated to these chapter 11 cases and which are not specifically set forth herein.

12.     AlixPartners, in advisory, crisis management or other roles, provides services specifically in the areas of restructuring and distressed debt, both inside and outside of the bankruptcy process, including engagements by groups or committees that are comprised of numerous members such as lenders, creditors, or interest holders. As a result, AlixPartners may have in the past been, and may in the future be, engaged as part of the representation of groups or committees whose members may include certain of the Debtors' creditors or other parties in interest. Such engagements are unrelated to these chapter 11 cases and are not specifically set forth herein.

13.     In the ordinary course of its business, AlixPartners may have engaged, and may in the future engage, counsel, or other professionals in unrelated matters who now represent, or

who may in the future represent such creditors or other parties in interest in these chapter 11 cases.

14.     AlixPartners has approximately 950 employees.  To the best of my knowledge, neither I nor any AlixPartners' personnel serving the Debtor is a holder of any of the Debtors' debt or equity securities.  AlixPartners' policy prohibits its employees from trading in the Debtors' securities.

15.     AlixPartners received an initial advance retainer of $250,000.00 (the "Retainer") on May 8, 2009 from Debtors.  Pursuant to the Retention Agreement, invoiced amounts have been recouped against the Retainer, and payments on the invoices have been used to replenish the Retainer.  During the ninety days prior to the Commencement Date, the Debtors paid AlixPartners a total of $1,225,266.15 incurred in providing services to the Debtors in contemplation of, and in connection with, prepetition restructuring activities.  A summary of these payments is as follows:

| Invoice Date | Invoice No. | Invoice Amount | Payment Date | Payment Received |
|---|---|---|---|---|
| 12/18/2009 | 2023222 | $118,955.46 | 12/28/2009 | $118,955.46 |
| 1/6/2010 | 2023442 | 71,205.65 | 1/13/2010 | 71,205.65 |
| 1/22/2010 | 2023752 | 144,208.97 | 1/27/2010 | 144,208.97 |
| 2/9/2010 | 2023928 | 108,743.21 | 2/10/2010 | 108,743.21 |
| 2/23/2010 | 2024191 | 158,249.46 | 2/25/2010 | 158,249.46 |
|  |  |  | 01/04/2010* | 118,955.46 |
| 3/9/2010 | 2024473 | 233,623.54 | 3/16/2010 | 114,668.08 |
| 3/22/2010 | 2024648 | 153,077.64 | 3/25/2010 | 153,077.64 |
| 3/26/2010 | 2024732 | 237,202.22 | 3/29/2010 | 237,202.22 |
|  |  | $1,225,266.15 | Total Amount Billed | $1,225,266.15 |

16.     Due to the ordinary course and unavoidable reconciliation of fees and submission of expenses immediately prior to, and subsequent to, the Commencement Date, AlixPartners has incurred but not billed fees and reimbursable expenses that relate to the prepetition period.

AlixPartners is seeking this Court's approval to apply the Retainer to these amounts. Upon the proposed application of the Retainer, the Debtors would not owe AlixPartners any sums for prepetition services.

17.     To the best of my knowledge, AlixPartners' services will not duplicate the services of any other professional retained in these chapter 11 cases, including, without limitation, Debtors' counsel or Rothschild LLP, the debtors' investment bankers.

18.     To the best of my knowledge, information, and belief, insofar as I have been able to ascertain after reasonable inquiry, AlixPartners has not been retained to assist any entity or person other than the Debtors on matters relating to, or in direct connection with, these chapter 11 cases. If the Debtors are authorized to retain AlixPartners, AlixPartners will not accept any engagement or perform any services (in respect of these chapter 11 cases) for any person other than the Debtors. AlixPartners may, however, provide professional services to creditors of the Debtors or parties in interest in these chapter 11 cases, provided that such services do not relate to, or have any direct connection with, the Debtors or these chapter 11 cases.

19.     In accordance with section 504 of the Bankruptcy Code and Fed. R. Bankr. P. 2016, neither I nor AlixPartners has entered into any agreements, express or implied, with any other party in interest, including the Debtors, any creditor, or any attorney for such party in interest in these chapter 11 cases (a) for the purpose of sharing or fixing fees or other compensation to be paid to any such party in interest or its attorneys for services rendered in connection therewith, (b) for payment of such compensation from the assets of the Debtors' estates in excess of the compensation allowed by the Court pursuant to the applicable provisions of the Bankruptcy Code, or (c) for payment of compensation in connection with these chapter 11 cases other than in accordance with the applicable provisions of the Bankruptcy Code. If any

such agreement is entered into, AlixPartners undertakes to amend and supplement this declaration to disclose the terms of any such agreement.

**Conclusion**

20.     In summary of the matters set forth herein, and to the best of my knowledge, AlixPartners (a) is a "disinterested person" as that term is defined in section 101(14), and subject to section 1107(b), of the Bankruptcy Code, in that AlixPartners (i) is not a creditor, equity security holder, or insider of the Debtors, (ii) was not, within two years before the date of filing of the Debtors' chapter 11 petitions, a director, officer, or employee of the Debtors, and (iii) does not have an interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders and (b) neither holds nor represents an interest adverse to the Debtors or their estates.

21.     Despite the efforts described above to identify and disclose AlixPartners' connections with parties in interest in these chapter 11 cases, because the Debtors are a large enterprise with thousands of creditors and other relationships, AlixPartners is unable to state with certainty that every client relationship or other connection has been disclosed. In this regard, if AlixPartners discovers additional information that requires disclosure, AlixPartners will file a supplemental disclosure with the Court.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 29, 2010

Name:     Brian J. Fox
Title:     Managing Director of AlixPartners, LLP

JOANN R. JOHNSON
Notary Public, State of New York
No. 01JO6077509
Qualified in Bronx County
Commission Expires July 15, 2010

Sworn to before me this 29th day of March 2010.

Joann R. Johnson

# SCHEDULE 1

## Potential Parties In Interest

## Xerium Parties in Interest

### Debtors
Huyck Licensco Inc.
Huyck.Wangner Austria GmbH
Stowe Woodward Licensco LLC
Stowe Woodward LLC
Wangner Itelpa I LLC
Wangner Itelpa II LLC
Weavexx, LLC
Xerium Asia, LLC
Xerium Canada Inc.
Xerium Germany Holding GmbH
Xerium III (US) Limited
Xerium Italia S.p.A.
Xerium IV (US) Limited
Xerium Technologies, Inc.
Xerium V (US) Limited
XTI LLC

### Other Names for Filing Entities
Mount Hope
Huyck Wangner
Weavexx Corporation

### Non-Debtor Affiliates and State or Jurisdiction of Incorporation or Organization

| | |
|---|---|
| Beloit Asia Pacific (M) Inc. | Mauritius |
| Huyck Argentina Sociedad Anónima | Argentina |
| Huyck.Wangner (Shanghai) Trading Co. Ltd. | China |
| Huyck.Wangner (UK) Limited | United Kingdom |
| Huyck.Wangner (Vietnam) Co. Ltd. | Vietnam |
| Huyck.Wangner Australia Pty. Limited | Australia |
| Huyck.Wangner Germany GmbH | Germany |
| Huyck.Wangner Italia SpA | Italy |
| Huyck.Wangner Japan Limited | Japan |
| Huyck.Wangner Scandinavia AB | Sweden |
| Huyck.Wangner Spain SA | Spain |
| PMP (Changzou) Roll Technologies Co. Ltd. | China |
| PMP Xibe Roll Covering Company Ltd. | China |
| Robec Brazil LLC | Delaware |
| Robec Walzen GmbH | Germany |
| Stowe Woodward AG | Germany |
| Stowe Woodward Finland Oy | Finland |
| Stowe Woodward France SAS | France |
| Stowe Woodward México, SA De C.V. S | Mexico |
| Stowe Woodward Sweden AB | Sweden |
| Stowe-Woodward (UK) Limited | United Kingdom |
| Stowe-Woodward Limited | United Kingdom |
| TIAG Transworld Interweaving GmbH | Switzerland |
| Wangner Itelpa Participações Ltda. | Brazil |
| Wangner Limited | Ireland |
| Xerium Asia Holding Ltd | Hong Kong |
| Xerium do Brasil Ltda | Brazil |

| Xerium France SAS | France |
| Xerium Technologies do Brasil Indústria e Comércio S.A. | Brazil |
| Xerium Technologies Limited | United Kingdom |

## Directors of Xerium Technologies, Inc.

| Stephen R. Light | Chairman of the Board |
| Edward Paquette | |
| Michael Phillips | Vice Chairman |
| Jay Gurandiano | |
| Nico Hansen | |
| David Maffucci | |
| John G. Raos | |

## Executive Officers of Xerium Technologies, Inc.

| Stephen R. Light | President and Chief Executive Officer |
| David Maffucci | Executive Vice President and Chief Financial Officer |
| Joan "John" Badrinas Ardevol | Vice President, Chief Technology Officer |
| Eduardo Fracasso | President – Xerium South America |
| Thomas Johnson | President – Xerium Asia |
| David Pretty | President – Xerium North America |

## Officers of Xerium Technologies, Inc.

| Stephen R. Light | President, CEO |
| Ted Orban | Secretary and Treasurer |
| David G. Maffucci | Vice President, Chief Financial Officer and Assistant Secretary |
| Dennis Carroll | Vice President, Controller |
| Eduardo Fracasso | Vice President |
| Thomas Johnson | Vice President |
| David Pretty | Vice President |
| Elizabeth Leete | Assistant Secretary |

## Officers of Huyck.Wangner Austria GmbH

| David Pretty | Managing Director |

## Supervisory Board of Huyck.Wangner Austria GmbH

| Stephen R. Light | Chairman |
| Alois Leeb | Vice Chairman |
| Andrea Schremser | Employee Representative |
| Liliana Mock | Employee Representative |

## Officers of Huyck Licensco Inc.

| Stephen R. Light | President and Assistant Secretary |
| Theodore D. Orban | Secretary and Treasurer |
| David Maffucci | Vice President, Chief Financial Officer and Assistant Secretary |
| Elizabeth Leete | Assistant Secretary |

## Directors of Huyck Licensco Inc.
Stephen R. Light
David Maffucci
Ted Orban

## Officers of Stowe Woodward Licensco LLC
| | |
|---|---|
| Stephen R. Light | President and Assistant Secretary |
| Theodore D. Orban | Secretary and Treasurer |
| David Maffucci | Vice President, Chief Financial Officer and Assistant Secretary |
| Elizabeth Leete | Assistant Secretary |

## Directors of Stowe Woodward Licensco LLC
Stephen R. Light
David Maffucci
Ted Orban

## Officers of Xerium III (US) Limited
| | |
|---|---|
| Stephen R. Light | President and Assistant Secretary |
| Theodore D. Orban | Secretary and Treasurer |
| David Maffucci | Vice President, Chief Financial Officer and Assistant Secretary |
| Elizabeth Leete | Assistant Secretary |

## Directors of Xerium III (US) Limited
Stephen R. Light
David Maffucci
Ted Orban

## Officers of Xerium IV (US) Limited
| | |
|---|---|
| Stephen R. Light | President and Assistant Secretary |
| Theodore D. Orban | Secretary and Treasurer |
| David Maffucci | Vice President, Chief Financial Officer and Assistant Secretary |
| Elizabeth Leete | Assistant Secretary |

## Directors of Xerium IV (US) Limited
Stephen R. Light
David Maffucci
Ted Orban

## Officers of Xerium V (US) Limited
| | |
|---|---|
| Stephen R. Light | President and Assistant Secretary |
| Theodore D. Orban | Secretary and Treasurer |
| David Maffucci | Vice President, Chief Financial Officer and Assistant Secretary |
| Elizabeth Leete | Assistant Secretary |

## Directors of Xerium V (US) Limited
Stephen R. Light
David Maffucci
Ted Orban

## Managing Directors of Xerium Germany Holding GmbH
Stephen R. Light
Joan "John" Badrinas Ardevol
David Maffucci

**<u>Directors of Xerium Italia S.p.A.</u>**
Stephen R. Light
David Maffucci
David Pretty                                    Chairman
Luigi Alessandrini                              Managing Director – Irga Division
Alexander Karnowsky

**<u>Directors of Xerium Canada Inc.</u>**
Stephen R. Light
David Maffucci
Ted Orban

**<u>Officers of Xerium Canada Inc.</u>**
Stephen R. Light                                President and Chief Executive Officer
Theodore D. Orban                               Secretary and Treasurer
David Maffucci                                  Chief Financial/Accounting Officer
David Pretty                                    Executive Vice President, Stowe-WoodwardCanada and Weavexx
                                                Canada Divisions
William VanderBurgh                             Assistant Secretary
Elizabeth Leete                                 Assistant Secretary

**<u>Board of Managers of XTI LLC</u>**
Stephen R. Light
Ted Orban
David Maffucci

**<u>Officers of XTI LLC</u>**
Stephen R. Light                                President and Assistant Secretary
Theodore D. Orban                               Secretary and Treasurer
David Maffucci                                  Vice President, Chief Financial Officer and Assistant Secretary
Elizabeth Leete                                 Assistant Secretary

**<u>Board of Directors of Stowe Woodward LLC</u>**
Stephen R. Light
Ted Orban
David Maffucci

**<u>Officers of Stowe Woodward LLC</u>**
Stephen R. Light                                President and Assistant Secretary
Theodore D. Orban                               Secretary and Treasurer
David Maffucci                                  Vice President, Chief Financial Officer and Assistant Secretary
Elizabeth Leete                                 Assistant Secretary

**<u>Board of Managers of Weavexx, LLC</u>**
Stephen R. Light
Ted Orban
David Maffucci

**<u>Officers of Weavexx, LLC</u>**
Stephen R. Light                                President and Assistant Secretary
David Pretty                                    Vice President and Assistant Secretary
Ted Orban                                       Secretary and Treasurer
David Maffucci                                  Vice President, Chief Financial Officer and Assistant Secretary
Elizabeth Leete                                 Assistant Secretary

## Board of Managers of Wangner Itelpa I LLC
Stephen R. Light
Ted Orban
David Maffucci

## Officers of Wangner Itelpa I LLC
| | |
|---|---|
| Stephen R. Light | President and Assistant Secretary |
| Ted Orban | Secretary |
| David Maffucci | Vice President, Chief Financial Officer and Assistant Secretary |
| Elizabeth Leete | Assistant Secretary |

## Board of Managers of Wangner Itelpa II LLC
Stephen R. Light
Ted Orban
David Maffucci

## Officers of Wangner Itelpa II LLC
| | |
|---|---|
| Stephen R. Light | President and Assistant Secretary |
| Ted Orban | Secretary |
| David Maffucci | Vice President, Chief Financial Officer and Assistant Secretary |
| Elizabeth Leete | Assistant Secretary |

## Board of Managers of Xerium Asia, LLC
Stephen R. Light
Ted Orban
David Maffucci

## Officers of Xerium Asia, LLC
| | |
|---|---|
| Stephen R. Light | President and Assistant Secretary |
| Ted Orban | Secretary and Treasurer |
| Tom Johnson | Vice President and Assistant Secretary |
| David Maffucci | Vice President, Chief Financial Officer and Assistant Secretary |
| Elizabeth Leete | Assistant Secretary |

## Former Officers and Directors
Alexander Karnowsky
Andrea Schremser
Dennis Carroll
Liliana Mock
Luigi Alessandrini
Michael Phillips
Peter Williamson

## Director Affiliations
### Current
ABB Lummus Global
ABB Ltd.
Ainsworth Lumber Co. Ltd.
Apax Partners, L.P.
Apax Europe IV GP Co. Ltd.
Apax Partners Beteiligungsberatung GmbH
Apax WW Nominees Ltd.
Apax-Xerium APIA LP

BTR plc
Gerber Scientific, Inc.
Labelmaker Holding GmbH
Martin Marietta Materials, Inc.
Numerex Corp.
Precision Partners, Inc.
Stone House Investment Holdings, Inc.

**Past**
Bowater Incorporated
Emerson Electric
Flow International
Flow International Corp.
General Electric
Metzler Automotive Hose Systems
N.V. Phillips
OmniQuip Textron
Paccar
Pendelastica SA
Trelleborg AB

## Significant Utility Providers
Allegheny Power of VA
Atmos Energy of MS (Formerly Mississippi Valley Gas)
Cascade Natural Gas of WA
Centerpoint Energy Arkla of LA
Constellation New Energy
Cowlitz PUD
Duke Energy of NC
Gerogia Power
HESS Corporation
Paetec Communications Inc.
Premiere Global Services
Southstar Energy
Starkville Electric Department (TVA)
Washington Gas Company
WE Energies – WI Electric Power Company
Verbund Austria Power Sales GmbH
EVN AG
EconGas GmbH
Stadtgemeinde Gloggnitz

## Secured Lenders Under Prepetition Credit Agreement[3]
Aegon
Ahab Capital Management
Ahab Distressed, L.P.
Ahab Distressed, Ltd.
Ahab Opportunities, LP
Ahab Opportunities, Ltd.
AIG
Aim Floating Rate Fund

---

[3] As this debt continues to trade, the "Secured Lenders Under Prepetition Agreement" list may change from day to day. The information listed here is current as of February 23, 2010.

Alie Street Investments 6 Limited
Alliance Capital
Allied Irish Bank
Allied Irish Bank PLC (Allied Irish Bank)
American Securities
Ameriprise Certificate Company
Aozora Bank
Aquilae CLO I PLC
Aquilae CLO II PLC
Arrowhawk Capital Partners
Arrowhawk Distressed Special Situations, Ltd (Arrowhawk Capital Partners)
AS Investors, LLC  (American-Securities)
Atlantis Funding Ltd.
Avalon Capital Ltd. 3
AZB CLO 4 Limited
Babson Capital
Babson CLO Ltd 2005-I  (Babson Capital)
Babson CLO Ltd 2005-II  (Babson Capital)
Babson CLO Ltd 2006-II  (Babson Capital)
Babson CLO Ltd 2007-I  (Babson Capital)
Bacchus (U.S) 2006-1 Ltd.
Banco Espirito Santo
Banco Espirito Santo S.A.
Bank Of America
Bank Of America N.A.
Bank Of America TRS
Bank Of Ireland
Bank Of New York (BoNY)
Bayerische Hypo-Und Vereinsbank AG
Black Diamond
Black Diamond CLO 2006 -I  (Luxembourg) S. A.
Blackrock
BLT 2009-1, Ltd.  (Invesco)
BLT V LLC
Carl Marks Management Company
Carl Marks Strategic Investments  L.P. (Carl Marks)
Centurion CDO VI, Ltd.
Cerberus Partners
Cerberus Series Four Holdings, LLC  Cerberus Institutional Partners, L.P., Series Four DBA (Cerberus Partners)
Champlain CLO, Ltd.
Citi Origination
Citibank, N.A. - Originations
Citibank, N.A. - Secondary Trading
Citigroup
Continental Casualty Company
Credit Suisse Alternative Capital, Inc.
Credit Suisse Loan Funding LLC
Diversified Credit Portfolio Ltd.
GGC Finance Partnership, LP
Golden Gate Capital
Goldman Sachs
Goldman Sachs Global Opportunities Fund, L.L.C.
Governor And Company Of The  Bank Of Ireland, The
Grandview
Gulf Steam Asset Management
Gulf Stream - Sextant CLO 2006-I Ltd.  (Gulf Stream Asset Mgmt)

Gulf Stream - Sextant CLO 2007-1 Ltd.  (Gulf Stream Asset Mgmt)
Gulf Stream Compass CLO 2005-II, Ltd.  (Gulf Stream Asset Mgmt)
Gulf Stream Compass CLO-2005-1, Ltd.  (Gulf Stream Asset Mgmt)
Halbis Capital Management
Halbis Distressed Opportunities Master Fund, Ltd. (Halbis Capital)
Harbourmaster Capital Management Ltd.
Harbourmaster CLO 5 B.V.
Harbourmaster CLO 6 B.V.
Harbourmaster Loan Corporation
Harbourmaster Pro Rata CLO 3 B.V.
Henderson Global Investors Limited
Hollandsche Bank-Unie NV
HVB
IKB Capital Corporation
ING International (II) - Senior Bank Loans Euro  (ING Investment Management Co)
ING Investment Management CLO I, Ltd.  (ING Investments)
ING Investment Management CLO III,  Ltd. (ING Investments)
ING Investment Management CLO IV Ltd.  (ING Investments)
ING Investment Management CLO V Ltd  (ING Investments)
ING Investment Managment CLO II  (ING Investments)
ING Investment Trust Co. Plan For  Employee Benefit Investment Funds- Senior Loan Fund (ING Investments)
ING Investments
ING Prime Rate Trust  (ING Investments)
ING Senior Income Fund  (ING Investments)
Invesco
Katonah V, Ltd.
KBC Bank
KBC Bank N.V.
Landsbanki Commercial Finance
Landsbanki Islands HF
Limerock Clo I
Loews
Magi Funding I PLC
Malibu CBNA Loan Funding LLC
Massachusetts Mutual Life Insurance  (Babson Capital Europe)
Melchior CDO I S.A.
Merrill Lynch Capital Services, Inc.
Morgan Stanley
Morgan Stanley Senior Funding Inc.
Neptune Finance CCS, Ltd.  (Gulf Stream Asset Mgmt)
New Alliance Global CDO, Limited (AllianceBernstein)
One Wall Street CLO II Ltd Fka  Ows II Ltd
PPM America
PPM Monarch Bay Funding LLC  (PPM America)
Prospero CLO I B.V.  (Rabobank)
Rabobank
Redwood Capital Management
Redwood Master Fund, Ltd
Riversource Bond Series Inc.  Riversource Floating Rate Fund
Riversource Investments
Riversource Life Insurance Company  IDS Life Insurance Company
Riversource Strategic Allocation  Series, Inc-Riversource Strategic Income Allocation Fund
RMF Euro CDO III Public Ltd. Co.
RMF Euro CDO S.A.
RMF Euro CDO V PLC
RMF Investment Management

Saberasu Japan Investments II B.V.  (Cerberus Capital)
Sagamore CLO Ltd.
Sapphire Valley CDO I, Ltd.  (Babson Capital)
Saratoga CLO I, Limited
Sequils-Centurion V, Ltd.
Serves 2006-1 Ltd  (PPM America)
Somerset Special Opportunities  Master Fund L.P. (Babson Capital)
Sovereign
Sovereign Bank
Suffield CLO, Limited  (Babson Capital)
Toronto Dominion
Toronto Dominion (Texas) LLC
TPG
TPG Opportunity Fund I, L.P. (TPG Investments)
Wachovia
Wachovia Bank, N.A.
Wasatch CLO Ltd
Waterfront CLO 2007-1

## Additional Parties To The Prepetition Credit Agreement

Citicorp North America, Inc.                    Administrative Agent, Issuing Bank, Collateral Agent
Citigroup Global Markets, Inc.                  Lead Arranger and Bookrunner

## Swap Counterparties

Bank of America
Deutsche Bank AG
Merrill Lynch Capital Services, Inc.

## Significant Professionals Retained by Debtors

Aird & Berlis
AlixPartners, LLP
Baker & Mckenzie LLP
BDO Valuation Advisors, LLC
Cadwalader, Wickersham & Taft LLP
Chadbourne & Park LLP
Chin & Curtis LLP
Cook, Yancey, King & Galloway
Deloitte & Touche LLP
Ernst & Young LLP
Garden City Group, Inc.
Grant Thornton LLP
Heidrick & Struggles Inc.
Hulse & Wanek
Huron Consulting Services LLP
Hutchison Law Group
Kahn Litwin Renza & Co Ltd.
Leibman, Conway, Olejniczak & Jerry, S.C.
Matheson Ormsby Prentice
Mcguire Woods LLP
Morgan, Brown & Joy, LLP
Myers Bigel Sibley & Sajovec
Ogilvy Renault LLP
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Richards, Layton and Finger P.A.
Ropes & Gray LLP

Rothschild
Skadden, Arps, Slate, Meagher & Flom LLP
Smith Anderson Blount Dorsett Mitchell & Jernigan LLP
Stewart Mckelvey
Ward & Smith, P.A.

## Litigation Parties
Alvester Porter
Daishowa-Marubeni International Ltd.
Jerome Madsen
Rapid Pacific Roll Covering Pty. Ltd.
Sappi Fine Paper
Andritz AG
Christian J. Popowich
Code Hunter LLP
Soucie & Bolt Law Firm
Faegre & Benson
David Tonkin
Horst Preisinger
Paperfabrik Meldorf
Isaias Paulo
Soares Filho
Marcos Antonio Dini
Federal Tax Authorities of Brazil
ABK Group
AON CHUBB
AON (Fireman's Fund Insurance Company)
SCA (France)
Tennessee Department of Environment and Conservation

## Significant Equity Holders for Xerium Technologies, Inc.
Apax Partners Ltd.
Apax WW Nominees Ltd.
Apax-Xerium APIA LP
Apax Europe IV GP Co. Ltd.
Vanguard Group, Inc.
Barclays Global Investors, N.A.
Stephen R. Light

## Holders of Largest Unsecured Claims – United States[4]
Advanced Electrical Technologies
Akrochem Corporation
American Express
Andritz Kusters
A-Papaleles Venezolanos
APC - Automatic Process Control, Inc.
Applied Industrial Technologies
AR Traffic Consultants Inc.
Ashland Distribution Co.
Automotive Rentals Inc.

---

[4] This information is current as of November 20, 2009, however, it is subject to change as the company updates its books and records in the ordinary course of business.

Barrett Machine, Inc.
Baum Machine, Inc.
Brislin Air Conditioning
Chemtura
Coim USA, Inc.
Dell Computer
Deloitte & Touche LLP
E.I. Du Pont De Demours & Company
Eplus Technology, Inc.
Fastenal Company
Georgia Machine Works
Hafemeister Machine Corporation
Harwick Standard Distribution Corporation
Intregrated Technology Corporation
Invista Inc.
Iowa Distributing Co. Inc.
JLM Advanced Technical Services, Inc.
KCB
Lanxess Corporation
Magnat Fairview
Mcmaster-Carr Supply Company
Merittech, LLC
Ministre Du Revenue Du Quebec
Morrison Berkshire Inc.
Motion Industries, Inc.
N.E.W. Roll
NTN Bearing Corporation Of America
Paratec Elastomers LLC
Perlon-Monofil Gmbh
Praxair Products, Inc.
Receiver General For Canada, Goods & Services Tax
Safedata LLC
Sandusky International Inc.
Sartomer Company
SEI Investments Management Corporation
Sonoco Products Company
Staples Business Advantage
Starkville Electric & Water
State Street Retiree Services
Tax Collector-Starkville, MS
Tech Transport, Inc.
Teijin Aramid Usa, Inc.
Texo, Inc.
Triad Builders
Univar
Webster Machine Works, Inc.
Zeon Chemicals  L.P.

## **Holders of Largest Unsecured Claims - Europe**[5]

Bank Austria-Creditanstalt
Berkenhoff u. Drebes GmbH

---

[5] This information is current as of February 23, 2010, however, it is subject to change as the company updates its books and records in the ordinary course of business.

EMS-Chemie AG
Hahl Filaments GmbH
Herbitschek Gesellschaft m b H
M&A Dieterle GmbH
MA.RE.s.p.a.
N.I.Teijin Shoji Europe GmbH
Emil Jäger GmbH & Co KG
Perlon-Monofil GmbH
Raiffeisen Landesbank
Shakespeare Monofilament UK Ltd.
TONAK, akciova spolecnost

## Significant Lessors

One Tech Westborough LLC
AP Investments
GE Capital Fleet Services
Misys Healthcare Systems
KCB-Ca Ltd Partnership
IMMOCONSULT Leasinggesellschaft m.b.H.
CURO Raiffeisen-Immobilien-Leasing GmbH

## Significant Competitors

Voith AG
Albany International Corp.
Metso Corporation

## Unions

AFL-CIO
Chauffers, Teamsters, And Helpers, Local 58
General Drivers, Salesmen, And Warehousemen's Local Union 984
International Brotherhood Of Teamsters
Syndicat Des Salariés(Es) De Weavexx (C.S.D.)
The International Association Of Machinists And Aerospace Workers
United Food And Commercial Workers International Union
Workers United Ontario Council
Gewerkschaft Metall-Textil
Gewerkschaft der Privatangestellten

## Insurance Providers

AIG
American Guarantee and Liability Insurance Company
Beazley Insurance Company
Berkley Insurance Company
Carolina Casualty Insurance Company
CHUBB
CNA
Federal Insurance Company
Fireman's Fund Insurance Company
FM Global
National Union Fire Insurance Company
Navigators Insurance Company
Pennsylvania Manufacturers' Association Insurance

Vigilant Insurance Company
Willis HRH
Zurich

## **Other Parties**

Abitibibowater, Inc.
Alabama River Pulp Company, Inc.
Alberta Pacific Forest Industries, Inc.
Atlantic Packaging Products
Atlantic Whitby
Augusta Newsprint Company
Boise Cascade
Blue Heron
Canfor Northwood
Canfor PG
Canfor Pulp Ltd; Partnership
Caraustar Industries, Inc.
Casc St-Jerome
Cascades Norampac Inc.
Catalyst Paper Corp.
Clearwater Paper Corp.
Corner Brook
Dom Windsor
Domtar Paper Co., LLC
Evergreen Packaging, Inc.
Fraser Papers, Inc.
Georgia Pacific Corporation
Graphic Packaging International
International Paper Company
Irving Pulp & Paper
Kapstone Paper & Packaging Corp.
K.O.L. Inc.
Kimberly Clark Corporation
Kruger Products Limited
Lincoln Lincoln
Longview Fibre Paper And Packaging, Inc.
Madison Alsip
Marcal Manufacturing LLC
Meadwestvaco Corp.
Minas Hantspor
Myllykoski
Newark Group
Newpage Corporation
Nippon Paper Ind. Co., Ltd.
Nippon Pt Angeles
Packaging Corporation Of America
Pratt Industries (USA)
Procter & Gamble
Rayonier Performance Fibers
Rock Tenn Company
Schweitz Spots
Smurfit-Stone Container Corporation
Sonoco Products Company
Soucy Riviere-Du-Loup
Strathcona Paper L.P.

Tembec Industries
Tembec Temisca
Temboard Temis
Temple-Inland Inc.
Temple N Johnson
Thilmany, LLC
Verso Paper
Wausau-Mosinee Paper Corp.
Wausau Paper Mills Company
White Birch Paper Company
Burgo
Emin Leydier
Et Kapelle
Eternit
Fedrigoni
Garda
Hamburger
Ip Kwidzyn
Kondopoga
Lucchese Porcari
Mf Liezen
Mondi Syktyvkar
Mondi Theresienthal
Mt Kreuzau
Palm Kins'S Lynn
Polesine Loreo
Propapier Eisenhütte
Sappi Ngodwana
Sca Hygiene Hackas

## SCHEDULE 2

## Disclosed Matters

**Disclosed Matters**

For the purpose of the "Disclosed Matters" set forth in this Schedule, and unless otherwise expressly provided herein, the term "AlixPartners" shall mean AlixPartners, LLP together with each of its subsidiaries.

H&F Astro LLC and Hellman & Friedman Capital Associates V, LLC ("H&F Capital"), two private equity investment vehicles managed by Hellman & Friedman LLC ("H&F LLC", and collectively with H&F Astro LLC and H&F Capital, "H&F") own a controlling stake in AlixPartners, LLP, which the Debtors engaged prepetition to provide certain advisory services. No material nonpublic information about the Debtors has been furnished by AlixPartners to H&F. AlixPartners' conflict checking system has searched the names of each managing director of H&F LLC and each portfolio company of H&F LLC (the "H&F Conflict Parties") against the list of Potential Parties in Interest, and AlixPartners has determined to the best of its knowledge that there are no resulting disclosures other than as noted herein. The term "portfolio company" means any business in which H&F has a direct controlling or minority interest. The term "portfolio company" does not include indirect investments such as businesses owned or investments made by an H&F portfolio company. H&F invests primarily in equity-related investments. However, H&F, its members, affiliated fund entities or affiliates (collectively, the "H&F Entities") may have had, currently have or may in the future have business relationships or connections with the Debtors or other Potential Parties in Interest in matters related to or unrelated to the Debtors or their affiliates or these chapter 11 cases. AlixPartners operates independently of the H&F Entities, and does not share common employees or officers, except that certain H&F LLC managing directors or employees are on the Board of Directors of AlixPartners. AlixPartners' financial performance is not impacted by the success or failure of the H&F Entities. Accordingly, AlixPartners has not undertaken to determine the existence, nature and/or full scope of any business relationships or connections that the H&F Entities may have with the Potential Parties in Interest, the Debtors and their affiliates or these chapter 11 cases, other than with respect to the H&F Conflict Parties. AlixPartners believes it continues to be disinterested and does not hold or represent an interest adverse to the estate with respect to the engagement, regardless of any direct or indirect relationship to or connection any of the H&F Entities may have with the Debtors. The engagement will be performed solely by AlixPartners, LLP.

There are four confidential clients of AlixPartners, who are lenders, insurers, other parties and parties to letters of credit of the Debtors. The confidential clients are current and former AlixPartners client in matters unrelated to the Debtors. One confidential client represents revenues of between one-percent (1%) and two-percent (2%) of total yearly revenues of AlixPartners. AlixPartners believes that these engagements do not present a conflict. In addition, the AlixPartners professionals will continue to adhere to their confidentiality obligations.

Aegon, a lender to the Debtors, is a co-party to a former AlixPartners client in matters unrelated to the Debtors. Aegon is a related party, through membership in a creditors committee, to a former AlixPartners client in matters unrelated to the Debtors.

American International Group Inc., ("AIG"), a lender and insurance provider to the Debtors, is affiliated with entities that are limited partners, litigation counterparties, adverse parties, lenders and bondholders to current and former AlixPartners clients in matters unrelated to the Debtors. AIG has provided various types of insurance to AlixPartners in matters unrelated to the Debtors.

American Express ("American Express"), a creditor to the Debtors, is affiliated with an entity that is a vendor to AlixPartners as well as a lender, bondholder, creditor and vendor to current and former AlixPartners clients in matters unrelated to the Debtors. American Express is a member of a creditors' committee that was a former AlixPartners client in matters unrelated to the Debtors. American Express is a former AlixPartners client in matters unrelated to the Debtors.

AON-Fireman's Fund Insurance Company and AON (collectively, "AON"), litigation parties to the Debtors, are vendors to AlixPartners in matters unrelated to the Debtors. AON is a current and former AlixPartners client in matters unrelated to the Debtors.

Apax Partners, L.P., a shareholder and director affiliated company to the Debtors, is a current and former AlixPartners client in matters unrelated to the Debtors.

Baker & McKenzie, a professional in interest in this bankruptcy matter, is a current and former AlixPartners client in matters unrelated to the Debtors. Baker & McKenzie was opposing counsel and a professional in interest to former AlixPartners clients in matters unrelated to the Debtors. Baker & McKenzie is the previous employer of current AlixPartners employees.

Banco Espirito Santo S.A., a lender to the Debtors, is a former AlixPartners client in matters unrelated to the Debtors.

Bank of America and Bank of America TRS, lenders and swap counterparties to the Debtors, are current and former AlixPartners clients, as well as executory contract counterparties, creditors and lenders to current and former AlixPartners clients in matters unrelated to the Debtors.

Bank of New York, ("BNY"), a lender to the Debtors, is a lender, bondholder, creditor, adverse party, co-defendant and indenture trustee to current and former AlixPartners clients in matters unrelated to the Debtors. In addition, BNY is the previous employer of a current AlixPartners employee.

Barclays Global Investors, N.A. ("Barclays"), a shareholder to the Debtors, and affiliated entities are creditors, significant shareholders, adverse parties, lenders

and bondholders of current and former AlixPartners clients in matters unrelated to the Debtors. Barclays is a vendor to AlixPartners and is a co-client to a current AlixPartners client in matters unrelated to the Debtors. Barclays is the previous employer of a current AlixPartners employee.

Beazley Insurance Company ("Beazley"), an insurance provider to the Debtors, is an insurer and adverse party to current and former AlixPartners clients in matters unrelated to the Debtors. Beazley provides insurance services to AlixPartners in matters unrelated to the Debtors.

Blackstone / GSO ("Blackstone"), a lender to the Debtors, is a former AlixPartners client in matters unrelated to the Debtors. Affiliations of Blackstone are professionals in interest, significant shareholders, bondholders, creditors, parents and lenders to current and former AlixPartners clients and are landlords to AlixPartners all in matters unrelated to the Debtors.

Boise Cascade, an other party to the Debtors, is the previous employer of a current AlixPartners employee.

Cadwalader, Wickersham & Taft LLP ("Cadwalader"), a professional in interest in this bankruptcy matter, is client counsel and vendor to current and former AlixPartners clients in matters unrelated to the Debtors.

Cerberus Partners and Cerberus Series Four Holdings, LLC (collectively, "Cerberus"), lenders to the Debtors, and affiliated entities are creditors, significant shareholders, director affiliated companies and lenders to current and former AlixPartners clients in matters unrelated to the Debtors. Cerberus is a former AlixPartners client in matters unrelated to the Debtors.

Chadbourne & Parke LLP, a professional in interest in this bankruptcy matter, was client counsel to a former AlixPartners client in matters unrelated to the Debtors.

Chemtura Canada and Chemtura are creditors to the Debtors. Chemtura is a former AlixPartners client in matters unrelated to the Debtors.

Chubb – Federal Insurance Company, an insurance provider to the Debtors, is a vendor to AlixPartners and an adverse party, lender, insurance provider and executory contract counterparty to current and former AlixPartners clients in matters unrelated to the Debtors. Chubb is a former AlixPartners client in matters unrelated to the Debtors.

Citibank, N.A. - Originations, Citibank, N.A. - Secondary Trading, Citicorp North America, Inc., Citigroup and Citigroup Global Markets (collectively "Citi"), lenders and parties to letters of credit to the Debtors, and affiliated entities are creditors, lenders, bondholders, shareholders, adverse parties, professionals in

interest and lessors to current and former AlixPartners clients in matters unrelated to the Debtors.

CNA, an insurance provider to the Debtors, is affiliated with entities that are bondholders, creditors and adverse parties to current and former AlixPartners clients in matters unrelated to the Debtors. An affiliate of CNA is a former AlixPartners client in matters unrelated to the Debtors. CNA is the previous employer of a current AlixPartners employee.

Credit Suisse Alternative Capital, Inc., CSAM Asset Funding IV and Credit Suisse Loan Funding LLC (collectively, "CS"), lenders to the Debtors, are affiliates of current and former AlixPartners clients in matters unrelated to the Debtors. Other CS affiliated entities are lenders, creditors, bondholders, shareholders, limited partners and professionals in interest to current and former AlixPartners clients in matters unrelated to the Debtors. CS is the previous employer of a current AlixPartners employee.

Dell Computer ("Dell"), a creditor to the Debtors, and affiliated entities are creditors, co-defendants and vendors to current and former AlixPartners clients in matters unrelated to the Debtors. Dell is a former AlixPartners client in matters unrelated to the Debtors.

Deloitte & Touche LLP ("Deloitte"), a professional in interest and creditor to the Debtors, is a vendor to AlixPartners, adverse to a former AlixPartners client, as well as a professional in interest to current and former AlixPartners clients in matters unrelated to the Debtors. Deloitte is a current client of AlixPartners in matters unrelated to the Debtors. Additionally, Deloitte affiliated entities previously employed several current AlixPartners employees.

Deutsche Bank AG, a swap counterparty to the Debtors, is affiliated with entities that are shareholders, lenders, adverse parties, indenture trustees, creditors, limited partners and professionals in interest to current and former AlixPartners clients in matters unrelated to the Debtors. Deutsche Bank is a current AlixPartners client in matters unrelated to the Debtors. Also, Deutsche Bank provides banking services to AlixPartners in matters unrelated to the Debtors.

Duke Energy of NC, a utility provider to the Debtors, is a creditor, director affiliated company, strategic alliance party and executory contract counterparty to current and former AlixPartners clients in matters unrelated to the Debtors.

E.I. DuPont De Demours & Company ("DuPont"), a creditor to the Debtors, is a former client of AlixPartners in matters unrelated to the Debtors. DuPont is a creditor, vendor, executory contract counterparty and adverse party to current and former AlixPartners clients in matters unrelated to the Debtors. DuPont is the previous employer of current AlixPartners employees.

Eaton Vance, Eaton Vance Cdo IX Ltd, Eaton Vance Cdo VIII, Ltd, Eaton Vance Institutional Senior Lo Fund, Eaton Vance Limited Duration Income Fund, Eaton Vance Senior Floating-Rate Tr, Eaton Vance Senior Income Trust, Eaton Vance Vt Floating-Rate Income Fund and Eaton Vance-Floating Rate Income Tr (collectively, "Eaton Vance"), lenders to the Debtors, and affiliated entities are lenders, creditors and bondholders to current and former AlixPartners clients in matters unrelated to the Debtors. In addition, Eaton Vance was part of a bank group for which AlixPartners performed services, in matters unrelated to the Debtors.

Ernst & Young ("E&Y"), a professional in interest in this bankruptcy matter, is an adverse party, vendor and creditor to current and former AlixPartners clients in matters unrelated to the Debtors. E&Y is a vendor to AlixPartners and previously employed several current AlixPartners employees. E&Y is a current and former AlixPartners client in matters unrelated to the Debtors.

Faegre & Benson, a litigation party to the Debtors, is a professional in interest to current AlixPartners clients in matters unrelated to the Debtors.

GE Capital Fleet Services, GE Corporate Banking Sas Fka GE Finance Participations Sas and General Electric Capital Corporation (collectively, "GE"), lessors and lenders to the Debtors, are creditors, customers, lenders, vendors, litigation parties, adverse parties, lessors and bondholders of current and former AlixPartners clients in matters unrelated to the Debtors. GE is a current and former AlixPartners client and in matters unrelated to the Debtors. GE is the previous employer of current AlixPartners employees.

Garden City Group, a professional in interest in this bankruptcy matter, is a professional in interest to current and former AlixPartners clients in matters unrelated to the Debtors.

Georgia Pacific Corporation, an other party to the Debtors, is a current AlixPartners client in matters unrelated to the Debtors.

Goldman Sachs Global Opportunities, a lender to the Debtors, is a lender, litigant, lessee, bondholder, professional in interest and shareholder to current and former AlixPartners clients in matters unrelated to the Debtors. Goldman Sachs is a former AlixPartners client in matters unrelated to the Debtors. Goldman Sachs is the previous employer of current AlixPartners employees.

Grant Thornton, a professional in interest in this bankruptcy matter, is an adverse party, creditor, client counsel, vendor and professional in interest to current and former AlixPartners clients in matters unrelated to the Debtors. Grant Thornton is a former AlixPartners client in matters unrelated to the Debtors. Grant Thornton is the previous employer of a current AlixPartners employee.

Heidrick & Struggles, a professional in interest in this bankruptcy matter, is a professional in interest to a former AlixPartners client and a vendor to AlixPartners in matters unrelated to the Debtors.

Huron Consulting Services, a professional in interest in this bankruptcy matter, is a vendor, professional in interest and creditor to current and former AlixPartners clients in matters unrelated to the Debtors. Huron Consulting Services is the previous employer of current AlixPartners employees.

ING Internat II - Sr Bank Loan Euro, ING Investment Management CLO I, Lt, ING Investment Management CLO III, Ltd., ING Investment Management CLO IV Ltd., ING Investment Management CLO V Ltd, ING Investment Management CLO II, ING Investment Trust Co. Plan For Employee Benefit Investment Funds-Senior Loan Fund, ING Investments and ING Prime Rate Trust (collectively, "ING"), lenders to the Debtors, are former AlixPartners clients in matters unrelated to the Debtors. ING affiliated entities are lenders, noteholders, creditors, bondholders, lessors and bank steering committee members to current and former AlixPartners clients in matters unrelated to the Debtors.

Intermediate Capital Group, a lender to the Debtors, is a former AlixPartners client in matters unrelated to the Debtors.

Kimberly-Clark Corporation, an other party to the Debtors, is a former AlixPartners client in matters unrelated to the Debtors. Kimberly-Clark is an adverse party to a current AlixPartners client in matters unrelated to the Debtors.

Landsbanki Islands HF and Landsbanki Commercial Finance are lenders to the Debtors. Landsbanki Islands HF is a current AlixPartners client in matters unrelated to the Debtors.

Lanxess Corporation, a creditor to the Debtors, is a former AlixPartners client in matters unrelated to the Debtors.

McGuire Woods, a professional in interest in this bankruptcy matter, is client counsel to current and former AlixPartners clients in matters unrelated to the Debtors.

Merrill Lynch Capital Services ("Merrill Lynch"), a lender and swap counterparty to the Debtors, is affiliated with entities that are current and former clients of AlixPartners, as well as lenders, bondholders, shareholders, limited partners, adverse parties and professionals in interest to current and former AlixPartners clients in matters unrelated to the Debtors. Merrill Lynch is a current AlixPartners client in matters unrelated to the Debtors. Merrill Lynch is the previous employer of current AlixPartners employees.

Morgan Stanley and Morgan Stanley Senior Funding Inc. (collectively, "Morgan Stanley"), lenders to the Debtors, are lenders, bondholders, creditors, shareholders

and professionals in interest to current and former AlixPartners clients in matters unrelated to the Debtor. Morgan Stanley is a current and former AlixPartners client in matters unrelated to the Debtors. Morgan Stanley is the previous employer of a current AlixPartners employee.

National Union Fire Insurance Company, an insurance provider to the Debtors, is affiliated with entities that are limited partners, litigation counterparties, adverse parties, lenders and bondholders to current and former AlixPartners clients in matters unrelated to the Debtors.

Ogletree, Deakins, Nash, Smoak & Stewart, a professional in interest in this bankruptcy matter, was client counsel to a former AlixPartners client in matters unrelated to the Debtors.

Procter & Gamble, an other party to the Debtors, is a former AlixPartners client in matters unrelated to the Debtors. Procter & Gamble is an adverse party, customer, co-defendant and director affiliated company to current and former AlixPartners clients in matters unrelated to the Debtors.

Rabobank, a lender to the Debtors, is a former AlixPartners client in matters unrelated to the Debtors. Rabobank was a lender to a former AlixPartners client in matters unrelated to the Debtors.

Richards Layton & Finger, a professional in interest in this bankruptcy matter, is counsel to AlixPartners in matters unrelated to the Debtors. Richards Layton & Finger is also a professional in interest to current and former AlixPartners clients in matters unrelated to the Debtors. Richards Layton & Finger provides legal services to AlixPartners in matters unrelated to the Debtors.

Ropes & Gray, a professional in interest in this bankruptcy matter, is a former AlixPartners client in matters unrelated to the Debtors. Ropes & Gray is a professional in interest, vendor, creditor and opposing counsel to current and former AlixPartners clients in matters unrelated to the Debtors.

Rothschild LLP, a professional in interest in this bankruptcy matter, is a professional in interest, bondholder and related party to current and former AlixPartners clients in matters unrelated to the Debtors. Rothschild LLP is a vendor to AlixPartners in matters unrelated to the Debtors. Rothschild LLP, is the previous employer of a current AlixPartners employee.

Sandusky International, a creditor to the Debtors, is an affiliate of a former AlixPartners client in matters unrelated to the Debtors.

Skadden, Arps, Slate, Meagher & Flom, a professional in interest in this bankruptcy matter, is a professional in interest and client counsel to current and former AlixPartners clients in matters unrelated to the Debtors. Skadden, Arps,

Slate, Meagher & Flom, is a current and former AlixPartners client in matters unrelated to the Debtors.

Smurfit-Stone Container Corporation, an other party to the Debtors, is a former AlixPartners client in matters unrelated to the Debtors. An affiliate, Smurfit Newsprint Corporation, is a vendor, creditor and adverse party to current and former AlixPartners clients in matters unrelated to the Debtors.

Stewart McKelvey, a professional in interest in this bankruptcy matter, is a professional in interest and vendor to current and former AlixPartners clients in matters unrelated to the Debtors.

Sunoco Products Company ("Sunoco"), a creditor and an other party to the Debtors, is affiliated with an entity that is a former AlixPartners client in matters unrelated to the Debtors. Sunoco is a director-affiliated company to a former AlixPartners client in matters unrelated to the Debtors.

TPG and TPG Opportunity Fund I, L.P. (collectively, "TPG"), lenders to the Debtors, and affiliated entities, were significant shareholders to current and former AlixPartners clients in matters unrelated to the Debtors.

Univar, a creditor to the Debtors, is a former AlixPartners client in matters unrelated to the Debtors. Univar is a vendor to a current AlixPartners client in matters unrelated to the Debtors.

Wachovia Bank, a lender to the Debtors, is a lender, bondholder, creditor, adverse party, co-defendant and professional in interest to current and former AlixPartners clients in matters unrelated to the Debtors. Wachovia is a current and former AlixPartners client in matters unrelated to the Debtors.

White Birch Paper Company ("White Birch") an other party to the Debtors is a current AlixPartners client. AlixPartners currently represents Bear Island, an affiliate of White Birch, as financial advisor in its chapter 11 bankruptcy case. Weavexx, a division of Xerium, is a supplier to White Birch. AlixPartners does not believe our representation of Xerium, White Birch and Weavexx presents any actual conflict for AlixPartners. However, in order to preserve confidential information and avoid even the appearance of a conflict, we are establishing an information barrier between Xerium and White Birch and their respective affiliates.

Zurich, an insurance provider to the Debtors, is a creditor, vendor, executory contract counterparty and adverse party to current and former AlixPartners clients in matters unrelated to the Debtors. Zurich is a current AlixPartners client and a vendor to AlixPartners in matters unrelated to the Debtors.