---------------------------------------------------------------------x

| | |
|---|---|
| In re | : Chapter 11 |
| | : |
| XERIUM TECHNOLOGIES, INC., et al.,[1] | : Case No. 10-_____ ( ) |
| | : |
| Debtors. | : Joint Administration Requested |
| | Waiver of Local Rule Requested |

---------------------------------------------------------------------x

### APPLICATION OF DEBTORS FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 327(a) AND 328(a), FED. R. BANKR. P. 2014, AND DEL. BANKR. L.R. 2014-1 AND 2016-2(g) AUTHORIZING THE RETENTION AND EMPLOYMENT OF ROTHSCHILD INC. AS FINANCIAL ADVISOR AND INVESTMENT BANKER FOR THE DEBTORS, NUNC PRO TUNC TO THE COMMENCEMENT DATE

Xerium Technologies, Inc. ("Xerium") and certain of its direct and indirect subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), respectfully represent:

### Background

1.     On the date hereof (the "Commencement Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[1] The Debtors in these chapter 11 cases (along with the last four digits of each Debtor's federal tax identification number or its foreign equivalent) are: Xerium Technologies, Inc. (8674), Huyck Licensco Inc. (0434), Stowe Woodward Licensco LLC (4459), Stowe Woodward LLC (4102), Wangner Itelpa I LLC (3561), Wangner Itelpa II LLC (3562), Weavexx, LLC (7969), Xerium Asia, LLC (3367), Xerium III (US) Limited (4460), Xerium IV (US) Limited (4461), Xerium V (US) Limited (4462), XTI LLC (6754), Xerium Canada Inc. (0003), Huyck.Wangner Austria GmbH (0323), Xerium Germany Holding GmbH (3219), and Xerium Italia S.p.A. (0150). The location of the Debtors' corporate headquarters and the service address for all Debtors is: 8537 Six Forks Road, Suite 300, Raleigh, North Carolina 27615.

2.      Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of their chapter 11 cases for procedural purposes only pursuant to Fed. R. Bankr. P. 1015(b).

**The Debtors' Businesses**

3.      The Debtors, together with their non-Debtor subsidiaries and affiliates (collectively, the "Company"), are a leading global manufacturer and supplier of two categories of consumable products used in the production of paper products (the "Clothing Segment") and roll technology products (the "Roll Covers Segment") installed in paper-making machines. The Clothing Segment consists of engineered synthetic textile belts, which range in size from 15 feet in width to more than 460 feet in length, that allow for the extraction of water while transporting paper through a paper-making machine. The Roll Covers Segment encompasses the covering and servicing of large metal rolls (up to 50 feet in length, six feet in diameter, and 140,000 pounds) upon which paper machine clothing products are often mounted and between which paper travels as it is processed from a "wet slurry" to a finished paper product.

4.      The Company operates 38 facilities in 13 countries, 32 of which are manufacturing facilities. The Company's facilities are strategically located in the major paper-producing regions of North America, Europe, South America, and Asia-Pacific. Eleven of these facilities manufacture clothing, twenty facilities manufacture and service roll covers, and one facility manufactures both clothing and roll covers. The Company owns substantially all of its manufacturing facilities.

5.      As of January 1, 2010, the Company employs approximately 3,290 people worldwide, of which approximately 2,500 are manufacturing employees, 400 are sales and

marketing employees, 100 employees are in research and development, and 300 are administrative and other employees.

6. For the fiscal year ended December 31, 2009, the Company generated, on a consolidated basis, $500.1 million in net sales. As of December 31, 2009, the Company reported, on a consolidated basis, total assets of $693.5 million and total liabilities of $813.2 million, including approximately $640.1 million of debt.

## The Debtors' Prepackaged Plan

7. Prior to the Commencement Date, the Debtors solicited votes on their proposed joint prepackaged plan of reorganization under chapter 11 of the Bankruptcy Code pursuant to a disclosure statement, dated March 2, 2010 and supplement thereto, dated March 8, 2010 (together, the "Disclosure Statement"). On the Commencement Date, the Debtors filed the proposed plan, as amended (the "Plan") and the Disclosure Statement with the Court. As set forth in the Certification of The Garden City Group, Inc. with Respect to Solicitation and Tabulation of Votes on Debtors' Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, filed on the Commencement Date, the Plan has been overwhelmingly accepted by all classes entitled to vote.

8. As described in the Disclosure Statement and the Declaration of Stephen Light in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings, filed with the Court on the Commencement Date, the Plan contemplates a comprehensive financial restructuring of the Debtors' capital structure that will reduce the Debtors' leverage and enhance their long-term growth and competitive position. The Plan also provides for an improvement in the Debtors' liquidity by extending the maturity dates of their prepetition indebtedness. Under the Plan, general unsecured claims will be rendered unimpaired and holders of equity interests in Xerium

will receive shares of new common stock to be issued on the effective date of the Plan and warrants to purchase additional shares of new common stock.

## Jurisdiction

9.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

10.      By this application and for the reasons set forth below, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Fed. R. Bankr. P. 2014(a), and Del. Bankr. L.R. 2014-1 and 2016-2(g), the Debtors respectfully request entry of an order, substantially in the form attached hereto as Exhibit A, (a) authorizing and approving the retention and employment of Rothschild Inc. ("Rothschild") as the Debtors' financial advisor and investment banker, nunc pro tunc to the Commencement Date, in accordance with the terms set forth herein and in the engagement letter, dated August 13, 2009 (the "Engagement Letter"),[2] a copy of which is attached hereto as Exhibit B and (b) waiving the informational requirements of Del. Bankr. L.R. 2016-2(d).

11.      The terms of this application, as well as the terms of the order requested by this application and entered pursuant thereto, will apply to any and all affiliates of the Debtors that have not yet filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code as

---

[2] Any references to, or summaries of, the Engagement Letter in this application are qualified by the express terms of the Engagement Letter, which shall govern if there is any conflict between the Engagement Letter and the summaries provided herein.  Additionally, any initially capitalized terms used in this application and not otherwise defined herein shall have the meanings ascribed to them in the Engagement Letter.

of the Commencement Date, but which subsequently file such a petition during the pendency of these chapter 11 cases.

<u>**Rothschild's Qualifications**</u>

12.     The Debtors seek to retain Rothschild as their financial advisor and investment banker because, among other things, Rothschild has extensive experience and an excellent reputation in providing high quality investment banking services to debtors and creditors in bankruptcy reorganizations and other restructurings. Rothschild is particularly well qualified to serve as the Debtors' financial advisor and investment banker in these chapter 11 cases.

13.     Rothschild is a member of one of the world's leading independent investment banking groups, with more than 40 offices in more than 30 countries, including an office located at 1251 Avenue of the Americas, 51st Floor, New York, New York 10020. Rothschild has expertise in domestic and cross-border restructurings, mergers and acquisitions, new capital raises and other investment banking and financial advisory services, and with particular experience in providing high-quality financial advisory services to financially troubled companies. Rothschild is an experienced bankruptcy and restructuring advisor to debtors, bondholders, creditors' committees, single creditor classes, and secured creditors in a variety of industries. Rothschild is highly qualified to advise on strategic alternatives and its professionals have extensive experience in deals involving complex financial and operating restructurings. Rothschild is a member of the Financial Industry Regulatory Authority and the Securities Investor Protection Corporation.

14.     Rothschild and its professionals have extensive experience working with financially troubled companies from a variety of industries in complex financial restructurings,

both out-of-court and in chapter 11 cases. Rothschild's business reorganization professionals have served as financial and strategic advisors in numerous cases, including, among others: In re Trident Resources Corp., Case No. 09-13150 (MFW) (Bankr. D. Del. Jan. 28, 2010); FairPoint Commc'ns, Inc., Case No. 09-16335 (BRL) (Bankr. S.D.N.Y. Jan. 11, 2010); In re MIG, Inc., Case No. 09-12118 (KG) (Bankr. D. Del. Sept. 4, 2009); In re Sea Launch Co., LLC, Case No. 09-12153 (BLS) (Bankr. D. Del. Aug. 8, 2009); In re Visteon Corp., Case No. 09-11786 (CSS) (Bankr. D. Del. July 1, 2009); In re Sun-Times Media Group, Inc., Case No. 09-11092 (CSS) (Bankr. D. Del. May 11, 2009); In re Tronox Inc., Case No. 09-10156 (ALG) (Bankr. D. Del. Apr. 7, 2009); In re PPI Holdings, Inc., Case No. 08-13289 (KG) (Bankr. D. Del. Feb. 4, 2009); In re Recycled Paper Greetings Inc., Case No. 09-10002 (KG) (Bankr. D. Del. Jan. 2, 2009); In re Milacron Inc., Case No. 09-11235 (JVA) (Bankr. S.D. Ohio Apr. 6, 2009); In re Circuit City Stores, Inc., Case No. 08-35653 (KRH) (Bankr. E.D. Va. Nov. 10, 2008); In re VeraSun Energy Corp., Case No. 08-12606 (BLS) (Bankr. D. Del. Oct. 31, 2008); In re Motor Coach Industries International, Inc., Case No. 08-12136 (BLS) (Bankr. D. Del. Sept. 15, 2008); In re BHM Technologies, Case No. 08-04413 (SWD) (Bankr. W.D. Mich. May 19, 2008); In re Hilex Poly Co. LLC, Case No. 08-10890 (KJC) (Bankr. D. Del. May 6, 2008); In re Werner Holding Co. (DE), Inc., Case No. 06-10578 (KJC) (Bankr. D. Del. June 12, 2006) In re Delphi Corp., Case No. 05-44481 (RDD) (Bankr. S.D.N.Y. Nov. 30, 2005); In re Northwest Airlines Corp., Case No. 05-17930 (ALG) (Bankr. S.D.N.Y. Sept. 14, 2005); In re Solutia Inc., Case No. 03-17949 (PCB) (Bankr. S.D.N.Y. Mar. 11, 2005); In re Int'l Wire, Case No. 04-11991 (BRL) (Bankr. S.D.N.Y. July 1, 2004); In re James River Coal Co., Case No. 03-04095 (MFH) (Bankr. M.D. Tenn. May 23, 2003); In re Superior TeleCom Inc., et al., Case No. 03-10607 (KJC) (Bankr. D. Del. Apr. 10, 2003); In re WestPoint Stevens, Inc., Case No. 03-13532 (RDD) (Bankr. S.D.N.Y.

June 6, 2003); In re UAL Corp., Case No. 02-48191 (ERW) (Bankr. N.D. Ill. Dec. 9, 2002); In re

Viasystems Group, Inc., Case No. 02-14867 (ALG) (Bankr. S.D.N.Y. Nov. 21, 2002); In re

Guilford Mills, Inc., Case No. 02-40667 (BRL) (Bankr. S.D.N.Y. June 26, 2002). Advisory

assignments involving prepackaged bankruptcies but not a formal retention in which Rothschild

was actively involved include, among others, In re Remy Worldwide Holdings, Inc., Case

No. 07-11481 (KJC).

        15.    As set forth in the declaration of Stephen S. Ledoux in support of this

application (the "Ledoux Declaration"), attached hereto as Exhibit C, prior to the

Commencement Date, the Debtors engaged Rothschild to provide general investment banking

and financial advice in connection with the Debtors' exploration of various strategic, financial,

and restructuring alternatives and to prepare for the commencement of these chapter 11 cases. In

that regard, Rothschild assisted the Debtors in the development and negotiation of the proposed

Plan, prepared the valuation of the Debtors set forth in the Disclosure Statement, and assisted the

Debtors in procuring their proposed debtor in possession and exit financing and negotiating the

terms of such financing, as well as the amended second lien term loan to be entered into on the

effective date of the Plan. Consequently, the Debtors believe that Rothschild has developed

significant relevant experience and expertise regarding the Debtors, their businesses, and their

current situation and is thus both well-qualified and uniquely suited to deal effectively and

efficiently with any financial problems that may arise in the context of these cases. Indeed, if the

Debtors were required to retain an financial advisor and investment banker other than Rothschild

in connection with these chapter 11 cases, the Debtors, their estates, and all parties in interest

would be unduly prejudiced by the time and expense necessary to familiarize the other financial

advisors with the intricacies of the Debtors and their business operations.

<u>**Terms of the Engagement**</u>

## I.  Scope of Services

16.  The employment of Rothschild under the terms set forth in the Engagement Letter is appropriate and necessary to enable the Debtors to faithfully execute their duties as debtors and debtors in possession and to implement their reorganization.  The following services rendered, and subject to approval of the Court, proposed by the Debtors to be rendered, by Rothschild at the request of the Debtors, are fully described in the Engagement Letter:

(a)  review and analyze the Debtors' assets and the operating and financial strategies of the Debtors;

(b)  review and analyze the business plans and financial projections prepared by the Debtors including, but not limited to, testing assumptions and comparing those assumptions to historical Debtor and industry trends;

(c)  evaluate the Debtors' debt capacity in light of its projected cash flows and assist in the determination of an appropriate capital structure for the Debtors;

(d)  assist the Debtors and their other professionals in reviewing the terms of any proposed Transaction (as defined in section 1 of the Engagement Letter), in responding thereto and, if directed, in evaluating alternative proposals for a Transaction;

(e)  determine a range of values for the Debtors and any securities that the Debtors offer or propose to offer in connection with a Transaction;

(f)  advise the Debtors on the risks and benefits of considering a Transaction with respect to the Debtors' intermediate and long-term business prospects and strategic alternatives to maximize the business enterprise value of the Debtors;

(g)  review and analyze any proposals the Debtors receive from third parties in connection with a Transaction as appropriate;

(h)  assist or participate in negotiations with the parties in interest, including, without limitation, any current or prospective creditors of, holders of equity in, or claimants against the Debtors and their respective representatives in connection with a Transaction;

(i) advise the Debtors with respect to, and attend, meetings of the Debtors' board of directors, creditor groups, official constituencies and other interested parties, as necessary;

(j) participate in hearings before the Court and provide relevant testimony with respect to the matters described herein and issues arising in connection with any proposed plan of reorganization; and

(k) render such other financial advisory and investment banking services as may be agreed upon by Rothschild and the Debtors.

17.     As set forth in the Ledoux Declaration, Rothschild has stated its desire and willingness to act in the Debtors' cases and render the necessary professional services as financial advisor and investment banker for the Debtors on the terms set forth in the Engagement Letter and described herein, and to subject itself to the jurisdiction of the Court.

## II.     Professional Compensation

18.     In consideration of the services to be provided by Rothschild, and as more fully described in the Engagement Letter, subject to the approval of the Court, the Debtors have agreed to pay Rothschild in cash under the following fee structure (the "Fee Structure"):

(a) A retainer in an amount equal to $175,000, to be applied against the fees and expenses of Rothschild (the "Retainer").

(b) Commencing as of August 13, 2009, an advisory fee of $175,000 per month (the "Monthly Fee"). The Monthly Fee will be payable by the Debtors in advance on the first day of each month.

(c) A fee of $4,000,000, payable upon the earlier of (i) the confirmation and effectiveness of a plan of reorganization and (ii) the closing of another Transaction (the "Completion Fee").

(d) A new capital fee equal to (i) 1.0% of the face amount of any senior secured debt raised including, without limitation, any debtor in possession financing raised, (ii) 2.5% of the face amount of any junior secured or senior or subordinated unsecured debt raised, (iii) 3.0% of the face amount of any unsecured debt raised, and (iv) 5.0% of any equity capital, or capital convertible into equity, raised (the "New Capital Fee").

19.     Furthermore, Rothschild will credit against the Completion Fee: (a) 50% of the Monthly Fees paid above $1,050,000; and (b) 50% of any New Capital Fees paid.

20.     The Debtors and Rothschild have agreed that no New Capital Fee will be earned if the Disclosure Statement is approved and the Plan is confirmed by the Court.

21.     In addition to the fees described above, the Debtors agree to reimburse Rothschild for all of Rothschild's reasonable expenses incurred in connection with the performance of its engagement under the Engagement Letter, including, without limitation, reasonable fees, disbursements, and other charges by Rothschild's counsel.  Reasonable expenses will also include, but not be limited to, expenses incurred in connection with travel and lodging, data processing and communication charges, research, and courier services.

22.     The hours worked, the results achieved, and the ultimate benefit to the Debtors of the work performed by Rothschild may vary, and the Debtors and Rothschild have taken such factors into account in setting the fees.  Rothschild's compensation is comparable to the compensation generally charged by investment banking and financial advisory firms of similar stature to Rothschild and for comparable engagements, both in chapter 11 and out-of-court.

23.     The Debtors acknowledge and agree that Rothschild's restructuring expertise, as well as its capital markets knowledge, financing skills, and mergers and acquisitions capabilities, some or all of which have been and may be required by the Debtors during the term of Rothschild's engagement, were important factors in determining the fee structure set forth in the Engagement Letter and summarized above.  Furthermore, the Debtors acknowledge and agree that the ultimate benefit to the Debtors of Rothschild's services likely could not be

measured merely by reference to the number of hours to be expended by Rothschild's professionals in the performance of such services.

24. The Debtors also acknowledge and agree that the Fee Structure has been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Rothschild and its professionals hereunder and in light of the fact that (a) such commitment may foreclose other opportunities for Rothschild and (b) the actual time and commitment required of Rothschild and its professionals to perform its services hereunder may vary substantially from week to week and month to month, creating "peak load" issues for Rothschild.

25. In addition, given the numerous issues that Rothschild may be required to address in the performance of its services, Rothschild's commitment to the variable level of effort necessary to address all issues as they arise, and the market prices for Rothschild's services for engagements of this nature in an out-of-court context, as well as in chapter 11 cases, the Debtors submit that the proposed fee structure in the Engagement Letter is reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

26. As set forth in the Ledoux Declaration, Rothschild has not shared or agreed to share any of its compensation from the Debtors with any other persons, other than employees of Rothschild, as permitted by section 504 of the Bankruptcy Code.

27. Contemporaneously herewith, the Debtors have filed with the Court a motion seeking entry of an order (the "Interim Compensation Order") establishing procedures for interim compensation and reimbursement of expenses of professionals retained in these chapter 11 cases.

28.     Rothschild will apply for compensation and reimbursement of expenses in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, the applicable Federal Rules of Bankruptcy Procedure, the applicable Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the guidelines established by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), and any applicable orders of this Court, including, the Interim Compensation Order. Rothschild's fee applications for allowance of its compensation and expenses will be paid by the Debtors pursuant to the Interim Compensation Order or as otherwise authorized by the Court.

29.     It is not the general practice of investment banking firms, including Rothschild, to keep detailed time records similar to those customarily kept by attorneys and required by Del. Bankr. L.R. 2016-2(d). Because Rothschild does not ordinarily maintain contemporaneous time records in one-tenth hour (.10) increments or provide or conform to a schedule of hourly rates for its professionals, pursuant to Del. Bankr. L.R. 2016-2(g), the Debtors request that Rothschild be excused from compliance with such requirements and should only be required to maintain time records in half-hour (.5) increments setting forth, in a summary format, a description of the services rendered by each professional and the amount of time spent on such date by each such individual in rendering services on behalf of the Debtors. Rothschild will maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services.

## III.     Indemnification Provisions

30.     As part of the overall compensation payable to Rothschild under the terms of the Engagement Letter, the Debtors have agreed to certain indemnification obligations as more fully described in Exhibit A to the Engagement Letter (the "Indemnification Provisions").

Pursuant to the Indemnification Provisions, the Debtors will indemnify and hold harmless Rothschild and its affiliates, and the respective directors, officers, controlling persons, agents, and employees of each of the foregoing (each an "Indemnified Party") from and against any losses, claims, or proceedings, including, without limitation, stockholder actions, damages, judgments, assessments, investigation costs, settlement costs, fines, penalties, arbitration awards, and any other liabilities, costs, fees, and expenses other than as a result of such Indemnified Party's gross negligence, fraud, or willful misconduct.

31. The Debtors and Rothschild believe the Indemnification Provisions are customary and reasonable for financial advisory and investment banking engagements both out-of-court and in chapter 11 cases. See, e.g., United Artists Theater Co. v. Walton, 315 F.3d 217 (3d Cir. 2003) (affirming order authorizing indemnification of financial advisor by debtors); In re Joan & David Halpern, Inc., 248 B.R. 43 (Bankr. S.D.N.Y. 2000), aff'd, 2000 WL 1800690 (S.D.N.Y. Dec. 6, 2000) (same); In re Comdisco, Inc., Case No. 02-C-1174 (N.D. Ill. Sept. 23, 2002) (same); In re Affiliated Media, Inc., Case No. 10-10202 (KJC) (Bankr. D. Del. Mar. 2, 2010) (D.I. 136); In re Haights Cross Communications, Inc., Case No. 10-10062 (BLS) (Bankr. D. Del. Feb. 5, 2010); In re Trident Resources Corp., Case No. 09-13150 (MFW) (Bankr. D. Del. Jan. 28, 2010) (D.I. 187); In re FairPoint Commc'ns, Inc., Case No. 09-16335 (BRL) (Bankr. S.D.N.Y. Jan 11, 2010) (D.I. 328); In re Simmons Bedding Company, Case No. 09-14037 (MFW) (Bankr. D. Del. Dec. 10, 2009) (D.I. 140); In re Premier International Holdings Inc., Case No. 09-12019 (CSS) (Bankr. D. Del. Oct. 8, 2009) (D.I. 772); In re Sun-Times Media Group, Inc., Case No. 09-11092 (CSS) (Bankr. D. Del. May 11, 2009) (D.I. 173); In re Charter Commc'ns, Inc., Case No. 09-11435 (JMP) (Bankr. S.D.N.Y. Apr. 15, 2009) (D.I. 183); In re Nortel Networks Inc., Case No. 09-10138 (KG) (Bankr. D. Del. Mar. 20, 2009) (D.I. 507); In re

Recycled Paper Greetings Inc., Case No. 09-10002 (KG) (Bankr. D. Del. Jan. 23, 2009) (D.I. 147); In re VeraSun Energy Corporation, Case No. 08-12606 (Bankr. D. Del. Jan. 2, 2009) (D.I. 441); In re Motor Coach Industries International, Inc., Case No. 08-12136 (Bankr. D. Del. Oct. 16, 2008) (D.I. 213); In re Movie Gallery, Inc., Case No. 07-33849 (DOT) (Bankr. E.D. Va. Oct. 18, 2007) (D.I. 114); In re New Century TRS Holdings, Inc., Case No. 07-10416 (KJC) (Bankr. D. Del. Apr. 26, 2007) (D.I. 405); In re Calpine Corp., Case No. 05-60200 (BRL) (Bankr. S.D.N.Y. Apr. 26, 2006) (D.I. 1370); In re FLYi, Inc., Case No. 05-20011 (MFW) (Bankr. D. Del. Dec. 2, 2005) (D.I. 280); In re Delphi Corp., Case No. 05-44481 (Bankr. S.D.N.Y. Nov. 30, 2005) (D.I. 1363); In re Foamex Int'l, Inc., Case No. 05-12685 (PJW) (Bankr. D. Del. Oct. 17, 2005) (D.I. 203); In re Collins & Aikman Corp., Case No. 05-55927 (SWR) (Bankr. E.D. Mich. July 18, 2005) (D.I. 731); In re Oakwood Homes Corp., Case No. 02-13396 (PJW) (Bankr. D. Del. July 21, 2003) (D.I. 1620); In re United Artists Theatre Co., Case No. 00-3514 (SLR) (Bankr. D. Del. Nov. 14, 2000) (D.I. 508).

32.     The terms and conditions of the Engagement Letter and the Indemnification Provisions were negotiated by the Debtors and Rothschild at arm's length and in good faith.  The Debtors respectfully submit that the Indemnification Provisions, viewed in conjunction with the other terms of Rothschild's proposed retention, are reasonable and are in the best interests of the Debtors, their estates and creditors, and all other parties in interest. Accordingly, as part of this application, the Debtors request that the Court approve the Indemnification Provisions.

## No Duplication of Services

33.     The Debtors intend and believe that the services of Rothschild will complement, and not duplicate, the services rendered by any other professional retained in these

chapter 11 cases. Rothschild understands that the Debtors have retained and may retain additional professionals during the term of Rothschild's engagement and Rothschild agrees to work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors and to avoid the unnecessary duplication of services.

## Rothschild's Disinterestedness

34.     To the best of the Debtors' knowledge, information, and belief, other than as set forth in the Ledoux Declaration, neither Rothschild nor any Rothschild professional working on or connected to Rothschild's engagement on the Debtors' behalf has any connection with the Debtors, their creditors, or any other party in interest in the Debtors' cases, or their respective attorneys or accountants, the U.S. Trustee, or any person employed in the office of the U.S. Trustee.

35.     In the ninety days prior to the Commencement Date, the Debtors paid Rothschild $700,000.00 in fees and $27,725.24 for reimbursement of expenses. As of the Commencement Date, Rothschild holds $175,000.00 on account of the Retainer. Although Rothschild's records indicate that it is not owed any amounts in respect of prepetition services provided to the Debtors, it is possible that certain expenses that were incurred by Rothschild, and that are reimbursable under the terms of the Engagement Letter, were not yet reflected on Rothschild's books and records as of the Commencement Date. Upon entry of the order approving this application, Rothschild will waive any claim for such unreimbursed expenses in excess of amounts paid to Rothschild prepetition.

36.     To the best of the Debtors' knowledge, information, and belief, other than as set forth in the Ledoux Declaration, Rothschild does not hold or represent any interest adverse to the Debtors or their estates. The Debtors believe that Rothschild is a "disinterested person," as

defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and that the employment of Rothschild is necessary and in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

37.     Rothschild will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise.  Pursuant to Del. Bankr. L.R. 2014-1, to the extent that Rothschild learns of any additional material information relating to its employment (such as potential or actual conflicts of interest), Rothschild will file and serve a supplemental declaration with the Court setting forth the additional information.

### Basis for Relief

38.     Pursuant to section 327(a) of the Bankruptcy Code, a debtor in possession is authorized to employ professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor in possession] in carrying out [its] duties under [the Bankruptcy Code]."  11 U.S.C. § 327(a).  Section 1107(b) of the Bankruptcy Code further provides, "[n]otwithstanding section 327(a) of the [Bankruptcy Code], a person is not disqualified for employment under section 327 of the Bankruptcy Code by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case."  11 U.S.C. § 1107(b).  As discussed above and set forth in the Ledoux Declaration, Rothschild does not represent or hold any interest adverse to the Debtors or their estates and satisfies the disinterestedness standard of section 327(a) of the Bankruptcy Code.

39.     In addition, pursuant to section 328(a) of the Bankruptcy Code, the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including

on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."

11 U.S.C. § 328(a).  Section 328 of the Bankruptcy Code permits the compensation of professionals, including investment bankers and financial advisors, on more flexible terms that reflect the nature of their services and market conditions, which is a significant departure from prior bankruptcy practice relating to the compensation of professionals.  As the United States Court of Appeals for the Fifth Circuit recognized in In re Nat'l Gypsum Co., 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done.  That uncertainty continues under the present section 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc.  Under present section 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

Id. at 862 (citations omitted) cited in Riker, Danzig, Scherer, Hyland & Perretti LLP v. Official Comm. of Unsecured Creditors (In re Smart World Techs. LLC), 83 B.R. 869, 874 (S.D.N.Y. 2008).  Owing to this inherent uncertainty, courts have approved similar arrangements that contain reasonable terms and conditions under section 328 of the Bankruptcy Code.  See, e.g., In re U.S. Airways, Inc., Case No. 02-83984 (SJM) (Bankr. E.D. Va. Aug. 12, 2002); see also In re J.L. French Auto. Castings, Inc., Case No. 06-10119 (MFW) (Bankr. D. Del. March 24, 2006).

       40.      Furthermore, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 amended section 328(a) of the Bankruptcy Code as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and

> conditions of employment, including on a retainer, on an hourly basis, <u>on a fixed or percentage fee basis, or on a contingent fee basis</u>.

11 U.S.C. § 328(a) (emphasis added). This amendment makes clear the ability of the Debtors to retain, with court approval, a professional on a fixed percentage fee basis or on a contingent fee basis such as the Fee Structure set forth in the Engagement Letter.

      41. Similar fixed and contingency fee arrangements have been approved and implemented by courts in other large chapter 11 cases. <u>See, e.g.</u>, <u>In re Trident Resources Corp.</u>, Case No. 09-13150 (MFW) (Bankr. D. Del. Jan. 28, 2010) (D.I. 187); <u>In re Tronox Inc.</u>, Case No. 09-10156 (Bankr. S.D.N.Y. Apr. 7, 2009) (D.I. 339); <u>In re Recycled Paper Greetings Inc.</u>, Case No. 09-10002 (KG) (Bankr. D. Del. Jan. 23, 2009) (D.I. 147); <u>In re VeraSun Energy Corporation</u>, Case No. 08-12606 (Bankr. D. Del. Jan. 2, 2009) (D.I. 441); <u>In re Motor Coach Industries International, Inc.</u>, Case No. 08-12136 (Bankr. D. Del. Oct. 16, 2008) (D.I. 213); <u>In re Dura Auto. Sys., Inc.</u>, Case No. 06-11202 (Bankr. D. Del. Dec. 6, 2006) (D.I. 370); <u>In re J.L. French Auto. Castings, Inc.</u>, Case No. 06-10119 (Bankr. D. Del. Mar. 22, 2006) (D.I. 308); <u>In re FLYi, Inc.</u>, Case No. 05-20011 (Bankr. D. Del. Dec. 2, 2005) (D.I. 280); <u>In re Delphi Corp.</u>, Case No. 05-44481 (Bankr. S.D.N.Y. Nov. 30, 2005) (D.I. 1363); <u>In re Foamex Int., Inc.</u>, Case No. 05-12685 (Bankr. D. Del. Oct. 17, 2005) (D.I. 203); <u>In re Solutia Inc.</u>, Case No. 03-17949 (Bankr. S.D.N.Y. Apr. 13 2004) (D.I. 752); <u>In re Superior TeleCom Inc.</u>, Case No. 03-10607 (Bankr. D. Del. Apr. 10, 2003) (D.I. 202); <u>In re Guilford Mills, Inc.</u>, Case No. 02-40667 (Bankr. S.D.N.Y. June 26, 2002) (D.I. 255); <u>In re Kaiser Aluminum Corp.</u>, Case No. 02-10429 (Bankr. D. Del. Mar. 19, 2002) (D.I. 271); <u>In re Federal-Mogul Global Inc.</u>, Case No. 01-10578 (Bankr. D. Del. Feb. 5, 2002) (D.I. 1217); <u>In re Trans World Airlines, Inc.</u>, Case No. 01-0056 (Bankr. D. Del. Jan. 26, 2001) (D.I. 228).

42. The Debtors believe the Engagement Letter and the Indemnification Provisions contain reasonable terms and conditions of employment and should be approved pursuant to sections 327(a) and 328(a) of the Bankruptcy Code and not subject to the standard of review set forth in the section 330 of the Bankruptcy Code. The Engagement Letter and the Indemnification Provisions adequately reflect: (a) the nature and scope of services to be provided by Rothschild, (b) Rothschild's substantial experience with respect to investment banking and financial advisory services, and (c) fee structures and indemnification obligations typically utilized by Rothschild and other leading investment banks and financial advisors that do not bill their clients on an hourly basis and generally are compensated on a transactional basis. In particular, the Debtors believe the proposed fee structure creates a proper balance between fixed, monthly, and contingency fees based on consummation of certain sales of the Debtors' assets, raises of new capital, and the overall success of these chapter 11 cases. Moreover, Rothschild's substantial experience with respect to financial advisory and investment banking services, coupled with the nature and scope of work already performed by Rothschild before the Commencement Date, further suggest the reasonableness of the Engagement Letter and the Indemnification Provisions.

43. As discussed above and set forth in the Ledoux Declaration, the Debtors submit that they have satisfied the statutory requirements of sections 327(a) and 328(a) of the Bankruptcy Code, Fed. R. Bankr. P. 2014(a),[3] and Del. Bankr. L.R. 2014-1 and 2016-2(g), and

---

[3] Fed. R. Bank. P. 2014(a) requires that an application for employment of a professional pursuant to section 327 of the Bankruptcy Code include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's]

that the retention of Rothschild is in the best interests of the Debtors, their estates and creditors, and all other parties in interest. Accordingly, the Debtors respectfully request the entry of an order authorizing the Debtors to retain and employ Rothschild as financial advisor and investment banker on the terms set forth herein and in the Engagement Letter.

### Notice

44.     No trustee, examiner, or statutory creditors' committee has been appointed in these chapter 11 cases. Notice of this application is being provided to (i) the U.S. Trustee, (ii) the holders of the fifty largest unsecured claims against the Debtors on a consolidated basis, (iii) counsel to Citicorp North America, Inc., as administrative agent for the Debtors' prepetition secured lenders, (iv) the Securities and Exchange Commission, (v) the Internal Revenue Service, (vi) Rothschild, (vii) the United States Department of Justice, and (viii) all parties having filed requests for notices in these chapter 11 cases. Due to the nature of the relief requested herein, the Debtors submit that no other or further notice need be given.

### No Prior Application

45.     No prior application for the relief requested herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as is just.

---

connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bank. P. 2014(a).

Dated: **March 30**, 2010

Respectfully submitted,

Xerium Technologies, Inc.

By: _____
Stephen R. Light
Chairman and Chief Executive Officer

Xerium III (US) Limited
Xerium IV (US) Limited
Xerium V (US) Limited
Huyck Licensco Inc.
Stowe Woodward Licensco LLC
Wangner Itelpa I LLC
Wangner Itelpa II LLC
Xerium Asia, LLC

By: _____
Stephen R. Light
President

Stowe Woodward LLC
Weavexx, LLC
Xerium Canada Inc.

By: _____
Stephen R. Light
President and Chief Executive Officer

Xerium Italia S.p.A.

By: _____
Stephen R. Light
Chairman

XTI LLC

By: _____

David Maffucci
Executive Vice President

Xerium Germany Holding GmbH

By: _____

David Maffucci
Managing Director

Huyck.Wangner Austria GmbH

By: _____

David Pretty
Managing Director

## EXHIBIT A

**Proposed Order**

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------------------x

In re

XERIUM TECHNOLOGIES, INC., et al.,[1]

                      Debtors.

-----------------------------------------------------------------------x

: Chapter 11

: Case No. 10-_____ (   )

: Jointly Administered

## ORDER PURSUANT TO 11 U.S.C. §§ 327(a)
## AND 328(a), FED. R. BANKR. P. 2014,
## AND DEL. BANKR. L.R. 2014-1 AND 2016-2(g)
## AUTHORIZING THE RETENTION AND EMPLOYMENT OF
## ROTHSCHILD INC. AS FINANCIAL ADVISOR AND INVESTMENT BANKER
## FOR THE DEBTORS, NUNC PRO TUNC TO THE COMMENCEMENT DATE

Upon the application, dated March 30, 2010 (the "Application"),[2] of Xerium

Technologies, Inc. ("Xerium") and certain of its direct and indirect subsidiaries, as debtors and

debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"),

pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy

Code"), Fed. R. Bankr. P. 2014(a), and Del. Bankr. L.R. 2014-1 and 2016-2(g), for entry of an

order authorizing and approving the retention and employment of Rothschild Inc. ("Rothschild")

as the Debtors' financial advisor and investment banker, nunc pro tunc to the Commencement

Date, in accordance with the terms set forth in the Application and the engagement letter, dated

---

[1] The Debtors in these chapter 11 cases (along with the last four digits of each Debtor's federal tax identification number or its foreign equivalent) are: Xerium Technologies, Inc. (8674), Huyck Licensco Inc. (0434), Stowe Woodward Licensco LLC (4459), Stowe Woodward LLC (4102), Wangner Itelpa I LLC (3561), Wangner Itelpa II LLC (3562), Weavexx, LLC (7969), Xerium Asia, LLC (3367), Xerium III (US) Limited (4460), Xerium IV (US) Limited (4461), Xerium V (US) Limited (4462), XTI LLC (6754), Xerium Canada Inc. (0003), Huyck.Wangner Austria GmbH (0323), Xerium Germany Holding GmbH (3219), and Xerium Italia S.p.A. (0150). The location of the Debtors' corporate headquarters and the service address for all Debtors is: 8537 Six Forks Road, Suite 300, Raleigh, North Carolina 27615.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Application.

August 13, 2009, attached hereto as <u>Exhibit 1</u> (the "<u>Engagement Letter</u>"), all as more fully described in the Application; and upon consideration of the declaration of Stephen S. Ledoux in support of the Application, attached to the Application as Exhibit C; and the Court having jurisdiction to consider the Application and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Application and the Ledoux Declaration being in full compliance with all applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware; and due and proper notice of the Application having been provided to (i) the U.S. Trustee, (ii) the holders of the fifty largest unsecured claims against the Debtors on a consolidated basis, (iii) counsel to Citicorp North America, Inc., as administrative agent for the Debtors' prepetition secured lenders, (iv) the Securities and Exchange Commission, (v) the Internal Revenue Service, (vi) Rothschild, (vii) the United States Department of Justice, and (viii) all parties having filed requests for notices in these chapter 11 cases, and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Application (the "<u>Hearing</u>"); and upon the record of the Hearing, and all of the proceedings had before the Court; and the Court having found and determined that Rothschild holds no interest adverse to the Debtors or their estates and is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, that its employment is necessary and in the best interests of the Debtors, their estates and creditors, and all other parties in interest, and that the terms of the Engagement Letter, including the Fee Structure and

the Indemnification Provisions, are reasonable terms for the purposes of section 328(a) of the Bankruptcy Code, and that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby

ORDERED that the Application is granted to the extent provided herein; and it is further

ORDERED that, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Fed. R. Bankr. P. 2014, and Del. Bankr. L.R. 2014-1, the Debtors are authorized to retain and employ Rothschild as their financial advisor and investment banker, _nunc_ _pro_ _tunc_ to the Commencement Date, in accordance with the terms set forth in the Application and the Engagement Letter, which is attached hereto and incorporated by reference herein, and to pay fees to Rothschild on the terms and times specified in the Engagement Letter; and it is further

ORDERED that, notwithstanding anything to the contrary contained herein, Rothschild shall apply for compensation and reimbursement of expenses in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, the applicable Federal Rules of Bankruptcy Procedure, the applicable Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the guidelines established by the U.S. Trustee and any applicable orders of this Court, including the Interim Compensation Order; and it is further

ORDERED that Rothschild shall be compensated in accordance with the terms of the Engagement Letter pursuant to the standard of review under section 328(a) of the Bankruptcy Code and not subject to review under section 330 of the Bankruptcy Code; and it is further

ORDERED that, notwithstanding the preceding paragraph of this Order and any provision to the contrary in the Application or the Engagement Letter, the U.S. Trustee shall have the right to object to Rothschild's request(s) for interim and final compensation and reimbursement based on the reasonableness standard provided in section 330 of the Bankruptcy Code, not section 328(a) of the Bankruptcy Code. This Order and the record relating to the Court's consideration of the Application shall not prejudice or otherwise affect the rights of the U.S. Trustee to challenge the reasonableness of Rothschild's fees under the standard set forth in the preceding sentence. Accordingly, nothing in this Order or the record shall constitute a finding of fact or conclusion of law binding the U.S. Trustee, on appeal or otherwise, with respect to the reasonableness of the Rothschild fees; and it is further

ORDERED that Rothschild's fee applications shall include, among other things, time records setting forth, in a summary format, a description of the services rendered by each professional, and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors in one-half hour increments, but shall be excused in keeping time in one-tenth of an hour increments; and it is further

ORDERED that in addition to compensation for professional services rendered by Rothschild, pursuant to the terms of the Engagement Letter, Rothschild is entitled to reimbursement by the Debtors for reasonable out-of-pocket expenses and other fees and expenses incurred in connection with the performance of its engagement under the Engagement Letter, including, without limitation, the reasonable fees, disbursements, and other charges by Rothschild's counsel (which counsel shall not be required to be retained pursuant to section 327 of the Bankruptcy Code or otherwise); and it is further

ORDERED that the Indemnification Provisions are approved, subject during the pendency of the Debtors' chapter 11 cases, to the following:

(a)     Rothschild shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Indemnification Provisions for services, unless such services and the indemnification, contribution, or reimbursement are approved by the Court;

(b)     the Debtors shall have no obligation to indemnify Rothschild, or provide contribution or reimbursement to Rothschild for any claim or expense that is either (i) judicially determined (the determination having become final) to have arisen from Rothschild's gross negligence, fraud, willful misconduct, breach of fiduciary duty, if any, bad faith or self-dealing; (ii) for a contractual dispute in which the Debtors allege the breach of Rothschild's contractual obligations unless the Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to In re United Artists Theatre Co., 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by the Court, after notice and a hearing to be a claim or expense for which Rothschild should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter as modified by this Order; and

(c)     if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, Rothschild believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Engagement Letter, including, without limitation, the advancement of defense costs, Rothschild must file an application in this Court, and the Debtors may not pay any such amounts to Rothschild before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expense by Rothschild for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify Rothschild. All parties shall retain the right to object to any demand by Rothschild for indemnification, contribution, or reimbursement; and it is further

ORDERED that Exhibit A to the Engagement Letter is modified by deleting the following clause from the fourth paragraph: "provided, that, in no event shall the aggregate

contribution of all such Indemnified Parties exceed the amount of fees received by Rothschild under this Agreement"; and it is further

ORDERED that, pursuant to Del. Bankr. L.R. 2016-2(g), the information requirements relating to compensation requests set forth in Del. Bankr. L.R. 2016-2(d) are waived; and it is further

ORDERED that the Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order; and it is further

ORDERED that the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that the relief granted herein shall be binding upon any chapter 11 trustee appointed in these chapter 11 cases, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of these chapter 11 cases to cases under chapter 7; and it is further

ORDERED that, to the extent that this Order is inconsistent with any prior order or pleading within these cases, the terms of this Order shall govern; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: _____, 2010
        Wilmington, Delaware

                                           _____
                                            United States Bankruptcy Judge

# EXHIBIT 1

## Engagement Letter

As of August 13, 2009

Mr. David G. Maffucci
Executive Vice President and Chief Financial Officer
Xerium Technologies, Inc.
8537 Six Forks Road
Suite 300
Raleigh, NC 27615



Dear Mr. Maffucci:

This letter (the "Agreement") will confirm the terms and conditions of the agreement among Xerium Technologies, Inc. (collectively with its direct and indirect subsidiaries, the "Company") and Rothschild Inc. ("Rothschild") regarding the retention of Rothschild as exclusive financial advisor and investment banker to the Company in connection with a possible restructuring of its businesses and/or certain liabilities of the Company. Rothschild acknowledges and agrees that (i) it will be providing services hereunder at the direction of the steering committee of the Board of Directors, (ii) Stephen Ledoux will have primary responsibility for all professional services to be provided in connection with this Agreement and (iii) commercially reasonable efforts will be made to make Mr. Ledoux available to the Company throughout the term of this Agreement; provided that if Mr. Ledoux can no longer fulfill these responsibilities, another senior professional with suitable experience will be appointed by Rothschild to assume Mr. Ledoux's responsibilities.

Section 1    Services to be Rendered.    In connection with the formulation, analysis and implementation of various options for a restructuring, reorganization or other strategic alternative relating to the Company, whether pursuant to a Transaction (as defined below) or any series or combination of Transactions, Rothschild will perform the following services to the extent Rothschild deems necessary, appropriate and feasible and as requested by the Company:

(a)    review and analyze the Company's assets and the operating and financial strategies of the Company;

(b)    review and analyze the business plans and financial projections prepared by the Company including, but not limited to, testing assumptions and comparing those assumptions to historical Company and industry trends;

(c)    evaluate the Company's debt capacity in light of its projected cash flows and assist in the determination of an appropriate capital structure for the Company;

(d)    assist the Company and its other professionals in reviewing the terms of any proposed Transaction, in responding thereto and, if directed, in evaluating alternative proposals for a Transaction;

(e)    determine a range of values for the Company and any securities that the Company offers or proposes to offer in connection with a Transaction;

Rothschild Inc.
1251 Avenue of the Americas
New York, NY 10020
www.rothschild.com

Stephen Ledoux
Managing Director
Telephone 212 403-3710
Facsimile 212 403-5479
Email stephen.ledoux@rothschild.com



(f)     advise the Company on the risks and benefits of considering a Transaction with respect to the Company's intermediate and long-term business prospects and strategic alternatives to maximize the business enterprise value of the Company;

(g)     review and analyze any proposals the Company receives from third parties in connection with a Transaction as appropriate;

(h)     assist or participate in negotiations with the parties in interest, including, without limitation, any current or prospective creditors of, holders of equity in, or claimants against the Company and/or their respective representatives in connection with a Transaction;

(i)     advise the Company with respect to, and attend, meetings of the Company's Board of Directors, creditor groups, official constituencies and other interested parties, as necessary;

(j)     in the event the Company determines to commence Chapter 11 cases, and if requested by the Company, participate in hearings before the Bankruptcy Court in which such cases are commenced (the "Bankruptcy Court") and provide relevant testimony with respect to the matters described herein and issues arising in connection with any proposed Plan (as defined below); and

(k)     render such other financial advisory and investment banking services as may be agreed upon by Rothschild and the Company.

As used herein, the term "Transaction" shall mean any one or more of the following, whether pursuant to a plan of reorganization (a "Plan") confirmed in connection with any case or cases commenced by or against the Company, any of its subsidiaries, any of its affiliates or any combination thereof, whether individually or on a consolidated basis (a "Bankruptcy Case"), under Title 11 of the United States Code §§ 101 et seq. (the "Bankruptcy Code") or otherwise: (a) any transaction or series of transactions that effects or proposes to effect material amendments to, or other material changes in the Company's outstanding Amended and Restated Credit and Guaranty Agreement and indebtedness thereunder, including, without limitation, any exchange, repurchase or forgiveness of any portion thereof; (b) (i) any merger, consolidation, reorganization, recapitalization, financing, refinancing, business combination or other transaction pursuant to which the Company (or control thereof) is acquired by, or combined with, any person, group of persons, partnership, corporation or other entity (an "Acquirer") or (ii) any acquisition, directly or indirectly, by an Acquirer (or by one or more persons acting together with an Acquirer pursuant to a written agreement or otherwise), through a credit bid or otherwise, whether in a single transaction, multiple transactions or a series of transactions, of (x) other than in the ordinary course of business, any material portion of the assets or operations of the Company or (y) any outstanding or newly-issued shares of the Company's capital stock or any securities convertible



into, or options, warrants or other rights to acquire such capital stock or other equity securities of the Company, for the purpose of effecting a recapitalization or change of control of the Company; (c) other than in the ordinary course of business, any acquisition, directly or indirectly, by the Company, whether in a single transaction, multiple transactions or a series of transactions, any outstanding or newly-issued shares of another person's capital stock or any securities convertible into, or options, warrants or other rights to acquire such capital stock or other equity securities of another person, for the purpose of effecting a recapitalization or change of control of the other person; (d) any restructuring, reorganization, exchange offer, tender offer, refinancing or similar transaction, whether or not pursuant to a Plan; or (e) any transaction similar to any of the foregoing. The term Transaction shall not include short term waivers of covenant or payment defaults.

In performing its services pursuant to this Agreement, and notwithstanding anything to the contrary herein, Rothschild is not assuming any responsibility for the Company's decision to pursue (or not to pursue) any business strategy or to effect (or not to effect) any Transaction or other transaction. Rothschild shall not have any obligation or responsibility to provide accounting, audit, "crisis management" or business consultant services to the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements.

<u>Section 2</u>     <u>Information Provided by the Company</u>.

(a)     The Company will cooperate with Rothschild and furnish to, or cause to be furnished to, Rothschild any and all information as Rothschild deems appropriate to enable Rothschild to render services hereunder (all such information being the "<u>Information</u>"). The Company recognizes and confirms that Rothschild (i) will use and rely solely on the Information and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having assumed any obligation to verify independently the same; (ii) does not assume responsibility for the accuracy or completeness of the Information and such other information, and (iii) will not act in the official capacity of an appraiser of specific assets of the Company or any other party. The Company confirms that the information to be furnished by the Company, when delivered, to the best of its knowledge will be true and correct in all material respects, will be prepared in good faith, and will not contain any material misstatement of fact or omit to state any material fact. The Company will promptly notify Rothschild if it learns of any material inaccuracy or misstatement in, or material omission from, any Information theretofore delivered to Rothschild.

(b)     The Company acknowledges that in the course of this engagement it may be necessary for Rothschild and the Company to communicate electronically. The Company further acknowledges that although Rothschild will use commercially reasonable procedures to check for the most commonly known viruses, the electronic transmission of information cannot be

guaranteed to be secure or error-free. Furthermore such information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete or otherwise be adversely affected or unsafe to use. Accordingly, the Company agrees that Rothschild shall have no liability to the Company with respect to any error or omission arising from or in connection with: (i) the electronic communication of information to the Company; or (ii) the Company's reliance on such information.

<u>Section 3</u>    <u>Application for the Retention of Rothschild.</u>

In the event a Bankruptcy Case is commenced, the Company shall apply promptly to the Bankruptcy Court pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure, applicable local rules and procedural orders of the Bankruptcy Court and procedural guidelines established by the Office of the United States Trustee, for approval of (<u>a</u>) this Agreement and (<u>b</u>) Rothschild's retention by the Company under the terms of this Agreement (including, without limitation, the reimbursement of the fees, disbursements and other charges of Rothschild's counsel pursuant to Section 6 hereof without the requirement that the retention of such counsel be approved by the Bankruptcy Court), *nunc pro tunc* to the date the Chapter 11 case was commenced, and shall use its best efforts to obtain Bankruptcy Court authorization thereof. The Company shall use its best efforts to obtain such Bankruptcy Court approval and authorization subject only to the subsequent review by the Bankruptcy Court under the standard of review provided in Section 328(a) of the Bankruptcy Code, and not subject to the standard of review set forth in Section 330 of the Bankruptcy Code. The Company shall supply Rothschild and its counsel with a draft of such application and any proposed order authorizing Rothschild's retention sufficiently in advance of the filing of such application and proposed order to enable Rothschild and its counsel to review and comment thereon. Rothschild shall have no obligation to provide any services under this Agreement unless Rothschild's retention under the terms of this Agreement is approved in the manner set forth above by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is reasonably acceptable to Rothschild in all respects.

Rothschild acknowledges that in the event that the Bankruptcy Court approves its retention by the Company pursuant to the application process described in this Section 3, payment of Rothschild's fees and expenses shall be subject to (<u>a</u>) the jurisdiction and approval of the Bankruptcy Court under Section 328(a) of the Bankruptcy Code and any order approving Rothschild's retention, (<u>b</u>) any applicable fee and expense guidelines and/or orders and (<u>c</u>) any requirements governing interim and final fee applications. In the event that Rothschild's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of Rothschild hereunder as promptly as practicable in accordance with the terms hereof and the orders governing interim and final fee applications, and after obtaining all necessary further approvals from the Bankruptcy Court, if any.



In agreeing to seek Rothschild's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Rothschild's general restructuring experience and expertise, its knowledge of the industry in which the Company operates and the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company, that the value to the Company of Rothschild's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the Monthly Fee, the Completion Fee and the New Capital Fee (each as defined below) are reasonable regardless of the number of hours expended by Rothschild's professionals in performance of the services provided hereunder.

Section 4    Fees of Rothschild.  As compensation for the services rendered hereunder, the Company, and its successors, if any, agree to pay Rothschild (via wire transfer or other mutually acceptable means) the following fees in cash:

(a)    A retainer (the "Retainer") in an amount equal to $175,000, payable upon the execution of this Agreement, to be applied against the fees and expenses of Rothschild under this Agreement.

(b)    Commencing as of the date hereof, whether or not a Transaction is proposed or consummated, an advisory fee (the "Monthly Fee") of $175,000 per month.  The initial Monthly Fee shall be pro-rated based on the commencement of services as of the date hereof.  The initial Monthly Fee and the Monthly Fee for the following month shall be payable by the Company upon the execution of this Agreement by the Company, and thereafter the Monthly Fee shall be payable by the Company in advance on the first day of each month.

(c)    A fee (the "Completion Fee") of $4,000,000, payable upon the earlier of (i) the confirmation and effectiveness of a Plan and (ii) the closing of another Transaction.

(d)    A new capital fee (the "New Capital Fee") equal to (i) 1.0% of the face amount of any senior secured debt raised including, without limitation, any debtor-in-possession financing raised; (ii) 2.5% of the face amount of any junior secured or senior or subordinated unsecured debt raised; (iii) 3.0% of the face amount of any unsecured debt raise; and (iv) 5.0% of any equity capital, or capital convertible into equity, raised (a "New Capital Raise).  The New Capital Fee shall be payable upon the closing of the transaction by which the new capital is committed.  For the avoidance of doubt, the term "raised" shall include the amount committed or otherwise made available to the Company whether or not such amount (or any portion thereof) is drawn down at closing or is ever drawn down and whether or not such amount (or any portion thereof) is used to refinance existing obligations of the Company.  No New Capital Fee will be assessed for new money equity investments made by funds advised by Apax Partners, its affiliates and limited partners; any holders of the Company's senior secured bank debt; and John Hancock.



(e)  Notwithstanding the foregoing or anything to the contrary herein, if the Company, prior to the commencement of a Bankruptcy Case, commences the solicitation of acceptances of a plan of reorganization in reliance, in whole or in part, on the exemption from registration provided for in Section 3(a)(9) of the Securities Act of 1933, as amended, then (i) the Completion Fee and a New Capital Fee in an amount calculated in the manner described in Section 4(d) hereof (A) shall be deemed earned in full upon the expiration of the period during which such consents or acceptances may be submitted, regardless of whether the consents or acceptances received are sufficient for such plan to be confirmed pursuant to the Bankruptcy Code and (B) shall be payable upon the earlier of (1) one hundred eighty (180) days after the expiration of such period and (2) the confirmation and effectiveness of a Plan and (ii) Rothschild shall no longer be under any obligation to perform the services set forth in Section 1 hereof subsequent to the commencement of the Bankruptcy Case.

(f)  To the extent the Company requests that Rothschild perform additional services not contemplated by this Agreement, such additional fees as shall be mutually agreed upon by Rothschild and the Company, in writing, in advance.

The Company and Rothschild acknowledge and agree that (a) the hours worked, (b) the results achieved and (c) the ultimate benefit to the Company of the work performed, in each case, in connection with this engagement, may be variable, and that the Company and Rothschild have taken such factors into account in setting the fees hereunder.

Section 5  Credit.  Rothschild shall credit against the Completion Fee: (a) 50% of the Monthly Fees paid above $1,050,000 (the "Monthly Fee Credit"); (b) 50% of any New Capital Fees paid (the "New Capital Fee Credit"); and (c) to the extent not otherwise applied against the fees and expenses of Rothschild under the terms of this Agreement, the Retainer; provided that the sum of any New Capital Fee Credit and the Monthly Fee Credit shall not exceed the Completion Fee.

Section 6  Expenses.  Without in any way reducing or affecting the provisions of Exhibit A hereto, the Company shall reimburse Rothschild for its reasonable expenses incurred in connection with the performance of its engagement hereunder, and the enforcement of this Agreement, including, without limitation, the reasonable fees, disbursements and other charges of Rothschild's counsel (without the requirement that the retention of such counsel be approved by the Bankruptcy Court).  Reasonable expenses shall also include, but not be limited to, expenses incurred in connection with travel and lodging, data processing and communication charges, research and courier services.  If a Bankruptcy Case is commenced, consistent with and subject to any applicable order of the Bankruptcy Court, the Company shall promptly reimburse Rothschild for such expenses under this Section 6 upon presentation of an invoice or other similar documentation with reasonable detail.



Section 7    Indemnity.  The Company agrees to the provisions of Exhibit A hereto which provide for indemnification by the Company of Rothschild and certain related persons.  Such indemnification is an integral part of this Agreement and the terms thereof are incorporated by reference as if fully stated herein.  Such indemnification shall survive any termination, expiration or completion of this Agreement or Rothschild's engagement hereunder.

Section 8    Term.  The term of Rothschild's engagement shall commence on the date hereof and shall extend until the consummation of a Transaction.  This Agreement may be terminated by either the Company or Rothschild after ninety (90) days from the date hereof by providing thirty (30) days advance notice in writing.  If this Agreement is terminated by either party for any reason, Rothschild shall be entitled to reimbursement of any and all reasonable expenses described in Section 6.  Furthermore, if this Agreement is terminated by the Company for any reason other than the existence of a material breach by Rothschild of Rothschild's obligations hereunder which breach has not been cured by Rothschild within 45 days of Rothschild's receipt of written notice detailing such breach (a "Termination Without Cause"), Rothschild shall be entitled to payment of any fees which are due and owing to Rothschild upon the effective date of termination (including, without limitation, any additional Monthly Fees required by Section 4(b) hereof); provided, that the final Monthly Fee will be pro-rated for any incomplete monthly period of service.  Termination of Rothschild's engagement hereunder shall not affect or impair the Company's continuing obligation to indemnify Rothschild and certain related persons as provided in Exhibit A.  In the event of a Termination Without Cause, (i) the Completion Fee shall be payable in the event that (a) a Transaction is consummated at anytime prior to the expiration of 1 year after such termination, or (b) a letter of intent or definitive agreement with respect thereto is executed at any time prior to 1 year after such termination (which letter of intent or definitive agreement subsequently results in the consumation of a Transaction at any time) and (ii) a New Capital Fee shall be payable with respect to a New Capital Raise (other than transactions for which no fee is payable under Section 4(d)) for which a letter of intent or definitive agreement existed at the date of such termination and is completed within one year of such termination.

Section 9    Miscellaneous.

(a)    *Administrative Expense Priority.*  In a Bankruptcy Case of Xerium Technologies, Inc. or any of its direct or indirect subsidiaries, the Company agrees that Rothschild's post-petition compensation as set forth herein and payments made pursuant to reimbursement and indemnification provisions of this Agreement shall be entitled to priority as expenses of administration under Sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses (which carve-outs shall be adequate to enable the Company to pay promptly Rothschild the compensation and expense reimbursement contemplated hereby taking into account the Company's obligations to other professionals entitled to the benefit of the carve-outs) in effect in such cases pursuant to one or more financing orders entered by the Bankruptcy Court.  In addition, the Company shall use its



best efforts to ensure that any cash collateral order, debtor-in-possession financing order and/or similar order entered in the Bankruptcy Case permits the use of cash collateral and financing proceeds for the full and prompt payment of Rothschild's fees and expenses contemplated hereby.

(b)  *Survival, Successors & Assigns*.  Sections 3 through 9 hereof, inclusive, including the provisions set forth in Exhibit A hereto, shall survive the termination or expiration of this Agreement.  The benefits of this Agreement and the indemnification and other obligations of the Company to Rothschild and certain related persons contained in Exhibit A hereto shall inure to the respective successors and assigns of the parties hereto and thereto and of the indemnified parties, and the obligations and liabilities assumed in this Agreement and Exhibit A by the parties hereto and thereto shall be binding upon their respective successors and assigns.  The Company shall use its best efforts to cause any purchaser of all or substantially all of the Company's assets to assume the Company's obligations hereunder.

(c)  *Benefit of Agreement; No Reliance by Third Parties*.  The advice (oral or written) rendered by Rothschild pursuant to this Agreement is intended solely for the benefit and use of the Company and its professionals in considering the matters to which this Agreement relates, and the Company agrees that such advice may not be relied upon by any other person, used for any other purpose or reproduced, disseminated, quoted or referred to at any time, in any manner or for any purpose without the prior written consent of Rothschild.  In addition, the Company agrees that it will not, and will not permit any of its affiliates to, make any public reference to Rothschild except with the prior consent of Rothschild or as otherwise provided in this Agreement.

(d)  *Nature of Relationship*.  The relationship of Rothschild to the Company hereunder shall be that of an independent contractor and Rothschild shall have no authority to bind, represent or otherwise act as agent, executor, administrator, trustee, lawyer or guardian for the Company, nor shall Rothschild have the authority to manage money or property of the Company.  The parties hereto acknowledge and agree that by providing the services contemplated hereunder, Rothschild will not act, nor will it be deemed to have acted, in any managerial or fiduciary capacity whatsoever with respect to the Company or any third party including, without limitation, security holders, creditors or employees of the Company.

(e)  *Rothschild Affiliates*.  Rothschild, through the equity owners of its parent company, Rothschild North America Inc., has indirect affiliate relationships with numerous investment banking institutions located worldwide (the "Affiliated Entities").  None of the Affiliated Entities is being retained hereunder nor will any professionals or employees of the Affiliated Entities provide services to the Company in connection with the matters contemplated hereby.  The Affiliated Entities are involved in a wide range of investment banking and other activities. Rothschild can make no representation as to the "disinterestedness" (as defined in the Bankruptcy Code) of the professionals or employees of the Affiliated Entities.  Information that is held by the Affiliated Entities will not for any purpose be taken into account in determining Rothschild's



responsibilities to the Company hereunder. None of the Affiliated Entities will have any duty to disclose to the Company or any other party, or utilize for the Company's benefit, any non-public information acquired in the course of providing services to any other person engaging in any transaction or otherwise carrying on its business.

(f) *Required Information.* Since Federal law requires Rothschild to obtain, verify, and record information that identifies any entity not listed on the New York Stock Exchange, the American Stock Exchange or whose common stock or equity interests have not been designated as a National Market System security listed on the NASDAQ stock market that enters into a formal relationship with it, the Company agrees to provide Rothschild with its tax or other similar identification number and/or other identifying documents, as Rothschild may request, to enable it to comply with applicable law. For your information, Rothschild may also screen the Company against various databases to verify its identity.

(g) *Public Announcements.* The Company acknowledges that Rothschild may at its option and expense, after announcement of a Transaction, or a New Capital Raise, place announcements and advertisements or otherwise publicize the Transaction or the New Capital Raise in such financial and other newspapers and journals as it may choose, stating that Rothschild acted as financial advisor to the Company in connection with such transaction. The Company further consents to Rothschild's public use or display of Company's logo, symbol or trademark as part of Rothschild's general marketing or promotional activities.

(h) *CHOICE OF LAW: JURISDICTION.* THIS AGREEMENT HAS BEEN NEGOTIATED, EXECUTED AND DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN NEW YORK, NEW YORK. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO SUCH STATE'S PRINCIPLES OF CONFLICTS OF LAWS. REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF THE PARTIES HERETO, EACH SUCH PARTY HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY AND ALL CLAIMS OR DISPUTES BETWEEN THE PARTIES HERETO PERTAINING TO THIS AGREEMENT OR TO ANY MATTER ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE BROUGHT IN (A) ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION IN THE STATE OF NEW YORK OR (B) THE BANKRUPTCY COURT OR ANY COURT HAVING APPELLATE JURISDICTION OVER THE BANKRUPTCY COURT. BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH PARTY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT. EACH PARTY HERETO HEREBY WAIVES ANY OBJECTION WHICH IT MAY HAVE BASED ON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS AND HEREBY CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH COURT. THE COMPANY



CONSENTS TO THE SERVICE OF PROCESS IN ACCORDANCE WITH NEW YORK LAW, BY LETTER SENT TO THE COMPANY AT THE ABOVE ADDRESS BY REGISTERED OR CERTIFIED MAIL RETURN RECEIPT REQUESTED.

     (i)   *Waiver of Jury Trial.* Each of the parties hereto hereby knowingly, voluntarily and irrevocably waives any right it may have to a trial by jury in respect of any claim upon, arising out of or in connection with this Agreement or any Transaction. Each of the parties hereto hereby certifies that no representative or agent of any other party hereto has represented, expressly or otherwise, that such party would not seek to enforce the provisions of this waiver. Each of the parties hereto hereby acknowledges that it has been induced to enter into this Agreement by and in reliance upon, among other things, the provisions of this paragraph.

     (j)   *Mediation and Arbitration.* Rothschild and the Company agree that any dispute, claim or controversy directly or indirectly relating to or arising out of this Agreement, including, but not limited to: (i) the termination or validity of this Agreement, (ii) any alleged breach of this Agreement or (iii) the engagement contemplated by this Agreement (any of the foregoing, a "Claim"), shall be submitted to JAMS, or its successor, in New York, New York, for mediation; and if the matter is not resolved through mediation, it shall be submitted for final and binding arbitration in front of a panel of three arbitrators with JAMS in New York, New York under the JAMS Comprehensive Arbitration Rules and Procedures (with Rothschild and the Company each choosing one arbitrator, and the two chosen arbitrators choosing the third arbitrator). The arbitrators shall, in their award, allocate all of the costs of the arbitration (and the mediation, if applicable), including the fees of the arbitrators and the reasonable attorneys' fees of the prevailing party, against the party who did not prevail. The award in the arbitration shall be final and binding. The arbitration shall be governed by the Federal Arbitration Act, 9 U.S.C. §§1–16, and judgment upon the award rendered by the arbitrators may be entered by any court having jurisdiction thereof. The Company agrees and consents to personal jurisdiction, service of process and venue in any federal or state court within the State of New York in connection with any action brought to enforce an award in arbitration.

     (k)   *Entire Agreement.* This Agreement, including the exhibit(s) hereto, embodies the entire agreement and understanding of the parties hereto and supersedes any and all prior agreements, arrangements and understandings relating to the matters provided for herein. No alteration, waiver, amendment, change or supplement hereto shall be binding or effective unless the same is set forth in writing signed by a duly authorized representative of each of the parties hereto.

     (l)   *Authority.* Each party hereto represents and warrants that it has all requisite power and authority to enter into this Agreement and Exhibit A attached hereto and the transactions contemplated hereby. Each party hereto further represents that this Agreement has been duly and validly authorized by all necessary corporate action and has been duly executed and delivered by



each of the parties hereto and constitutes the legal, valid and binding agreement thereof, enforceable in accordance with its terms. Rothschild will assume that any instructions, notices or requests have been properly authorized by the Company if they are given or purported to be given by, or is reasonably believed by Rothschild to be a director, officer, employee or authorized agent.

(m)   *Counterparts*.  This Agreement may be executed in as many counterparts as may be deemed necessary and convenient, and by the different parties hereto on separate counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same instrument.  Delivery of an executed counterpart of a signature page to this Agreement by telecopier shall be effective as delivery of a manually executed counterpart to this Agreement.

(n)   *Notices*.  Any notice given pursuant to, or relating to, this Agreement shall be in writing and shall be mailed or delivered by courier (a) if to the Company, at the address set forth above, Attn: Chief Financial Officer with a copy to the Chairman of the Steering Committee of the Board of Directors of Xerium Technologies, Inc. and (b) if to Rothschild, to Rothschild Inc., 1251 Avenue of the Americas, 51st Floor, New York, New York 10020, Attention: Stephen Ledoux, with a copy to Rothschild Inc., 1251 Avenue of the Americas, 51st Floor, New York, New York 10020, Attention: General Counsel.



If the foregoing correctly sets forth the understanding and agreement between Rothschild and the Company, please so indicate by signing the enclosed copy of this Agreement, whereupon it shall become a binding agreement between the parties hereto as of the date first above written.

Very truly yours,

ROTHSCHILD INC.

By: *Stephen S. Ledoux*
Stephen S. Ledoux
Managing Director

Accepted and Agreed to as of
the date first written above on
behalf of itself and its direct
and indirect subsidiaries:

XERIUM TECHNOLOGIES, INC.

By: *David H Maffucci*
Name: DAViD G Maffucci
Title: EVP & CFO

By: *signature*
Name
Chairperson of the Steering Committee

380021

# Exhibit A

The Company shall indemnify and hold harmless Rothschild and its affiliates, and the respective directors, officers, controlling persons, agents and employees of each of the foregoing (Rothschild and each of such other persons, an "Indemnified Party" and, collectively, the "Indemnified Parties"), from and against any losses, claims or proceedings, including, without limitation, stockholder actions, damages, judgments, assessments, investigation costs, settlement costs, fines, penalties, arbitration awards and any other liabilities, costs, fees and expenses (collectively, "Losses") (a) directly or indirectly related to or arising out of (i) oral or written information provided by the Company, the Company's employees, which either the Company or an Indemnified Party provides to any person or entity or (ii) any other action or failure to act by the Company, the Company's employees or any Indemnified Party at the Company's request or with the Company's consent, in each case in connection with, arising out of, based upon, or in any way related to this Agreement, the retention of and services provided by Rothschild under this Agreement, or any Transaction or other transaction; or (b) otherwise directly or indirectly in connection with, arising out of, based upon, or in any way related to the engagement of Rothschild under this Agreement or any transaction or conduct in connection therewith, provided that the Company shall not be required to indemnify any Indemnified Party for such Losses if and only to the extent that it is finally judicially determined by a court of competent jurisdiction that such Losses arose primarily because of the gross negligence, willful misconduct or fraud of such Indemnified Party. If multiple claims are brought against an Indemnified Party, with respect to at least one of which indemnification is permitted under applicable law and provided for under this Agreement, the Company agrees that any judgment or award against such Indemnified Party shall be conclusively deemed to be based on claims as to which indemnification is permitted and provided for, except to the extent the judgment or award expressly states that it, or any portion thereof, is based on a claim as to which indemnification is not available.

The Company shall further reimburse any Indemnified Party promptly after obtaining the necessary approval of the Bankruptcy Court, if any, for any legal or other fees, disbursements or expenses as they are incurred (a) in investigating, preparing, pursuing or settling any action or other proceeding (whether formal or informal) or threat thereof, whether or not in connection with pending or threatened litigation or arbitration and whether or not any Indemnified Party is a party (each, an "Action") and (b) in connection with enforcing such Indemnified Party's rights under this Agreement; provided, however, that in the event and only to the extent that it is finally judicially determined by a court of competent jurisdiction that the Losses of such Indemnified Party arose primarily because of the gross negligence, willful misconduct or fraud of such Indemnified Party, such Indemnified Party will promptly remit to the Company any amounts reimbursed under this paragraph.

Upon receipt by an Indemnified Party of notice of any Action, such Indemnified Party shall notify the Company in writing of such Action, but the failure to so notify shall not relieve the Company from any liability hereunder (a) if the Company had actual notice of such Action or (b) unless and only to the extent that such failure results in the forfeiture by the Company of

substantial rights and defenses. The Company shall, if requested by Rothschild, assume the defense of any such Action including the employment of counsel reasonably satisfactory to Rothschild and will not, without the prior written consent of Rothschild, settle, compromise, consent or otherwise resolve or seek to terminate any pending or threatened Action (whether or not any Indemnified Party is a party thereto) unless such settlement, compromise, consent or termination (i) contains an express, unconditional release of each Indemnified Party from all liability relating to such Action and the engagement of Rothschild under this Agreement and (ii) does not include a statement as to, or an admission of fault, culpability or a failure to act by or on behalf of any Indemnified Party. Any Indemnified Party shall be entitled to retain separate counsel of its choice and participate in the defense of any Action in connection with any of the matters to which this Agreement relates, but the fees and expenses of such counsel shall be at the expense of such Indemnified Party unless (x) the Company has failed promptly to assume the defense and employ counsel or (y) the named parties to any such Action (including any impleaded parties) include such Indemnified Party and the Company, and such Indemnified Party shall have been advised by counsel that there may be one or more legal defenses available to it which are different from or in addition to those available to the Company; provided that the Company shall not in such event be responsible under this Agreement for the fees and expenses of more than one firm of separate counsel (in addition to local counsel) in connection with any such Action in the same jurisdiction.

The Company agrees that if any right of any Indemnified Party set forth in the preceding paragraphs is finally judicially determined to be unavailable (except by reason of the gross negligence, willful misconduct or fraud of such Indemnified Party), or is insufficient to hold such Indemnified Party harmless against such Losses as contemplated herein, then the Company shall contribute to such Losses (a) in such proportion as is appropriate to reflect the relative benefits received by the Company and its creditors and stockholders, on the one hand, and such Indemnified Party, on the other hand, in connection with the transactions contemplated hereby, and (b) if (and only if) the allocation provided in clause (a) is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (a) but also the relative fault of the Company and such Indemnified Party; provided, that, in no event shall the aggregate contribution of all such Indemnified Parties exceed the amount of fees received by Rothschild under this Agreement. Benefits received by Rothschild shall be deemed to be equal to the compensation paid by the Company to Rothschild in connection with this Agreement. Relative fault shall be determined by reference to, among other things, whether any alleged untrue statement or omission or any other alleged conduct relates to information provided by the Company or other conduct by the Company (or the Company's employees or other agents) on the one hand or by Rothschild on the other hand.

The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with advice or services rendered or to be rendered by any Indemnified Party pursuant to this

Agreement, the transactions contemplated hereby or any Indemnified Party's actions or inactions in connection with any such advice, services or transactions except for and only to the extent that such Losses of the Company are finally judicially determined by a court of competent jurisdiction to have arisen primarily because of the gross negligence, willful misconduct or fraud of such Indemnified Party in connection with any such advice, actions, inactions or services. In the event the Company commences a Chapter 7 or Chapter 11 case, the Company shall use its best efforts to require, as a condition of the Company releasing from liability any creditor or other party-in-interest in the case, that such creditor or other party-in-interest release all Indemnified Parties from all claims or other liabilities directly or indirectly in connection with, arising out of, based upon, or in any way related to the engagement of Rothschild under this Agreement or any transaction or conduct in connection therewith, provided that the Company shall not be required to obtain such release with respect to the gross negligence, willful misconduct or fraud of any Indemnified Party.

The rights of the Indemnified Parties hereunder shall be in addition to any other rights that any Indemnified Party may have at common law, by statute or otherwise. Except as otherwise expressly provided for in this Agreement, if any term, provision, covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall all remain in full force and effect and shall in no way be affected, impaired or invalidated. The reimbursement, indemnity and contribution obligations of the Company set forth herein shall apply to any modification of this Agreement and shall remain in full force and effect regardless of any termination of, or the completion of any Indemnified Party's services under or in connection with, this Agreement.

# EXHIBIT B

## Engagement Letter

As of August 13, 2009

Mr. David G. Maffucci
Executive Vice President and Chief Financial Officer
Xerium Technologies, Inc.
8537 Six Forks Road
Suite 300
Raleigh, NC 27615



Dear Mr. Maffucci:

This letter (the "Agreement") will confirm the terms and conditions of the agreement among Xerium Technologies, Inc. (collectively with its direct and indirect subsidiaries, the "Company") and Rothschild Inc. ("Rothschild") regarding the retention of Rothschild as exclusive financial advisor and investment banker to the Company in connection with a possible restructuring of its businesses and/or certain liabilities of the Company. Rothschild acknowledges and agrees that (i) it will be providing services hereunder at the direction of the steering committee of the Board of Directors, (ii) Stephen Ledoux will have primary responsibility for all professional services to be provided in connection with this Agreement and (iii) commercially reasonable efforts will be made to make Mr. Ledoux available to the Company throughout the term of this Agreement; provided that if Mr. Ledoux can no longer fulfill these responsibilities, another senior professional with suitable experience will be appointed by Rothschild to assume Mr. Ledoux's responsibilities.

Section 1   Services to be Rendered.  In connection with the formulation, analysis and implementation of various options for a restructuring, reorganization or other strategic alternative relating to the Company, whether pursuant to a Transaction (as defined below) or any series or combination of Transactions, Rothschild will perform the following services to the extent Rothschild deems necessary, appropriate and feasible and as requested by the Company:

(a)    review and analyze the Company's assets and the operating and financial strategies of the Company;

(b)    review and analyze the business plans and financial projections prepared by the Company including, but not limited to, testing assumptions and comparing those assumptions to historical Company and industry trends;

(c)    evaluate the Company's debt capacity in light of its projected cash flows and assist in the determination of an appropriate capital structure for the Company;

(d)    assist the Company and its other professionals in reviewing the terms of any proposed Transaction, in responding thereto and, if directed, in evaluating alternative proposals for a Transaction;

(e)    determine a range of values for the Company and any securities that the Company offers or proposes to offer in connection with a Transaction;

Rothschild Inc.
1251 Avenue of the Americas
New York, NY 10020
www.rothschild.com

Stephen Ledoux
Managing Director
Telephone 212 403-3710
Facsimile 212 403-5479
Email stephen.ledoux@rothschild.com



(f)     advise the Company on the risks and benefits of considering a Transaction with respect to the Company's intermediate and long-term business prospects and strategic alternatives to maximize the business enterprise value of the Company;

(g)     review and analyze any proposals the Company receives from third parties in connection with a Transaction as appropriate;

(h)     assist or participate in negotiations with the parties in interest, including, without limitation, any current or prospective creditors of, holders of equity in, or claimants against the Company and/or their respective representatives in connection with a Transaction;

(i)     advise the Company with respect to, and attend, meetings of the Company's Board of Directors, creditor groups, official constituencies and other interested parties, as necessary;

(j)     in the event the Company determines to commence Chapter 11 cases, and if requested by the Company, participate in hearings before the Bankruptcy Court in which such cases are commenced (the "Bankruptcy Court") and provide relevant testimony with respect to the matters described herein and issues arising in connection with any proposed Plan (as defined below); and

(k)     render such other financial advisory and investment banking services as may be agreed upon by Rothschild and the Company.

As used herein, the term "Transaction" shall mean any one or more of the following, whether pursuant to a plan of reorganization (a "Plan") confirmed in connection with any case or cases commenced by or against the Company, any of its subsidiaries, any of its affiliates or any combination thereof, whether individually or on a consolidated basis (a "Bankruptcy Case"), under Title 11 of the United States Code §§ 101 et seq. (the "Bankruptcy Code") or otherwise: (a) any transaction or series of transactions that effects or proposes to effect material amendments to, or other material changes in the Company's outstanding Amended and Restated Credit and Guaranty Agreement and indebtedness thereunder, including, without limitation, any exchange, repurchase or forgiveness of any portion thereof; (b) (i) any merger, consolidation, reorganization, recapitalization, financing, refinancing, business combination or other transaction pursuant to which the Company (or control thereof) is acquired by, or combined with, any person, group of persons, partnership, corporation or other entity (an "Acquirer") or (ii) any acquisition, directly or indirectly, by an Acquirer (or by one or more persons acting together with an Acquirer pursuant to a written agreement or otherwise), through a credit bid or otherwise, whether in a single transaction, multiple transactions or a series of transactions, of (x) other than in the ordinary course of business, any material portion of the assets or operations of the Company or (y) any outstanding or newly-issued shares of the Company's capital stock or any securities convertible



into, or options, warrants or other rights to acquire such capital stock or other equity securities of the Company, for the purpose of effecting a recapitalization or change of control of the Company; (c) other than in the ordinary course of business, any acquisition, directly or indirectly, by the Company, whether in a single transaction, multiple transactions or a series of transactions, any outstanding or newly-issued shares of another person's capital stock or any securities convertible into, or options, warrants or other rights to acquire such capital stock or other equity securities of another person, for the purpose of effecting a recapitalization or change of control of the other person; (d) any restructuring, reorganization, exchange offer, tender offer, refinancing or similar transaction, whether or not pursuant to a Plan; or (e) any transaction similar to any of the foregoing. The term Transaction shall not include short term waivers of covenant or payment defaults.

In performing its services pursuant to this Agreement, and notwithstanding anything to the contrary herein, Rothschild is not assuming any responsibility for the Company's decision to pursue (or not to pursue) any business strategy or to effect (or not to effect) any Transaction or other transaction. Rothschild shall not have any obligation or responsibility to provide accounting, audit, "crisis management" or business consultant services to the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements.

Section 2    Information Provided by the Company.

(a)    The Company will cooperate with Rothschild and furnish to, or cause to be furnished to, Rothschild any and all information as Rothschild deems appropriate to enable Rothschild to render services hereunder (all such information being the "Information"). The Company recognizes and confirms that Rothschild (i) will use and rely solely on the Information and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having assumed any obligation to verify independently the same; (ii) does not assume responsibility for the accuracy or completeness of the Information and such other information, and (iii) will not act in the official capacity of an appraiser of specific assets of the Company or any other party. The Company confirms that the information to be furnished by the Company, when delivered, to the best of its knowledge will be true and correct in all material respects, will be prepared in good faith, and will not contain any material misstatement of fact or omit to state any material fact. The Company will promptly notify Rothschild if it learns of any material inaccuracy or misstatement in, or material omission from, any Information theretofore delivered to Rothschild.

(b)    The Company acknowledges that in the course of this engagement it may be necessary for Rothschild and the Company to communicate electronically. The Company further acknowledges that although Rothschild will use commercially reasonable procedures to check for the most commonly known viruses, the electronic transmission of information cannot be

guaranteed to be secure or error-free. Furthermore such information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete or otherwise be adversely affected or unsafe to use. Accordingly, the Company agrees that Rothschild shall have no liability to the Company with respect to any error or omission arising from or in connection with: (i) the electronic communication of information to the Company; or (ii) the Company's reliance on such information.

Section 3    Application for the Retention of Rothschild.

In the event a Bankruptcy Case is commenced, the Company shall apply promptly to the Bankruptcy Court pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure, applicable local rules and procedural orders of the Bankruptcy Court and procedural guidelines established by the Office of the United States Trustee, for approval of (a) this Agreement and (b) Rothschild's retention by the Company under the terms of this Agreement (including, without limitation, the reimbursement of the fees, disbursements and other charges of Rothschild's counsel pursuant to Section 6 hereof without the requirement that the retention of such counsel be approved by the Bankruptcy Court), *nunc pro tunc* to the date the Chapter 11 case was commenced, and shall use its best efforts to obtain Bankruptcy Court authorization thereof. The Company shall use its best efforts to obtain such Bankruptcy Court approval and authorization subject only to the subsequent review by the Bankruptcy Court under the standard of review provided in Section 328(a) of the Bankruptcy Code, and not subject to the standard of review set forth in Section 330 of the Bankruptcy Code. The Company shall supply Rothschild and its counsel with a draft of such application and any proposed order authorizing Rothschild's retention sufficiently in advance of the filing of such application and proposed order to enable Rothschild and its counsel to review and comment thereon. Rothschild shall have no obligation to provide any services under this Agreement unless Rothschild's retention under the terms of this Agreement is approved in the manner set forth above by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is reasonably acceptable to Rothschild in all respects.

Rothschild acknowledges that in the event that the Bankruptcy Court approves its retention by the Company pursuant to the application process described in this Section 3, payment of Rothschild's fees and expenses shall be subject to (a) the jurisdiction and approval of the Bankruptcy Court under Section 328(a) of the Bankruptcy Code and any order approving Rothschild's retention, (b) any applicable fee and expense guidelines and/or orders and (c) any requirements governing interim and final fee applications. In the event that Rothschild's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of Rothschild hereunder as promptly as practicable in accordance with the terms hereof and the orders governing interim and final fee applications, and after obtaining all necessary further approvals from the Bankruptcy Court, if any.



In agreeing to seek Rothschild's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Rothschild's general restructuring experience and expertise, its knowledge of the industry in which the Company operates and the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company, that the value to the Company of Rothschild's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the Monthly Fee, the Completion Fee and the New Capital Fee (each as defined below) are reasonable regardless of the number of hours expended by Rothschild's professionals in performance of the services provided hereunder.

Section 4    Fees of Rothschild. As compensation for the services rendered hereunder, the Company, and its successors, if any, agree to pay Rothschild (via wire transfer or other mutually acceptable means) the following fees in cash:

(a)    A retainer (the "Retainer") in an amount equal to $175,000, payable upon the execution of this Agreement, to be applied against the fees and expenses of Rothschild under this Agreement.

(b)    Commencing as of the date hereof, whether or not a Transaction is proposed or consummated, an advisory fee (the "Monthly Fee") of $175,000 per month. The initial Monthly Fee shall be pro-rated based on the commencement of services as of the date hereof. The initial Monthly Fee and the Monthly Fee for the following month shall be payable by the Company upon the execution of this Agreement by the Company, and thereafter the Monthly Fee shall be payable by the Company in advance on the first day of each month.

(c)    A fee (the "Completion Fee") of $4,000,000, payable upon the earlier of (i) the confirmation and effectiveness of a Plan and (ii) the closing of another Transaction.

(d)    A new capital fee (the "New Capital Fee") equal to (i) 1.0% of the face amount of any senior secured debt raised including, without limitation, any debtor-in-possession financing raised; (ii) 2.5% of the face amount of any junior secured or senior or subordinated unsecured debt raised; (iii) 3.0% of the face amount of any unsecured debt raise; and (iv) 5.0% of any equity capital, or capital convertible into equity, raised (a "New Capital Raise). The New Capital Fee shall be payable upon the closing of the transaction by which the new capital is committed. For the avoidance of doubt, the term "raised" shall include the amount committed or otherwise made available to the Company whether or not such amount (or any portion thereof) is drawn down at closing or is ever drawn down and whether or not such amount (or any portion thereof) is used to refinance existing obligations of the Company. No New Capital Fee will be assessed for new money equity investments made by funds advised by Apax Partners, its affiliates and limited partners; any holders of the Company's senior secured bank debt; and John Hancock.



(e)     Notwithstanding the foregoing or anything to the contrary herein, if the Company, prior to the commencement of a Bankruptcy Case, commences the solicitation of acceptances of a plan of reorganization in reliance, in whole or in part, on the exemption from registration provided for in Section 3(a)(9) of the Securities Act of 1933, as amended, then (i) the Completion Fee and a New Capital Fee in an amount calculated in the manner described in Section 4(d) hereof (A) shall be deemed earned in full upon the expiration of the period during which such consents or acceptances may be submitted, regardless of whether the consents or acceptances received are sufficient for such plan to be confirmed pursuant to the Bankruptcy Code and (B) shall be payable upon the earlier of (1) one hundred eighty (180) days after the expiration of such period and (2) the confirmation and effectiveness of a Plan and (ii) Rothschild shall no longer be under any obligation to perform the services set forth in Section 1 hereof subsequent to the commencement of the Bankruptcy Case.

(f)     To the extent the Company requests that Rothschild perform additional services not contemplated by this Agreement, such additional fees as shall be mutually agreed upon by Rothschild and the Company, in writing, in advance.

The Company and Rothschild acknowledge and agree that (a) the hours worked, (b) the results achieved and (c) the ultimate benefit to the Company of the work performed, in each case, in connection with this engagement, may be variable, and that the Company and Rothschild have taken such factors into account in setting the fees hereunder.

Section 5     Credit.  Rothschild shall credit against the Completion Fee: (a) 50% of the Monthly Fees paid above $1,050,000 (the "Monthly Fee Credit"); (b) 50% of any New Capital Fees paid (the "New Capital Fee Credit"); and (c) to the extent not otherwise applied against the fees and expenses of Rothschild under the terms of this Agreement, the Retainer; provided that the sum of any New Capital Fee Credit and the Monthly Fee Credit shall not exceed the Completion Fee.

Section 6     Expenses.  Without in any way reducing or affecting the provisions of Exhibit A hereto, the Company shall reimburse Rothschild for its reasonable expenses incurred in connection with the performance of its engagement hereunder, and the enforcement of this Agreement, including, without limitation, the reasonable fees, disbursements and other charges of Rothschild's counsel (without the requirement that the retention of such counsel be approved by the Bankruptcy Court).  Reasonable expenses shall also include, but not be limited to, expenses incurred in connection with travel and lodging, data processing and communication charges, research and courier services.  If a Bankruptcy Case is commenced, consistent with and subject to any applicable order of the Bankruptcy Court, the Company shall promptly reimburse Rothschild for such expenses under this Section 6 upon presentation of an invoice or other similar documentation with reasonable detail.



Section 7    Indemnity.  The Company agrees to the provisions of Exhibit A hereto which provide for indemnification by the Company of Rothschild and certain related persons.  Such indemnification is an integral part of this Agreement and the terms thereof are incorporated by reference as if fully stated herein.  Such indemnification shall survive any termination, expiration or completion of this Agreement or Rothschild's engagement hereunder.

Section 8    Term.  The term of Rothschild's engagement shall commence on the date hereof and shall extend until the consummation of a Transaction.  This Agreement may be terminated by either the Company or Rothschild after ninety (90) days from the date hereof by providing thirty (30) days advance notice in writing.  If this Agreement is terminated by either party for any reason, Rothschild shall be entitled to reimbursement of any and all reasonable expenses described in Section 6.  Furthermore, if this Agreement is terminated by the Company for any reason other than the existence of a material breach by Rothschild of Rothschild's obligations hereunder which breach has not been cured by Rothschild within 45 days of Rothschild's receipt of written notice detailing such breach (a "Termination Without Cause"), Rothschild shall be entitled to payment of any fees which are due and owing to Rothschild upon the effective date of termination (including, without limitation, any additional Monthly Fees required by Section 4(b) hereof); provided, that the final Monthly Fee will be pro-rated for any incomplete monthly period of service.  Termination of Rothschild's engagement hereunder shall not affect or impair the Company's continuing obligation to indemnify Rothschild and certain related persons as provided in Exhibit A.  In the event of a Termination Without Cause, (i) the Completion Fee shall be payable in the event that (a) a Transaction is consummated at anytime prior to the expiration of 1 year after such termination, or (b) a letter of intent or definitive agreement with respect thereto is executed at any time prior to 1 year after such termination (which letter of intent or definitive agreement subsequently results in the consumation of a Transaction at any time) and (ii) a New Capital Fee shall be payable with respect to a New Capital Raise (other than transactions for which no fee is payable under Section 4(d)) for which a letter of intent or definitive agreement existed at the date of such termination and is completed within one year of such termination.

Section 9    Miscellaneous.

(a)    *Administrative Expense Priority.*  In a Bankruptcy Case of Xerium Technologies, Inc. or any of its direct or indirect subsidiaries, the Company agrees that Rothschild's post-petition compensation as set forth herein and payments made pursuant to reimbursement and indemnification provisions of this Agreement shall be entitled to priority as expenses of administration under Sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses (which carve-outs shall be adequate to enable the Company to pay promptly Rothschild the compensation and expense reimbursement contemplated hereby taking into account the Company's obligations to other professionals entitled to the benefit of the carve-outs) in effect in such cases pursuant to one or more financing orders entered by the Bankruptcy Court.  In addition, the Company shall use its



best efforts to ensure that any cash collateral order, debtor-in-possession financing order and/or similar order entered in the Bankruptcy Case permits the use of cash collateral and financing proceeds for the full and prompt payment of Rothschild's fees and expenses contemplated hereby.

(b)    *Survival, Successors & Assigns*.    Sections 3 through 9 hereof, inclusive, including the provisions set forth in Exhibit A hereto, shall survive the termination or expiration of this Agreement. The benefits of this Agreement and the indemnification and other obligations of the Company to Rothschild and certain related persons contained in Exhibit A hereto shall inure to the respective successors and assigns of the parties hereto and thereto and of the indemnified parties, and the obligations and liabilities assumed in this Agreement and Exhibit A by the parties hereto and thereto shall be binding upon their respective successors and assigns. The Company shall use its best efforts to cause any purchaser of all or substantially all of the Company's assets to assume the Company's obligations hereunder.

(c)    *Benefit of Agreement; No Reliance by Third Parties*.    The advice (oral or written) rendered by Rothschild pursuant to this Agreement is intended solely for the benefit and use of the Company and its professionals in considering the matters to which this Agreement relates, and the Company agrees that such advice may not be relied upon by any other person, used for any other purpose or reproduced, disseminated, quoted or referred to at any time, in any manner or for any purpose without the prior written consent of Rothschild. In addition, the Company agrees that it will not, and will not permit any of its affiliates to, make any public reference to Rothschild except with the prior consent of Rothschild or as otherwise provided in this Agreement.

(d)    *Nature of Relationship*.    The relationship of Rothschild to the Company hereunder shall be that of an independent contractor and Rothschild shall have no authority to bind, represent or otherwise act as agent, executor, administrator, trustee, lawyer or guardian for the Company, nor shall Rothschild have the authority to manage money or property of the Company. The parties hereto acknowledge and agree that by providing the services contemplated hereunder, Rothschild will not act, nor will it be deemed to have acted, in any managerial or fiduciary capacity whatsoever with respect to the Company or any third party including, without limitation, security holders, creditors or employees of the Company.

(e)    *Rothschild Affiliates*.    Rothschild, through the equity owners of its parent company, Rothschild North America Inc., has indirect affiliate relationships with numerous investment banking institutions located worldwide (the "Affiliated Entities"). None of the Affiliated Entities is being retained hereunder nor will any professionals or employees of the Affiliated Entities provide services to the Company in connection with the matters contemplated hereby. The Affiliated Entities are involved in a wide range of investment banking and other activities. Rothschild can make no representation as to the "disinterestedness" (as defined in the Bankruptcy Code) of the professionals or employees of the Affiliated Entities. Information that is held by the Affiliated Entities will not for any purpose be taken into account in determining Rothschild's



responsibilities to the Company hereunder. None of the Affiliated Entities will have any duty to disclose to the Company or any other party, or utilize for the Company's benefit, any non-public information acquired in the course of providing services to any other person engaging in any transaction or otherwise carrying on its business.

(f) *Required Information.* Since Federal law requires Rothschild to obtain, verify, and record information that identifies any entity not listed on the New York Stock Exchange, the American Stock Exchange or whose common stock or equity interests have not been designated as a National Market System security listed on the NASDAQ stock market that enters into a formal relationship with it, the Company agrees to provide Rothschild with its tax or other similar identification number and/or other identifying documents, as Rothschild may request, to enable it to comply with applicable law. For your information, Rothschild may also screen the Company against various databases to verify its identity.

(g) *Public Announcements.* The Company acknowledges that Rothschild may at its option and expense, after announcement of a Transaction, or a New Capital Raise, place announcements and advertisements or otherwise publicize the Transaction or the New Capital Raise in such financial and other newspapers and journals as it may choose, stating that Rothschild acted as financial advisor to the Company in connection with such transaction. The Company further consents to Rothschild's public use or display of Company's logo, symbol or trademark as part of Rothschild's general marketing or promotional activities.

(h) *CHOICE OF LAW: JURISDICTION.* THIS AGREEMENT HAS BEEN NEGOTIATED, EXECUTED AND DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN NEW YORK, NEW YORK. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO SUCH STATE'S PRINCIPLES OF CONFLICTS OF LAWS. REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF THE PARTIES HERETO, EACH SUCH PARTY HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY AND ALL CLAIMS OR DISPUTES BETWEEN THE PARTIES HERETO PERTAINING TO THIS AGREEMENT OR TO ANY MATTER ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE BROUGHT IN (A) ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION IN THE STATE OF NEW YORK OR (B) THE BANKRUPTCY COURT OR ANY COURT HAVING APPELLATE JURISDICTION OVER THE BANKRUPTCY COURT. BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH PARTY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT. EACH PARTY HERETO HEREBY WAIVES ANY OBJECTION WHICH IT MAY HAVE BASED ON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS AND HEREBY CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH COURT. THE COMPANY



CONSENTS TO THE SERVICE OF PROCESS IN ACCORDANCE WITH NEW YORK LAW, BY LETTER SENT TO THE COMPANY AT THE ABOVE ADDRESS BY REGISTERED OR CERTIFIED MAIL RETURN RECEIPT REQUESTED.

(i)   *Waiver of Jury Trial.* Each of the parties hereto hereby knowingly, voluntarily and irrevocably waives any right it may have to a trial by jury in respect of any claim upon, arising out of or in connection with this Agreement or any Transaction. Each of the parties hereto hereby certifies that no representative or agent of any other party hereto has represented, expressly or otherwise, that such party would not seek to enforce the provisions of this waiver. Each of the parties hereto hereby acknowledges that it has been induced to enter into this Agreement by and in reliance upon, among other things, the provisions of this paragraph.

(j)   *Mediation and Arbitration.* Rothschild and the Company agree that any dispute, claim or controversy directly or indirectly relating to or arising out of this Agreement, including, but not limited to: (i) the termination or validity of this Agreement, (ii) any alleged breach of this Agreement or (iii) the engagement contemplated by this Agreement (any of the foregoing, a "Claim"), shall be submitted to JAMS, or its successor, in New York, New York, for mediation; and if the matter is not resolved through mediation, it shall be submitted for final and binding arbitration in front of a panel of three arbitrators with JAMS in New York, New York under the JAMS Comprehensive Arbitration Rules and Procedures (with Rothschild and the Company each choosing one arbitrator, and the two chosen arbitrators choosing the third arbitrator). The arbitrators shall, in their award, allocate all of the costs of the arbitration (and the mediation, if applicable), including the fees of the arbitrators and the reasonable attorneys' fees of the prevailing party, against the party who did not prevail. The award in the arbitration shall be final and binding. The arbitration shall be governed by the Federal Arbitration Act, 9 U.S.C. §§1–16, and judgment upon the award rendered by the arbitrators may be entered by any court having jurisdiction thereof. The Company agrees and consents to personal jurisdiction, service of process and venue in any federal or state court within the State of New York in connection with any action brought to enforce an award in arbitration.

(k)   *Entire Agreement.* This Agreement, including the exhibit(s) hereto, embodies the entire agreement and understanding of the parties hereto and supersedes any and all prior agreements, arrangements and understandings relating to the matters provided for herein. No alteration, waiver, amendment, change or supplement hereto shall be binding or effective unless the same is set forth in writing signed by a duly authorized representative of each of the parties hereto.

(l)   *Authority.* Each party hereto represents and warrants that it has all requisite power and authority to enter into this Agreement and Exhibit A attached hereto and the transactions contemplated hereby. Each party hereto further represents that this Agreement has been duly and validly authorized by all necessary corporate action and has been duly executed and delivered by



each of the parties hereto and constitutes the legal, valid and binding agreement thereof, enforceable in accordance with its terms. Rothschild will assume that any instructions, notices or requests have been properly authorized by the Company if they are given or purported to be given by, or is reasonably believed by Rothschild to be a director, officer, employee or authorized agent.

(m)  *Counterparts*.  This Agreement may be executed in as many counterparts as may be deemed necessary and convenient, and by the different parties hereto on separate counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same instrument.  Delivery of an executed counterpart of a signature page to this Agreement by telecopier shall be effective as delivery of a manually executed counterpart to this Agreement.

(n)  *Notices*.  Any notice given pursuant to, or relating to, this Agreement shall be in writing and shall be mailed or delivered by courier (a) if to the Company, at the address set forth above, Attn: Chief Financial Officer with a copy to the Chairman of the Steering Committee of the Board of Directors of Xerium Technologies, Inc. and (b) if to Rothschild, to Rothschild Inc., 1251 Avenue of the Americas, 51st Floor, New York, New York 10020, Attention: Stephen Ledoux, with a copy to Rothschild Inc., 1251 Avenue of the Americas, 51st Floor, New York, New York 10020, Attention: General Counsel.



If the foregoing correctly sets forth the understanding and agreement between Rothschild and the Company, please so indicate by signing the enclosed copy of this Agreement, whereupon it shall become a binding agreement between the parties hereto as of the date first above written.

Very truly yours,

ROTHSCHILD INC.

By: *Stephen S Ledoux*
Stephen S. Ledoux
Managing Director

Accepted and Agreed to as of
the date first written above on
behalf of itself and its direct
and indirect subsidiaries:

XERIUM TECHNOLOGIES, INC.

By: _David H Maffucci_
Name: DAViD G Maffucci
Title: EVP & CFO

By: _____
Name
Chairperson of the Steering Committee

380021

# Exhibit A

The Company shall indemnify and hold harmless Rothschild and its affiliates, and the respective directors, officers, controlling persons, agents and employees of each of the foregoing (Rothschild and each of such other persons, an "Indemnified Party" and, collectively, the "Indemnified Parties"), from and against any losses, claims or proceedings, including, without limitation, stockholder actions, damages, judgments, assessments, investigation costs, settlement costs, fines, penalties, arbitration awards and any other liabilities, costs, fees and expenses (collectively, "Losses") (a) directly or indirectly related to or arising out of (i) oral or written information provided by the Company, the Company's employees, which either the Company or an Indemnified Party provides to any person or entity or (ii) any other action or failure to act by the Company, the Company's employees or any Indemnified Party at the Company's request or with the Company's consent, in each case in connection with, arising out of, based upon, or in any way related to this Agreement, the retention of and services provided by Rothschild under this Agreement, or any Transaction or other transaction; or (b) otherwise directly or indirectly in connection with, arising out of, based upon, or in any way related to the engagement of Rothschild under this Agreement or any transaction or conduct in connection therewith, provided that the Company shall not be required to indemnify any Indemnified Party for such Losses if and only to the extent that it is finally judicially determined by a court of competent jurisdiction that such Losses arose primarily because of the gross negligence, willful misconduct or fraud of such Indemnified Party. If multiple claims are brought against an Indemnified Party, with respect to at least one of which indemnification is permitted under applicable law and provided for under this Agreement, the Company agrees that any judgment or award against such Indemnified Party shall be conclusively deemed to be based on claims as to which indemnification is permitted and provided for, except to the extent the judgment or award expressly states that it, or any portion thereof, is based on a claim as to which indemnification is not available.

The Company shall further reimburse any Indemnified Party promptly after obtaining the necessary approval of the Bankruptcy Court, if any, for any legal or other fees, disbursements or expenses as they are incurred (a) in investigating, preparing, pursuing or settling any action or other proceeding (whether formal or informal) or threat thereof, whether or not in connection with pending or threatened litigation or arbitration and whether or not any Indemnified Party is a party (each, an "Action") and (b) in connection with enforcing such Indemnified Party's rights under this Agreement; provided, however, that in the event and only to the extent that it is finally judicially determined by a court of competent jurisdiction that the Losses of such Indemnified Party arose primarily because of the gross negligence, willful misconduct or fraud of such Indemnified Party, such Indemnified Party will promptly remit to the Company any amounts reimbursed under this paragraph.

Upon receipt by an Indemnified Party of notice of any Action, such Indemnified Party shall notify the Company in writing of such Action, but the failure to so notify shall not relieve the Company from any liability hereunder (a) if the Company had actual notice of such Action or (b) unless and only to the extent that such failure results in the forfeiture by the Company of

substantial rights and defenses.  The Company shall, if requested by Rothschild, assume the defense of any such Action including the employment of counsel reasonably satisfactory to Rothschild and will not, without the prior written consent of Rothschild, settle, compromise, consent or otherwise resolve or seek to terminate any pending or threatened Action (whether or not any Indemnified Party is a party thereto) unless such settlement, compromise, consent or termination (i) contains an express, unconditional release of each Indemnified Party from all liability relating to such Action and the engagement of Rothschild under this Agreement and (ii) does not include a statement as to, or an admission of fault, culpability or a failure to act by or on behalf of any Indemnified Party.  Any Indemnified Party shall be entitled to retain separate counsel of its choice and participate in the defense of any Action in connection with any of the matters to which this Agreement relates, but the fees and expenses of such counsel shall be at the expense of such Indemnified Party unless (x) the Company has failed promptly to assume the defense and employ counsel or (y) the named parties to any such Action (including any impleaded parties) include such Indemnified Party and the Company, and such Indemnified Party shall have been advised by counsel that there may be one or more legal defenses available to it which are different from or in addition to those available to the Company; provided that the Company shall not in such event be responsible under this Agreement for the fees and expenses of more than one firm of separate counsel (in addition to local counsel) in connection with any such Action in the same jurisdiction.

The Company agrees that if any right of any Indemnified Party set forth in the preceding paragraphs is finally judicially determined to be unavailable (except by reason of the gross negligence, willful misconduct or fraud of such Indemnified Party), or is insufficient to hold such Indemnified Party harmless against such Losses as contemplated herein, then the Company shall contribute to such Losses (a) in such proportion as is appropriate to reflect the relative benefits received by the Company and its creditors and stockholders, on the one hand, and such Indemnified Party, on the other hand, in connection with the transactions contemplated hereby, and (b) if (and only if) the allocation provided in clause (a) is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (a) but also the relative fault of the Company and such Indemnified Party; provided, that, in no event shall the aggregate contribution of all such Indemnified Parties exceed the amount of fees received by Rothschild under this Agreement.  Benefits received by Rothschild shall be deemed to be equal to the compensation paid by the Company to Rothschild in connection with this Agreement.  Relative fault shall be determined by reference to, among other things, whether any alleged untrue statement or omission or any other alleged conduct relates to information provided by the Company or other conduct by the Company (or the Company's employees or other agents) on the one hand or by Rothschild on the other hand.

The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with advice or services rendered or to be rendered by any Indemnified Party pursuant to this

Agreement, the transactions contemplated hereby or any Indemnified Party's actions or inactions in connection with any such advice, services or transactions except for and only to the extent that such Losses of the Company are finally judicially determined by a court of competent jurisdiction to have arisen primarily because of the gross negligence, willful misconduct or fraud of such Indemnified Party in connection with any such advice, actions, inactions or services. In the event the Company commences a Chapter 7 or Chapter 11 case, the Company shall use its best efforts to require, as a condition of the Company releasing from liability any creditor or other party-in-interest in the case, that such creditor or other party-in-interest release all Indemnified Parties from all claims or other liabilities directly or indirectly in connection with, arising out of, based upon, or in any way related to the engagement of Rothschild under this Agreement or any transaction or conduct in connection therewith, provided that the Company shall not be required to obtain such release with respect to the gross negligence, willful misconduct or fraud of any Indemnified Party.

The rights of the Indemnified Parties hereunder shall be in addition to any other rights that any Indemnified Party may have at common law, by statute or otherwise. Except as otherwise expressly provided for in this Agreement, if any term, provision, covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall all remain in full force and effect and shall in no way be affected, impaired or invalidated. The reimbursement, indemnity and contribution obligations of the Company set forth herein shall apply to any modification of this Agreement and shall remain in full force and effect regardless of any termination of, or the completion of any Indemnified Party's services under or in connection with, this Agreement.

## EXHIBIT C

## Ledoux Declaration

---------------------------------------------------------------------------x

In re                                                  :        Chapter 11

                                                       :

XERIUM TECHNOLOGIES, INC., et al.,[1]                  :        Case No. 10-_____ (   )

                                                       :

                          Debtors.                     :        Joint Administration Requested

                                                       :        Waiver of Local Rule Requested

---------------------------------------------------------------------------x

### DECLARATION OF STEPHEN S. LEDOUX IN SUPPORT OF APPLICATION OF DEBTORS FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 327(a) AND 328(a), FED. R. BANKR. P. 2014, AND DEL. BANKR. L.R. 2014-1 AND 2016-2(g) AUTHORIZING THE RETENTION AND EMPLOYMENT OF ROTHSCHILD INC. AS FINANCIAL ADVISOR AND INVESTMENT BANKER FOR THE DEBTORS, NUNC PRO TUNC TO THE COMMENCEMENT DATE

Stephen S. Ledoux makes this declaration under 28 U.S.C. § 1746 and pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure, under penalty of perjury, and states:

1.      I am over the age of 18 and competent to testify.  I am a Managing Director of the investment banking firm Rothschild Inc. ("Rothschild"), which has an office located at 1251 Avenue of the Americas, 51st floor, New York, New York 10020.  I am duly authorized to make this declaration (the "Declaration") on behalf of Rothschild and in support of the application (the "Application")[2] of Xerium Technologies, Inc. ("Xerium") and certain of its direct and indirect subsidiaries, as debtors and debtors in possession in the above-captioned

---

[1] The Debtors in these chapter 11 cases (along with the last four digits of each Debtor's federal tax identification number or its foreign equivalent) are: Xerium Technologies, Inc. (8674), Huyck Licensco Inc. (0434), Stowe Woodward Licensco LLC (4459), Stowe Woodward LLC (4102), Wangner Itelpa I LLC (3561), Wangner Itelpa II LLC (3562), Weavexx, LLC (7969), Xerium Asia, LLC (3367), Xerium III (US) Limited (4460), Xerium IV (US) Limited (4461), Xerium V (US) Limited (4462), XTI LLC (6754), Xerium Canada Inc. (0003), Huyck.Wangner Austria GmbH (0323), Xerium Germany Holding GmbH (3219), and Xerium Italia S.p.A. (0150).  The location of the Debtors' corporate headquarters and the service address for all Debtors is: 8537 Six Forks Road, Suite 300, Raleigh, North Carolina 27615.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

chapter 11 cases (collectively, the "Debtors"), pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Fed. R. Bankr. P. 2014, and Del. Bankr. L.R. 2014-1 and 2016-2(g), for entry of an order, authorizing and approving the retention and employment of Rothschild as the Debtors' financial advisor and investment banker, nunc pro tunc to the date of commencement of these cases, in accordance with the terms set forth in the Application and in the engagement letter, dated August 13, 2009, attached to the Application as Exhibit B (the "Engagement Letter"). Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein.

2. I submit this Declaration in compliance with sections 105, 327, 328, and 1107(b) of the Bankruptcy Code and to provide the disclosure required under Fed. R. Bankr. P 2014(a), and Del. Bankr. L.R. 2014-1(a).

3. If Rothschild discovers additional information that requires disclosure, Rothschild promptly will file a supplemental disclosure with the Court as required by Del Bankr. L.R. 2014-1.

4. Rothschild believes that the services will not duplicate the services that other professionals will be providing to the Debtors in these chapter 11 cases. Specifically, Rothschild will carry out unique functions and will use reasonable efforts to coordinate with the Debtors' other retained professionals to avoid the unnecessary duplication of services.

**Rothschild's Qualifications**

5. Rothschild is a member of one of the world's leading independent investment banking groups, with expertise in domestic and cross-border mergers and acquisitions, restructurings, privatization advice, and other investment banking and financial advisory services. A private firm with approximately 220 employees in the United States and offices in New York and Washington, D.C., Rothschild is experienced in providing high-quality

investment banking and financial advisory services to financially troubled companies. Rothschild is highly qualified to advise on strategic alternatives and its professionals have extensive experience in deals involving complex financial and operational restructurings. Rothschild is a member of the National Association of Securities Dealers and the Securities Investor Protection Corporation.

6. Rothschild and its professionals also have extensive experience working with financially troubled companies from a variety of industries in complex financial restructurings, both out-of-court and in chapter 11 cases. Rothschild's business reorganization professionals have extensive experience in advising debtors, creditors, and other constituents in chapter 11 cases and have served as financial and strategic advisors in numerous cases, including, among others: Affiliated Media, Inc., Atlantic Express Transportation Group, Barney's, Inc., Bedford Fair Industries, BHM Technologies, Holdings, Inc., Bradlees, Inc., Cadence Innovation LLC, Circuit City Stores, Inc., Comdisco, Inc., Crown Vantage, Inc., Delphi Corporation, Edison Brothers Stores, Inc., Fairpoint Communications, Inc., Federal Mogul Corp., Friedman's, Inc., Geneva Steel Company, Globe Manufacturing, Guilford Mills, Inc., Heartland Steel, HomePlace, Inc., Hilex Poly Co. LLC, International Wire Group, James River Coal Company, Key Plastics LLC, La Roche Industries, Inc., Leiner Health Products, Inc., Metromedia International Group, Inc., Milacron Inc., Motor Coach Industries, Inc., Mpower Holdings Corp., New World Pasta Company, Northwest Airlines, Inc., Oxford Automotive, Inc., Pacific Gas & Electric Company, Penton Business Media Holdings, Inc., PPI Holdings, Inc., Recycled Paper Greetings, Inc., Remy Worldwide Holdings, Inc., Sea Launch Co., LLC, Service Merchandise Corp., Special Metals Corporation, Solutia, Inc., Sun-Times Media Group, Inc., Superior Telecom Inc., The FINOVA Group Inc., Thermadyne Holdings Corp., Thorn Apple

Valley, Inc., Today's Man, Inc., Tower Automotive, Trans World Airlines, Trident Resources Corp., Tronox Inc., UAL Corporation, VeraSun Energy Corporation, Viasystems Group, Inc., Visteon Corp., WestPoint Stevens, Inc., Werner Holding Co., Wilcox & Gibbs, Inc. and Zenith Electronics, Inc.

7.     Further, as a result of Rothschild's prepetition engagement by the Debtors and its subsidiaries, Rothschild has developed a reserve of institutional knowledge related to, and an intimate understanding of, the Debtors' business operations, capital structure, key stakeholders, financing documents, and other material information, and therefore will be able to facilitate the Debtors' effort to maximize value in these chapter 11 cases.  Rothschild's prepetition work for the Debtors and its subsidiaries has included, but not been limited to, the review with management of financial forecast models for the coming years, negotiating forbearance agreements and extensions, exploration of strategic alternatives with existing stakeholders and third parties, and negotiating toward the pending restructuring.  Accordingly, I believe that Rothschild and the professionals it employs are uniquely qualified to advise the Debtors in the matters for which Rothschild is proposed to be employed.

8.     The Fee Structure described in the Application and Engagement Letter is consistent with Rothschild's normal and customary billing practices for comparably-sized and complex cases and transactions, both in and out-of-court, involving the services to be provided in connection with these chapter 11 cases.  The Fee Structure was established to reflect the difficulty of the extensive assignments Rothschild anticipated in connection with this engagement prepetition and expects to continue to undertake.  Accordingly, Rothschild believes that the foregoing compensation arrangements are both reasonable and market based.

9.	In connection with seeking any payment from the Debtors in compensation for professional services rendered or reimbursement of expenses incurred in connection with the Debtors' chapter 11 cases, Rothschild will file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the Federal Rule of Bankruptcy Procedure, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the guidelines established by the Office of the United States Trustee for the District of Delaware, and any other applicable procedures and orders of the Court and consistent with the Fee Structure.

10.	It is not the general practice of investment banking firms, including Rothschild, to keep detailed time records similar to those customarily kept by attorneys.  Because Rothschild does not ordinarily maintain contemporaneous time records in one-tenth hour (0.10) increments or provide or conform to a schedule of hourly rates for its professionals, Rothschild should, pursuant to Del. Bankr. L.R. 2016-2(g), be excused from compliance with such requirements and should only be required to maintain time records in half-hour (0.50) increments setting forth, in a summary format, a description of the services rendered by each professional and the amount of time spent on each date, by each such individual in rendering services on behalf of the Debtors.

11.	Rothschild will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services.  Rothschild's applications for compensation and expenses will be paid by the Debtors, pursuant to the terms of the Engagement Letter, in accordance with the procedures established by the Court.

12. According to Rothschild's books and records, within the ninety day period prior to the Commencement Date, the Debtors paid Rothschild $700,000 in fees and $27,725 for reimbursement of expenses. An accounting summary of payments made to Rothschild within the ninety day period prior to the Commencement Date is attached hereto as Exhibit 1. As of the Commencement Date, Rothschild holds $175,000 on account of the Retainer.

## Rothschild's Disinterestedness

13. In connection with Rothschild's proposed retention and employment by the Debtors, Rothschild undertook a conflicts analysis to determine whether it had any conflicts or other relationships that might cause it to represent or hold any interest adverse to the Debtors or their estates. In connection with this inquiry, Rothschild obtained from the Debtors and/or their representatives the names of individuals and entities that may be parties in interest in these chapter 11 cases (the "Potential Parties in Interest"). The Potential Parties in Interest are included in the categories of entities and individuals listed on Exhibit 2 attached hereto.

14. To the best of my knowledge, information, and belief, Rothschild has not represented any Potential Parties in Interest in connection with matters relating to the Debtors, their estates, assets, or businesses and will not represent other entities which are creditors of, or have other relationships to, the Debtors in matters relating to these chapter 11 cases, except as otherwise set forth herein and on Exhibit 3 attached hereto.[3]

15. Rothschild provides financial advice and investment banking services to an array of clients in the areas of restructuring and distressed debt. As a result, Rothschild has represented, and may in the future represent, certain Potential Parties in Interest in matters

_____

[3]. Rothschild represents certain senior secured lenders party to the Debtors' prepetition credit facility in matters unrelated to these cases.

unrelated to these chapter 11 cases, either individually or as part of representation of a committee of creditors or interest holders. To the best of my knowledge, information, and belief, insofar as I have been able to ascertain after reasonable inquiry, none of these representations are adverse to the Debtors' interests.

16.     To the best of my knowledge, information, and belief, neither Rothschild nor I, nor any other employee of Rothschild that will work on the Debtors' engagement has any connection with or holds any interest adverse to the Debtors, their estates or the Potential Parties in Interest in matters related to Rothschild's retention in these chapter 11 cases, except (i) as set forth in Exhibit 3 and (ii) as otherwise set forth below:

(a)     Before the commencement of these cases, Rothschild rendered prepetition services to the Debtors. As noted above, although Rothschild's records indicate that it is not owed any amounts in respect of prepetition services provided to the Debtors, it is possible that certain expenses that were incurred by Rothschild, and that are reimbursable under the terms of the Engagement Letter, were not yet reflected on Rothschild's books and records as of the Commencement Date. Upon entry of the order approving the Application, Rothschild will waive any claim for such unreimbursed expenses in excess of amounts paid to Rothschild prepetition.

(b)     Rothschild is a large investment banking firm and has likely provided services unrelated to the Debtors for companies and individuals that have conducted business in the past and/or currently conduct business with the Debtors, and who may be creditors of the Debtors. To the best of my knowledge, information, and belief, Rothschild's services to these parties were and are wholly unrelated to the Debtors, their estates, or these chapter 11 cases.

(c)     As part of its practice, Rothschild appears in numerous cases, proceedings, and transactions involving many different professionals, some of which may represent claimants and parties in interest in the Debtors' chapter 11 cases. Furthermore, Rothschild has in the past and will likely in the future be working with or against other professionals involved in this case in matters unrelated to this case. Based on my current knowledge of the professionals involved, and to the best of my knowledge,

7

information, and belief, none of these business relationships represents an interest materially adverse to the Debtors herein in matters upon which Rothschild is to be engaged.

(d)     Rothschild, through the equity owners of its parent company, Rothschild North America Inc., has indirect affiliate relationships with numerous investment banking institutions located worldwide (the "Affiliated Entities").    However, none of the Affiliated Entities is being retained in connection with this engagement and none of the professionals or employees of the Affiliated Entities will provide services to the Debtors in connection with this engagement.    None of the professionals or employees of Rothschild has discussed or will discuss the Debtors' cases with any professional or employee of the Affiliated Entities.    Thus, there has not been and will not be any flow of information between Rothschild and any Affiliated Entity with respect to any matter pertaining to the Debtors or their chapter 11 cases.  Rothschild can make no representation as to the disinterestedness of the professionals or employees of the Affiliated Entities in respect of the Debtors' chapter 11 cases.

17.     To the best of my knowledge, information, and belief no individual assignment referenced on Exhibit 3 currently accounts for more than 4.5% of Rothschild's gross annual revenues.

18.     To the best of my knowledge, information, and belief, except as described herein, Rothschild has not been retained to assist any entity or person other than the Debtors and their subsidiaries on matters relating to these chapter 11 cases.    If the Court approves Rothschild's retention, Rothschild will not accept any engagement or perform any service in connection with these chapter 11 cases for any entity or person other than the Debtors and their subsidiaries.  Rothschild will, however, continue to provide professional services to entities or persons that may be creditors or equity security holders of the Debtors or parties in interest in these chapter 11 cases; provided that such services do not relate to, or have any direct connection with, these chapter 11 cases or the Debtors.

19.     If any new relevant facts or relationships are discovered or arise during the pendency of these chapter 11 cases, Rothschild will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration as required by Del. Bankr. L.R. 2014-1.

20.     I am not related or connected to and, to the best of my knowledge, no other professional of Rothschild who will work on this engagement is related or connected to, any United States Bankruptcy Judge for the District of Delaware, any of the District Judges for the District of Delaware who handle bankruptcy cases, or any employee in the Office of the United States Trustee for the District of Delaware.

21.     To the best of my knowledge, Rothschild has no agreement with any other entity to share with such entity any compensation received by Rothschild in connection with the Debtors' chapter 11 cases.

22.     Accordingly, except as otherwise set forth herein, insofar as I have been able to determine, none of Rothschild, I, nor any employee of Rothschild who will work on the engagement holds or represents any interest adverse to the Debtors or their estates, and Rothschild is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that Rothschild, and its professionals and employees who will work on the engagement:

    (a)    are not creditors, equity security holders, or insiders of the Debtors;

    (b)    are not and were not, within two years before the date of filing of the Debtors' chapter 11 petitions, a director, officer, or employee of the Debtors; and

    (c)    do not have an interest materially adverse to the interest of the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in the Debtors, or for any other reason.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that, the foregoing is true and correct. Executed on this 29 day of March, 2010.

Stephen S. Ledoux
Managing Director, Rothschild Inc.

# **EXHIBIT 1**

## **Accounting Summary of Payments**

| Accounting Summary of Payments | | | | |
|---|---|---|---|---|
| Date of Invoice | Invoice Number | Invoice Amount | Date of Payment | Payment Received |
| 12/18/2009 | 1209SSLXRM1 | $179,465.47 | 1/5/2010 | $179,465.47 |
| 1/26/2010 | 0110SSLXRM1 | $178,449.78 | 2/8/2010 | $178,449.78 |
| 2/19/2010 | 0210SSLXRM1 | $177,458.78 | 3/8/2010 | $177,458.78 |
| 3/18/2010 | 0310SSLXRM1 | $192,351.21 | 3/25/2010 | $192,351.21 |

# EXHIBIT 2

## Potential Parties In Interest

# Xerium Parties in Interest

## Debtors
Huyck Licensco Inc.
Huyck.Wangner Austria GmbH
Stowe Woodward Licensco LLC
Stowe Woodward LLC
Wangner Itelpa I LLC
Wangner Itelpa II LLC
Weavexx, LLC
Xerium Asia, LLC
Xerium Canada Inc.
Xerium Germany Holding GmbH
Xerium III (US) Limited
Xerium Italia S.p.A.
Xerium IV (US) Limited
Xerium Technologies, Inc.
Xerium V (US) Limited
XTI LLC

## Other Names for Filing Entities
Mount Hope
Huyck Wangner
Weavexx Corporation

## Non-Debtor Affiliates and State or Jurisdiction of Incorporation or Organization

| | |
|---|---|
| Beloit Asia Pacific (M) Inc. | Mauritius |
| Huyck Argentina Sociedad Anónima | Argentina |
| Huyck.Wangner (Shanghai) Trading Co. Ltd. | China |
| Huyck.Wangner (UK) Limited | United Kingdom |
| Huyck.Wangner (Vietnam) Co. Ltd. | Vietnam |
| Huyck.Wangner Australia Pty. Limited | Australia |
| Huyck.Wangner Germany GmbH | Germany |
| Huyck.Wangner Italia SpA | Italy |
| Huyck.Wangner Japan Limited | Japan |
| Huyck.Wangner Scandinavia AB | Sweden |
| Huyck.Wangner Spain SA | Spain |
| PMP (Changzou) Roll Technologies Co. Ltd. | China |
| PMP Xibe Roll Covering Company Ltd. | China |
| Robec Brazil LLC | Delaware |
| Robec Walzen GmbH | Germany |
| Stowe Woodward AG | Germany |
| Stowe Woodward Finland Oy | Finland |
| Stowe Woodward France SAS | France |
| Stowe Woodward México, SA De C.V. S | Mexico |
| Stowe Woodward Sweden AB | Sweden |
| Stowe-Woodward (UK) Limited | United Kingdom |
| Stowe-Woodward Limited | United Kingdom |
| TIAG Transworld Interweaving GmbH | Switzerland |
| Wangner Itelpa Participações Ltda. | Brazil |
| Wangner Limited | Ireland |
| Xerium Asia Holding Ltd | Hong Kong |

| | |
|---|---|
| Xerium do Brasil Ltda | Brazil |
| Xerium France SAS | France |
| Xerium Technologies do Brasil Indústria e Comércio S.A. | Brazil |
| Xerium Technologies Limited | United Kingdom |

## **Directors of Xerium Technologies, Inc.**

| | |
|---|---|
| Stephen R. Light | Chairman of the Board |
| Edward Paquette | |
| Michael Phillips | Vice Chairman |
| Jay Gurandiano | |
| Nico Hansen | |
| David Maffucci | |
| John G. Raos | |

## **Executive Officers of Xerium Technologies, Inc.**

| | |
|---|---|
| Stephen R. Light | President and Chief Executive Officer |
| David Maffucci | Executive Vice President and Chief Financial Officer |
| Joan "John" Badrinas Ardevol | Vice President, Chief Technology Officer |
| Eduardo Fracasso | President – Xerium South America |
| Thomas Johnson | President – Xerium Asia |
| David Pretty | President – Xerium North America |

## **Officers of Xerium Technologies, Inc.**

| | |
|---|---|
| Stephen R. Light | President, CEO |
| Ted Orban | Secretary and Treasurer |
| David G. Maffucci | Vice President, Chief Financial Officer and Assistant Secretary |
| Dennis Carroll | Vice President, Controller |
| Eduardo Fracasso | Vice President |
| Thomas Johnson | Vice President |
| David Pretty | Vice President |
| Elizabeth Leete | Assistant Secretary |

## **Officers of Huyck.Wangner Austria GmbH**

| | |
|---|---|
| David Pretty | Managing Director |

## **Supervisory Board of Huyck.Wangner Austria GmbH**

| | |
|---|---|
| Stephen R. Light | Chairman |
| Alois Leeb | Vice Chairman |
| Andrea Schremser | Employee Representative |
| Liliana Mock | Employee Representative |

## **Officers of Huyck Licensco Inc.**

| | |
|---|---|
| Stephen R. Light | President and Assistant Secretary |
| Theodore D. Orban | Secretary and Treasurer |
| David Maffucci | Vice President, Chief Financial Officer and Assistant Secretary |
| Elizabeth Leete | Assistant Secretary |

## Directors of Huyck Licensco Inc.

Stephen R. Light
David Maffucci
Ted Orban

## Officers of Stowe Woodward Licensco LLC

| | |
|---|---|
| Stephen R. Light | President and Assistant Secretary |
| Theodore D. Orban | Secretary and Treasurer |
| David Maffucci | Vice President, Chief Financial Officer and Assistant Secretary |
| Elizabeth Leete | Assistant Secretary |

## Directors of Stowe Woodward Licensco LLC

Stephen R. Light
David Maffucci
Ted Orban

## Officers of Xerium III (US) Limited

| | |
|---|---|
| Stephen R. Light | President and Assistant Secretary |
| Theodore D. Orban | Secretary and Treasurer |
| David Maffucci | Vice President, Chief Financial Officer and Assistant Secretary |
| Elizabeth Leete | Assistant Secretary |

## Directors of Xerium III (US) Limited

Stephen R. Light
David Maffucci
Ted Orban

## Officers of Xerium IV (US) Limited

| | |
|---|---|
| Stephen R. Light | President and Assistant Secretary |
| Theodore D. Orban | Secretary and Treasurer |
| David Maffucci | Vice President, Chief Financial Officer and Assistant Secretary |
| Elizabeth Leete | Assistant Secretary |

## Directors of Xerium IV (US) Limited

Stephen R. Light
David Maffucci
Ted Orban

## Officers of Xerium V (US) Limited

| | |
|---|---|
| Stephen R. Light | President and Assistant Secretary |
| Theodore D. Orban | Secretary and Treasurer |
| David Maffucci | Vice President, Chief Financial Officer and Assistant Secretary |
| Elizabeth Leete | Assistant Secretary |

## Directors of Xerium V (US) Limited

Stephen R. Light
David Maffucci
Ted Orban

## Managing Directors of Xerium Germany Holding GmbH

Stephen R. Light
Joan "John" Badrinas Ardevol
David Maffucci

## Directors of Xerium Italia S.p.A.

Stephen R. Light
David Maffucci
David Pretty                              Chairman
Luigi Alessandrini                        Managing Director – Irga Division
Alexander Karnowsky

## Directors of Xerium Canada Inc.

Stephen R. Light
David Maffucci
Ted Orban

## Officers of Xerium Canada Inc.

Stephen R. Light                          President and Chief Executive Officer
Theodore D. Orban                         Secretary and Treasurer
David Maffucci                            Chief Financial/Accounting Officer
David Pretty                              Executive Vice President, Stowe-WoodwardCanada and Weavexx
                                          Canada Divisions
William VanderBurgh                       Assistant Secretary
Elizabeth Leete                           Assistant Secretary

## Board of Managers of XTI LLC

Stephen R. Light
Ted Orban
David Maffucci

## Officers of XTI LLC

Stephen R. Light                          President and Assistant Secretary
Theodore D. Orban                         Secretary and Treasurer
David Maffucci                            Vice President, Chief Financial Officer and Assistant Secretary
Elizabeth Leete                           Assistant Secretary

## Board of Directors of Stowe Woodward LLC

Stephen R. Light
Ted Orban
David Maffucci

## Officers of Stowe Woodward LLC

Stephen R. Light                          President and Assistant Secretary
Theodore D. Orban                         Secretary and Treasurer
David Maffucci                            Vice President, Chief Financial Officer and Assistant Secretary
Elizabeth Leete                           Assistant Secretary

## Board of Managers of Weavexx, LLC

Stephen R. Light
Ted Orban
David Maffucci

## Officers of Weavexx, LLC

Stephen R. Light                          President and Assistant Secretary
David Pretty                              Vice President and Assistant Secretary
Ted Orban                                 Secretary and Treasurer
David Maffucci                            Vice President, Chief Financial Officer and Assistant Secretary
Elizabeth Leete                           Assistant Secretary

## Board of Managers of Wangner Itelpa I LLC
Stephen R. Light
Ted Orban
David Maffucci

## Officers of Wangner Itelpa I LLC
| | |
|---|---|
| Stephen R. Light | President and Assistant Secretary |
| Ted Orban | Secretary |
| David Maffucci | Vice President, Chief Financial Officer and Assistant Secretary |
| Elizabeth Leete | Assistant Secretary |

## Board of Managers of Wangner Itelpa II LLC
Stephen R. Light
Ted Orban
David Maffucci

## Officers of Wangner Itelpa II LLC
| | |
|---|---|
| Stephen R. Light | President and Assistant Secretary |
| Ted Orban | Secretary |
| David Maffucci | Vice President, Chief Financial Officer and Assistant Secretary |
| Elizabeth Leete | Assistant Secretary |

## Board of Managers of Xerium Asia, LLC
Stephen R. Light
Ted Orban
David Maffucci

## Officers of Xerium Asia, LLC
| | |
|---|---|
| Stephen R. Light | President and Assistant Secretary |
| Ted Orban | Secretary and Treasurer |
| Tom Johnson | Vice President and Assistant Secretary |
| David Maffucci | Vice President, Chief Financial Officer and Assistant Secretary |
| Elizabeth Leete | Assistant Secretary |

## Former Officers and Directors
Alexander Karnowsky
Andrea Schremser
Dennis Carroll
Liliana Mock
Luigi Alessandrini
Michael Phillips
Peter Williamson

## Director Affiliations
### Current
ABB Lummus Global
ABB Ltd.
Ainsworth Lumber Co. Ltd.
Apax Partners, L.P.
Apax Europe IV GP Co. Ltd.
Apax Partners Beteiligungsberatung GmbH
Apax WW Nominees Ltd.
Apax-Xerium APIA LP

BTR plc
Gerber Scientific, Inc.
Labelmaker Holding GmbH
Martin Marietta Materials, Inc.
Numerex Corp.
Precision Partners, Inc.
Stone House Investment Holdings, Inc.

**Past**
Bowater Incorporated
Emerson Electric
Flow International
Flow International Corp.
General Electric
Metzler Automotive Hose Systems
N.V. Phillips
OmniQuip Textron
Paccar
Pendelastica SA
Trelleborg AB

## Significant Utility Providers
Allegheny Power of VA
Atmos Energy of MS (Formerly Mississippi Valley Gas)
Cascade Natural Gas of WA
Centerpoint Energy Arkla of LA
Constellation New Energy
Cowlitz PUD
Duke Energy of NC
Gerogia Power
HESS Corporation
Paetec Communications Inc.
Premiere Global Services
Southstar Energy
Starkville Electric Department (TVA)
Washington Gas Company
WE Energies – WI Electric Power Company
Verbund Austria Power Sales GmbH
EVN AG
EconGas GmbH
Stadtgemeinde Gloggnitz

## Secured Lenders Under Prepetition Credit Agreement[1]
Aegon
Ahab Capital Management
Ahab Distressed, L.P.
Ahab Distressed, Ltd.
Ahab Opportunities, LP
Ahab Opportunities, Ltd.
AIG
Aim Floating Rate Fund

---

[1] As this debt continues to trade, the "Secured Lenders Under Prepetition Agreement" list may change from day to day. The information listed here is current as of February 23, 2010.

Alie Street Investments 6 Limited
Alliance Capital
Allied Irish Bank
Allied Irish Bank PLC (Allied Irish Bank)
American Securities
Ameriprise Certificate Company
Aozora Bank
Aquilae CLO I PLC
Aquilae CLO II PLC
Arrowhawk Capital Partners
Arrowhawk Distressed Special Situations, Ltd (Arrowhawk Capital Partners)
AS Investors, LLC  (American-Securities)
Atlantis Funding Ltd.
Avalon Capital Ltd. 3
AZB CLO 4 Limited
Babson Capital
Babson CLO Ltd 2005-I  (Babson Capital)
Babson CLO Ltd 2005-II  (Babson Capital)
Babson CLO Ltd 2006-II  (Babson Capital)
Babson CLO Ltd 2007-I  (Babson Capital)
Bacchus (U.S) 2006-1 Ltd.
Banco Espirito Santo
Banco Espirito Santo S.A.
Bank Of America
Bank Of America N.A.
Bank Of America TRS
Bank Of Ireland
Bank Of New York (BoNY)
Bayerische Hypo-Und Vereinsbank AG
Black Diamond
Black Diamond CLO 2006 -I  (Luxembourg) S. A.
Blackrock
BLT 2009-1, Ltd.  (Invesco)
BLT V LLC
Carl Marks Management Company
Carl Marks Strategic Investments  L.P. (Carl Marks)
Centurion CDO VI, Ltd.
Cerberus Partners
Cerberus Series Four Holdings, LLC  Cerberus Institutional Partners, L.P., Series Four DBA (Cerberus Partners)
Champlain CLO, Ltd.
Citi Origination
Citibank, N.A. - Originations
Citibank, N.A. - Secondary Trading
Citigroup
Continental Casualty Company
Credit Suisse Alternative Capital, Inc.
Credit Suisse Loan Funding LLC
Diversified Credit Portfolio Ltd.
GGC Finance Partnership, LP
Golden Gate Capital
Goldman Sachs
Goldman Sachs Global Opportunities Fund, L.L.C.
Governor And Company Of The  Bank Of Ireland, The
Grandview
Gulf Steam Asset Management
Gulf Stream - Sextant CLO 2006-I Ltd.  (Gulf Stream Asset Mgmt)

Gulf Stream - Sextant CLO 2007-1 Ltd.  (Gulf Stream Asset Mgmt)
Gulf Stream Compass CLO 2005-II, Ltd.  (Gulf Stream Asset Mgmt)
Gulf Stream Compass CLO-2005-1, Ltd.  (Gulf Stream Asset Mgmt)
Halbis Capital Management
Halbis Distressed Opportunities Master Fund, Ltd. (Halbis Capital)
Harbourmaster Capital Management Ltd.
Harbourmaster CLO 5 B.V.
Harbourmaster CLO 6 B.V.
Harbourmaster Loan Corporation
Harbourmaster Pro Rata CLO 3 B.V.
Henderson Global Investors Limited
Hollandsche Bank-Unie NV
HVB
IKB Capital Corporation
ING International (II) - Senior Bank Loans Euro  (ING Investment Management Co)
ING Investment Management CLO I, Ltd.  (ING Investments)
ING Investment Management CLO III,  Ltd. (ING Investments)
ING Investment Management CLO IV Ltd.  (ING Investments)
ING Investment Management CLO V Ltd  (ING Investments)
ING Investment Managment CLO II  (ING Investments)
ING Investment Trust Co. Plan For  Employee Benefit Investment Funds- Senior Loan Fund (ING Investments)
ING Investments
ING Prime Rate Trust  (ING Investments)
ING Senior Income Fund  (ING Investments)
Invesco
Katonah V, Ltd.
KBC Bank
KBC Bank N.V.
Landsbanki Commercial Finance
Landsbanki Islands HF
Limerock Clo I
Loews
Magi Funding I PLC
Malibu CBNA Loan Funding LLC
Massachusetts Mutual Life Insurance  (Babson Capital Europe)
Melchior CDO I S.A.
Merrill Lynch Capital Services, Inc.
Morgan Stanley
Morgan Stanley Senior Funding Inc.
Neptune Finance CCS, Ltd.  (Gulf Stream Asset Mgmt)
New Alliance Global CDO, Limited (AllianceBernstein)
One Wall Street CLO II Ltd Fka  Ows II Ltd
PPM America
PPM Monarch Bay Funding LLC  (PPM America)
Prospero CLO I B.V.  (Rabobank)
Rabobank
Redwood Capital Management
Redwood Master Fund, Ltd
Riversource Bond Series Inc.  Riversource Floating Rate Fund
Riversource Investments
Riversource Life Insurance Company  IDS Life Insurance Company
Riversource Strategic Allocation  Series, Inc-Riversource Strategic Income Allocation Fund
RMF Euro CDO III Public Ltd. Co.
RMF Euro CDO S.A.
RMF Euro CDO V PLC
RMF Investment Management

Saberasu Japan Investments II B.V.  (Cerberus Capital)
Sagamore CLO Ltd.
Sapphire Valley CDO I, Ltd.  (Babson Capital)
Saratoga CLO I, Limited
Sequils-Centurion V, Ltd.
Serves 2006-1 Ltd  (PPM America)
Somerset Special Opportunities  Master Fund L.P. (Babson Capital)
Sovereign
Sovereign Bank
Suffield CLO, Limited  (Babson Capital)
Toronto Dominion
Toronto Dominion (Texas) LLC
TPG
TPG Opportunity Fund I, L.P. (TPG Investments)
Wachovia
Wachovia Bank, N.A.
Wasatch CLO Ltd
Waterfront CLO 2007-1

## Additional Parties To The Prepetition Credit Agreement

| | |
|---|---|
| Citicorp North America, Inc. | Administrative Agent, Issuing Bank, Collateral Agent |
| Citigroup Global Markets, Inc. | Lead Arranger and Bookrunner |

## Swap Counterparties
Bank of America
Deutsche Bank AG
Merrill Lynch Capital Services, Inc.

## Significant Professionals Retained by Debtors
Aird & Berlis
AlixPartners, LLP
Baker & Mckenzie LLP
BDO Valuation Advisors, LLC
Cadwalader, Wickersham & Taft LLP
Chadbourne & Park LLP
Chin & Curtis LLP
Cook, Yancey, King & Galloway
Deloitte & Touche LLP
Ernst & Young LLP
Garden City Group, Inc.
Grant Thornton LLP
Heidrick & Struggles Inc.
Hulse & Wanek
Huron Consulting Services LLP
Hutchison Law Group
Kahn Litwin Renza & Co Ltd.
Leibman, Conway, Olejniczak & Jerry, S.C.
Matheson Ormsby Prentice
Mcguire Woods LLP
Morgan, Brown & Joy, LLP
Myers Bigel Sibley & Sajovec
Ogilvy Renault LLP
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Richards, Layton and Finger P.A.
Ropes & Gray LLP

Rothschild
Skadden, Arps, Slate, Meagher & Flom LLP
Smith Anderson Blount Dorsett Mitchell & Jernigan LLP
Stewart Mckelvey
Ward & Smith, P.A.

## Litigation Parties

Alvester Porter
Daishowa-Marubeni International Ltd.
Jerome Madsen
Rapid Pacific Roll Covering Pty. Ltd.
Sappi Fine Paper
Andritz AG
Christian J. Popowich
Code Hunter LLP
Soucie & Bolt Law Firm
Faegre & Benson
David Tonkin
Horst Preisinger
Paperfabrik Meldorf
Isaias Paulo
Soares Filho
Marcos Antonio Dini
Federal Tax Authorities of Brazil
ABK Group
AON CHUBB
AON (Fireman's Fund Insurance Company)
SCA (France)
Tennessee Department of Environment and Conservation

## Significant Equity Holders for Xerium Technologies, Inc.

Apax Partners Ltd.
Apax WW Nominees Ltd.
Apax-Xerium APIA LP
Apax Europe IV GP Co. Ltd.
Vanguard Group, Inc.
Barclays Global Investors, N.A.
Stephen R. Light

## Holders of Largest Unsecured Claims – United States[2]

Advanced Electrical Technologies
Akrochem Corporation
American Express
Andritz Kusters
A-Papaleles Venezolanos
APC - Automatic Process Control, Inc.
Applied Industrial Technologies
AR Traffic Consultants Inc.
Ashland Distribution Co.
Automotive Rentals Inc.

---

[2] This information is current as of November 20, 2009, however, it is subject to change as the company updates its books and records in the ordinary course of business.

Barrett Machine, Inc.
Baum Machine, Inc.
Brislin Air Conditioning
Chemtura
Coim USA, Inc.
Dell Computer
Deloitte & Touche LLP
E.I. Du Pont De Demours & Company
Eplus Technology, Inc.
Fastenal Company
Georgia Machine Works
Hafemeister Machine Corporation
Harwick Standard Distribution Corporation
Intregrated Technology Corporation
Invista Inc.
Iowa Distributing Co. Inc.
JLM Advanced Technical Services, Inc.
KCB
Lanxess Corporation
Magnat Fairview
Mcmaster-Carr Supply Company
Merittech, LLC
Ministre Du Revenue Du Quebec
Morrison Berkshire Inc.
Motion Industries, Inc.
N.E.W. Roll
NTN Bearing Corporation Of America
Paratec Elastomers LLC
Perlon-Monofil Gmbh
Praxair Products, Inc.
Receiver General For Canada, Goods & Services Tax
Safedata LLC
Sandusky International Inc.
Sartomer Company
SEI Investments Management Corporation
Sonoco Products Company
Staples Business Advantage
Starkville Electric & Water
State Street Retiree Services
Tax Collector-Starkville, MS
Tech Transport, Inc.
Teijin Aramid Usa, Inc.
Texo, Inc.
Triad Builders
Univar
Webster Machine Works, Inc.
Zeon Chemicals  L.P.

## **Holders of Largest Unsecured Claims - Europe**[3]

Bank Austria-Creditanstalt
Berkenhoff u. Drebes GmbH

---

[3] This information is current as of February 23, 2010, however, it is subject to change as the company updates its books and records in the ordinary course of business.

EMS-Chemie AG
Hahl Filaments GmbH
Herbitschek Gesellschaft m b H
M&A Dieterle GmbH
MA.RE.s.p.a.
N.I.Teijin Shoji Europe GmbH
Emil Jäger GmbH & Co KG
Perlon-Monofil GmbH
Raiffeisen Landesbank
Shakespeare Monofilament UK Ltd.
TONAK, akciova spolecnost

## Significant Lessors
One Tech Westborough LLC
AP Investments
GE Capital Fleet Services
Misys Healthcare Systems
KCB-Ca Ltd Partnership
IMMOCONSULT Leasinggesellschaft m.b.H.
CURO Raiffeisen-Immobilien-Leasing GmbH

## Significant Competitors
Voith AG
Albany International Corp.
Metso Corporation

## Unions
AFL-CIO
Chauffers, Teamsters, And Helpers, Local 58
General Drivers, Salesmen, And Warehousemen's Local Union 984
International Brotherhood Of Teamsters
Syndicat Des Salariés(Es) De Weavexx (C.S.D.)
The International Association Of Machinists And Aerospace Workers
United Food And Commercial Workers International Union
Workers United Ontario Council
Gewerkschaft Metall-Textil
Gewerkschaft der Privatangestellten

## Insurance Providers
AIG
American Guarantee and Liability Insurance Company
Beazley Insurance Company
Berkley Insurance Company
Carolina Casualty Insurance Company
CHUBB
CNA
Federal Insurance Company
Fireman's Fund Insurance Company
FM Global
National Union Fire Insurance Company
Navigators Insurance Company
Pennsylvania Manufacturers' Association Insurance

Vigilant Insurance Company
Willis HRH
Zurich

## **Other Parties**

Abitibibowater, Inc.
Alabama River Pulp Company, Inc.
Alberta Pacific Forest Industries, Inc.
Atlantic Packaging Products
Atlantic Whitby
Augusta Newsprint Company
Boise Cascade
Blue Heron
Canfor Northwood
Canfor PG
Canfor Pulp Ltd; Partnership
Caraustar Industries, Inc.
Casc St-Jerome
Cascades Norampac Inc.
Catalyst Paper Corp.
Clearwater Paper Corp.
Corner Brook
Dom Windsor
Domtar Paper Co., LLC
Evergreen Packaging, Inc.
Fraser Papers, Inc.
Georgia Pacific Corporation
Graphic Packaging International
International Paper Company
Irving Pulp & Paper
Kapstone Paper & Packaging Corp.
K.O.L. Inc.
Kimberly Clark Corporation
Kruger Products Limited
Lincoln Lincoln
Longview Fibre Paper And Packaging, Inc.
Madison Alsip
Marcal Manufacturing LLC
Meadwestvaco Corp.
Minas Hantspor
Myllykoski
Newark Group
Newpage Corporation
Nippon Paper Ind. Co., Ltd.
Nippon Pt Angeles
Packaging Corporation Of America
Pratt Industries (USA)
Procter & Gamble
Rayonier Performance Fibers
Rock Tenn Company
Schweitz Spots
Smurfit-Stone Container Corporation
Sonoco Products Company
Soucy Riviere-Du-Loup
Strathcona Paper L.P.

Tembec Industries
Tembec Temisca
Temboard Temis
Temple-Inland Inc.
Temple N Johnson
Thilmany, LLC
Verso Paper
Wausau-Mosinee Paper Corp.
Wausau Paper Mills Company
White Birch Paper Company
Burgo
Emin Leydier
Et Kapelle
Eternit
Fedrigoni
Garda
Hamburger
Ip Kwidzyn
Kondopoga
Lucchese Porcari
Mf Liezen
Mondi Syktyvkar
Mondi Theresienthal
Mt Kreuzau
Palm Kins'S Lynn
Polesine Loreo
Propapier Eisenhütte
Sappi Ngodwana
Sca Hygiene Hackas

<u>**EXHIBIT 3**</u>

**Relationships With Potential Parties in Interest**

# XERIUM

| Party in Interest | Entity with which RINC has a connection | Nature of Connection |
|---|---|---|
| ABB Ltd. | ABB | Client pitches by RINC affiliate on matters unrelated to Xerium. |
| ABB Lummus Global | ABB Lummus | RINC affiliate was involved in two separate transactions unrelated to Xerium where ABB Lummus was listed as a participant. |
| Abitibibowater, Inc. | AbitibiBowater Inc. | Client pitch by RINC on matters unrelated to Xerium. |
| Aegon; Structured Enhanced Return Vehicle Trust, Series 1998-1 (Aegon Capital) | Aegon NV | Various Client pitches by RINC affiliates to Aegon NV on matters unrelated to Xerium. |
| AIG | AIG; AIG Highstar Capital | Former RINC Client on matters unrelated to Xerium. |
| Ainsworth Lumber Co. Ltd. | Ainsworth Lumber | Client pitch by RINC on matters unrelated to Xerium. |
| Allied Irish Bank; Allied Irish Bank PLC | Allied Irish Bank | Various Client pitches by RINC affiliate on matters unrelated to Xerium. |
| American Express | American Express | RINC Vendor. |
| Apax Partners Ltd.; Apax WW Nominees Ltd.; Apax-Xerium APIA LP; Apax Europe IV GP Co. Ltd.; Apax Partners Beteiligungsberatung GmbH | Apax Partners; Apax CAPITAL PARTNERS; Apax France; Apax Germany; Apax Italy; Apax Partners Isreal Ltd.; Apax UK; Cinven Apax Partners; Cinven The Carlyle Group Apax Partners | Client pitches by RINC on matters unrelated to Xerium.

Apax CAPITAL PARTNERS, Apax France, Apax Germany, Apax Italy, Apax Partners Israel Ltd., Apax UK, Cinven Apax Partners, Cinven The Carlyle Group Apax Partners are all former RINC affiliate clients on matters unrelated to Xerium. |
| Banco Espirito Santo; Banco Espirito Santo S.A. | Banco Espirito Santo | Client pitches by RINC affiliate on matters unrelated to Xerium. |
| Bank Austria-Creditanstalt | Bank Austria Creditanstalt | Former RINC affiliate Client on matters unrelated to Xerium. |
| Bank of America; Bank of America N.A.; Bank of America TRS | Bank of America Capital Investors | Client pitch by RINC on matters unrelated to Xerium. |

RINC has limited its search to the Parties in Interest Provided by Xerium. Affiliates, subsidiaries or parent companies of Parties in Interest have not been searched unless specifically noted.

| | | |
|---|---|---|
| Bank of Ireland | Bank of Ireland | Client pitches by RINC affiliate on matters unrelated to Xerium. |
| Bank of New York (BONY) | Bank of New York | Rothschild is representing an Ad Hoc Committee of Bondholders where Bank of New York is listed as a participant. The matter is unrelated to Xerium. |
| Barclays Global Investors, N.A. | Barclays Bank PLC; Barclays Capital; Barclays PE; Barclays Private Equity; Barclays Ventures | All former clients of RINC affiliates on matters unrelated to Xerium. <br><br> A RINC affiliate is currently representing Barclays Ventures on a matter unrelated to Xerium. |
| Blackrock | Blackrock; BlackRock Financial Management Inc. | Client pitch by RINC to BlackRock on matters unrelated to Xerium. <br><br> RINC is representing an Ad Hoc Committee of Bondholders where BlackRock Financial Management Inc. is listed as a participant. The matter is unrelated to Xerium. |
| Blackstone / GSO | The Blackstone Group | RINC was involved in a transaction unrelated to Xerium where the Blackstone Group was a participant. |
| Boise Cascade | Boise Inc. | RINC client on matters unrelated to Xerium. |
| Bowater Incorporated | Bowater | RINC affiliate was involved in a transaction unrelated to Xerium Bowater was a participant. |
| Caraustar Industries | Caraustar Industries Inc. | RINC affiliate was involved in a transaction unrelated to Xerium where Caraustar Industries Inc. was listed as an interested party. |
| Centerpoint Energy Arkla of LA | CenterPoint | Client pitches by RINC on matters unrelated to Xerium. |

RINC has limited its search to the Parties in Interest Provided by Xerium. Affiliates, subsidiaries or parent companies of Parties in Interest have not been searched unless specifically noted.

# XERIUM

| Cerberus Partners; Cerberus Series Court Holdings; LLC Cerberus Institutional Partners, L.P.; Series Four DBA (Cerberus Partners); Saberasu Japan Investments II B.V. (Cerberus Capital) | Cerberus Capital Management LP; Cerberus Group LP; Cerberus US | Cerberus Capital Management LP and Cerberus Group LP are former RINC clients on matters unrelated to Xerium. Client pitch by RINC to Cerberus US on a matter unrelated to Xerium. |
|---|---|---|
| Chemtura | Chemtura | RINC was involved in a transaction unrelated to Xerium where Chemtura was a participant. The transaction was abandoned. |
| Chubb | Chubb | Former Client of RINC affiliate on matters unrelated to Xerium. |
| Citibank, N.A. – Originations; Citibank, N.A. – Secondary Trading | Citibank | Client pitches by RINC on matters unrelated to Xerium. |
| Citigroup; Citigroup Global Markets, Inc. | Citigroup Mezzanine III LP; Citigroup | RINC was involved in a transaction unrelated to Xerium where Citigroup Mezzanine III LP was an interested party. Citigroup is the Parent Company of former RINC affiliate Clients in matters unrelated to Xerium. |
| Citicorp North America, Inc. | Citicorp (Mexico) Holdings LLC | Citicorp (Mexico) Holdings LLC is the parent company of a former RINC affiliate Client (Citigroup). The matter was unrelated to Xerium. |
| Constellation New Energy | Constellation Energy Group | RINC client on matters unrelated to Xerium. |
| Credit Suisse Alternative Capital, Inc.; Credit Suisse Loan Funding LLC; Credit Suisse Asset Managers (Atrium IV, Madison Park Funding II, Ltd., Madison Park Funding III, Ltd., and Madison Park Funding V, Ltd.) | CSFB | Former RINC Client on matters unrelated to Xerium. |

RINC has limited its search to the Parties in Interest Provided by Xerium. Affiliates, subsidiaries or parent companies of Parties in Interest have not been searched unless specifically noted.

# XERIUM

| | | |
|---|---|---|
| Daishowa-Marubeni International Ltd | Marubeni Corp; Marubeni Power Ventures | Marubeni Power Ventures (Parent Marubeni Corp) is a former RINC client on a matter unrelated to Xerium. |
| Dell Computer | Dell Computer | RINC Vendor |
| Deloitte & Touche LLP | Deloitte Consulting; Deloitte & Touche | Client pitch by RINC to Deloitte Consulting on matters unrelated to Xerium.<br><br>Deloitte & Touche is a RINC Vendor. |
| Deutsche Bank AG | Deutsche Bank; Deutsche Bank Asset Management | Client pitches to Deutsche Bank and Deutsche Bank Asset Management on matters unrelated to Xerium. |
| Domtar Paper Co., LLC | Domtar | Client pitch by RINC affiliate on matters unrelated to Xerium. |
| Duke Energy of NC | Duke Energy; Duke Energy Inc. | RINC was involved in multiple transactions unrelated to Xerium where Duke Energy was listed as a participant.<br><br>Duke Energy is a former RINC affiliate client on matters unrelated to Xerium.<br><br>Client pitches by RINC to Duke Energy Inc. on matters unrelated to Xerium. |
| Emerson Electric | Emerson Electric | Client pitch by RINC on matters unrelated to Xerium. |
| Emin Leydier | Emin Leydier | Former RINC affiliate Client on matters unrelated to Xerium. |
| EMS-Chemie AG | EMS Chemie | RINC affiliate was involved in a transaction unrelated to Xerium where EMS Chemie was a participant. The transaction was abandoned. |
| EVN AG | EVN | RINC affiliate was involved in a transaction unrelated to Xerium where EVN was an interested party. |

RINC has limited its search to the Parties in Interest Provided by Xerium. Affiliates, subsidiaries or parent companies of Parties in Interest have not been searched unless specifically noted.

| General Electric Capital Corporation; GE Capital Fleet Services; GE Electric; | GE Capital; GE Commercial Finance Energy; GE Frankona Reassurance Limited; GE SeaCo Services Ltd; General Electric Company | RINC was involved in separate transactions unrelated to Xerium where GE Capital; GE Commercial Finance Energy; GE Frankona Reassurance Limited and /or General Electric Company were listed as participants.<br><br>GE SeaCo Services Ltd. is a client of RINC on a matter unrelated to Xerium.<br><br>Client pitches by RINC to General Electric Company on matters unrelated to Xerium.<br><br>RINC is representing an Ad Hoc Committee of bondholders where GE Capital is listed as a participant. The matter is unrelated to Xerium. |
|---|---|---|
| Georgia Pacific Corporation | Georgia Pacific | RINC affiliate was involved in a transaction unrelated to Xerium where Georgia Pacific was a participant. |
| Georgia Power | Georgia Power | RINC was involved in a transaction where Georgia Power was listed as a participant in a matter unrelated to Xerium. The transaction was abandoned. |
| Golden Gate Capital | Golden Gate Capital | Golden Gate Capital is a former RINC client on matters unrelated to Xerium. |
| Goldman Sachs; Goldman Sachs Global Opportunities Fund, LLC (Goldman Sachs Asset Management, L.P.); Goldman Sachs Global Opportunities Offshore, Ltd. | Goldman Sachs; Goldman Sachs Private Equity | RINC was involved in three transactions where Goldman Sachs was listed as a participant in each case in matters unrelated to Xerium.<br><br>Client pitch by RINC affiliate to Goldman Sachs Private Equity on matters unrelated to Xerium. |
| Graphic Packaging International | Graphic Packaging | Client pitches by RINC affiliate to Graphic Packaging on matters unrelated to Xerium. |

RINC has limited its search to the Parties in Interest Provided by Xerium. Affiliates, subsidiaries or parent companies of Parties in Interest have not been searched unless specifically noted.

| Harbourmaster Capital Management Ltd.; Harbour master CLO 5 B.V.; Harbourmaster CLO 6 B.V.; Harbourmaster Loan Corporation; Harbourmaster Pro Rata CLO 3 B.V. | Harbourmaster Capital | RINC affiliate was involved in a transaction unrelated to Xerium where Harbourmaster Capital was listed as a participant. |
|---|---|---|
| HVB | HVB | RINC affiliate was involved in transaction unrelated to Xerium where HVB was a participant. |
| IKB Capital Corporation | IKB | RINC affiliate was involved in a transaction unrelated to Xerium where IKB was a participant. |
| ING Investments; ING Investment Management Co. | ING | RINC affiliate was involved in two transactions unrelated to Xerium where ING was a participant.<br><br>Client pitches by RINC affiliate on matters unrelated to Xerium. |
| Intermediate Capital Group | Intermediate Capital Group | Former RINC affiliate Client on matters unrelated to Xerium. |
| International Paper Company | International Paper Company | Former RINC affiliate Client in a transaction unrelated to Xerium. |
| KBC Bank; KBC Bank N.V. | KBC | Former RINC affiliate Client on matters unrelated to Xerium.<br><br>RINC affiliates have been involved in transactions unrelated to Xerium where KBC is listed as a participant.<br><br>Client pitches by RINC affiliate on matters unrelated to Xerium. |
| Kimberly Clark Corporation | Kimberly-Clark | Client pitch by RINC on matters unrelated to Xerium. |
| Martin Marietta Materials, Inc. | Martin Marietta | Client pitches by RINC affiliate on matters unrelated to Xerium.<br><br>RINC affiliate was involved in a transaction unrelated to Xerium where Martin Marietta was a participant. |

RINC has limited its search to the Parties in Interest Provided by Xerium.  Affiliates, subsidiaries or parent companies of Parties in Interest have not been searched unless specifically noted.

| | | |
|---|---|---|
| Merrill Lynch Capital Services, Inc. | Merrill Lynch | Client pitches by RINC affiliate on matters unrelated to Xerium.<br><br>RINC affiliate was involved in a transaction unrelated to Xerium where Merrill Lynch was a participant. |
| Misys Healthcare System | Misys | Client pitches by RINC affiliate on matters unrelated to Xerium.<br><br>RINC affiliate was involved in a transaction unrelated to Xerium in which Misys was listed as a participant. |
| Morgan Stanley; Morgan Stanley Senior Funding Inc. | Morgan Stanley; Morgan Stanley & Co.; Morgan Stanley Capital; Morgan Stanley Infrastructure Fund | Client pitches by RINC to Morgan Stanley; Morgan Stanley & Co., Morgan Stanley Capital, and Morgan Stanley Infrastructure Fund on matters unrelated to Xerium |
| Mount Hope | Mount Hope Mines, Inc. | RINC Client on matters unrelated to Xerium. |
| Newpage Corporation | New Page Corporation | RINC was involved in a transaction unrelated to Xerium in which New Page Corporation was listed as a participant. |
| NTN Bearing Corporation of America | NTN Corporation | Former RINC affiliate Client in a matter unrelated to Xerium. The transaction was subsequently abandoned. |
| Nuveen Floating Rate Income Fund (Symphony Asset Management) | Nuveen; Symphony Holdings Limited | Client pitches by RINC to Nuveen on matters unrelated to Xerium.<br><br>Symphony Holdings Limited is a former RINC Client on matters unrelated to Xerium. |
| OmniQuip Textron | Omniquip Textron | RINC was involved in a transaction unrelated to Xerium in which Omniquip Textron was listed as a participant. |
| PPM America; PPM Grayhawk CLO Ltd. (PPM America); PPM Monarch Bay Funding LLC (PPM America); PPM Shadow Creek Funding LLC (PPM America); Serves 2006-1 Ltd (PPM America) | PPM Energy | Former RINC Client on matters unrelated to Xerium. |

RINC has limited its search to the Parties in Interest Provided by Xerium. Affiliates, subsidiaries or parent companies of Parties in Interest have not been searched unless specifically noted.

| Praxair Products, Inc. | Praxair | Client pitch by RINC on matters unrelated to Xerium. |
|---|---|---|
| Proctor & Gamble | Proctor & Gamble | RINC was involved in three transactions unrelated to Xerium where Proctor & Gamble was listed as a participant. |
| Promethean II Master LP; Promethean Investment Group | Promethean Investments LLP | Client pitch by RINC affiliate on matters unrelated to Xerium.<br><br>Former RINC affiliate client. |
| Raiffeisen Landesbank | Raiffeisen International; Raiffeisen International Bank Holding AG | RINC affiliates were involved in several transactions unrelated to Xerium where Raiffeisen International was the Client.<br><br>RINC affiliate is involved in a transaction unrelated to Xerium where Raiffeisen International is an interested party.<br><br>RINC affiliate is involved in a transaction unrelated to Xerium where Raiffeisen International Bank Holding AG was a participant. |
| Rabobank; Prospero CLO I B. V. (Rabobank) | Rabobank; Rabobank Group | Former Client of RINC affiliate on matters unrelated to Xerium.<br><br>Rabobank Group and Rothschild Group have established a global co-operation agreement in the food and agricultural sectors and are involved in several transactions unrelated to Xerium. |
| Sappi Fine Paper | Sappi Fine Paper North America; Sappi Ltd. | RINC was involved in a transaction unrelated to Xerium where Sappi Fine Paper North America and Sappi Ltd. were listed as participants. |
| Sonoco Products Company | Sonoco Products Company | RINC was involved in a transaction unrelated to Xerium where Sonoco Products Company is listed as a participant.<br><br>Former client of RINC affiliate on matters unrelated to Xerium. |
| State Street Retiree Services | State Street Corporation | Client pitch by RINC on matters unrelated to Xerium. |

RINC has limited its search to the Parties in Interest Provided by Xerium. Affiliates, subsidiaries or parent companies of Parties in Interest have not been searched unless specifically noted.

# XERIUM

| | | |
|---|---|---|
| Tembec Industries; Tembec Temisca | Tembec Inc. | Client pitches by RINC affiliates on matters unrelated to Xerium.<br><br>RINC was involved in a transaction unrelated to Xerium where Tembec Inc. was listed as a participant. |
| Temple-Inland Inc. | Temple Inland | RINC was involved in two transactions unrelated to Xerium where Temple-Inland Inc. was listed as a participant. |
| Toronto Dominion; Toronto Dominion (Texas) LLC | Toronto Dominion | Client pitch by RINC on matters unrelated to Xerium. |
| TPG, TPG Opportunity Fund I, L.P. (TPG Investments) | TPG; Texas Pacific Group | Client pitches by RINC affiliate on matters unrelated to Xerium.<br><br>RINC affiliate was involved in several separate transactions unrelated to Xerium where TPG was an interested party. |
| Trelleborg AB | Trelleborg | Client pitches by RINC affiliate on matters unrelated to Xerium. |
| Univar | Univar | Former RINC client on matters unrelated to Xerium.<br><br>Client pitch by RINC on matters unrelated to Xerium. |
| Wachovia; Wachovia Bank, N.A. | Wachovia | Former RINC affiliate Client on matters unrelated to Xerium. |
| White Birch Paper Company | White Birch Paper Company | RINC Client on matters unrelated to Xerium. |
| Zurich | Zurich | RINC affiliate was involved in a transaction unrelated to Xerium where Zurich was an interested party. |

RINC has limited its search to the Parties in Interest Provided by Xerium. Affiliates, subsidiaries or parent companies of Parties in Interest have not been searched unless specifically noted.