# ORIGINAL

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x

In re

XERIUM TECHNOLOGIES, INC., et al.,[1]

          Debtors.

---------------------------------------------------------------x

:   Chapter 11

:

:   Case No. 10-11031 (KJC)

:

.   Jointly Administered

   Re: Docket No. 21

## FINAL ORDER (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 362, 363 AND 364, (II) GRANTING LIENS AND SUPERPRIORITY CLAIMS TO POSTPETITION LENDERS PURSUANT TO 11 U.S.C. §§ 364 AND 507, (III) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, AND (IV) PROVIDING ADEQUATE PROTECTION TO PREPETITION SECURED LENDERS AND SECURED SWAP COUNTERPARTY PURSUANT TO 11 U.S.C. §§ 361, 362, 363, 364, AND 507

Upon the motion (the "Motion"), dated March 30, 2010 of Xerium Technologies, Inc.

(the "DIP Borrower") and its affiliated debtors, each as debtor and debtor-in-possession

(collectively, the "Debtors"), in the above captioned cases (collectively, the "Cases"), for entry

of an interim and final order pursuant to sections 105, 361, 362, 363(c), 364(c)(1), 364(c)(2),

364(d)(1), 364(e), and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules

2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

and Del. Bankr. L.R. 4001-2, requesting, among other things:

---

[1] The Debtors in these chapter 11 cases (along with the last four digits of each Debtor's federal tax identification number or its foreign equivalent) are: Xerium Technologies, Inc. (8674), Huyck Licensco Inc. (0434), Stowe Woodward Licensco LLC (4459), Stowe Woodward LLC (4102), Wangner Itelpa I LLC (3561), Wangner Itelpa II LLC (3562), Weavexx, LLC (7969), Xerium Asia, LLC (3367), Xerium III (US) Limited (4460), Xerium IV (US) Limited (4461), Xerium V (US) Limited (4462), XTI LLC (6754), Xerium Canada Inc. (0003), Huyck Wangner Austria GmbH (0323), Xerium Germany Holding GmbH (3219), and Xerium Italia S.p.A. (0150). The location of the Debtors' corporate headquarters and the service address for all Debtors is: 8537 Six Forks Road, Suite 300, Raleigh, North Carolina 27615.

a.    authorization for the DIP Borrower to obtain postpetition financing and for all of the DIP Borrower's U.S. subsidiaries that are Debtors (collectively, the "DIP Guarantors" and, together with the DIP Borrower, the "DIP Obligors") to guaranty the DIP Borrower's obligations in connection with such financing, up to an aggregate principal amount of $80 million (the "Commitment Amount"), pursuant to a senior secured superpriority priming debtor-in-possession facility (the "DIP Facility") comprised of (i) a $20 million senior secured superpriority priming debtor-in-possession revolving loan facility (the "Revolving Facility") and (ii) a $60 million senior secured superpriority priming debtor-in-possession term loan facility (the "Term Loan Facility"), with Citicorp North America, Inc. acting as Administrative and Collateral Agent (in such capacity, the "DIP Agent") for itself and a syndicate of financial institutions (collectively, the "DIP Lenders" and, together with the DIP Agent and the DIP Obligors, the "DIP Parties"), with Citicorp North America, Inc. as the issuing bank (the "Issuing Bank") and Citigroup Global Markets Inc., acting as Sole Lead Arranger and Sole Bookrunner (the "Arranger");

b.    that this Court approve the borrowings under the DIP Facility pursuant to the terms and conditions of that certain Superpriority Priming Senior Secured Debtor-In-Possession Credit and Guarantee Agreement (the "DIP Agreement"), a copy of which is attached as Exhibit "1" hereto, among the DIP Borrower, the DIP Guarantors, the DIP Agent and the DIP Lenders, and

2

any documents executed in connection therewith, and authorize the Debtors to execute and deliver, from time to time, any and all such documents, instruments and agreements, and perform such other acts as may be required, necessary or desirable in connection with the DIP Agreement, including, without limitation, the payment of all fees, interest and charges required under the DIP Agreement;

c.      the granting of adequate protection to the collateral agent (the "Prepetition Collateral Agent") and the lenders (the "Prepetition Secured Lenders") under that certain Amended and Restated Credit and Guaranty Agreement, dated as of May 30, 2008 (as amended from time to time, the "Prepetition Credit Facility"), and Merrill Lynch Capital Services, Inc. as a secured swap counterparty (the "Secured Swap Counterparty," and, together with the Prepetition Collateral Agent and the Prepetition Secured Lenders, the "Prepetition Secured Parties") to the various interest rate swap and related agreements entered into with the Debtors (the "Secured Swaps," collectively, with the Prepetition Credit Agreement and all related Credit Documents as defined in the Prepetition Credit Agreement, and as the same may have been amended, restated, supplemented or otherwise modified from time to time, the "Prepetition Secured Financing Documents");

d.      authorization for the Debtors to use Cash Collateral (as such term is defined in the Bankruptcy Code) in which the Prepetition Secured Parties have an interest, and the granting of adequate protection to the Prepetition Secured

3

Parties with respect to, *inter alia*, such use of their Cash Collateral, and any and all diminution in the value of the Priming Lien Collateral (as defined below);

e.  the granting to the DIP Lenders of the DIP Liens (as defined below) in all existing and after acquired real and personal, tangible and intangible, property of the DIP Obligors, including, upon entry of the Final Order (as defined below), all causes of action of the DIP Obligors arising under Chapter 5 of the Bankruptcy Code, and any and all proceeds thereof (the "DIP Collateral");

f.  the granting to the DIP Lenders, in accordance with section 364(c)(1) of the Bankruptcy Code, superpriority administrative claim status in respect of all amounts owing by the Debtors under the DIP Facility, having priority over all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code ("Superpriority"), subject to indebtedness secured by Permitted Liens,[2] Additional Permitted Liens and the Carve-Out (as defined below);

g.  pursuant to Bankruptcy Rule 4001, that an interim hearing (the "Interim Hearing") on the Motion be held before the Court to consider entry of an interim order (the "Interim Order"), authorizing the DIP Borrower to borrow, on an interim basis, up to the Commitment Amount, and authorizing the DIP Obligors to utilize such portion of the total proceeds made available to the

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the DIP Agreement.

4

DIP Obligors under the DIP Facility as is consistent with the DIP Budget and the DIP Agreement, through and including the date of the Final Hearing (as defined below);

h.      that the Court schedule a final hearing (the "Final Hearing") to consider entry of a final order (the "Final Order") approving the DIP Agreement, and in connection therewith, that the Court approve the form and manner of notice of the Final Hearing; and

i.      granting to the Debtors such further relief as is just and proper.

The Court having considered the Motion and the exhibits attached thereto, including, without limitation, the DIP Agreement; and the Interim Hearing having been held before the Court on March 31, 2010 and the Interim Order having been entered on March 31, 2010; and the notice requirements set forth in the Interim Order having been complied with; and no objections to the Final Order having been filed with the Court; and the Final Hearing having been held before the Court on April 28, 2010; and upon all of the pleadings filed with the Court, all evidence presented in support of the Interim Order and this Final Order, the arguments of counsel stated on the record of the Interim Hearing and the Final Hearing, and all of the proceedings held before the Court; and after due deliberation and consideration and good and sufficient cause appearing therefore,

THE COURT HEREBY FINDS:

A.      On March 30, 2010, (the "Commencement Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Each Debtor is continuing in the management and possession of its businesses and properties as a debtor-in-

5

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Cases are being jointly administered under Case No. 10-11031 (KJC).

B. No request has been made for the appointment of a trustee or examiner and no statutory committee (a "Committee") has yet been appointed in the Cases.

C. This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D. On March 2, 2010, prior to the Commencement Date, the Debtors mailed out for solicitation that certain Disclosure Statement of Xerium Technologies Inc. and Certain of Its Direct and Indirect Subsidiaries dated as of March 2, 2010 (the "Disclosure Statement"), including, as exhibit "A," a copy of that certain Debtors' Joint Prepackaged Plan of Reorganization dated as of March 2, 2010 (the "Plan"), to all parties entitled to vote on the Plan.

E. The Plan provides for, among other things, on the date that the Plan becomes effective in accordance with the terms and provisions thereof (the "Plan Effective Date"), the conversion of the DIP Facility into an exit facility comprised of an exit revolving loan facility and an exit term loan facility (together, the "Exit Facility").

F. Notice of the relief sought by the Motion, notice of the Final Hearing and copies of the Interim Order and proposed Final Order were delivered via facsimile, electronic mail, and/or overnight delivery to the following: (i) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"); (ii) those parties listed on the Consolidated List of Creditors Holding Largest Fifty Unsecured Claims Against the Debtors, as identified in connection with the Debtors' chapter 11 petitions; and (iii) Chadbourne & Parke LLP, 30

6

Rockefeller Plaza, New York, NY 10112, Attention: Andrew Rosenblatt, Esq. and Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, P.O. Box 391, Wilmington, DE 19899-0391, Attention: Joel A. Waite, Esq., co-counsel to the DIP Agent and the Prepetition Collateral Agent. Given the nature of the relief sought in the Motion, the Court concludes that the foregoing notice was sufficient and adequate under the circumstances and complies with Bankruptcy Rule 4001 in all respects for purposes of entering this Final Order.

G. Subject to Paragraph 38 below, the Debtors acknowledge, admit and confirm the following as of the Commencement Date:

1. Pursuant to certain Prepetition Secured Financing Documents, the Prepetition Collateral Agent and the Prepetition Secured Lenders made certain loans, advances and other financial accommodations, and provided for the issuance of letters of credit, for the account of the DIP Borrower or certain of its subsidiaries (together, the "Prepetition Borrowers").

2. Pursuant to certain Prepetition Secured Financing Documents, the Prepetition Borrowers were, as of the Commencement Date, indebted to the Prepetition Collateral Agent and the Prepetition Secured Lenders in the aggregate principal amount of approximately $597,800,000 and was indebted to the Secured Swap Counterparty for the aggregate principle amount of approximately $5,940,837.91 and €614,065.43.

3. For purposes of this Final Order, the term "Prepetition Indebtedness" shall mean and include, without duplication, any and all amounts

7

owing or outstanding under the Prepetition Credit Agreement (including, without limitation, all Obligations as defined in the Prepetition Credit Agreement) or any other Prepetition Secured Financing Documents, including, without limitation, the Secured Swaps, interest on, fees and other costs, expenses and charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors' and other fees and expenses that are chargeable or reimbursable pursuant to the Prepetition Credit Agreement or any other Prepetition Secured Financing Documents), and any and all obligations and liabilities, contingent or otherwise, owed in respect of the letters of credit or other Obligations outstanding thereunder.

4.    To secure the Prepetition Indebtedness under the Prepetition Credit Facility and the Secured Swaps, and pursuant to that certain Pledge and Security Agreement, dated as of May 19, 2005 (as amended from time to time, the "Prepetition Security Agreement"), and related documents, the Debtors granted a security interest in, and continuing Liens on, substantially all of the assets of the Debtors and certain non-debtor subsidiaries and affiliates of the Debtors granted a security interest in, and continuing Liens on certain assets of such subsidiaries and affiliates (the "Prepetition Collateral") to and/or for the benefit of the Prepetition Secured Parties (collectively, the "Prepetition Liens"). For the avoidance of doubt, the term "Prepetition Collateral" shall refer to (i) collateral in or upon which a Lien or other security interest has been granted in favor or for the benefit of the Prepetition Secured Parties in connection with, pursuant to or under the Prepetition Secured Financing

8

Documents, and (ii) any Prepetition Collateral provided under any Prepetition Secured Financing Documents, including that described in this subparagraph, that existed as of the Commencement Date and at any time prepetition and, subject to section 552 of the Bankruptcy Code, postpetition proceeds, products, offspring, rents and profits.

5. The Prepetition Secured Financing Documents are valid and binding agreements and obligations of the Debtors, and the Prepetition Liens (i) constitute valid, binding, enforceable (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code) and perfected first priority security interests and Liens, subject only to the Permitted Liens (as defined in the Prepetition Credit Agreement), but only to the extent such Permitted Liens are valid, enforceable, non-avoidable Liens and security interests that are perfected prior to the Commencement Date (or perfected after the Commencement Date to the extent permitted by Section 546(b) of the Bankruptcy Code), which are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law and which are senior in priority to the Prepetition Liens under applicable law and after giving effect to any applicable subordination or intercreditor agreements, and (ii) are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

6. (i) The Prepetition Indebtedness constitutes a legal, valid and binding obligation of the Debtors, enforceable in accordance with its terms (other

9

than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code); (ii) no objection, offset, defense or counterclaim of any kind or nature to the Prepetition Indebtedness exists, and none of the Debtors, either collectively or individually, shall assert any claim, counterclaim, setoff or defense of any kind, nature or description that would in any way affect the validity, enforceability and non-avoidability of any of the Prepetition Indebtedness; and (iii) the Prepetition Indebtedness and any amounts previously paid to the Prepetition Collateral Agent or any other Prepetition Secured Party on account thereof or with respect thereto, are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

7. The Prepetition Collateral Agent (on its behalf and on behalf of the Prepetition Secured Lenders) holds properly perfected security interests and Liens in and on the Prepetition Collateral by taking possession of, or obtaining control over, certain assets and by the filing of UCC-1 financing statements, mortgages and other required documents against the Debtors and such Prepetition Collateral with the proper state and county offices for the perfection of such security interests and Liens.

None of the foregoing acknowledgments or agreements by the Debtors contained in this Paragraph shall be binding on the Debtors' estates, any Committee or any other party (other than the Debtors) and shall not affect or limit the rights of any Committee or any other party (other than the Debtors) with respect to their rights to assert, pursue or otherwise allege any claims or defenses against the Prepetition Secured Parties in accordance with, and subject to, the terms of this Final Order.

10

H. An immediate and critical need exists for the DIP Borrower to obtain postpetition financing and use cash collateral to continue the operation of its businesses. However, the use of "cash collateral," as defined by section 363(a) of the Bankruptcy Code and including any and all prepetition and, subject to section 552 of the Bankruptcy Code, postpetition proceeds of the Prepetition Collateral ("Cash Collateral"), alone would be insufficient to meet the DIP Borrower's immediate postpetition liquidity needs. The DIP Borrower is unable to obtain the required funds (i) in the forms of (1) unsecured credit or debt allowable under section 503(b)(1) of the Bankruptcy Code, (2) an administrative expense pursuant to section 364(a) or (b) of the Bankruptcy Code, (3) unsecured debt having the priority afforded by section 364(c)(1) of the Bankruptcy Code, or (4) debt secured only as described in section 364(c)(2) or (3) of the Bankruptcy Code or (ii) on terms more favorable than those offered by the DIP Lenders under the DIP Agreement, the Interim Order, this Final Order and all other agreements, documents, notes or instruments delivered pursuant hereto or thereto or in connection herewith or therewith, including, without limitation, the DIP Budget and the collateral documents described in the DIP Agreement (collectively with the Interim Order and this Final Order, the "DIP Financing Documents").

I. The Debtors have requested that, pursuant to the terms of the DIP Financing Documents, the DIP Lenders make loans and advances and provide other financial accommodations to the DIP Borrower, and that the Prepetition Secured Parties consent to the use of their Cash Collateral, to be used by the DIP Borrower solely in accordance with the terms of the DIP Financing Documents. The ability of the DIP Borrower to continue its businesses and reorganize under chapter 11 of the Bankruptcy Code depends upon the DIP Borrower obtaining

11

such financing and using such Cash Collateral. The DIP Borrower will suffer immediate and irreparable harm if the requested postpetition financing is not available on a final basis. The DIP Lenders are willing to extend the postpetition financing under the DIP Facility on a superpriority and first priority secured basis, as more particularly described herein, pursuant to the terms and conditions of the DIP Financing Documents. The DIP Borrower's and DIP Guarantors' entry into the DIP Financing Documents is fair and reasonable and is a sound, prudent exercise of their business judgment consistent with their fiduciary duties. The DIP Financing Documents were negotiated at arm's length and in good faith between and among the DIP Borrower, the DIP Guarantors, the DIP Agent and the DIP Lenders, and the loans and advances provided for in the DIP Financing Documents constitute reasonably equivalent value and fair consideration. Accordingly, the relief requested in the Motion is necessary, essential and appropriate for the continued operation of the Debtors' businesses, the management and preservation of their assets and properties, and the avoidance of irreparable harm to the Debtors' estates and is in the best interests of the Debtors, their estates and creditors.

J.     Based on the record before the Court, (i) the terms of the use of the Prepetition Secured Parties' Cash Collateral as provided in this Final Order and (ii) the terms of the DIP Financing Documents have been negotiated at arms' length and in "good faith," as that term is used in section 364(e) of the Bankruptcy Code, and are in the best interests of the Debtors and their respective estates and creditors. The DIP Lenders are extending the postpetition financing contemplated under the DIP Financing Documents to the DIP Borrower, and the Prepetition Collateral Agent and Prepetition Secured Parties are permitting the use of their Cash Collateral,

12

in good faith, and the DIP Lenders are entitled to the benefits of the provisions of section 364(e) of the Bankruptcy Code.

K. It is in the best interests of the DIP Obligors' estates that they be allowed to finance their operations and use Cash Collateral under the terms and conditions set forth herein and in the DIP Financing Documents. The relief requested by the Motion is necessary to avoid immediate and irreparable harm to the DIP Obligors' estates, and good, adequate and sufficient cause has been shown to justify the granting of the relief requested herein, and the immediate entry and effectiveness of this Final Order.

L. The Prepetition Secured Parties are prepared to consent to the Debtors' use of the Prepetition Secured Parties' Cash Collateral only if the Debtors agree, and the Court orders in this Final Order, that the Debtors shall make the Adequate Protection Payments (as defined below) and the Debtors shall grant the Adequate Protection Liens (as defined below). The Adequate Protection Payments (as defined below) and the Adequate Protection Liens (as defined below) provided to the Prepetition Secured Parties, and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code and are necessary to obtain the consent or non-objection of such parties.

M. The Prepetition Secured Parties are prepared to consent to the granting of the DIP Liens (as defined below) in the Prepetition Collateral solely on the terms and conditions set forth in this Final Order, including the approval of, and payment to the Prepetition Secured Parties of, the Adequate Protection Payments (as defined below), and the granting to the Prepetition Secured Parties of the Adequate Protection Liens (as defined below).

13

N.    The consent of the Prepetition Secured Parties to the priming of their Prepetition Liens by the DIP Liens (as defined below) is limited to such priming occurring pursuant to the DIP Financing Documents, and shall not extend to any other postpetition financing or to any modified version of the DIP Financing Documents (except to the extent modified in this Final Order and only to the extent the Prepetition Collateral Agent and the Required Lenders (as defined in the Prepetition Credit Agreement) consent to such modification).

O.    The DIP Liens (as defined below) granted pursuant to this Final Order to the DIP Lenders, are appropriate under section 364(d) of the Bankruptcy Code because, among other things: (i) such security interests and Liens do not impair the interests of any holder of a valid, perfected, prepetition security interest or Lien in the property of the DIP Borrower's estate, and/or (ii) the holders of such valid, perfected, prepetition security interests and Liens have consented to the security interests and priming Liens granted pursuant to this Final Order to the DIP Lenders.

P.    Good cause has been shown for the immediate entry and effectiveness of this Final Order pursuant to Bankruptcy Rules 4001(b) and (c), and Del. Bankr. L.R. 4001-2(b). In particular, the permission granted herein for the DIP Borrower and DIP Guarantors to use Cash Collateral, and to obtain postpetition financing in accordance with the terms of the DIP Financing Documents, including on a priming Lien basis, is necessary to avoid immediate and irreparable harm to the DIP Borrower, the other Debtors and their respective estates. Entry of this Final Order is in the best interests of the DIP Borrower, the other Debtors and their respective estates and creditors.

NOW, THEREFORE, IT IS HEREBY ORDERED:

14

1.  **Motion Granted**. The Motion is granted in its entirety on the terms and conditions set forth herein.

2.  **DIP Financing Documents**. The authorization granted to the DIP Borrower under the Interim Order to (i) enter into the DIP Agreement and the other DIP Financing Documents, and (ii) borrow funds up to $80,000,000.00, incur debt, reimbursement obligations and other obligations, grant Liens, make deposits, provide indemnities and otherwise perform its obligations in accordance with the terms and conditions of the DIP Financing Documents, is hereby approved on a final basis.

3.  **DIP Guarantors**. The authorization granted to each DIP Guarantor under the Interim Order to (i) enter into the DIP Agreement and other applicable DIP Financing Documents, and (ii) irrevocably guarantee the payment and performance of the DIP Borrower's and the other DIP Guarantor's obligations under or in connection with the DIP Financing Documents (the "DIP Obligations"), is hereby approved on a final basis.

4.  **Conditions Precedent**. The DIP Lenders shall have no obligation to lend under the DIP Facility unless and until all of the conditions precedent to the occurrence of the Closing Date with respect to the DIP Facility have been satisfied or waived in accordance with the terms and provisions of the DIP Financing Documents.

5.  **Use of Cash Collateral**. Subject to the terms and conditions set forth in this Final Order and effective immediately upon entry of this Final Order, the DIP Borrower is authorized on a final basis, pursuant to section 363(c)(2)(B) of the Bankruptcy Code, to use the Prepetition Secured Parties' Cash Collateral, until the occurrence of a "Termination Event," which shall mean the expiration of three (3) business days following the provision of written

15

notice to the Debtors (with a copy of such notice (a) provided to co-counsel to the Debtors, counsel to any Committee and the U.S. Trustee, and (b) filed with the Court) upon the earliest to occur of (i) the occurrence of the Maturity Date (as defined below), (ii) termination of the DIP Facility by the DIP Agent following the occurrence of an Event of Default and the expiration of the Remedies Notice Period (as defined below), (iii) the date on which this Final Order is not in full force and effect, (iv) the date on which any of the Cases are converted to a case under chapter 7 of the Bankruptcy Code, (v) the date on which a trustee or examiner with expanded powers is appointed in the Cases, or (vi) the date on which any of the DIP Obligors fails to make any Adequate Protection Payment (as defined below) in accordance with the terms of this order.

6.    **Limitation on use of Cash Collateral.**  For so long as the DIP Borrower is authorized to use the Prepetition Secured Parties' Cash Collateral, no Cash Collateral of the Prepetition Secured Parties may be used directly or indirectly by the DIP Borrower, any Committee or any other Debtor or other person or entity to object to or contest in any manner the Prepetition Indebtedness or Prepetition Liens, or to assert or prosecute any actions, claims or causes of action (including, without limitation, any claims or causes of action under chapter 5 of the Bankruptcy Code) against any of the Prepetition Collateral Agent or Prepetition Secured Parties without the consent of the Prepetition Collateral Agent and the applicable Prepetition Secured Parties; provided, that, for so long as the DIP Borrower is authorized to use the Prepetition Secured Parties' Cash Collateral, the DIP Borrower is permitted to use Cash Collateral to dispute (a) the reasonableness of any fee or expense reimbursement request of any of the professionals retained by the Collateral Agent, the Prepetition Secured Parties, the DIP Agent, or the DIP Lenders, and (b) any assertion by the DIP Agent, any DIP Lender, the

16

Prepetition Collateral Agent or any Prepetition Secured Lender of the existence and/or continuation of an Event of Default under the DIP Agreement, or a Termination Event under this Final Order.

7. **Borrowing**. The DIP Borrower is authorized to borrow up to the full amount of the Commitment Amount under the DIP Facility, provided that the total amount of DIP Facility proceeds to be used by the DIP Borrower shall be consistent with the DIP Budget and the DIP Agreement.

8. **Binding Effect**. The DIP Financing Documents shall constitute valid and binding obligations of the DIP Obligors enforceable against the DIP Obligors in accordance with their terms. No obligation, payment, transfer or grant of security under this Final Order or the other DIP Financing Documents shall be stayed, restrained, voided or recovered under the Bankruptcy Code or any applicable non-bankruptcy law, or subjected to any defense, reduction, setoff, recoupment or counterclaim.

9. **Use of Lender Funds**. The DIP Borrower shall use Cash Collateral and the loans or advances made under, or in connection with, the DIP Financing Documents, solely as provided in this Final Order or in the other DIP Financing Documents. From and after the Commencement Date, amounts loaned and advanced under, or in connection with, the DIP Agreement and this Final Order or the other DIP Financing Documents, including the extension or deemed extension of letters of credit (the "DIP Loans") and all proceeds of the DIP Collateral and Prepetition Collateral, including, without limitation, all of the DIP Borrower's existing or future cash and Cash Collateral (collectively, the "Lender Funds"), shall be used exclusively to (i) pay related transaction costs, fees and expenses associated with the DIP Facility, (ii) fund

17

working capital and general corporate purposes of the Debtors and their subsidiaries during the pendency of the Cases, (iii) make Adequate Protection Payments (as defined below), and (iv) fund such costs, fees and expenses incurred in connection with the administration and prosecution of the Cases as are consistent with the terms of the DIP Budget and the DIP Agreement, including costs related to the Carve-Out (as defined below). Nothing in this Paragraph shall be construed to affect the right of any party in interest to object to the allowance and payment of any such amounts.

10. **Limitation on Use of Lender Funds**. No Lender Funds may be used directly or indirectly by the DIP Borrower or any of the other Debtors, any Committee or any other person or entity to (i) object to or contest in any manner the DIP Obligations, the DIP Liens (as defined below), the Prepetition Indebtedness, the Prepetition Liens, or Liens granted to the Prepetition Collateral Agent hereunder, (ii) assert or prosecute any actions, claims or causes of action (including, without limitation, any claims or causes of action under chapter 5 of the Bankruptcy Code) against any of the DIP Agent, the DIP Lenders, the Prepetition Secured Parties or the Prepetition Collateral Agent, (iii) seek authorization for any party to use any of the Cash Collateral of the DIP Lenders without the consent of the DIP Agent, or (iv) obtain Liens that are senior to, on a parity with, or junior to the Liens of the DIP Agent, the DIP Lenders, the Prepetition Collateral Agent or the Prepetition Secured Parties in the DIP Collateral or the Prepetition Collateral, as applicable, or any portion thereof; provided, that, for so long as the DIP Borrower is authorized to use the Prepetition Secured Parties' Cash Collateral, the DIP Borrower is permitted to use Cash Collateral to dispute (a) the reasonableness of any fee or expense reimbursement request of any of the professionals retained by the Prepetition Collateral Agent,

18

the Prepetition Secured Parties, the DIP Agent, or the DIP Lenders, and (b) any assertion by the DIP Agent, any DIP Lender, the Prepetition Collateral Agent, or any Prepetition Secured Lender of the existence and/or continuation of an Event of Default under the DIP Agreement, or a Termination Event under this Final Order.

11. **Additional Agreements**. In addition to complying with all provisions of the DIP Financing Documents and this Final Order, the DIP Borrower is hereby authorized and directed to enter into any additional agreements providing for the establishment of lockboxes, blocked accounts or similar arrangements requested by the DIP Agent for purposes of facilitating cash collections from the DIP Borrower in accordance with the terms of the DIP Financing Documents and this Final Order.

12. **Sections 506(c) and 552(b)**. The DIP Agent and the DIP Lenders shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Lenders, and, as appropriate, the Prepetition Secured Parties, with respect to proceeds, products, offspring or profits of any of the DIP Collateral or the Prepetition Collateral. No costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against the DIP Collateral or the Prepetition Collateral, the Prepetition Collateral Agent, the Prepetition Secured Parties, the DIP Lenders, the DIP Agent or any of their respective claims pursuant to Sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent, as applicable, of the Prepetition Collateral Agent, the Prepetition Secured Parties, the DIP Agent and the DIP Lenders, and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.

19

13. **Interest**. Interest on the DIP Obligations shall be secured in the manner specified in Paragraph 16 herein, accrue at the rates (including any default rates), and be paid in accordance with the terms and provisions of the DIP Financing Documents.

14. **Fees**. Any and all (i) fees agreed and required to be paid to the DIP Agent, the Issuing Bank, the Arranger or the DIP Lenders in connection with the consummation of the DIP Facility as referenced in the DIP Agreement (and in the separate letter agreement between the DIP Borrower and the Arranger in connection with the DIP Agreement), and (ii) such reasonable costs and expenses as may be incurred from time to time, including without limitation, fees and expenses of the professionals retained as provided for in the DIP Agreement and other DIP Financing Documents, are hereby authorized and shall be paid in accordance with the terms and provisions of the DIP Agreement or other DIP Financing Documents as applicable. No such fees and expenses payable pursuant hereto shall be subject to further or separate approval by the Court (but the Court shall resolve any dispute as to the reasonableness of any fees and expenses referenced in (ii) above), and no recipient of any such payment shall be required to file any interim or final fee applications with respect thereto, provided that copies of invoices for such fees and expenses shall

15. **Priority of DIP Obligations**. All DIP Obligations hereby constitute, under be provided to the U.S. Trustee and any Committee. section 364(c)(1) of the Bankruptcy Code, allowed superpriority administrative expense claims against the Borrower having priority over all administrative expenses of the kind specified in, or ordered pursuant to, any provision of the Bankruptcy Code, including, without limitation, those specified in, or ordered pursuant to, sections 105, 326, 328, 330, 365, 503(b), 507(a), 507(b), 546(c), 726 and 1114 of the Bankruptcy Code, or otherwise. Such superpriority claims shall, subject to the Permitted Liens, Additional Permitted Liens and Carve-Out (as defined below), be

20

payable from and have recourse to all prepetition and postpetition property of the DIP Borrower and DIP Guarantors and all proceeds thereof.

      16. **DIP Liens**. As security for the DIP Obligations, and subject only to the Carve-Out (as defined below), Permitted Liens and Additional Permitted Liens (as defined below), the DIP Agent, for and on behalf of the DIP Lenders, is hereby granted valid, binding, enforceable, first priority and perfected Liens (the "<u>DIP Liens</u>") in the DIP Collateral and the Prepetition Collateral as follows:

      a.     <u>Priming Liens</u>. Pursuant to section 364(d)(1) of the Bankruptcy Code, the DIP Agent is hereby granted fully perfected first priority, valid, binding, enforceable, non-avoidable and automatically perfected, priming security interests in and Liens upon (the "<u>Priming Liens</u>"): all existing and after acquired real and personal, tangible and intangible, property of the DIP Borrower and the DIP Guarantors that constitutes collateral of the DIP Borrower and the DIP Guarantors under the Prepetition Credit Agreement and the Secured Swaps (the "<u>Priming Lien Collateral</u>"), which shall be senior in all respects to the interests in and Liens upon such property of, without limitation, the Prepetition Secured Parties but which shall be subject to (i) non-avoidable, valid, enforceable and perfected Permitted Liens (as defined in the Prepetition Credit Agreement) in existence on the Commencement Date, (ii) non-avoidable, valid, enforceable and perfected Liens that are capitalized leases listed on a schedule to the DIP Agreement, purchase money security interests listed on a schedule to the DIP Agreement or mechanics' or other statutory Liens in existence on the Commencement Date, and (iii) non-avoidable, valid, enforceable Liens that are capitalized leases listed on a schedule to the DIP Agreement, purchase money security interests listed on a schedule to the DIP Agreement or mechanics' or other statutory Liens in existence on the Commencement Date that are perfected subsequent to the Commencement Date as permitted by section 546(b) of the Bankruptcy Code and (iv) mechanics, warehousemen's or other statutory Liens arising after the Commencement Date (clauses (ii) - (iv), collectively, "<u>Additional Permitted Liens</u>").

      b.     <u>First Liens</u>. Pursuant to section 364(c)(2) of the Bankruptcy Code, the DIP Agent is hereby granted fully perfected first priority, valid, binding, enforceable, non-avoidable and automatically perfected, security interests in and Liens upon (the "<u>First Liens</u>"), all existing and after acquired real and personal, tangible and intangible, property of the DIP Borrower and

21

the DIP Guarantors that is not collateral of the DIP Borrower and the DIP Guarantors under the Prepetition Credit Agreement, existing, or acquired prior or subsequent to the commencement of the Cases, including, but not limited to all causes of action arising under Chapter 5 of the Bankruptcy Code, and any and all proceeds thereof, (the "First Lien Collateral" and together with the Priming Lien Collateral, the "DIP Collateral"), which Liens are subject only to the Carve-Out (as defined below), Permitted Liens and Additional Permitted Liens.

c.    No other person or entity shall receive or be granted any Liens of any type or nature, whether senior to, on parity with, or junior to the DIP Liens, on any of the DIP Collateral or Prepetition Collateral, excepting only the Carve-Out (as defined below), Permitted Liens and Additional Permitted Liens.

17. **Additional Documents**. The DIP Borrower and DIP Guarantors shall execute and deliver to the DIP Agent all such agreements, financing statements, instruments and other documents as the Postpetition Lender may reasonably request to evidence, confirm, validate or perfect the Liens granted pursuant hereto.

18. **Liens Valid**.    All Liens granted herein and in the other DIP Financing Documents to or for the benefit of the DIP Agent or DIP Lenders shall pursuant to this Final Order be, and they hereby are, valid, enforceable and perfected, effective as of the Commencement Date, and (notwithstanding any provisions of any agreement, instrument, document, the Uniform Commercial Code or any other relevant law or regulation of any jurisdiction) no further notice, filing or other act shall be required to effect such perfection, and all Liens on deposit accounts or securities accounts shall, pursuant to this Final Order be, and they hereby are, deemed to confer "control" for purposes of sections 8-106, 9-104 and 9-106 of the applicable Uniform Commercial Code as in effect as of the date hereof in favor of the DIP Agent; provided, however, that if the DIP Agent shall, in its sole discretion, choose to require the execution of and/or filing (as applicable) of any such control agreements, mortgages, financing

22

statements, notices of Liens and other similar instruments and documents, all such mortgages, financing statements, notices of Liens or other similar instruments and documents shall be deemed to have been executed, filed and/or recorded at the time and on the date of the Commencement Date. Each and every federal, state and local government agency or department may accept the entry by this Court of this Final Order as evidence of the validity, enforceability and perfection on the Commencement Date of the Liens granted herein and in the other DIP Financing Documents to the DIP Agent or DIP Lenders; provided, further that, with the exception of priming the Prepetition Liens, nothing herein is intended to affect the validity, enforceability or perfection of the Prepetition Liens, which validity, enforceability or perfection (if any) shall be preserved.

19. **Priority of Liens.** Subject to the Carve-Out (as defined below), Permitted Liens and Additional Permitted Liens, and except as provided in Paragraph 16 hereof, the DIP Liens shall not be (i) subject to any Lien that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or (ii) subordinated to or made *pari passu* with any other Lien under section 364(d) of the Bankruptcy Code or otherwise. As provided in the DIP Financing Documents, an Event of Default shall occur if any claim or Lien (other than the Carve-Out (as defined below)) having a priority superior to, on parity with, or junior to those granted by this Final Order with respect to the DIP Obligations shall be granted or allowed prior to the indefeasible payment in full in cash and satisfaction in the manner provided in the DIP Financing Documents of the DIP Obligations and until the Adequate Protection Payments have been indefeasibly made.

23

20. **Priority over Adequate Protection Liens**. Notwithstanding anything to the contrary herein, in any other DIP Financing Document, or in any Prepetition Secured Financing Documents, subject to the Carve-Out (as defined below), Permitted Liens and Additional Permitted Liens, the DIP Liens and the superpriority claims granted to the DIP Agent and DIP Lenders hereunder and under the other DIP Financing Documents are and shall be at all times senior and prior in all respects to the Adequate Protection Liens (as defined below), all other Liens securing any Prepetition Indebtedness, in all cases, whether granted under this Final Order, the Prepetition Secured Financing Documents, or otherwise, and any other obligations in respect of adequate protection and all other claims held by the Prepetition Collateral Agent and the Prepetition Secured Parties (including, without limitation any superpriority claims), in each case, whether arising under or related to the Prepetition Secured Financing Documents, this Final Order or otherwise.

21. **Survival of DIP Obligations and DIP Liens**. The DIP Obligations and the DIP Liens shall not be discharged by, and shall survive, the entry of an order converting any of the Cases to a case under chapter 7 of the Bankruptcy Code. Except as otherwise provided herein, the DIP Obligations and the DIP Liens shall not be discharged by, and shall survive, the entry of an order confirming a chapter 11 plan in any of the Cases of the DIP Obligors, and shall continue in full force and effect until the DIP Obligations have been paid in full in cash. Notwithstanding the immediately preceding sentence, upon the Plan Effective Date and pursuant to the Plan and any order of the Court confirming the Plan, (i) the DIP Obligations and the DIP Liens shall not survive the Plan Effective Date, and (ii) upon such date shall be discharged by the conversion of the DIP Obligations and DIP Liens to obligations of, and liens granted by, certain of the

24

Reorganized Debtors under the Exit Facility, as and to the extent described in the DIP Agreement, the Exit Credit Agreement and other Exit Credit Documents, the Plan, and any order of the Court confirming the Plan.

22. **Survival After Dismissal**. An Event of Default shall occur upon entry of an order dismissing any of the Cases that does not provide for the termination of the DIP Facility and payment in full in cash of all DIP Obligations. If an order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349(b) of the Bankruptcy Code) that (i) the claims and Liens granted pursuant to this Final Order to the DIP Agent and DIP Lenders shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all obligations in respect thereof shall have been indefeasibly paid in full in cash and satisfied in the manner provided in the DIP Financing Documents (and that such claims and Liens shall, notwithstanding such dismissal, remain binding on all parties in interest), and (ii) the claims and Liens granted pursuant to this Final Order to or for the benefit of the Prepetition Collateral Agent and Prepetition Secured Parties shall continue in full force and effect and shall maintain their priorities as provided in this Final Order (and that such claims and Liens shall, notwithstanding such dismissal, remain binding on all parties in interest).

23. **Survival After Conversion**. An Event of Default shall occur in the event that an order is for any reason entered converting any of the Cases into cases under chapter 7 of the Bankruptcy Code. The provisions of this Final Order, including the grant of claims and Liens to or for the benefit of the DIP Agent, the DIP Lenders, the Prepetition Collateral Agent and the

25

Prepetition Secured Parties, and any actions taken pursuant hereto shall survive the entry of any order converting the Borrower's Case to a case under chapter 7 of the Bankruptcy Code.

24. **Survival of Lien Priority.** Based on the findings set forth in this Final Order and in accordance with section 364(e) of the Bankruptcy Code in the event that any or all of the provisions of this Final Order or any other DIP Financing Documents are hereafter modified, amended or vacated by a subsequent order of this or any other Court, no such modification, amendment or vacation shall affect the validity, enforceability or priority of any Lien or claim authorized or created hereby or thereby or any DIP Obligations incurred hereunder or thereunder. Notwithstanding any such modification, amendment or vacation, any DIP Obligations incurred and any claim granted to the DIP Agent or DIP Lenders hereunder or under the other DIP Financing Documents arising prior to the effective date of such modification, amendment or vacation shall be governed in all respects by the original provisions of this Final Order and the other DIP Financing Documents, and the DIP Agent and the DIP Lenders shall be entitled to all of the rights, remedies, privileges and benefits, including the Liens and priorities granted herein and therein, with respect to any such DIP Obligations and claim.

25. **Survival of Final Order.** The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any plan of reorganization in these Cases, (ii) converting any or all of these Cases to a case or cases under chapter 7 of the Bankruptcy Code, or (iii) dismissing any or all of the Cases, and the terms and provisions of this Final Order, including, but not limited to, the financing protections granted hereunder, shall continue in full force and effect notwithstanding the entry of such order, and such protections shall retain their effect as provided by this Final Order until all obligations of

26

the DIP Borrower pursuant to this Final Order are indefeasibly paid in full and discharged (such payment being without prejudice to any terms or provisions contained in this Final Order which survive such discharge by its terms).

26. **Carve-Out**. The claims granted hereunder to the DIP Agent or DIP Lenders, the DIP Liens and any claims or Liens ranking *pari passu* with or junior in priority to such claims of the DIP Agent, DIP Lenders and the DIP Liens shall be subject to payment of the Carve-Out. As used in this Final Order, "Carve-Out" means the sum of (i) all fees required to be paid to the Clerk of the Bankruptcy Court and statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) and 28 U.S.C. § 156(c), and all fees, expenses, and disbursements payable to any professionals retained by the Debtors pursuant to 28 U.S.C. § 156(c); and (ii) in the event of an occurrence and during the continuance of an Event of Default, the "Case Professionals Carve-Out", comprising the sum of (A) all allowed unpaid fees, expenses and disbursements (regardless of when such fees, expenses and disbursements become allowed by order of the Bankruptcy Court) for any professionals retained by the Debtors or any Committee appointed in the Cases pursuant to sections 327, 328, 363 or 1103, as applicable, of the Bankruptcy Code (the "Case Professionals") incurred subsequent to receipt of notice delivered by the DIP Agent to counsel for the Debtors following the occurrence of an Event of Default expressly stating that the Carve-Out has been invoked (a "Carve-Out Trigger Notice") in an aggregate amount not in excess of $3,000,000 (the "Carve-Out Cap"), plus (B) all unpaid professional fees, expenses and disbursements of such Case Professionals incurred prior to receipt of the Carve-Out Trigger Notice to the extent previously or subsequently allowed pursuant to an order of the Bankruptcy Court (collectively, "Allowed Professional Fees") under sections 328, 330 and/or 331 of the

27

Bankruptcy Code. So long as a Carve-Out Trigger Notice has not been delivered, the Carve-Out Cap shall not be reduced by the payment of fees or expenses allowed by the Bankruptcy Court (whether allowed before or after delivery of any Carve-Out Trigger Notice) and payable under sections 328, 330, or 331 of the Bankruptcy Code, or 28 U.S.C. § 156(c).

27. **Limitation on Use of Postpetition Funds.** None of the DIP Loans, Carve-Out or Cash Collateral may be used to challenge the amount, validity, perfection, priority or enforceability of, or assert any defense, counterclaim or offset to the DIP Financing Documents and the Prepetition Secured Financing Documents or the claims, security interests and Liens of the DIP Agent, the DIP Lenders, the Prepetition Collateral Agent or the Prepetition Secured Parties with respect thereto or otherwise to litigate (including, without limitation, commencing adversary proceedings, motions, contested matters, arbitrations, mediations, or other similar proceedings) against any of the DIP Lenders or the Prepetition Secured Parties. Notwithstanding the foregoing, any Committee appointed in the Cases may spend up to an aggregate amount not to exceed $50,000 of the Carve-Out to investigate any potential claims against the Prepetition Collateral Agent or Prepetition Secured Parties, and any potential defenses to their claims, security interests, and Liens; provided that, for the avoidance of doubt, so long as a Carve-Out Trigger Notice has not been delivered in accordance with Paragraph 26, the expenditure of any portion of such amount by any Committee shall not reduce the Carve-Out Cap.

28. **Prepetition Lender and Postpetition Lender Rights.** Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair (a) any of the rights of any of the DIP Agent, the DIP Lenders, the Prepetition Collateral Agent, or the Prepetition Secured

28

Parties under the Bankruptcy Code or under any non-bankruptcy law, including, without limitation, the right of any of the DIP Agent, the DIP Lenders, the Prepetition Collateral Agent, or the Prepetition Secured Parties to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Cases, conversion of any of the Cases to a case or cases under chapter 7 of the Bankruptcy Code, or appointment of a chapter 11 trustee or examiner (including with expanded powers) or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans or (b) any other rights, claims or privileges (whether legal, equitable or otherwise) of any of the DIP Agent, the DIP Lenders, the Prepetition Collateral Agent or the Prepetition Secured Parties.

29. **No Waiver**. Notwithstanding anything herein to the contrary, this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Prepetition Collateral Agent to seek additional adequate protection at any time.

30. **Maturity Date**. All amounts owed with respect to the DIP Obligations under the DIP Agreement shall become due and shall be paid in full or, in the case of (v) below, converted to amounts owing under the Exit Facility, no later than the earliest to occur of (i) one-hundred twenty (120) days after the Closing Date with respect to the DIP Facility, (ii) the date the commitments under the Revolving Facility are permanently reduced to zero pursuant to the terms of the DIP Agreement, (iii) the date of the termination of the commitments under the Revolving Facility pursuant to the terms of the DIP Agreement, (iv) the closing date of any sale of the Debtors or all or substantially all of the assets of the Credit Parties pursuant to section 363 of the Bankruptcy Code in the Cases that has been approved by an order of the Bankruptcy Court, and (v) the date of the substantial consummation of the Plan that is confirmed pursuant to

29

an order of this Court (the "Maturity Date"). As of the Maturity Date and, with respect to subparagraph (iv) of this paragraph, subject to expiration of the Remedies Notice Period (as defined below) and absent the determination by the Court that no Event of Default has occurred and/or is continuing under the DIP Facility, (a) the DIP Borrower shall no longer be authorized to (i) borrow funds or incur indebtedness under the DIP Facility, (ii) use any of the Postpetition Loans already received or (iii) use Cash Collateral, and (b) any obligations of the DIP Agent or DIP Lenders to make loans or advances hereunder or under the other DIP Financing Documents shall terminate.

31. **Survival After Maturity**. Notwithstanding anything herein or the occurrence of the Maturity Date, all of the rights, remedies, benefits and protections provided (i) to the DIP Agent and the DIP Lenders under this Final Order and the other DIP Financing Documents and (ii) to the Prepetition Collateral Agent and Prepetition Secured Parties under this Final Order, shall survive such Maturity Date. Upon such Maturity Date, the principal of and all accrued interest and fees and all other DIP Obligations, as well as the Prepetition Indebtedness, shall, in each instance, be immediately due and payable and the DIP Agent, the DIP Lenders, the Prepetition Collateral Agent and the Prepetition Secured Parties shall have all other rights and remedies provided in this Final Order, the other DIP Financing Documents, the Prepetition Secured Financing Documents and applicable law; provided, that in the event such Maturity Date occurs due to the failure to satisfy the condition set forth in subsection (iv) of Paragraph 30 above (which failure also constitutes an Event of Default under Section 8.1(q) of the DIP Agreement), any exercise of remedies by the DIP Agent and the DIP Lenders under the DIP Facility or hereunder shall be subject to Paragraph 33 hereof.

30

32. **Modification of Automatic Stay.** For purposes of this Final Order and the DIP Agent's or DIP Lenders' exercise of any and all of their remedial rights and remedies upon occurrence and during the continuance of an Event of Default, the automatic stay imposed by section 362(a) of the Bankruptcy Code shall be automatically vacated and modified after the provision by the DIP Agent to the Debtors of five (5) business days' prior written notice of such Event of Default (such five (5) business day period, the "Remedies Notice Period"), which written notice shall be served by the DIP Agent by facsimile upon the Debtors, counsel to the Debtors, counsel to any Committee appointed in the Cases, and the U.S. Trustee, and which written notice shall be filed by counsel to the DIP Agent with the Bankruptcy Court, provided that the automatic stay under section 362(a) of the Bankruptcy Code shall not be automatically vacated and modified as provided above if, during the Remedies Notice Period, the Bankruptcy Court has determined that an Event of Default has not occurred and/or is not continuing. Upon the expiration of the Remedies Notice Period, unless the Bankruptcy Court has determined that an Event of Default has not occurred and/or is not continuing, (i) the Commitments, if any, of each DIP Lender shall immediately and automatically terminate; (ii) each of the following shall immediately become due and payable, in each case without presentment, demand, protest or other requirements of any kind: (A) the unpaid principal amount of and accrued interest on the DIP Facility, and (B) all other DIP Obligations; and (iii) the DIP Agent may enforce any and all DIP Liens and may seek any and all other remedies provided for in this Final Order. For the avoidance of doubt, neither the DIP Agent nor any of the DIP Lenders shall exercise any such rights and remedies on account of an Event of Default until after expiration of the Remedies

31

Notice Period. The DIP Obligors' sole recourse with respect to opposing such modification shall be to contest the occurrence and/or continuation of an Event of Default.

33. **Exercise of Remedies.** Upon the expiration of the Remedies Notice Period, unless ordered otherwise by the Bankruptcy Court, the DIP Agent or the DIP Lenders shall at any time be entitled to exercise any of their rights and remedies hereunder, under the other DIP Financing Documents or under applicable law in order to effect payment or satisfaction of the DIP Obligations or to receive any amounts or remittances due hereunder or under the other DIP Financing Documents, including without limitation, foreclosing upon and selling all or a portion of the DIP Collateral or the Prepetition Collateral, the DIP Agent shall have the right without any further action or approval of this Court to exercise such rights and remedies as to all or such part of the DIP Collateral or the Prepetition Collateral as the DIP Agent shall elect in its sole discretion. No holder of a Lien primed by this Final Order or granted by the DIP Borrower or any of the other Debtors as adequate protection shall be entitled to object on the basis of the existence of any such Lien to the exercise by the DIP Agent of its respective rights and remedies under the DIP Financing Documents or under applicable law to effect satisfaction of the DIP Obligations or to receive any amounts or remittances due hereunder or under the other DIP Financing Documents. The DIP Agent shall be entitled to apply the payments or proceeds of the DIP Collateral or the Prepetition Collateral in accordance with the provisions of this Final Order and the other DIP Financing Documents, and in no event shall the DIP Agent be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral or otherwise.

32

34. **No Waiver of Remedies**. The failure or delay by (i) the DIP Agent or any Postpetition Lender to seek relief or otherwise exercise its rights and remedies under this Final Order or any other DIP Financing Documents or (ii) the Prepetition Collateral Agent or any Prepetition Secured Party to seek relief or otherwise exercise its rights and remedies under this Final Order shall not constitute a waiver of any of the rights of such party, and any exercise of such rights and remedies against the DIP Borrower or the DIP Guarantors or any DIP Collateral or Prepetition Collateral shall not be construed to limit any further exercise of such rights and remedies.

35. **Successor and Assigns**. The provisions of this Final Order shall be binding upon and inure to the benefit of each of the DIP Agent, the DIP Lenders, the Prepetition Collateral Agent, the Prepetition Secured Parties, the DIP Borrower, the DIP Guarantors and any other Debtors and their respective successors and assigns (including any trustee or fiduciary hereafter appointed or elected as a legal representative of any of the Debtors, their estates, or with respect to the property of any of their estates) whether in these Cases, in any successor cases, or upon dismissal of any such chapter 11 or chapter 7 case.

36. **Further Assurances**. The Debtors shall execute any and all further documents, financing statements, agreements and instruments, and take all further action (including filing Uniform Commercial Code and other financing statements) that the DIP Agent may reasonably request, in order to effectuate the transactions contemplated by the DIP Agreement, this Final Order, or any other DIP Financing Document, or to grant, preserve, protect and perfect the validity and priority of the security interests created or intended to be created by the DIP Agreement, this Final Order, or any other DIP Financing Document.

33

37. **Adequate Protection**. The Prepetition Collateral Agent (for the benefit of the Prepetition Secured Lenders) and the Secured Swap Counterparty are entitled, pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of their respective interests, and are hereby granted the following forms of adequate protection (collectively, the "Adequate Protection Claims"):

    a.     Adequate Protection Liens. As security for and solely to the extent of any Diminution in Value of the pre-petition security interest, the Prepetition Collateral Agent (for the benefit of the Prepetition Secured Lenders) and the Secured Swap Counterparty shall, effective upon entry of this order, be granted replacement security interests in and Liens upon all the DIP Collateral, subject and subordinate only to (i) the security interests and Liens granted to the DIP Agent for the benefit of the DIP Lenders in this Final Order and pursuant to the DIP Financing Documents, (ii) Permitted Liens, (iii) Additional Permitted Liens and (iv) the Carve-Out (the "Adequate Protection Liens").

    b.     Superpriority. The Adequate Protection Claim of the Prepetition Secured Parties shall have Superpriority status, subject only to the Superpriority status of the DIP Obligations, claims secured by Permitted Liens, Additional Permitted Liens and the Carve-Out.

    c.     Cash Payments. The Debtors shall remit to the Prepetition Secured Parties cash payments in an amount equal to all accrued but unpaid interest (whether prepetition or postpetition) owed under the terms of the LIBOR Loans (as defined in the Prepetition Credit Agreement) and Secured Swaps, as appropriate, at the rate of 1.00% per annum in excess of the non-default interest rate payable on the LIBOR Loans under the Prepetition Credit Agreement on the dates when due under the Prepetition Credit Agreement or Secured Swaps, as applicable; provided, however, that all Adequate Protection Payments owed on account of accrued but unpaid interest shall be immediately due and payable three (3) business days following the earlier to occur of (A) a Termination Event or (B) the effective date of the Plan.

    d.     Fees and Expenses. The Debtors shall pay all reasonable fees, out-of-pocket costs and expenses of the Prepetition Collateral Agent, the Prepetition Secured Lenders, and the Secured Swap Counterparty (including fees and expenses of legal advisors, financial advisors and investment banks) promptly upon receipt of invoices therefor (with copies of such invoices provided to the U.S. Trustee and any Committee),

34

whether such fees, costs and/or expenses are incurred prepetition or postpetition (subparagraphs c and d together comprising the "Adequate Protection Payments"). No such fees, costs and/or expenses payable pursuant hereto shall be subject to separate approval by the Court (but the Court shall resolve any dispute as to the reasonableness of any such fees and expenses), and no recipient of any such payment shall be required to file any interim or final fee applications with respect thereto.

e. Other Adequate Protection. The Prepetition Secured Parties shall be entitled to such other adequate protection as (i) reasonably agreed upon by the Prepetition Secured Parties and the Debtors, and approved by this Court, or (ii) as otherwise granted by this Court.

38. **Release of Claims and Defenses; Related Provisions**.

a. Release. Subject to the rights of any Committee appointed in these cases or other party in interest as provided in the following subparagraph, the Debtors forever release, waive and discharge the Prepetition Collateral Agent and the Prepetition Secured Parties, together with their respective officers, directors, employees, agents, attorneys, professionals, affiliates, subsidiaries, assigns and/or successors (collectively, the "Released Parties"), from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, any of the Prepetition Secured Financing Documents, any aspect of the prepetition relationship between the Debtors relating to any of the Prepetition Secured Financing Documents or any transaction contemplated thereby, including, without limitation, any claims or defenses as to the extent, validity, priority or perfection of the Prepetition Liens or Prepetition Indebtedness, "lender liability" claims and causes of action, any actions, claims or defenses under chapter 5 of the Bankruptcy Code or any other claims and causes of action (all such claims, defenses and other actions described in this Paragraph are collectively defined as the "Claims and Defenses"). Nothing contained in this subparagraph shall affect the rights of any Committee or any other party in interest to undertake any action, on its own behalf, or on behalf of the Debtors' estates, with respect to, including, without limitation, any investigation or prosecution of, Claims and Defenses that is permitted in subparagraphs (b) and (c) of this Paragraph.

b. Challenges. Notwithstanding anything contained herein to the contrary and subject to Paragraph 27, the extent, validity, priority, perfection and enforceability of the Prepetition Indebtedness, and Prepetition Liens, and all acknowledgments, admissions, confirmations, and releases of the Debtors above, are for all purposes subject to the rights of any party in interest, other than a Debtor, to seek to invalidate, or otherwise challenge (including a determination of the validity, priority, and extent of any Lien

35

of) the Prepetition Indebtedness or Prepetition Liens, including by properly filing a complaint pursuant to Bankruptcy Rule 7001 or by otherwise properly asserting a contested matter (any of these actions, a "Challenge"); *provided, however*, that any such Challenge must be commenced or asserted in this Court within (i) sixty (60) days after appointment of a Committee under section 1102 of the Bankruptcy Code, if brought by such Committee, and (ii) seventy-five (75) days after entry of the Interim Order, if brought by any non-Debtor party in interest other than a Committee; *provided further*, that a Challenge may not be commenced, asserted or continued by a Committee or any other non-Debtor party if a chapter 11 plan of reorganization that provides for the allowance of the Prepetition Indebtedness or otherwise resolves such Challenge has been confirmed and consummated. Except to the extent that a Challenge is timely commenced within such time period (or such timely asserted Challenge does not result in a final and non-appealable order of this Court that is inconsistent with clauses (i) through (iv) of subparagraph (c) of this Paragraph), then any and all Claims and Defenses against any of the Released Parties shall be, without further notice to or order of the Court, deemed to have been forever relinquished, released and waived as to such Committee and other person or entity, and if such Challenge is timely asserted on or before such date, any and all Claims and Defenses that are not expressly asserted in such Challenge shall be deemed, immediately and without further action, to have been forever relinquished, released and waived as to such Committee and other person or entity.

c.    <u>Allowance of Prepetition Indebtedness</u>.   Except to the extent that a Challenge is timely commenced in accordance with subparagraph (b) of this Paragraph and such timely asserted Challenge results in a final and non-appealable order of this Court that is inconsistent with clauses (i) through (iv) of this subparagraph, then, without the requirement or need to file any proof of claim with respect thereto, (i) the Prepetition Indebtedness shall constitute allowed, secured claims for all purposes in the Cases and any subsequent proceedings under the Bankruptcy Code, including, without limitation, any chapter 7 proceedings if any of the Cases are converted to a case under chapter 7 of the Bankruptcy Code (a "Successor Case"), (ii) the Prepetition Liens (as applicable) shall be deemed legal, valid, binding, enforceable (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code), perfected, not subject to subordination (except as to the DIP Liens and as otherwise specified in this Final Order, the other DIP Financing Documents and the Prepetition Secured Financing Documents) or avoidance for all purposes in the Debtors' Cases and any Successor Case, (iii) the release of the Claims and Defenses against the Released Parties shall be binding on all parties in interest in the Debtors' Cases and any Successor Case, and (iv) the Prepetition Indebtedness, the Prepetition

36

Liens (as applicable), releases of the Claims and Defenses against the Released Parties (as applicable), and prior payments on account of or with respect to the Prepetition Indebtedness shall not be subject to any other or further claims, cause of action, objection, contest, setoff, defense or challenge by any party in interest for any reason, including, without limitation, by any successor to or estate representative of any Debtor. Nothing in this Final Order shall confer, or be deemed to have conferred, standing upon the Committee or any other person or entity to bring, assert, commence, continue, prosecute or litigate the Claims and Defenses against any Released Party.

39. **No Third Party Rights**. Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or any other direct, indirect or incidental beneficiary.

40. **Prepetition Credit Agreement Master Proof of Claim**. The Prepetition Collateral Agent shall (to the extent necessary) be authorized (but not required) to file a master proof of claim against the Debtors on behalf of itself and the applicable Prepetition Secured Lenders on account of their respective prepetition claims arising under the Prepetition Secured Financing Documents (a "Master Proof of Claim"). If the Prepetition Collateral Agent should file a Master Proof of Claim, the Prepetition Collateral Agent and each Prepetition Lender (as applicable) and each of their respective successors and assigns, shall be deemed to have filed a proof of claim in respect of its claims arising under the respective Prepetition Secured Financing Documents, and such shall be allowed or disallowed as if such entity had filed a separate proof of claim in the Cases in the amount set forth in the Master Proof of Claim. The Prepetition Collateral Agent is authorized to amend any such Master Proof of Claim from time to time.

41. **Amendments and Modifications**. The DIP Parties may enter into any non-material amendments or modifications to the DIP Financing Documents, in accordance with the DIP Agreement, without notice or a hearing or further order of this Court, provided that any such

37

non-material amendments or modifications are not prejudicial or adverse to the Debtors or their estates.

42. **Findings of Fact and Conclusion of Laws**. This Final Order shall constitute findings of fact and conclusions of law pursuant to Rule 7052 of the Bankruptcy Rules and shall take effect and be fully enforceable immediately upon execution hereof.

43. **Final Order Governs**. In the event of any inconsistency or conflict between any of the terms and provisions of this Final Order and the DIP Financing Documents, the terms and provisions of this Final Order shall govern.

44. **Jurisdiction**. The Court has and will retain jurisdiction to enforce this Final Order according to its terms.

Dated: April __, 2010
      Wilmington, Delaware

THE HONORABLE KEVIN J. CAREY
CHIEF UNITED STATES BANKRUPTCY JUDGE

38